**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **THOMAS E. PEREZ, SECRETARY OF LABOR** | * | |
| Plaintiff, | | |
| **v.** | * | Civil Action No. 15-cv-3315 (RDB) |
| **CHIMES DISTRICT OF COLUMBIA, INC. et al.** | * | |
| | * | |
| Defendants. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OF LAW IN SUPPORT OF
THE CHIMES DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

# Table of Contents

I. INTRODUCTION ............................................................................................................. 1

II. SUMMARY OF ALLEGATIONS AND COUNTS IN COMPLAINT............................. 2

III. STATEMENT OF KEY ALLEGED FACTS..................................................................... 4

A. The Establishment of the Plan and the Defendants' Contractual Relationship ..................... 5

B. Requirements Under the JWOD Act and the SCA .............................................................. 5

C. Requirements Under ERISA................................................................................................ 8

D. Designated Plan Fiduciary ................................................................................................. 9

E. Allegations that Chimes International and Messrs. Lampner and Bussone Were Also
Fiduciaries........................................................................................................................ 10

F. Chimes DC's Retention of FCE and BCG in 2009 and 2011............................................. 10

IV. STANDARD OF REVIEW .......................................................................................... 12

V. ARGUMENT............................................................................................................... 15

A. All Claims for Fiduciary or Co-Fiduciary Liability of Chimes International, Mr. Bussone,
and Mr. Lampner Should be Dismissed Because They Lack Factual Support.................... 16

 1. The Complaint Does Not Adequately Allege that Chimes International is a *De Facto*
 Fiduciary of the Chimes DC Plan ……………………………………………………17

 2. The Complaint Does Not Adequately Allege that Mr. Bussone or Mr. Lampner
 *Individually* is a *De Facto* Fiduciary of the Chimes DC Plan……………………………..19

 3. The Complaint Does Not Adequately Allege that Any of the Chimes Defendants are
 Responsible as a Co-Fiduciary……………………………………………………………...20

 4. The DOL's Party in Interest Claims Against Chimes International, Mr. Bussone, and
 Mr. Lampner Fail Because There Are No Prohibited Transactions………………………..21

B. Count I Fails to State a Claim for Relief Against the Chimes Defendants Because the
Allegation that Chimes Defendants Paid "Excessive" Fees Lacks Any Factual Support and
is Facially Legally Deficient………………………………………………………………21

 1. The Complaint Fails to Plead any Concrete Facts to Support its Allegation that
 Vendors' Fees Were "Excessive"……………………………………………………..22

 2. The Chimes Defendants did Not Act in a Fiduciary Capacity when Chimes DC Set the
 Vendor Fees ……………………………………………………………………………..25

3.   The Facts Alleged do not Plausibly Show that it was Unreasonable for Chimes DC to Retain FCE and BCG as Service Providers……………………………………………26

C.   Count II Fails to State a Claim Because the Charitable Donations and Employment Decision Complained of Were Not Unlawful.................................................................... 28

1.   The Charitable Donations by FCE Do Not Support a Claim for Breach of Fiduciary Duty or Prohibited Transactions by Chimes Defendants…………………………………..29

2.   The Inquiry by Mr. Lampner Regarding Job Openings and the Subsequent Employment by FCE of Mr. Lampner's Adult Child Do Not Support a Claim for Breach of Fiduciary Duty or Prohibited Transactions Against Any of the Chimes Defendants…………………32

D.   Count III Fails to State a Claim Upon Which Relief Can be Granted Because the Charitable Donations and Provision of Services at an Allegedly Discounted Price Were Not Unlawful .................................................................................................................. 33

1.   The Charitable Donations by BCG Do Not Support a Claim for Breach of Fiduciary Duty or Prohibited Transactions by Chimes Defendants…………………………………..34

2.   The Provision of Services at an Allegedly Discounted Price by Ramsey, Owner of BCG, Does Not Support a Claim for Breach of Fiduciary Duty or Prohibited Transactions by Chimes Defendants …………………………………………………………………..34

E.   Count IV Fails to State a Claim Because the Fee Schedule Agreement Expressly Entitled FCE to Receive Payments from Other Service Providers ................................................... 35

F.   Count V Fails to State a Claim Because No Facts Alleged Provide a Basis for  Holding Chimes DC Liable for the Alleged Failure of its Third-Party Administrator...................... 37

G.   Count VI Fails to State a Claim Because the Reimbursements Complained of Are Not Unlawful ......................................................................................................................... 38

VI.   CONCLUSION............................................................................................................. 41

CERTIFICATE OF SERVICE ................................................................................................. 42

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Pacific Enters.*, 950 F.2d 611, 619-21 (9th Cir. 1991)....................................... 30

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)..................................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................................... 13, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007) ........................................ 13

*Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011) ........................................ 13

*Burney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010)............................................. 13

*Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007) ........................................................................................................ 15

*Confer v. Custom Engineering Co.*, 952 F.2d 34, 37 (3d Cir. 1991) .............................. 19, 20, 29

*Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014) ................................... 26

*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 82 (1995) ................................... 27

*Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996) ........................................... 14, 16

*David v. Alphin*, 704 F.3d 327, 340 (4th Cir. 2013) ..................................................... 28

*Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)......... 14

*Gartenberg v. Merrill Lynch Asset Mgmt.*, 694 F.2d 923, 928 (2d Cir. 1982) ........................... 23

*Gerzog v. London Fog Corp.*, 907 F. Supp. 590, 602 (E.D.N.Y. 1995). ...................................... 18

*Goldenberg v. Indel,* 741 F. Supp. 2d 618, 631 (D.N.J. 2010) ............................................... 24, 31

*Hamilton v. Carell*, 243 F.3d 992, 1003-04 (6th Cir. 2001) ........................................... 31

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000) ................. 31

*Hecker v. Deere & Co.,* 556 F.3d 575, 586 (7th Cir. 2009)............................................... 25

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. ___, 134 S. Ct. 604, 612 (2013)......... 8, 27

*Honda of Am. Mfg., Inc. ERISA Fees Litig.,* 661 F. Supp. 2d 861, 867 (S.D. Ohio 2009)........... 25

*Kernan Hospital*, 880 F. Supp. 2d 676, 681 (D. Md. 2012) ........................................... 14

*Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995) ..................................................... 13

*Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007) ................................................ 25, 27, 35

*Lee v. Verizon Commc'ns, Inc.*, 623 Fed. Appx. 132, 138 (5th Cir. 2015)............................ 24, 26

*Lee v. Verizon Commc'ns, Inc.,* No. 3:12-CV-4834-D, 2014 WL 1407416.......................... 24, 26

*Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996).......................................................... 8

*Loomis v. Exelon Corp.,* 658 F.3d 667, 670-71 (7th Cir. 2011) .................................................. 24

*Massey v. Ojaniit,* 759 F.3d 343, 353 (4th Cir. 2014) ....................................................... 14

*Mutual Fund Investment Litigation*, 403 F.Supp.2d 434, 440 (D. Md. 2005)...................... passim

*New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994) ........................................................................................................... 14

*Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 580-81 (M.D.N.C. 2003) .............. 14

*Pegram v. Herdrich,* 530 U.S. 211, 225 (2000).......................................................... 26

*Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011)................................................. 24

*Smith v. Williams*, 819 F. Supp. 2d 1264, 1279 (M.D. Fla. 2011) ............................... 29, 31, 37, 38

*Taylor v. Medical Dept. (at B.C.D.C.)*, 2015 WL 5255301, *1 (D. Md. Sept. 4, 2015) ............. 12

*Tibble v. Edison Int'l,* 135 S. Ct. 1823, 1828-29 (2015) ................................................... 28

*Tussey v. ABB, Inc.*, 746 F. 3d 327, 335 and n.6 (8th Cir. 2014) ..................................... 27

*United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) ................................................................................................. 8, 12, 14

*Useden v. Acker*, 947 F.2d 1563, 1575 (11th Cir. 1991) .............................................. 20

*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) ...................... 27, 32

*Young v. City of Mount Rainier*, 238 F.3d 567, 577 (4th Cir. 2001) ................................ 13, 23

*Young v. General Motors Investment Management Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) . 23

**Statutes and References**

29 C.F.R. § 2509 ............................................................................................. 19, 20

29 C.F.R. § 4.175 .................................................................................................. 6

29 U.S.C. § 1102(a)(1) ......................................................................................... 8

29 U.S.C. § 1102(a)(2) ........................................................................................ 16

29 U.S.C. § 1104 .................................................................................... 8, 21, 27

29 U.S.C. § 1106 .................................................................................................. 21

29 U.S.C. § 1108 .................................................................................................. 29

29 U.S.C. §§ 1001 ................................................................................................. 1

29 U.S.C. §1002(21)(A) ........................................................................................ 17

29 U.S.C. 1104 ..................................................................................................... 1

29 U.S.C. 1105 ..................................................................................................... 1

29 U.S.C. 1106 ..................................................................................................... 1

41 U.S.C. § 6702(a) ............................................................................................... 6

41 U.S.C. § 6703(2) ............................................................................................... 6

41 U.S.C. § 8501(6) ............................................................................................... 5

41 U.S.C. §§ 6705(a)-(c), 6706 ............................................................................. 8

501(c)(3) (26 U.S.C. § 501(c)(3)) ......................................................................... 4

DOL Advisory Opinion 86-01A (Jan. 09, 1986) ..................................................... 39

DOL Advisory Opinion 89-09A (June 13, 1989) .................................................... 39

ERISA §§ 101, 29 U.S.C. §§ 1021 ......................................................................... 9

ERISA §§ 601, 29 U.S.C. §§ 1161 ......................................................................... 9

Fed. Rule Civ. P. 12(d) ........................................................................................ 15

Federal Rule of Civil Procedure 56(c) .................................................................. 15

Service Contract Act of 1965 ("SCA"), 41 U.S.C. §§ 6701 ..................................... 4

The Javits–Wagner–O'Day Act 41 U.S.C. § 46 ...................................................... 4

Defendants, Chimes District of Columbia, Inc. ("Chimes DC"), Chimes International Ltd. ("Chimes International"), Albert Bussone ("Mr. Bussone"), and Martin Lampner ("Mr. Lampner") (hereinafter collectively referred to as "Chimes Defendants"), by and through undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully submit this Memorandum of Law in Support of The Chimes Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment.

## I. <u>INTRODUCTION</u> [1]

This Action alleges violations of the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*,[2] relating to the Chimes D.C. Inc. Health & Welfare Plan (the "Plan").[3]  Plaintiff Department of Labor ("DOL") alleges ERISA violations by the Chimes Defendants described as breaches of their ERISA fiduciary duties and prohibited transactions.

Specifically, DOL alleges, in conclusory fashion, that: (1) the Chimes Defendants allowed excessive fees to be paid by the Plan; (2) the Chimes Defendants improperly received benefits in connection with the Plan's retention of certain Plan vendors; (3) the Chimes Defendants allowed a Plan vendor to retain indirect compensation; (4) Chimes DC failed to properly monitor its third-party administrator; and (5) Chimes DC and Mr. Bussone improperly

---

[1] The Chimes Defendants have incorporated portions of FCE's Memorandum of Law in Support of FCE Defendant's Motion to Dismiss which was filed with the Court on February 24, 2016. The Chimes Defendants affirm the accuracy of FCE's statement of the facts and the strength of their legal arguments and believe they bear repeating as they apply to the Chimes Defendants.

[2] For the Court's convenience, excerpts of the relevant portions of ERISA Sections 404 (29 U.S.C. 1104), 405 (29 U.S.C. 1105), and 406 (29 U.S.C. 1106) are attached as Exhibit 1.

[3] A copy of the Plan and documents incorporated into the Plan is attached as Exhibit 2.

reimbursed Chimes DC from the Plan for the work of an employee performing administrative duties for the Plan.  In response, the Chimes Defendants hereby move to dismiss Plaintiff's Complaint in its entirety with respect to all Chimes Defendants, as these allegations lack any merit, and as demonstrated below, fail to state a viable legal claim.

First and foremost, the Complaint must be dismissed because the allegations are wholly lacking in specificity and fail to go beyond the mere recitation of the elements of a cause of action.  More specifically, the Complaint is devoid of any facts to support its key claims that: (1) the fees charged to the Plan were above market rate; (2) it was improper for a Plan vendor to retain certain commissions and fees from service providers (something that was expressly permitted by the terms of the Plan); or (3) there is a proper basis for Chimes DC to be held liable for the alleged failures of its third-party administrator.  Second, even putting aside these serious factual pleading deficiencies, the Complaint must be dismissed because the DOL has expressly endorsed some of the conduct that it is now claiming to be unlawful.

## II.    SUMMARY OF ALLEGATIONS AND COUNTS IN COMPLAINT

DOL filed its Complaint on October 30, 2015, naming ten separate Defendants: (1) the Plan;[4] (2) Chimes DC, the Plan Sponsor and Plan Administrator; (3) Chimes DC's parent company, Chimes International; (4) Mr. Lampner, an executive of Chimes DC and Chimes International; (5) Mr. Bussone, a former executive of Chimes DC and Chimes International; (6) Benefits Consulting Group ("BCG"), which provided Plan representation services; (7) BCG's owner, Jeffrey Ramsey ("Mr. Ramsey"); (8) FCE Benefits Administrators, Inc. ("FCE"), which

---

[4] The Complaint states that the Plan is joined as a Defendant pursuant to Federal Rule of Civil Procedure 19(a) to ensure that complete relief can be granted. Compl. ¶ 20.

served as the Plan's third-party administrator ("TPA"); (9) one of FCE's owners, Gary Beckman ("Mr. Beckman"); and (10) another of FCE's owners, Stephen Porter ("Mr. Porter"). Collectively, Chimes DC, Chimes International, Mr. Lampner and Mr. Bussone are referred to in the Complaint as the "Chimes Defendants."  Collectively, FCE, Mr. Beckman and Mr. Porter, are referred to in the Complaint as the "FCE Defendants."  Together, BCG and Ramsey are referred to in the Complaint as the "BCG Defendants."

The Complaint alleges that the Defendants acted in various fiduciary and non-fiduciary capacities with respect to the Plan.  The Chimes Defendants are alleged to have been Plan fiduciaries and co-fiduciaries with each other and FCE at all times.  FCE is alleged to be a fiduciary, a co-fiduciary with the Chimes Defendants, and, inconsistently, a non-fiduciary that knowingly participated in the Chimes Defendants' alleged misconduct (a "knowing participant"). Finally, DOL includes allegations that Chimes DC (among others) was also a knowing participant in the purported wrongdoing.

The Complaint asserts six enumerated Counts: (1) Count I, against all Defendants, for allegedly causing the Plan to pay "excessive" expenses; (2) Count II, against the Chimes Defendants and the FCE Defendants, in connection with: (a) FCE's charitable donations to the Chimes Foundation (a non-fiduciary nonparty) and (b) FCE's employment of Mr. Lampner's adult child; (3) Count III, against the Chimes Defendants and the BCG Defendants, alleging the Chimes Defendants' receipt of payments and discounts from BCG and Ramsey in connection with the Plan's retention of BCG; (4) Count IV, against the Chimes Defendants and the FCE Defendants, challenging FCE's receipt of certain payments from third-party service providers; (5) Count V, against the FCE Defendants and Chimes DC (as Plan Administrator), alleging their failure to properly administer the Plan; and (6) Count VI, against FCE, Chimes DC, and Mr.

Bussone, in connection with the Plan's reimbursements to Chimes DC for work done by a Chimes DC employee on behalf of the Plan.  As will be explained in greater detail below, each of these claims should be dismissed in their entirety against the Chimes Defendants as a result of serious deficiencies in both the facts pled and the law cited.

### III.    STATEMENT OF KEY ALLEGED FACTS[5]

Chimes DC is an Internal Revenue Code section 501(c)(3) (26 U.S.C. § 501(c)(3)) charitable organization and federal government contractor, covered by the McNamara-O'Hara Service Contract Act of 1965 ("SCA"), 41 U.S.C. §§ 6701,*et seq.* and the Javits–Wagner–O'Day Act 41 U.S.C. § 46,*et seq.* ("JWOD Act"), which employs more than one thousand disabled workers to provide primarily janitorial and custodial services.  Complaint ("Compl.") [ECF No. 1], ¶¶ 2, 10.

Chimes International is the parent organization of Chimes DC and non-party The Chimes Foundation, Inc. (the "Chimes Foundation"), a fundraising arm of Chimes International and its subsidiaries.  Compl. ¶ 11.  The Chimes Foundation, which is mentioned in the Complaint, **but is not a party**, raises money that benefits individuals with disabilities.  Compl. ¶¶ 11, 27. However, inasmuch as Chimes DC is financially self-sustaining, funds raised by the Chimes Foundation rarely, if ever, benefit Chimes DC.

---

[5] The facts alleged are those appearing in the Complaint, documents referenced in the Complaint, or those about which the Court may take judicial notice. Solely for the purposes of this motion, the Chimes Defendants assume the sufficiently pleaded facts (but not the legal allegations and conclusions) alleged in the Complaint to be true, except to the extent that they are contradicted by documents incorporated by reference into the Complaint or facts of which this Court may properly take judicial notice.

FCE provides third-party administrative services for health and welfare plans sponsored by employers who fall within the purview of the SCA.  Compl. ¶ 4.  BCG serves as a broker and service provider for health and welfare plans sponsored by employers who fall within the purview of the SCA.  *Id.*

## A.     The Establishment of the Plan and the Defendants' Contractual Relationship

Chimes DC established the Plan "primarily to fulfill its obligations under various government contracts to provide fringe benefits to its employees."  Compl. ¶ 20.  It is a partially self-insured ERISA health and welfare plan funded in part by contributions required to be paid under Chimes DC's federal government contracts and federal prevailing wage laws pursuant to the SCA.  *See id.*  The Plan "provide[s] a package of medical, prescription, life insurance, accidental death and dismemberment, disability, and unemployment benefits to over a thousand participants and beneficiaries."  *Id.*, ¶ 2.

FCE and BCG have provided services to the Plan since at least 1999.  *Id.*, ¶ 20.  In servicing the Plan participants, Chimes DC, FCE, and BCG were required to have sufficient knowledge of, and to administer the Plan consistent with, multiple federal statutory schemes.

## B.     Requirements Under the JWOD Act and the SCA

The federal government's JWOD Act creates jobs for people who have severe disabilities, allowing them to lead more productive and independent lives.  The JWOD Act achieves these goals by requiring government agencies to purchase certain services from nonprofit organizations employing such individuals like Chimes DC.  The JWOD Act requires that at least 75% of total direct labor hours must be performed by such individuals.  41 U.S.C. § 8501(6).

Accordingly, as a contractor providing services to the federal government and as Plan Administrator, Chimes DC must administer the Plan to meet the requirements of the SCA. *See* Compl. ¶ 2. The SCA applies to federal service contracts that exceed $2,500 and imposes special rules on benefit plans sponsored by employers performing such contracts ("SCA Contractors"). 41 U.S.C. § 6702(a). SCA Contractors must pay their employees ("Service Employees") at least the hourly rates of wages and fringe benefits determined by DOL. *Id.* §§ 6703(1), (2). In a fringe benefit determination, DOL specifies the types of benefits that may be provided (such as health care benefits, pension or retirement benefits, death benefits, compensation for injuries, and the like), and a minimum hourly cost of fringe benefits that an SCA Contractor must provide on behalf of each Service Employee. *Id.* § 6703(2); 29 C.F.R. § 4.175. An SCA Contractor may fulfill its fringe benefit obligation by irrevocably paying the required contributions to a bona fide fringe benefit plan (an "SCA Plan"), such as the ERISA-covered Plan at issue here. Compl. ¶ 20; 29 C.F.R. §§ 4.170(b), 4.171.

Under the SCA, the Plan must be administered subject to unique eligibility and benefit rules. First, an SCA Contractor may fulfill its fringe benefit obligation by providing "any equivalent combinations of fringe benefits or by making equivalent or differential payments in cash." 41 U.S.C. § 6703(2). Accordingly, an SCA Contractor that fails to meet the required level of fringe benefit payments must make individual cash payments to its Service Employees to make up the difference.

Second, SCA Plans provide different levels of benefits to "various classes of Service Employees" based on their number of "earned hours" and the terms of the fringe benefit determination issued by DOL for each federal contract. *See* 29 C.F.R. §§ 4.162(a), 4.172, 4.175(a)(1)-(2). Under most fringe benefit determinations containing health and welfare or

6

pension requirements, earned hours include "**all hours** paid for, including paid vacation, sick leave, and holiday hours, up to a maximum of 40 hours per week and 2,080 hours per year on each contract." *Id.* at § 4.175(a)(1) (emphasis added).  Accordingly, unlike most private employers that commonly require a single specified (*e.g.*, 30-hour) per week minimum in order to be eligible for benefits, the SCA requires that **all employees**, regardless of hours worked and with no minimum, must receive fringe benefits.  *Id.* at § 4.175(a)(2).  Consequently, an SCA Plan must review in detail its Service Employees' hours and payroll records at least semi-monthly to ascertain each employee's earned hours and each employee's corresponding level of benefits.  *See id.* §§ 4.165(a)(1), 4.165(b).  Like many SCA-governed employers, the Plan also provides benefits pursuant to several different collective bargaining agreements, which also require varying levels of contributions and benefits.

By operation of law and consistent with the Plan documents, Chimes DC and its vendors (FCE and BCG) must work together to track these hours for each Service Employee covered under the Chimes DC Plan and determine the corresponding benefits.  *See* Exh. 2H at 5. If an employee works significantly reduced hours (or even for instance simply drops from working eleven hours to nine hours per week), Chimes DC and its vendors must continually track these hours and adjust benefits accordingly, providing all required notices and continuing coverage options.  This required level of detail, accounting, and coordination is very time consuming work and is well beyond the work required of a typical private employer and typical vendor for a private employer plan.

The consequences of SCA noncompliance are severe.  A noncompliant SCA Contractor must make whole any underpaid Service Employees.  Otherwise, it may lose its current federal contract(s), and it is potentially subject to a three-year period of debarment.  41 U.S.C. §§

7

6705(a)-(c), 6706.  The Comptroller General of the United States distributes to all federal agencies a list of all noncompliant SCA Contractors.  *Id.* § 6706.  Compliance with the SCA's eligibility and benefit rules is therefore crucial for SCA Contractors and service providers to SCA Plans.

## C.   Requirements Under ERISA

While "[n]othing in ERISA requires employers to establish employee benefits plans," *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996), if an employer chooses to adopt an ERISA benefits plan because of its SCA obligations, it has "large leeway to design disability and other welfare plans as [it] see[s] fit" *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. ___, 134 S. Ct. 604, 612 (2013), as long as the plan complies with the SCA.  Once a plan is established, ERISA § 402(a)(1) requires that the plan "shall be established and maintained pursuant to a written instrument."  29 U.S.C. § 1102(a)(1).  Fiduciaries must then administer the plan "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]."  ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(D).

On March 15, 2004, Chimes DC amended and restated the Plan through the Amended and Restated Adoption Agreement ("the Adoption Agreement") (attached as Exh. 2A)[6].  The

---

[6] The Plan consists of multiple documents each of which together comprise the Plan, including the: (1) Adoption Agreement [Exh. 2A]; Health &Welfare Plan [Exh. 2B]; (2) Fee Schedule [Exh. 2C]; (3) Amendment to Fee Schedule [Exh. 2D]; (4) Third Party Administrator Agreement [Exh. 2E]; (5) Plan Sponsor Certification for Compliance With Privacy Standards [Exh. 2F]; (6) Summary Plan Descriptions [Exhs. 2G and 2H]; (7) Group Information Forms [Exh. 2I]; (8) Funding Policy [Exh. 2J]; and (9) Business Associate Agreement for Compliance With Privacy Standards [Exh. 2K]. *See* Plan [Exh. 2B], § 1.12. We have provided a complete copy of these Plan documents along with citations to the specific provisions of the particular Plan documents cited in support of this Motion. As set forth in greater detail below, since the Complaint references and relies upon various Plan documents: (1) the Court may consider their terms; and (2) those terms must prevail to the extent that they conflict with any allegations of the Complaint.

Adoption Agreement establishes the terms of the Plan, which is subject to ERISA.  Compl. ¶ 20.

Under ERISA, the Plan and its fiduciaries must comply with mandated disclosure and reporting

requirements, including providing summary plan descriptions and other required periodic

disclosures to Plan participants and beneficiaries concerning benefits and expenses; file annual

reports with DOL outlining the Plan's assets, liabilities, expenditures, and service providers; and

respond to participant and beneficiary requests for information.  *See* ERISA §§ 101, 29 U.S.C.

§§ 1021, *et seq.*  ERISA requires that the fiduciaries act consistently with statutory fiduciary

duties and avoid prohibited transactions.  *See* ERISA §§ 404, 406, 29 U.S.C. §§ 1104, 1106.

In administering health benefits, the Plan must also comply with continuing coverage

requirements pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985

("COBRA") whenever a participant experiences a "qualifying event," such as a reduction in

hours that results in a decrease in benefits.  *See* ERISA §§ 601, 29 U.S.C. §§ 1161, *et seq.*

COBRA requires that notice of continuing coverage be provided and, because of SCA

requirements, at the same time, the Plan must provide the participant notice of available benefits

and an opportunity to elect those benefits.  Unlike in the typical private employer setting in

which COBRA and benefit election events ordinarily occur only when an individual is hired or

terminated, in the SCA environment, these events occur much more frequently such as when an

employee works reduced hours, in addition to when he or she is hired or terminated, adding

further administrative burdens on the Plan and its service providers.

**D.     Designated Plan Fiduciary**

The Plan designates Chimes DC as the Plan Administrator.  Compl. ¶ 10; *see also* Plan

[Exh. 2B], § 1.13.  Chimes DC is therefore "a named fiduciary of the Plan."  *Id.*, ¶ 10.  As Plan

Administrator, Chimes DC has "discretionary authority to exercise all powers and to make all

determinations, consistent with the terms of the Plan, in all matters entrusted to it . . . ."  Plan [Exh. 2B] § 4.2.  The Plan does not name any other fiduciaries but authorizes a trustee to control Plan assets.  *See* Plan [Exh. 2B], § 7.1; SPD-Major Medical [Exh. 2G] at iii (Benefit Plan Summary Description);  SPD-Primary Care [Exh. 2H] at iv (Benefit Plan Summary Description).

**E.  Allegations that Chimes International and Messrs. Lampner and Bussone Were Also Fiduciaries**

DOL alleges in a conclusory manner that Chimes International and Messrs. Lampner and Bussone also exercised control and or authority over Plan assets.  Compl. ¶¶ 11-13.  DOL further alleges (again, without any factual support) that Chimes International and Messrs. Lampner and Bussone qualify as parties in interest.  *Id.* ¶¶ 11-13 (citing ERISA § 3(14)(A) and (H), 29 U.S.C. § 1002(14)(A) and (H)).

**F.  Chimes DC's Retention of FCE and BCG in 2009 and 2011**

Subsequent to the Plan's restatement in 2004, "the Governance Committee of the Board of Directors of Chimes International and Chimes DC . . . reviewed Chimes DC's contract with FCE and BCG" in 2009 and 2011.  Compl. ¶ 35.  "In 2009 and 2011, Lampner and Bussone assured the Governance Committee that they had consulted with an independent broker, who was unable to find suitable alternative service providers to FCE."  *Id.*, ¶ 36.  Given this information, there was no need to "conduct a full request for bid proposals . . . or request that an independent broker obtain and compare bid proposals from alternative providers" since there were none to be had. *Id.*, ¶¶ 38, 40.  Based on the independent broker's finding, "the Governance Committee approved the extensions to Chimes DC's contract with FCE."  *Id.*, ¶ 42.  Notably, during this period, FCE's fees remained as they had been since 2004, with no increase.  *See* Fee Schedule [Exh.2C]. Chimes DC amended the Plan in 2012 to permit FCE to administer health

10

reimbursement accounts and to charge a fee for that service; fees for FCE's pre-existing services remained at the 2004 level.  Fee Agreement [Exh. 2C], Amendment to the Fee Schedule [Exh. 2D].

In 2009, FCE and BCG pledged charitable donations to the Chimes Foundation of $55,000 a year over a five year period to benefit the disabled.  Compl. ¶ 29.  In making the charitable pledge to the Foundation, FCE and BCG "acknowledge[d] that these funds may be utilized for capital projects that will not only improve services, but enhance the quality of life for individuals with disabilities."  Letter from Steve Porter to Terry Perl on behalf of FCE and BCG (Nov. 2, 2009) [Exh. 3]; *see also* Compl. ¶ 29 (quoting other portions of the letter).  The donations were specifically to benefit individuals with disabilities.  *See id.*  The donations were not intended to, and did not benefit Mr. Lampner or Mr. Bussone (or even Chimes DC or Chimes International).

Chimes International and Chimes DC, along with non-party Chimes Foundation, are separate legal entities, with separate employer identification numbers, which file separate, informational tax forms with the Internal Revenue Service (each of which is referenced as a "Form 990").[7]  As reported in Part VII of the Forms 990, each entity has a separate governing

---

[7] *See e.g.*, 2013 Chimes International Form 990, Part I lines 3, 4, Part VI line 1b; Chimes DC Form 990, Part I lines 3, 4, Part VI line 1b; Chimes Foundation Form 990, Part I lines 3, 4, Part VI line 1b. Available at http://www.chimes.org/finance.htm and http://www.guidestar.org. Historic Forms 990 for each of the entities are also available at:
(1) Chimes Foundation: http://www.eri-nonprofitsalaries.com/index.cfm?FuseAction=NPO. Summary&EIN=521796571&BMF=1&Cobrandid=0&Syndicate=No;
(2) Chimes DC: http://www.eri-nonprofitsalaries.com/index.cfm?FuseAction=NPO. Summary&EIN=541691953&BMF=1&Cobrandid=0&Syndicate=No;
(3) Chimes International – http://www.eri-nonprofitsalaries.com/index.cfm?FuseAction=NPO. Summary&EIN=522000359&BMF=1&Cobrandid=0&Syndicate=No.
These are public records of which the Court may (and should) take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence and are integral to DOL's prohibited transaction

Board of Directors, the majority of whom are independent.  *Id*. at Part VII.  The Form 990 for the

Chimes Foundation reflects that it raises funds for a number of other charitable entities,

including the Chimes Family of Services, which includes Chimes DC and Chimes International.[8]

While Mr. Lampner and Mr. Bussone were executive officers of Chimes Foundation, Chimes

DC, and Chimes International, as reflected in Schedule J to the relevant Forms 990, none of Mr.

Lampner's or Mr. Bussone's compensation was contingent on the revenues or net earnings of

Chimes Foundation or any related organization.  *Id.*[9]

The Complaint alleges that in 2010, Mr. Lampner solicited FCE to employ his adult

child, and FCE subsequently hired Mr. Lampner's adult child.  Compl. ¶ 31.  By that time, the

Chimes DC Governance Committee had **already decided**, a **year earlier**, to retain FCE.  *Id.* ¶

42.  In 2011, as alleged in the Complaint, the Chimes DC governance committee approved

continuing FCE's contract because there were no suitable alternative service providers.  *Id.* ¶¶

36, 42.

## IV.   <u>STANDARD OF REVIEW</u>

A motion to dismiss is governed by Rule 12 of the Federal Rules of Civil Procedure.  The

purpose of such a motion is to test the legal sufficiency of the complaint.  *Taylor v. Medical*

*Dept. (at B.C.D.C.)*, 2015 WL 5255301, *1 (D. Md. Sept. 4, 2015) (Bennett, D.J.) citing *Burney*

---

allegations. *See United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d
131, 136 (4th Cir. 2014).  Accordingly, the Chimes Defendants request that the Court do so. The
Chimes Defendants will also file copies of the relevant Forms 990 should the Court wish them to
do so.

[8] Chimes Foundation Form 990, Part III lines 4, 4(a); Sched. I.

[9] *See*, *e.g.*, 2013 Chimes International Form 990, Sched. J, lines 5-6; Chimes DC Form 990,
Sched. J, lines 5-6; Chimes Foundation Form 990, Sched. J, lines 5-6.

*v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010).  In considering a motion to dismiss, the court is to accept as true all well-pleaded allegations and should view the complaint in the light most favorable to the Plaintiff.  *Taylor*, at *1, citing *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a claim must set forth a "showing, rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007) (internal quotations omitted).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557).

Only a complaint that alleges a plausible claim for relief can survive a motion to dismiss. *Iqbal,* 556 U.S. at 678-79.  To be plausible, the claim must contain "well pleaded facts" that "permit the court to infer more than the mere possibility of misconduct."  *Id.* at 679.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.  *See id*.  In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions.  *In re Mutual Fund Investment Litigation*, 403 F.Supp.2d 434, 440 (D. Md. 2005) ("Mutual Fund Litigation") citing *Young v. City of Mount Rainier*, 238 F.3d 567, 577 (4th Cir. 2001) (noting that the "presence…of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions; *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995) (affirming Rule 12(b)(6) dismissal with prejudice because the plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law).  The Fourth Circuit has affirmed dismissal of ERISA

13

complaints that "lacked any specific factual allegations" to support the assertion that the defendant was a de facto fiduciary of the plan. *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996).

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court is not "confined to the four corners of the complaint." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014*)*. "It is well established that [a court] may properly take judicial notice of matters of public record, including statutes," and documents attached to the motion to dismiss so long as they are "integral to the complaint and authentic." *Id.* (internal quotation marks omitted). The court may also consider any documents referred to in the complaint and relied upon to justify a cause of action — even if the documents are not attached as exhibits to the complaint. *See* Fed. R. Civ. P. 10(c); *Kernan Hospital*, 880 F. Supp. 2d 676, 681 (D. Md. 2012); *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994). As Judge Blake explained, in an ERISA case, such as this, such documents include "the plan documents referred to in the complaint and relied on by the plaintiff." *Mutual Fund Litigation.*, 403 F.Supp.2d at 440.

In fact, not only may courts consider any documents attached or referred to in the complaint and facts subject to judicial notice when considering a motion to dismiss, but they are "not obliged to accept allegations that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014). Rather, "[w]hen the bare allegations of the complaint conflict with any exhibits or other documents, whether attached or adopted by reference, the **exhibits or documents prevail**." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (emphasis added); *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 580-81 (M.D.N.C. 2003); *see also Chicago District Council*

14

*of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007) (dismissing

fiduciary allegations against service provider where, "[t]o the extent that the [service provider]

contracts contradict the Complaint, the contracts trump the facts or allegations presented in the

Complaint.").

If the Court relies on facts outside of the record, the motion to dismiss must be treated as

one for summary judgment. Fed. Rule Civ. P. 12(d). Pursuant to Federal Rule of Civil Procedure

56(c), a court shall grant summary judgment "if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." The "mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be

no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

(*emphasis* in original).

## V.   **ARGUMENT**

First, the Complaint should be dismissed because the allegations are wholly lacking in

specificity and fail to go beyond the mere recitation of the elements of a cause of action.  Indeed,

the Complaint is a textbook example of "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements." [10]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[10] The lack of factual support and specificity throughout the Complaint is especially remarkable
in light of the DOL's lengthy investigation, **which took place over a period of several years**,
prior to filing this lawsuit. Unlike run-of-the-mill plaintiffs, the DOL has already had the
opportunity to engage in significant discovery.  In fact, prior to filing its Complaint, the DOL
conducted no fewer than four formal depositions (including deposing Mr. Lampner and Mr.
Bussone) and countless informal interviews, as well as dozens of document and information
requests allowing the DOL to conduct a comprehensive review of the Chimes Defendants'

(2009).  Second, even putting aside the lack of concrete facts in support of its claims, the

Complaint must be dismissed because the DOL has expressly endorsed the conduct that it is now

claiming to be unlawful.

## A.      All Claims for Fiduciary or Co-Fiduciary Liability of Chimes International, Mr. Bussone, and Mr. Lampner Should be Dismissed Because They Lack Factual Support

Preliminarily, the Complaint fails to state a claim against Defendants Chimes

International, Mr. Bussone, or Mr. Lampner because it fails to properly plead that any of them

are fiduciaries or co-fiduciaries of the Chimes DC Plan.  The DOL does not allege any facts that

would make any Defendant other than Chimes DC a Plan fiduciary.  Throughout the Complaint,

the DOL attempts to improperly conflate all of the Chimes Defendants as if they were a single

entity in order to mask Plaintiff's failure to properly plead a specific basis for imposing a

fiduciary duty on Chimes International, Mr. Bussone, or Mr. Lampner.

Under ERISA, a person or entity may become a plan fiduciary through two means.  The

first way is by being expressly identified in the plan documents, either by name or according to a

procedure specified in the plan, as having the authority to control and manage the operation and

administration of the plan.  29 U.S.C. § 1102(a)(2).  The Complaint does not, and could not,

credibly allege that Defendants Chimes International, Mr. Bussone, or Mr. Lampner are

expressly identified in the plan documents as plan fiduciaries.

The second way a person or entity can become an ERISA fiduciary is by performing

specified discretionary functions with respect to the plan's management, assets, or administration

of a plan in a *de facto* capacity.  *Mutual Fund Litigation*, 403 F.Supp.2d at 445 citing *Custer v.*

---

records.  Accordingly, this Court should hold the DOL to the highest possible standard with
respect to pleading concrete facts in support of its legal claims.

*Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996).   Broad conclusory allegations of discretionary control fail to meet the pleading requirements set forth by the Fourth Circuit for alleging *de facto* ERISA fiduciary status.  As Judge Blake wrote for this Court in the Mutual Fund Litigation, "the Fourth Circuit decisions strongly support the conclusion that the plaintiffs [in an ERISA case] must do more than quote the statutory language regarding 'discretionary control' to plead adequately that a given defendant is a *de facto* ERISA fiduciary."  *Mutual Fund Litigation*, 403 F. Supp. 2d at 446.  The *Mutual Fund Litigation* Court declined to follow cases from other Circuits which held that a complaint that does little more than track the statutory definition of fiduciary is adequate to satisfy the Rule 8 pleading standard.  *Id.*  Instead, Judge Blake held that in this Circuit, the complaint "must be examined to determine whether the plaintiffs have met their burden as to each defendant" and that this burden was not met unless the complaint included "a proffer of some factual basis for concluding that a given entity possessed such discretionary authority." *Id*. at 447.

1. **The Complaint Does Not Adequately Allege that Chimes International is a *De Facto* Fiduciary of the Chimes DC Plan**

The Complaint alleges that Chimes International is the parent company of Chimes DC. Compl. ¶ 11.  The Complaint goes on to allege in a completely conclusory fashion that Chimes International "through the Governance Committee of its Board of Directors, had and exercised discretionary authority and discretionary control respecting appointment, retention, and payment of the Plan's service providers, insurers, and/or fiduciaries…" thereby making Chimes International "a fiduciary with respect to the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A)…." Compl. ¶ 11.  The *Mutual Fund Litigation* addressed what

17

must be pled concerning a parent company in order to sufficiently state a claim based upon *de facto* fiduciary status:

> The parent companies of plan sponsors and administrators lack fiduciary status to the extent they do not actually exercise any control over plan assets or discretion over the plans of their subsidiaries, or exercise the power to appoint the actual fiduciaries.  See *Gerzog v. London Fog Corp.*, 907 F. Supp. 590, 602 (E.D.N.Y. 1995).

*Mutual Fund Litigation*, 403 F. Supp. 2d at 447.

Nowhere in the Complaint are any facts pled in support of these conclusions.  The Complaint offers nothing more than the above quoted reference to the "Governance Committee" of the Board of Directors for Chimes International and the unsupported assertion that *this* Governance Committee (as opposed to the Governance Committee for Chimes DC) "reviewed Chimes DC's contract with FCE and BCG to perform services for the Plan."  Compl. ¶ 35.  No factual basis is pled to establish that parent company's Governance Committee actually exercised any control over plan assets or discretion over the Chimes DC Plan, or had the power to appoint the actual fiduciary.  The conclusory statement that Chimes International reviewed a contract between Chimes DC (a separate entity) and service providers for the Chimes DC Plan is insufficient.  In fact, the Complaint alleges that, pursuant to the Adoption Agreement, only Chimes DC had authority to appoint, retain, and/or remove the Plan's service providers.  Compl. 25.  No fact is pled to establish that Chimes International had such authority at any time.

Each of the claims against Chimes International (Counts I, II, III, & IV) should be dismissed because the Complaint fails to distinguish between Chimes International and Chimes DC, a separate corporate entity, and fails to do anything more than merely recite the statutory language in ERISA in an effort to conflate Chimes DC's status as a named fiduciary with its parent company Chimes International.

18

**2.  The Complaint Does Not Adequately Allege that Mr. Bussone or Mr. Lampner *Individually* is a *De Facto* Fiduciary of the Chimes DC Plan**

The Complaint alleges in conclusory fashion that "[w]hile negotiating, vetting, and/or executing the Plan's contracts with FCE and BCG, Bussone [and Lampner] *individually* exercised discretionary authority or discretionary control respecting appointment, retention, and payment of Plan service providers, insurers, and/or fiduciaries, including FCE and BCG, and exercised discretionary authority or discretionary control over other aspects of managing and administering the Plan and its assets."  Compl. ¶¶ 12-13 (emphasis added).  The critical allegation here is whether Mr. Bussone or Mr. Lampner exercised authority or discretion in his *personal* capacity as opposed to as an officer director or employee of Chimes DC.  Nowhere in the Complaint is a single fact alleged to support the claim that they operated in an individual capacity.  In fact, each act or failure to act by Bussone or Lampner alleged in the Complaint is clearly in their capacity as an officer or employee of Chimes DC.  Merely stating that officers and a parent company are fiduciaries without more does not make it so.

> Corporate officers and directors likewise do not become fiduciaries solely by virtue of their corporate position, even if the corporation is a fiduciary, "unless it can be shown that they have *individual* discretionary roles as to plan administration." *Confer v. Custom Engineering Co.*, 952 F.2d 34, 37 (3d Cir. 1991); see also [In re] Worldcom [Inc., 263 F. Supp. 2d [745], 759-61.

*Mutual Fund Litigation*, 403 F. Supp. 2d at 447 (emphasis in *Confer v. Custom Engineering*).

The DOL's own regulations provide that officers and employees of a plan sponsor are not automatically fiduciaries.  *See* 29 C.F.R. § 2509.75-8 ("Q.  D-5  Is an officer or employee of an employer or employee organization which sponsors an employee benefit plan a fiduciary with respect to the plan solely by reason of holding such office or employment if he or she performs

19

none of the functions described in section 3(21)(A) of the Act? A.  No.")  This DOL bulletin is cited as authority on this point by the Third Circuit in *Confer*, 952 F.2d at 37.

If individuals exercise discretion and control over the Plan's administration but only as officers of a corporation, they have not acted in an individual capacity.  *Confer*, 952 F.2d at 38. The Complaint fails to allege any fact to demonstrate that either Mr. Bussone or Mr. Lampner as an individual had discretionary authority or responsibility which gave rise to a fiduciary duty to the Plan.

Each of the claims against Mr. Bussone or Mr. Lampner personally (Counts I, II, III, IV, & VI) should be dismissed because the Complaint fails to distinguish between Mr. Bussone or Mr. Lampner in their personal capacities as opposed to their capacities as officers or employees of Chimes DC.

### 3. The Complaint Does Not Adequately Allege that Any of the Chimes Defendants are Responsible as a Co-Fiduciary

Furthermore, the DOL does not allege any facts that would make FCE (or its owners) or BCG (or its owner) a fiduciary as such parties were non-fiduciary, ministerial service providers under ERISA who did not exercise any control or discretion over the Plan.  Under ERISA, a service provider is not a fiduciary for purposes of ERISA— even where it assumes some discretionary control or authority over plan assets — "if that discretion is sufficiently limited by a pre-existing framework of policies, practices, and procedures." *Useden v. Acker*, 947 F.2d 1563, 1575 (11th Cir. 1991); *see also* 29 C.F.R. § 2509.75-8, D-2.  Such is the case here.  *See TPA Agreement* [Exh. 2E], §§ IV, IV(b).  Therefore, none of the Chimes Defendants can be responsible for any co-fiduciary liability with respect to any other party's actions as the DOL has

not plead any facts indicating that any party other than Chimes DC is a fiduciary and/or that

there were any violations of ERISA.

### 4. The DOL's Party in Interest Claims Against Chimes International, Mr. Bussone, and Mr. Lampner Fail Because There Are No Prohibited Transactions

As shown in this Memorandum, the Complaint fails to properly plead any prohibited

transactions. Therefore, the question of whether Chimes International, Mr. Bussone, or Mr.

Lampner are parties in interest is not relevant and the DOL's party in interest claims against

Chimes International, Mr. Bussone, and Mr. Lampner fail to state a claim.

For these reasons, all claims against Chimes Defendants based on their alleged party in

interest status and their co-fiduciary liability should be dismissed.

## B. Count I Fails to State a Claim for Relief Against the Chimes Defendants Because the Allegation that Chimes Defendants Paid "Excessive" Fees Lacks Any Factual Support and is Facially Legally Deficient

Count I claims that the Chimes Defendants, all of whom are alleged to be Plan

fiduciaries, *see* Compl. ¶¶ 10-13, failed to comply with their fiduciary duties of loyalty and

prudence in monitoring the Plan's expenses in violation of ERISA Sections 404(a)(1)(A) and (B)

(29 U.S.C. § 1104(a)(1)(A) and (B)) and also engaged in prohibited transactions in violation of

ERISA Sections 406(a)(1)(C) and (D) (29 U.S.C. § 1106(a)(1)(C) and (D)) concerning services

provided to the Plan and the use of Plan assets, resulting in excessive Plan expenses to the

benefit of FCE, BCG, and Chimes DC. Compl. ¶ 60.

Count I should be dismissed in its entirety because: (1) the allegations that Chimes

Defendants caused the Plan to pay "excessive" fees is wholly devoid of any factual support; (2)

the Chimes Defendants were not acting in a fiduciary capacity at the time Chimes DC

established the Fee Schedule and the fees paid to BCG; and (3) the alleged facts do not plausibly

show that it was unreasonable to retain FCE and BCG as service providers.  For the same

reasons, the derivative co-fiduciary, and knowing participation claims must also fail as a matter

of law. [11]

1.       **The Complaint Fails to Plead any Concrete Facts to Support its Allegation that Vendors' Fees Were "Excessive"**

The Court should dismiss Count I in its entirety because the DOL has not, and cannot,

plead plausible facts establishing that the fees paid to Plan vendors were excessive.  Although

Count I alleges multiple theories of liability against the Chimes Defendants, including breach of

the fiduciary duties of loyalty and prudence, prohibited transactions, and co-fiduciary liability,

each of those theories of liability are dependent upon the DOL showing that the fees paid to Plan

vendors were, in fact, excessive.  Therefore, because the DOL has failed to plead sufficient facts

to state a legal claim for excessive fees, Count I must be dismissed in its entirety.

Despite the DOL's repeated assertions in the Complaint that the Chimes Defendants

permitted the Plan to pay excessive fees, the Complaint lacks any real factual support for this

claim.  The Complaint vaguely contends that the Plan "paid millions of dollars in excessive

expenses" and its expenses were "more than would be reasonable," *id.* ¶¶ 21, 23, 43, but **notably

missing from the Complaint are any allegations of what would have constituted a

reasonable fee, much less any supporting facts involving comparisons, benchmarks, or

standards against which the fees should (or could) have been measured.**  These are exactly

---

[11] Like the rest of the Complaint, Count I fails to properly allege any facts that support the claim
that Chimes International, Mr. Bussone, or Mr. Lampner have any fiduciary or co-fiduciary
liability because the DOL does not allege any facts that would make any Defendant other than
Chimes DC a fiduciary. *See supra* Part V.A.

the kinds of bare assertions that other courts have found failed to meet the federal pleading requirements.

Such allegations — that fees were excessive relative "to the services rendered" with "no facts concerning other factors relevant to determining whether a fee is excessive under the circumstances" are clearly insufficient to sustain a claim. *Young v. General Motors Investment Mgmt Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (dismissing breach of fiduciary duty case based on allegedly excessive fees because plaintiff failed to allege any facts concerning factors relevant to determining whether the fee was excessive under the circumstances). Indeed, to support an excessive fees claim "the [service provider] must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining[.]" *Gartenberg v. Merrill Lynch Asset Mgmt.*, 694 F.2d 923, 928 (2d Cir. 1982). No such facts are alleged in the Complaint.

Courts routinely decline to recognize ERISA claims for excessive fees where the plaintiff fails to allege facts establishing that the fees are disproportionate to services rendered or otherwise establishing a basis for the allegation under the circumstances. For example, in *Young v. General Motors Investment Mgmt. Corp.*, 325 Fed. Appx. 31 (2d Cir. N.Y. 2009), the Second Circuit upheld a dismissal of excessive fee claims under ERISA. There, participants in defined contribution plans filed class action complaints against the named plan fiduciary and the trustee, alleging that they breached their fiduciary duties by causing the plans to lose millions of dollars per year in excessive fees. *Id*. at 32-33. The defendants filed motions to dismiss, arguing that the claims were time barred or, in the alternative, failed to state a claim on the excessive fee claims. *Id.* at 31. The district court granted the motion to dismiss based on a determination that the claims were time-barred and plaintiffs appealed. *Id.*

The Second Circuit affirmed the dismissal on the ground that the complaints failed to state a claim on which relief could be granted.  Specifically, the Second Circuit held that plaintiffs failed to allege facts which would support a finding that the fees charged were excessive relative to the services rendered or establishing other factors relevant to determining whether a fee is excessive under the circumstances.  *Id.* at 33.  Accordingly, the Second Circuit held that "plaintiffs do not provide a basis upon which to infer that defendants' offering of the [investment funds for which excessive fees were allegedly charged] was a breach of their fiduciary duties."  *Id.* at 33; *see also Lee v. Verizon Commc'ns, Inc.,* No. 3:12-CV-4834-D, 2014 WL 1407416, at *6-7 (N.D. Tex. Apr. 11, 2014) (holding that "[w]ithout more than essentially an allegation of the amount that Verizon paid and the conclusory assertion that it was unreasonable, the Transferee Class . . . failed to state a plausible claim").

In fact, courts have even dismissed excessive fee claims containing ***some*** (insufficient) factual allegations that fees charged by ERISA service providers were excessive.  *See, e.g., Loomis v. Exelon Corp.*, 658 F.3d 667, 670-71 (7th Cir. 2011) (dismissing excessive fee claim comparing expenses charged for institutional and retail funds); *Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011) (same); *Goldenberg v. Indel,* 741 F. Supp. 2d 618, 631 (D.N.J. 2010) (dismissing excessive fee claim based on comparison of fees between asset managers of different investment funds since "the Court has no way to gauge the reasonableness of the fee without knowing the cost of providers for the same service").

Significantly, the mere fact that it is *possible* that a plan could have paid lower fees[12] "is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer

---

[12] Importantly, the Plan is not a qualified retirement plan with individual participant accounts from which administrative expenses may be deducted and through which excessive fees would

24

the cheapest possible [services] (which might, of course, be plagued by other problems)."
*Hecker v. Deere & Co.,* 556 F.3d 575, 586 (7th Cir. 2009) (dismissing excessive fee claim despite factual allegations alleging wide range of expense ratios); *accord In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*, 661 F. Supp. 2d 861, 867 (S.D. Ohio 2009) (dismissing excessive fee claim). Here, the DOL's excessive fee claim floats completely untethered to any plausible factual support and, like the many analogous cases described above, should be dismissed.

### 2. The Chimes Defendants did Not Act in a Fiduciary Capacity when Chimes DC Set the Vendor Fees

Even if this Court were to accept the DOL's factually unsupported conclusion that the fees paid to vendors were excessive, Count I nevertheless fails to state a claim for breach of fiduciary duty with respect to the original fees because the **Chimes Defendants did not act in a fiduciary capacity when Chimes DC set the fees with Plan vendors.**

To prevail on a claim for breach of fiduciary duty under ERISA, DOL must prove that: (1) the defendant is a plan fiduciary; (2) the defendant breached an ERISA-imposed duty; and (3) that breach resulted in a loss to the plan. *Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007). When Chimes DC adopted its original vendor fee schedules, it was not acting in the status of a fiduciary. Accordingly, to the extent that Count I alleges breach of fiduciary duty against the Chimes Defendants for their original adoption of the vendor fee amounts, Count I must be dismissed.

---

inflict harm on the Plan participants. Chimes DC Plan participants do not pay anything to be covered by the Plan so increased fees would not increase a participant's contribution because the participant pays nothing. As the Complaint notes, the Plan is a partially self-insured ERISA health and welfare plan that "provide[s] a package of medical, prescription, life insurance, accidental death and dismemberment, disability, and unemployment benefits to over a thousand participants and beneficiaries." Compl. ¶ 20. There has been no allegation that a single Plan participant did not receive the full Plan benefits to which he or she was entitled.

25

As previously noted, Chimes DC elected to offer a bona fide fringe benefit plan under the SCA by adopting a welfare plan under ERISA to provide medical, prescription, life insurance, accidental death and dismemberment, disability and unemployment benefits for its employees. Compl. ¶ 2. An employer may act in dual capacities, both as the "settlor" or plan sponsor in creating the plan and as a fiduciary in administering its terms. *Spink*, 517 U.S. at 888, 891; *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). **Actions taken in a settlor or plan sponsor capacity, however, are *not* subject to ERISA fiduciary requirements.** *See Coulter v. Morgan Stanley & Co. Inc*., 753 F.3d 361, 367 (2d Cir. 2014) ("'the act of a settlor [is] immune from scrutiny under' ERISA"). While "an employer may, at different times, wear 'hats' as both a sponsor and administrator, 'fiduciary duties under ERISA are implicated only when it acts in the latter capacity.'" *Lee v. Verizon Commc'ns, Inc.*, 623 Fed. Appx. 132, 138 (5th Cir. 2015).

Accordingly, Chimes DC's decision — in its capacity as the employer Plan Sponsor and not as the Plan Administrator— to establish the Plan requiring the use of FCE and BCG and incorporating the TPA Agreement and Fee Schedule into the Plan (and otherwise setting the fees to be paid to vendors) carried with it no fiduciary obligations as it "acted not as a fiduciary but as a settlor." *See Spink*, 517 U.S. at 890-91.

For these reasons, any allegations related to the Chimes DC's decision to set the original fee schedule for FCE and BCG cannot support a claim for breach of fiduciary duty against any of the Chimes Defendants; accordingly, to the extent that it alleges breach of fiduciary based on this decision, Count I should be dismissed.

### 3. The Facts Alleged do not Plausibly Show that it was Unreasonable for Chimes DC to Retain FCE and BCG as Service Providers

Like the decision to set the original vendor fee schedule, Chimes DC's decision to

continue to engage FCE and BCG in 2009 and 2011 fails to support a claim for breach of fiduciary duty. Simply put, the facts alleged fail to demonstrate that the decision to continue to engage FCE and BCG in 2009 and 2011 was in any way unreasonable or inconsistent with Chimes DC's fiduciary duties.

After establishing the Plan's design and its terms, Chimes DC, as the Plan Administrator and fiduciary, was required to administer the Plan in accordance with its terms as long as doing so was consistent with its fiduciary duties. *See Heimeshoff*, 134 S. Ct. at 612; *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 82 (1995); ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D). Since the Plan grants discretion to the Plan Administrator to interpret the Plan (*see* Plan [Exh. 2B], § 4.2), this Court should apply an abuse of discretion standard in reviewing the Chimes DC's decision to continue to retain Plan service providers in accordance with the Plan documents as the Plan's unrestrained grant of discretionary authority entitles the Plan Administrator to deference in exercising its discretion. *See Tussey v. ABB, Inc.*, 746 F. 3d 327, 335 and n.6 (8th Cir. 2014).

To sustain its allegations that the Chimes Defendants breached their fiduciary duties and engaged in prohibited transactions as a result of retaining FCE and BCG as the Plan's service providers in 2009 and 2011, the DOL must assert plausible factual allegations that the retention was unreasonable and inconsistent with Chimes DC's fiduciary duties under ERISA. *See Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007) (to prove breach of fiduciary duty, plaintiff must prove that defendant breached an ERISA-imposed duty). The DOL has failed to allege facts sufficient to make that showing here.

In deciding whether to continue with FCE and BCG, the fiduciaries (Chimes DC) carried out their ERISA duties, going so far as to consult with an independent broker at regular intervals.

27

Compl. ¶ 36. ("[i]n 2009 and 2011, Lampner and Bussone . . . consulted with an independent broker, who was unable to find suitable alternative service providers to FCE.")  *See Tibble v. Edison Int'l*,135 S. Ct. 1823, 1828-29 (2015) (confirming fiduciaries' duty to monitor under ERISA.  Given those allegations, the fiduciaries cannot, as DOL alleges, be faulted for not obtaining bid proposals or comparing bid proposals from alternative providers — as there was none to be had.  Thus, the breach of fiduciary claims for loyalty and prudence are without merit.

Nor were there any prohibited transactions in the Chimes DC's decision not to remove FCE and BCG.  After determining in 2009 and 2011 that there were no suitable alternative service providers, the Chimes fiduciary, consistent with ERISA, continued to administer the Plan in accordance with its terms and remained with FCE and BCG.  The 2004 TPA Agreement and Fee Schedule remained in place.  ERISA § 406 prohibits certain "transactions" by fiduciaries, but inaction is not a "transaction" for purposes of section 406.  *See David v. Alphin,* 704 F.3d 327, 340 (4th Cir. 2013).  Accordingly, the DOL has failed to allege sufficient facts to support a prohibited transaction claim based on the decision to retain FCE and BCG as service providers.

For the reasons set forth above, the Chimes Defendants respectfully request that this Court dismiss Count I in its entirety against the Chimes Defendants.

## C.    Count II Fails to State a Claim Because the Charitable Donations and Employment Decision Complained of Were Not Unlawful

Count II seeks to impose liability against the Chimes Defendants for breach of fiduciary duty and prohibited transactions with respect to: (1) certain charitable donations from FCE to the Chimes Foundation; and (2) FCE's employment of Martin Lampner's adult child. The Court should dismiss Count II in its entirety because neither the charitable donations nor the employment of Mr. Lampner's family member was unlawful.

28

1.      **The Charitable Donations by FCE Do Not Support a Claim for Breach of Fiduciary Duty or Prohibited Transactions by Chimes Defendants**

The alleged donations by FCE to the Chimes Foundation do not support a claim for breach of fiduciary duty or prohibited transactions by Chimes Defendants. The Complaint states that in 2008, after being solicited by Messrs. Bussone and Lampner, FCE made donations to the Chimes Foundation.  Compl. ¶¶ 27-31.  Neither the alleged solicitation by Messrs. Bussone and Lampner, nor the alleged donations, violated ERISA.

First, the alleged solicitation was not unlawful.  ERISA expressly permits persons to serve in both fiduciary and non-fiduciary roles.  ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3). Accordingly, even if Messrs. Lampner and Bussone were, *arguendo*, Plan fiduciaries[13], they could as officers or executives of the Chimes Foundation seek donations for that organization without engaging in a breach of fiduciary duty.  *See Smith v. Williams*, 819 F. Supp. 2d 1264, 1279 (M.D. Fla. 2011) (granting motion to dismiss breach of fiduciary duty and noting that "dual roles as fiduciary and company officer are proper").

Second, the alleged charitable donations to the Chimes Foundation were permissible and did not constitute a prohibited transaction because the Chimes Foundation's receipt of the

---

[13] This Court is not required to accept Plaintiff's legal conclusions that Messrs. Lampner and Bussone were Plan fiduciaries. Although the Complaint sets out bald assertions that Messrs. Lampner and Bussone, along with other Chimes Defendants, "individually exercised discretionary authority or discretionary control respecting appointment, retention, and payment of Plan service providers, insurers, and/or fiduciaries, including FCE and BCG, and exercised discretionary authority or discretionary control over other aspects of managing and administering the Plan and its assets," *see* Compl. ¶¶ 12-13, it fails to describe specific circumstances when such individual discretionary authority was supposedly exercised.  "[W]hen an ERISA plan names a corporation as a fiduciary, the officers who exercise discretion on behalf of the corporation are not fiduciaries within the meaning of Section 3(21)(A)(iii), unless it can be shown that these officers have *individual* discretionary roles as to plan administration." *Confer v. Custom Engineering Co.*, 952 F.2d 34, 37 (3d Cir. 1991) (emphasis in original); quoted with approval by this court in *Mutual Fund Litigation*, 403 F.Supp.2d at 447.

29

charitable donations, **as a non-fiduciary**, did not benefit any fiduciary.  A violation of Section 406(b)(1), as alleged here, occurs only if the fiduciary "actually used its power . . . for **its own** benefit or account." *Acosta v. Pacific Enters.*, 950 F.2d 611, 619-21 (9th Cir. 1991) (emphasis added).  Moreover, the DOL has affirmed that a plan service provider does not violate ERISA merely by making a donation to the non-profit entity connected to the plan it serves.  *See Questions and Proposed Answers for the Department of Labor Staff for the 2013 Joint Committee of Employee Benefits Technical Session*, May 8, 2013, available at http://www.americanbar.org/content/dam/aba/events/employee_benefits/2013_dol_qa.authcheck dam.pdf, last accessed April 15, 2016, (Q&A 1 "DOL Answer: A service provider that provides services to an employee benefit plan of a non-profit charity would not violate ERISA merely by making a tax deductible contribution to the non-profit entity.")

    While the DOL contends that the donations benefitted the Chimes Defendants and that they received "consideration for their own personal accounts," Compl. ¶¶ 43, 68(c), 69, it pleads no factual support for these ambiguous and conclusory allegations.  The DOL does not assert that the donations were used for anything other than charitable purposes or that the Chimes Foundation specifically allocated or earmarked the donations for Mr. Lampner, Mr. Bussone, Chimes DC, or Chimes International, or even that Mr. Lampner or Mr. Bussone received any compensation or bonus tied to the donations.  Neither does the DOL contend that the Chimes Defendants compelled the Chimes Foundation to pay the donations to any of them, nor could such allegations be made in good faith in light of the legal structure and governing boards of the Chimes entities.  There is simply no allegation, and none could be made, to support a claim that Chimes DC, Chimes International, Mr. Lampner, or Mr. Bussone controlled the Foundation or

could dictate that donations to the Foundation would flow directly to them.[14]  In fact, the relevant

facts – which both contradict and trump Plaintiff's generalized allegations – show that the funds

were not to be directed towards Chimes Defendants, but were to be used for "capital projects that

will not only improve services, but enhance the quality of life for individuals with disabilities."

*See* Exh. 3, Letter from Steve Porter to Terry Perl (Nov. 2, 2009).

Without the necessary specificity, the DOL's assertions qualify as nothing more than

"threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements"— precisely what the Supreme Court has instructed "do not suffice" in stating a

claim.  *Iqbal,* 556 U.S. at 679.  Thus, the alleged facts contained in the Complaint are not

adequate to support the claim that FCE's donations to the Foundation were prohibited by ERISA.

For many of the same reasons, the DOL's Section 406(b)(3) claim also fails to state a

claim upon which relief may be granted.  To prevail, the DOL must establish that each of the

Chimes Defendants had "actual or constructive knowledge of the circumstances that rendered the

transactions unlawful."  *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238,

251 (2000).  The DOL does not and cannot allege any such knowledge, however, since the

conduct alleged was not unlawful.  Additionally, to make out a violation of Section 406(b)(3), a

fiduciary must receive the "consideration" and the same fiduciary must have had control over the

"transaction" in question.  *See Spink*, 517 U.S. at 888; *Wright v. Oregon Metallurgical Corp.*,

---

[14] The Court should reject any unsupported effort to ignore the legal distinctions between Chimes Foundation, Chimes DC, and Chimes International.  *See Hamilton v. Carell*, 243 F.3d 992, 1003-04 (6th Cir. 2001) (refusing to set aside corporate form in the absence of fraud or "shell game" like maneuvers); *Goldenberg*, 741 F. Supp. 2d at 629 (dismissing claim against subsidiary because "veil-piercing would require something more than merely being the parent of the subsidiary corporation" and finding no allegations of "bad faith, undercapitalization, or any other factor generally used to impute liability to a parent corporation").

360 F.3d 1090, 1101 (9th Cir. 2004).  Here, DOL cannot satisfy the requisite elements of a

Section 406(b)(3) claim because the entity receiving the "consideration"— the Chimes

Foundation — is **not** a fiduciary.[15]

    For the reasons explained above, the allegations against the Chimes Defendants of

ERISA violations based on the solicitation or provision of FCE's charitable donations to the

Chimes Foundation found in Count II of the Complaint should be dismissed.

    **2.    The Inquiry by Mr. Lampner Regarding Job Openings and the Subsequent
         Employment by FCE of Mr. Lampner's Adult Child Do Not Support a Claim for
         Breach of Fiduciary Duty or Prohibited Transactions Against Any of the Chimes
         Defendants**

    Similarly, the allegations surrounding the employment by FCE of Mr. Lampner's adult

child in 2010 do not establish a claim for breach of fiduciary duty or prohibited transactions.

The DOL does not assert a single factual allegation substantiating the imprudence or disloyalty

of hiring the relative.  Therefore, the claims for breach of fiduciary duty and prohibited

transaction collapse.

    Further, the alleged actions that make up the basis for this claim occurred **a year after**

the governance committee of Chimes DC approved continuing with FCE's services.  Compl. ¶

42.  Any claim that the continuation of FCE's services was linked to the employment of Mr.

Lampner's child is simply implausible given the timeline and events as pled in the Complaint.

The DOL does not and cannot allege that Mr. Lampner controlled the governance committee of

Chimes DC or Chimes International, which were controlled by individuals independent of

---

[15] Even if the DOL were to argue that somehow Mr. Lampner or Mr. Bussone received the
"consideration"—which they did not—the DOL has failed to plead how either Mr. Lampner or
Mr. Bussone was anything other than a non-fiduciary executive officer exercising "discretion on
behalf of the corporation."  *See supra* Part V.A.

Chimes DC or Chimes International, *see supra*.  And DOL cannot allege any fact to support the contention that the continuation of FCE's services—which was reviewed by the governance committee in 2009 and 2011—was conditioned on the hiring of Mr. Lampner's child in 2010. Simply put, the DOL's claim that the hiring was unlawful is difficult to fathom.  Accordingly, these claims lack a factual basis and therefore fail to state a claim for relief.  To the extent that Count II alleges ERISA violations based on the employment or Mr. Lampner's child by FCE, the Court should dismiss those claims against each of the Chimes Defendants.

For the reasons set forth above, the Court should dismiss Count II in its entirety against each of the Chimes Defendants.

**D.    Count III Fails to State a Claim Upon Which Relief Can be Granted Because the Charitable Donations and Provision of Services at an Allegedly Discounted Price Were Not Unlawful**

In Count III, the DOL seeks to impose liability against the Chimes Defendants for breach of fiduciary duty and prohibited transactions with respect to: (1) certain charitable donations from BCG to non-party Chimes Foundation; and (2) the provision of services by another entity owned by Ramsey (who also owns BCG) to Chimes DC at an allegedly discounted price. Compl. ¶¶ 32–33.  Specifically, in addition to the assertion that BCG (like FCE) pledged money to the Chimes Foundation, the DOL claims that Chimes DC purchased services from a different entity owned by Mr. Ramsey, and that this work was provided to Chimes DC at a discounted rate in order to induce the Chimes Defendants to essentially turn a blind eye to the alleged excessive fees charged to the Plan by BCG.  The Court should dismiss Count III in its entirety because

neither the provision of charitable donations to the Chimes Foundation, nor the provision of the services to Chimes DC at an alleged discounted price, was unlawful. [16]

### 1. The Charitable Donations by BCG Do Not Support a Claim for Breach of Fiduciary Duty or Prohibited Transactions by Chimes Defendants

The charitable donations by BCG to the Chimes Foundation do not support a claim for breach of fiduciary duty or prohibited transactions by Chimes Defendants.  The Complaint alleges that in 2008, after being solicited by Messrs. Bussone and Lampner, BCG made donations to the Chimes Foundation.  Compl. ¶¶ 27-31.  As previously explained, neither the alleged solicitation by Messrs. Bussone and Lampner, nor the alleged donations, violated ERISA.  *See supra* Part V.B.1.  Thus, for the same reasons stated in greater detail above, the Court should dismiss Count III against the Chimes Defendants to the extent that it alleges ERISA violations based on the solicitation or provision of BGC's charitable donations to the Chimes Foundation.

### 2. The Provision of Services at an Allegedly Discounted Price by Ramsey, Owner of BCG, Does Not Support a Claim for Breach of Fiduciary Duty or Prohibited Transactions by Chimes Defendants

Like the charitable donations, the provision of services to Chimes DC at an allegedly discounted price by Mr. Ramsey's other company cannot support a claim for breach of fiduciary duty or prohibited transactions because there was nothing unlawful about the conduct about which the DOL complains.  It appears that the DOL is attempting to claim as a matter of law that an employer may not receive non-ERISA plan services—on a discounted basis or otherwise—

---

[16] Like the rest of the Complaint, Count III fails to properly allege any facts that support the claim that Chimes International, Mr. Bussone, or Mr. Lampner have any fiduciary or co-fiduciary liability because the DOL does not allege any facts that would make any Defendant other than Chimes DC a fiduciary. *See supra* Part V.A.

from a service provider to an ERISA plan sponsored by the employer (or an affiliate of that service provider). That claim is without any legal support.

To prove that the Chimes Defendants' receipt of the discounted service constituted a breach of fiduciary duty, DOL must show that the receipt of discounted services caused the Plan to suffer a loss. *See Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007) (holding that to succeed on a breach of fiduciary duty claim, a plaintiff must prove that a defendant's actions "resulted in a loss to the plan"). As described previously, the DOL has failed to plead facts to sufficiently allege that the fees charged to the Plan by BCG were excessive, resulting in a loss to the plan. Accordingly, because the facts alleged fail to state a required element of the claim, the breach of fiduciary claims in Count III must fail.

With respect to the prohibited transactions claims, it appears that the DOL is attempting to claim as a matter of law that an employer may not receive non-ERISA plan services on a discounted basis (or otherwise) from a service provider to an ERISA plan sponsored by the employer (or an affiliate of that service provider). There is simply no legal authority for that position.

Accordingly, for the reasons set forth above, the Court should dismiss Count III in its entirety against the Chimes DC as well as Chimes International, Mr. Bussone, and Mr. Lampner.

**E.     Count IV Fails to State a Claim Because the Fee Schedule Agreement Expressly Entitled FCE to Receive Payments from Other Service Providers**

Count IV alleges that FCE acted contrary to its contract with Chimes DC by failing to disclose and forward rebates, commissions, and other payments it received from service providers. Specifically, the DOL alleges that "[e]ach year, FCE **misrepresented** to Chimes DC that it had forwarded all such payments to the Plan, thus **fraudulently concealing** its receipt of

additional, unauthorized compensation." Compl. ¶¶ 47-48 (emphasis added). The claim against the Chimes Defendants in this Count is that the DOL contends that the Chimes Defendants should have discovered the alleged fraud.[17]

First, Count IV should be dismissed because the DOL has failed to plead any facts to support the conclusory allegation that FCE engaged in "misrepresentations" or "fraudulent concealment." In fact, the conduct complained of was expressly permitted and disclosed by the terms of the Fee Schedule. The Fee Schedule (which was incorporated by reference in the Complaint) **expressly provides** that FCE may receive payments and commissions from the Plan's insurers and other service providers. *See* Exh. 2C, Fee Schedule at 3 (Disclosure). Contrary to its unsupported conclusion that there were misrepresentations, the DOL acknowledged in the Complaint that Chimes DC "was generally aware that FCE was actually receiving" such payments. *Id.* ¶¶ 49-50.

In light of the clear terms of the Fee Schedule, the DOL's overgeneralized assertions of "misrepresentation" and "fraudulent concealment"—not backed by any concrete examples or factual support and contradicted by other facts pled—are mere conclusory statements that cannot suffice to establish a cause of action. Furthermore, to the extent that the Fee Schedule directly contradicts the DOL's conclusory statements, the terms of the Fee Schedule control. *See Fayetteville Investor*, 936 F.2d at 1465; *Chicago Carpenters*, 474 F.3d at 466 ("To the extent

---

[17] Like the rest of the Complaint, Count IV fails to properly allege any facts that support the claim that Chimes International, Mr. Bussone, or Mr. Lampner have any fiduciary or co-fiduciary liability because the DOL does not allege any facts that would make any Defendant other than Chimes DC a fiduciary. *See supra* Part V.A.

that the contracts contradict the Complaint, the contracts trump the facts or allegations presented in the Complaint.").

But, even if FCE had engaged in such fraud, the claim would still fail because there is no factual support for the DOL's conclusion that any of the Chimes Defendants were in a position to reasonably discover this alleged fraud or that the Chimes Defendants somehow breached a fiduciary duty by their failure to discover the fraud.  Thus, this Count should be dismissed because Plaintiff "has not sufficiently identified any other steps [Defendants] were obligated to take to ensure that [the Plan's] interests were loyally and prudently served."  *See Smith v. Williams*, 819 F. Supp. 2d 1264, 1279 (M.D. Fla. Sept. 26, 2011) (granting motion to dismiss on breach of fiduciary duty claim as a result of the Complaint's lack of factual specificity).

Accordingly, for the reasons set forth above, the Court should dismiss Count IV in its entirety against Chimes DC as well as Chimes International, Mr. Bussone, and Mr. Lampner.

**F.     Count V Fails to State a Claim Because No Facts Alleged Provide a Basis for Holding Chimes DC Liable for the Alleged Failure of its Third-Party Administrator**

Count V alleges that "FCE's failure to properly administer the Plan caused losses to the Plan and provided improper profits to FCE . . . ."  Compl. ¶ 56.  Like Count IV, Count V should be dismissed because the Complaint fails to plead any factual or legal basis for holding Chimes DC liable for the alleged failure of the Chimes DC's third-party administrator (if there were, *arguendo*, any failures on the part of FCE to properly administer the Plan).[18]

---

[18] Count V fails to properly allege any facts that support the claim that Chimes International, Mr. Bussone, or Mr. Lampner have any fiduciary or co-fiduciary liability because the DOL does not allege any facts that would make any Defendant other than Chimes DC a fiduciary. *See supra* Part V.A.

37

Putting aside the question of whether the DOL has pled a sufficient factual basis to support its claim of wrongdoing on the part of the FCE, the DOL's only allegation against the Chimes Defendants in Count V is that they "were responsible for monitoring FCE's fees and performance, but failed to do so." Compl. ¶ 55. The Complaint fails to allege what specific actions the Chimes Defendants were obligated to have taken to properly monitor FCE, or any concrete facts to show how their actions fell short of the appropriate standard.[19] Accordingly, this Count should be dismissed because Plaintiff "has not sufficiently identified any other steps [Defendants] were obligated to take to ensure that [the Plan's] interests were loyally and prudently served." *See Smith v. Williams*, 819 F. Supp. 2d 1264, 1279 (M.D. Fla. Sept. 26, 2011) (granting motion to dismiss on breach of fiduciary claim).

For the reasons set forth above, the Court should dismiss Count V in its entirety against the Chimes DC as well as Chimes International, Mr. Bussone, and Mr. Lampner.

**G.      Count VI Fails to State a Claim Because the Reimbursements Complained of Are Not Unlawful**

Finally, in Count VI, the DOL claims that it was improper for the Plan to reimburse Chimes DC for expenses incurred by Chimes DC for time spent by a Chimes DC staff member on Plan administrative matters. Compl. ¶¶ 57-58. Count VI fails to state a valid legal claim because these types of reimbursements are not unlawful; in fact, they have long been expressly endorsed by the DOL.

---

[19] The Plan document contains ERISA-compliant claims procedures and also provides an express remedy for the failure to follow such procedures (if such procedures were not followed, which, the Chimes Defendants contend, they were). *See* Plan [Exhibit 2B] at 11. ("If the Plan fails to follow the claims procedures… a Claimant will be deemed to have exhausted the administrative remedies available under the Plan and will be entitled to pursue any available remedy under ERISA on the basis that the Plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.)

38

For example, in Advisory Opinion 86-01A, the DOL addressed a situation where an employer proposed to provide certain specified services to the plan as plan administrator, for a "charge equal to its actual cash expenditures for salaries and fringe benefits of its employees which are attributable solely to providing such services to the Plan." *See* DOL Advisory Opinion 86-01A (Jan. 09, 1986), attached as Exhibit 3.  The employees who would provide such administrative services would maintain daily records of all hours actually worked, noting separately the number of hours worked while providing administrative services to the plan and the number of hours worked on other assignments. *Id.*  Under the proposed arrangement, charges to the plan would be a percentage of salary and fringe benefit costs for the employees, in relation to the number of hours that the spent on plan administrative matters versus total hours worked. *Id.*

The DOL advised that this type of reimbursement arrangement was proper, and the "mere selection of [the employer] to provide administrative services to the Plan," receiving in exchange only the "reimbursement of direct expenses," did not, in itself, constitute a violation of ERISA section 406(b). *Id.*  Providing some framework for its analysis, the DOL explained that these types of reimbursements are permissible when: (1) the expense would not have been incurred had the services to the plan not been provided; (2) the expense could be properly allocated to the particular services provided; and (3) the expense does not represent an allocable portion of overhead costs. *Id.*

When given the chance to address a similar reimbursement question several years later, the DOL reaffirmed its previous position that compensation paid by a service provider to its employees "may be a properly reimbursable expense" that does not constitute a prohibited transaction. *See* DOL Advisory Opinion 89-09A (June 13, 1989), attached as Exhibit 4.  The

39

DOL explained that ERISA "does not prohibit a fiduciary from receiving compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his or her duties with respect to the plan." *Id.*

Despite the DOL's longstanding approval of these types of reimbursements, it now claims that the reimbursements to Chimes DC (which were expressly authorized by the governing Plan documents) were unlawful. *See* Summary Plan Descriptions [Exh. 2G] at 51. Specifically, the DOL alleges that: (1) the Chimes Defendants caused the Plan "to pay Chimes DC for work performed by a full-time employee of Chimes DC who otherwise would have been paid" by Chimes DC, Compl. ¶ 90; and (2) Chimes DC "set its own fees, without a contract for the arrangement, and in doing so caused losses to the Plan and received profits." Compl. ¶ 58.

These claims are — yet again — nothing more than "naked assertion[s], devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557). While the DOL glibly opines that the reimbursement was improper because the employee was a full-time employee who would have been paid by Chimes DC even absent the administrative work on behalf of the Plan, the alleged facts do not support that conclusion.[20] The Complaint does not allege any facts to support the claim that the cost of this particular Chimes DC employee's time would have been sustained had the services to the Plan not been provided (*i.e.* that she would have been doing the same work even if there was no Plan); that the portion of the employee's expense claimed was not properly allocated between services provided to the Plan versus time

---

[20] In fact, the DOL acknowledges that most of the Plan participants were disabled workers, *see* Compl. ¶ 20; accordingly, unlike with a typical private employer, the additional Plan-related administrative work was required to be performed by a Chimes DC employee (among others) with particular knowledge of the disabled employee population and the resulting complex ERISA implications attendant to providing and coordinating benefits to such individuals.

spent on other matters; or that any part of the allocated expense merely represents Chimes DC's overhead costs. DOL simply makes conclusory allegations without supporting facts. Accordingly, there is simply no basis on which the Court can conclude that the DOL has sufficiently stated a claim that reimbursement of the allocated costs for a Chimes DC staff member's work on Plan administrative matters was improper or unlawful.

Likewise, the DOL's assertion that Chimes DC "set its own fees, without a contract for the arrangement, and in doing so caused losses to the Plan and received profits" is equally baseless. At best, the fact that Chimes DC "set its own fees, without a contract," only shows the mere possibility of over-charging. Without pleading that the fees charged by Chimes were above market rate, or higher than would have been charged had there been a contract, the Complaint fails to state a basis for the conclusion that the arrangement resulted in an improper loss to the Plan.

Accordingly, for the reasons set forth above, the Court should dismiss Count VI in its entirety against the Chimes DC as well as Chimes International, Mr. Bussone, and Mr. Lampner.

## VI.    CONCLUSION

In light of the above, the Chimes Defendants respectfully request that this Honorable Court dismiss Counts I, II, III, IV, V, and VI against the Chimes Defendants with prejudice, and grant the Chimes Defendants such other and further relief as justice may require.

Dated: April 18, 2016

Respectfully submitted,

/s/ *Harold M. Walter*
Harold M. Walter (Bar # 03387)
Howard K. Kurman (Bar #02831)
Offit Kurman, P.A.
300 E. Lombard Street, Suite 2010
Baltimore, Maryland 21202
(410) 209-6400; (410) 209-6435
hwalter@offitkurman.com

*Attorneys for Defendant Chimes District of Columbia, Inc., Chimes International, Ltd., Martin Lampner, & Albert Bussone*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 18th day of April, 2016, a true and genuine copy of the foregoing was filed by ECF, which will automatically serve all counsel of record.

/s/ *Harold M. Walter*
Harold M. Walter

4849-0146-5392, v. 8

42