**EXHIBIT 3**

ERISA Opinion Letter 86-01A, 01/09/1986Reference(s): ERISA §404 , ERISA §404(a) , ERISA §404(a)(1) , ERISA §406 , ERISA §406(b) , ERISA §408 , ERISA §408(b) , ERISA §408(b)(2) , ERISA §408(c)

Re: Identification Number: F-3177A

Dear

This is in response to your letter of July 18, 1985, in which you request an advisory opinion that the retention by the __ (the Plan) of __ to provide services to the Plan as plan administrator and the payment by the Plan of the direct expenses of __ allocable to performing such services (which expenses include the reasonable compensation of employees of __ ) do not constitute prohibited transactions under section 406 of the Employee Retirement Income Security Act of 1974 (ERISA) and section 4975 of the Internal Revenue Code of 1954 (the Code).

You represent that the Plan is a defined benefit plan established and maintained by __ for the benefit of its eligible employees. Since its inception in 1929, __ has administered the Plan. The Pension Administration Committee (the Committee) has general responsibility for administration of the Plan. The fees of the independent consulting actuary for the Plan, and the fees of the Plan trustee and investment managers, are paid directly from Plan assets. The other expenses incurred by __, including the compensation of its employees, for services provided to the Plan were paid by

You further represent that effective January 1, 1985, notified the Committee that __ would discontinue providing certain specified services as plan administrator without charge to the Plan. However, __ proposed to provide such services to the Plan for a charge equal to its actual cash expenditures for salaries and fringe benefits of its employees which are attributable solely to providing such services to the Plan. You also represent that __ informed the Committee that __ had determined to sever the employees engaged in providing such services unless their salary and fringe benefit costs would be reimbursed from Plan assets.

With the advice of counsel, the Committee accepted proposal on January 4, 1985, subject to any necessary government approval. Both the Committee and __ have the right to terminate the arrangement at any time, for any reason, without any additional charge, upon 60 days advance written notice. The Committee will periodically monitor and evaluate __ as the provider of administrative services to the Plan and seek additional advice from independent advisors as the Committee determines is appropriate. __ has informed the Committee that it will limit its fee to $950,000 for

administrative services provided by __ employees during 1985, even if actual allocable charges exceed that amount, unless __ should become aware of any unanticipated circumstances which would materially increase the expected total cost of providing such services to the Plan. In such circumstances, the Committee, after being advised by __ of an increased estimated annual cost to the Plan, may decide to pay the additional amount or make other arrangements independent of __ for necessary administrative services.

The employees with respect to whom __ would be reimbursed its salary and fringe benefit costs maintain daily records of all hours actually worked, noting separately the number of hours worked on providing administrative services to the Plan and the number of hours worked on other assignments. You represent that these employees are, in each instance, clerical and administrative personnel who have no power to make any decisions as to Plan policy, practices or procedures, but who perform purely ministerial, administrative functions for the Plan within the framework of policies, interpretations, rules, practices and procedures established by the Committee and other persons who are fiduciaries with respect to the Plan.

Under the proposed arrangement, charges to the Plan would be that percent of __ salary and fringe benefit costs for each such employee that hours worked on Plan administrative matters bears to total hours worked. The method of recording hours worked and the allocation would be subject to periodic verification and audit by __ internal auditors and __, its outside auditor and the Plan auditor. No overhead costs, such as rent, computer time, office space, telephone or business travel expenses, would be charged to the Plan. You represent that the worktime of such employees not devoted to Plan administrative services is devoted to services for other __ employee benefit plans. In this regard, the Plan's independent consulting actuary has determined that over 80 percent of the total work time of the employees is devoted to providing administrative services to the Plan. The expenses incurred by __ for services provided to its other employee benefit plans are presently, and will continue to be, paid by __. You further represent that __ can identify and segregate all direct expenses for administrative services provided to the Plan and to its other employee benefit plans.

You state that __ is a party in interest and fiduciary with respect to the Plan within the meaning of sections 3(14) and 3(21) of ERISA . The employees of __ are parties in interest with respect to the Plan within the meaning of section 3(14)(B) and (H). In addition, each member of the Committee is a fiduciary of the Plan under section 3(21) by reason of his or her discretionary authority in the administration of the Plan and is, therefore, a party in interest with respect to the Plan under section 3(14)(A) of ERISA . No charge will be made to the Plan for the salary and fringe benefit costs of the Committee members. You

further represent that the employees with respect to whom __ would be reimbursed its salary and fringe benefit costs are not fiduciaries with respect to the Plan.

Under Presidential Reorganization No. 4 of 1978, effective December 31, 1978, the authority of the Secretary of the Treasury to issue rulings under section 4975 of the Code has been, with certain exceptions not here relevant, transferred to the Secretary of Labor, and the Secretary of the Treasury is bound by the interpretations of the Secretary of Labor pursuant to such authority. Therefore, the references in this letter to specific sections of ERISA refer also to the corresponding sections of the Code.

Section 406(a)(1)(C) and (D) of ERISA provides, in pertinent part, that a fiduciary with respect to an employee benefit plan shall not cause the plan to engage in a transaction, if he or she knows or should know that such transaction constitutes a direct or indirect furnishing of goods, services or facilities between the plan and a party in interest with respect to the plan or transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan. Section 406(b)(1) of ERISA further prohibits a fiduciary with respect to a plan from dealing with the assets of the plan in his or her own interest or for his or her own account. Section 406(b)(2) of ERISA provides that a fiduciary shall not in his or her individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries. Section 406(b)(3) of ERISA prohibits a fiduciary from receiving a fee or other consideration for his or her own personal account from a party dealing with a plan in connection with a transaction involving the assets of the plan.

Subject to the limitations of section 408(d) of ERISA , section 408(b)(2) exempts from the prohibition of section 406(a) any contract or reasonable arrangement with a party in interest, including a fiduciary, for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor. Section 408(c)(2) of ERISA provides, in relevant part, that nothing in section 406 shall be construed to prohibit any fiduciary from receiving compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his or her duties with respect to the plan. Regulations issued by the Department clarify the terms "necessary service" ( 29 CFR §2550.408b-2(b) ), "reasonable contract or arrangement" ( 29 CFR §2550.408b-2(c) ) and "reasonable compensation" ( 29 CFR §§2550.408b-2(d) and 2550.408c-2 ) as used in sections 408(b)(2) and 408(c)(2) of ERISA .

Accordingly, the provision of administrative services by to the Plan would be exempt from the

prohibitions of section 406(a) of ERISA if the conditions of section 408(b)(2) are met. We note, however, that the question of what constitutes a necessary service, a reasonable contract or arrangement and reasonable compensation are inherently factual in nature. Section 5.01 of ERISA Advisory Opinion Procedure 76-1 ( ERISA Proc. 76-1 , 41 FR 36281, August 27, 1976) states that the Department of Labor (the Department) generally will not issue opinions on such questions. The appropriate plan fiduciaries must determine, based on all of the relevant facts and circumstances, whether the conditions of section 408(b)(2) are satisfied.

With respect to the prohibitions in section 406(b), regulation 29 CFR §2550.408b-2(a) indicates that section 408(b)(2) of ERISA does not contain an exemption for an act described in section 406(b) of ERISA even if such act occurs in connection with a provision of services which is exempt under section 408(b)(2). As explained in regulation CFR §2550.408b-2(e)(1), if a fiduciary uses the authority, control or responsibility which makes him or her a fiduciary to cause the plan to enter into a transaction involving the provision of services when such fiduciary has an interest in the transaction which may affect the exercise of his or her best judgment as a fiduciary, a transaction described in section 406(b) of ERISA would occur, and that transaction would be deemed to be a separate transaction from the one involving the provision of services and would not be exempt by section 408(b)(2) of ERISA . However, regulation section 29 CFR 2550.408b-2(e)(3) provides that if a fiduciary furnishes services to a plan without the receipt of compensation or other consideration (other than reimbursement of direct expenses properly and actually incurred in the performance of such services within the meaning of 29 CFR 2550.408c-2(b)(3)) , the provision of such services does not, in and of itself, constitute an act described in section 406(b) of ERISA .

The mere selection of __ to provide administrative services to the Plan without the receipt of compensation other than the reimbursement of direct expenses would not, in itself, constitute a violation of section 406(b). However, because a violation of section 406(b) could occur in the course of the Committee's decision to retain __ in accordance with the proposed arrangement described above, the Department is unable to rule that the decision, in operation, would, in no case, violate that section.

With regard to whether "direct expenses" includes the compensation paid to employees of __ 29 CFR 2550.408c-2(b)(3) provides that an expense is not a direct expense to the extent it would have been sustained had the service not been provided or if it represents an allocable portion of overhead costs. You represent that each of the employees with respect to whom would be reimbursed its salary and fringe benefit costs would not receive full-time compensation for duties performed for __ were it not for their duties performed in connection with the administrative services __ provides to the Plan, and,

absent this function, would not be employed by __.

In the Department's view, compensation paid by a service provider to its employees may be a properly reimbursable expense under 29 CFR 2550.408c-2(b)(3) if the expense would not, in fact, have been sustained had the services not been provided, if it can be properly allocated to the particular services provided and the expense does not represent an allocable portion of overhead costs. What constitutes a direct expense in a particular case, however, is a factual matter which can only be resolved by taking into account the relevant facts and circumstances. As noted above, however, the Department ordinarily will not issue an advisory opinion on such questions. To reiterate, the Department notes that an expense would not be properly reimbursable to the extent it was incurred in connection with a service that was not otherwise exempt under section 408(b)(2) of ERISA . Thus, the Committee, in its fiduciary capacity, and not __, as plan sponsor, must review each service to be provided by __ to determine whether such service is a "necessary service" for which reimbursement is lawful.

We wish to point out that ERISA's general standards of fiduciary conduct would apply to the proposed arrangement. Section 404(a)(1)(B) of ERISA requires that a fiduciary discharge his duties with respect to a plan solely in interest of the participants and beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. Accordingly, the Committee must act "prudently" and "solely in the interest" of the Plan's participants and beneficiaries when causing the Plan to enter into the proposed arrangement. If the decision by the Committee to retain __ to provide the administrative services specified in the proposed arrangement and to reimburse __ for the services in accordance with the proposed arrangement is not "prudent" and "solely in the interest" of the Plan's participants and beneficiaries, the Committee would be liable for any loss resulting from such breach of fiduciary responsibility, even though the retention and reimbursement of ITT may not constitute a prohibited transaction.

This letter is an advisory opinion under ERISA Procedure 76-1 . Section 10 of the procedure explains the effect of an advisory opinion.

Sincerely,

Elliot I. Daniel

Assistant Administrator for Regulations and Interpretations

Case 1:15-cv-03315-RDB   Document 86-4   Filed 04/18/16   Page 7 of 7

\* The Department previously addressed a similar situation in Advisory Opinion 83-20A (April 27, 1983). In that situation, a wholly-owned subsidiary provided investment management services to a sponsoring employer. Both of the entities were participating employers in a defined benefit pension plan maintained by the sponsoring company and its subsidiaries whose assets made up a common master trust. The expenses incurred by the wholly-owned subsidiary (including the reasonable compensation of its full time employees) for services performed for the common trust were paid by the sponsoring employer. In that opinion, the Department stated that compensation paid by a service provider to its employees may be a properly reimbursable expense under 29 CFR §2550.408c-2(b)(3) if the expense would not, in fact, have been sustained had the services not been provided and if it can be properly allocated to the particular services provided.

\* The Department previously addressed a similar situation in Advisory Opinion 83-20A (April 27, 1983). In that situation, a wholly-owned subsidiary provided investment management services to a sponsoring employer. Both of the entities were participating employers in a defined benefit pension plan maintained by the sponsoring company and its subsidiaries whose assets made up a common master trust. The expenses incurred by the wholly-owned subsidiary (including the reasonable compensation of its full time employees) for services performed for the common trust were paid by the sponsoring employer. In that opinion, the Department stated that compensation paid by a service provider to its employees may be a properly reimbursable expense under 29 CFR §2550.408c-2(b)(3) if the expense would not, in fact, have been sustained had the services not been provided and if it can be properly allocated to the particular services provided.

© 2016 Thomson Reuters/Tax & Accounting. All Rights Reserved.