**EXHIBIT 4**

ERISA Opinion Letter 89-09A, 06/13/1989Reimbursement under IRC §4975.

Reference(s): ERISA §408, ERISA §408(b), ERISA §408(b)(2)

Steven J. Sacher, Esq.

Johnson & Swanson

Columbia Square - 660 West

555 13th Street, N.W.

Washington, D.C. 20004

Re: Manville Corporation Identification Number F-3751A

Dear Mr. Sacher:

This is in response to your letters of October 28, 1987, June 14, 1987, August 29, 1988, and October 27, 1988, in which you request an advisory opinion that the reimbursement of the Manville Corporation (Manville) by the Manville-sponsored employee benefit plans for the direct expenses incurred by Manville in providing administrative and asset management services to such plans would not constitute a prohibited transaction under section 406 of the Employee Retirement Income Security Act of 1974 (ERISA) and section 4975 of the Internal Revenue Code of 1986 (the Code).

You represent that Manville is a diversified manufacturer and natural resources supplier that sponsors numerous benefit plans. Five of those plans are defined benefit plans covering domestic employees of the company or its affiliates - (1) the Manville Salaried Retirement Plan, (2) The Manville Hourly Retirement Plan, (3) The Manville Forest Products Hourly Retirement Plan (4), The Manville Forest Products Paperboard Hourly Retirement Plan, and (5) the Manville Forest Products Packaging Hourly Retirement Plan. Each of those plans is qualified under section 401(a) of the Code. The assets of the five plans are held in a single trust known as the Manville Corporation Master Pension Trust. The named fiduciary of each plan is a "Retirement Committee" appointed by Manville's Board of Directors. The same persons comprise the membership of the Retirement Committee of each plan.

Manville also sponsors a savings plan for non-union U.S. salaried employees with a Code section 401(k) salary reduction feature. This plan is known as the Manville Salaried Employees Thrift Plan. The

assets of this plan are held in a separate trust. The named fiduciary of the plan is the "Thrift Plan Administrative Committee" and the same persons who sit as members of the pension plans' Retirement Committee also sit as member of this Committee. [1] In addition, Manville Forest Products Corporation sponsors a thrift savings plan, with the same committee serving as named fiduciary.

Each of the seven plans (collectively, the Plans) retains outside actuaries, trustees, investment managers, and, on occasion, legal counsel to provide a variety of services, and these providers are compensated directly from the assets of the respective plan to which the service is provided. In addition, Manville itself provides services to the Plans. It employs a number of individuals (Manville Benefit Employees) who spend at least 80 percent of their time providing administrative, asset management, or other services to one or more of the Plans. The remaining time is spent on chores for two other Manville-sponsored benefit plans and Manville is not seeking reimbursement for salaries or expenses attributable to work performed for those plans. Thus, all of the employees for whom Manville seeks reimbursement of salaries and fringe benefits devote 100 percent of their time to one or more Manville-sponsored benefit plans. Historically, Manville has paid the compensation of these employees without reimbursement by the Plans.

Manville now proposes to be reimbursed for the services provided by Manville Benefit Employees. Manville proposes that each plan would be charged the portion of a Manville Benefit Employee's salary and fringe benefits that is equal to the percentage of his total hours worked on that plan's matters. Manville also proposes to be reimbursed for all long distance telephone calls, travel expenses, mailing costs, and office supply expenses used or incurred by Manville Benefit Employees to provide plan services.

You represent that none of the Manville Benefit Employees for whom reimbursement is sought is a fiduciary with respect to the Plans. Nor do they perform services in conjunction with the establishment, termination, and design of the Plans. You also represent that none of the employment positions for which Manville now seeks reimbursement would exist were it not for the services Manville provides to the Plans. If Manville ceased providing such services, it would eliminate those positions and either lay off the employees who hold them or allow such employees to compete for then-open positions in other areas of the Company. Manville represents that it will inform the Retirement Committee, in writing, that should Manville cease providing the administrative or management services for which it seeks reimbursement from the Plans, it will sever the employees engaged in providing those services, possibly allowing them to compete for existing open positions within the Company according to Company guidelines governing transfers in the event of job elimination.

You further represent that Manville proposes to establish a compliance system to monitor and evaluate the services for which Manville would be reimbursed. Each year, Manville will present to the Retirement Committee a detailed proposal that sets forth the names, positions, and duties of those personnel with respect to whom Manville will be reimbursed, as well as a breakdown of the annual salary and fringe benefit cost for those employees.

The Retirement Committee must approve the proposal prior to any reimbursement. Further, the Retirement Committee will retain an independent consultant to advise it on whether the services Manville is providing are necessary for the administration and management of the Plans, and whether the quality and level of charges are equivalent to those that would be provided under a third-party arrangement. With the help of the independent consultant, the Retirement Committee will periodically monitor and evaluate the services Manville is providing. If during the course of a year the Retirement Committee is informed that the amount for which reimbursement is sought will be in excess of the approved annual budget, the Retirement Committee may not approve reimbursement of the additional amount unless the independent consultant advises that the increased total cost is not more than would be charged by a third-party provider for such service. If the independent consultant advises the Committee that the cost or quality of the services provided is not equivalent to that which would be charged or provided under a third-party arrangement, the Retirement Committee must terminate the arrangement upon 90 days advance written notice. Further, the Committee may decide to terminate the reimbursement arrangement at any time, for any reason, at no charge to the Plans, upon 90 days advance written notice.

All employees for whom Manville would be reimbursed salary and fringe benefits costs will maintain time sheets of all hours worked, which separately specify the hours worked per day for a particular plan and the type of work performed. The method of recording hours worked and the allocations would be subject to quarterly verification and audit by Manville's internal auditors and its outside accountant. Their reports will be forwarded to both the Retirement Committee and the independent consultant.

Manville also will submit to the Retirement Committee on a quarterly basis a report that details all long-distance telephone charges, travel expenses, mailing costs, and office supply expenses for which reimbursement will be sought. The report will be submitted within 90 days after the end of each fiscal quarter, and will be reviewed by Manville internal auditors and outside accountants prior to submission. The Retirement Committee, with the approval of the independent consultant, must approve the quarterly report prior to any reimbursement. If the independent consultant advises the Committee that the quarterly cost for these items is excessive, the Retirement Committee will not approve reimbursement of

any expenses for that quarter.

With respect to long-distance telephone calls, each Manville Benefit Employee will keep a contemporaneous record of each call made, indicating whether it concerned plan business and the particular plan involved. For business travel, only lodging and transportation expenses will be reimbursable; meal costs will not be reimbursed. Moreover, no travel expense will be reimbursed without a receipt unless approved in advance by the employee's superior, and upon prompt completion of a report that allocates the expenses to a particular plan or plans.

With respect to mailing expenses, the mail rooms at each building in which Manville Benefit Employees work will establish a recording system for expenses related to plan business. Whenever a Manville Benefit Employee's secretary forwards correspondence to the mail room, he or she will indicate the plan, if any, which is to be billed. Mail room personnel will then record for such plan the date and time the correspondence was mailed and the amount of postage.

With respect to office supplies, the accounting department at each office where Manville Benefit Employees work will keep a contemporaneous list of the supplies requisitioned by them. For each quarter, the cost of office supplies requisitioned by the benefits department would be allocated to the Plans in proportions that match the percentages of time allocated to the Plans by the Manville Benefit Employees at that office.

Under Presidential Reorganization Plan No. 4 of 1978, effective December 31, 1978, the authority of the Secretary of the Treasury to issue rulings under section 4975 of the Code has been, with certain exception not here relevant, transferred to the Secretary of Labor, and the Secretary of Treasury is bound by the interpretations of the Secretary of Labor pursuant to such authority. Therefore, references in this letter to specific sections of ERISA refer also to the corresponding sections of the Code.

You state that Manville is a party in interest and fiduciary with respect to the Plans within the meaning of sections 3(14) and 3(21) of ERISA. The Manville Benefit Employees are parties in interest with respect to the Plans within the meaning of section 3(14)(B) and (H) of ERISA. In addition, each member of the Retirement Committee is a fiduciary of the Plans under section 3(21) of ERISA, by reason of his or her discretionary authority in the administration of the Plans and is, therefore, a party in interest with respect to the Plans under section 3(14)(A) of ERISA. No charge will be made to the Plans for the salary and fringe benefit costs of the Committee members.

Section 406(a)(1)(C) and (D) of ERISA provides, in part, that a fiduciary with respect to an employee

benefit plan shall not cause the plan to engage in a transaction, if he or she knows or should know that such transaction constitutes a direct or indirect furnishing of goods, services or facilities between the plan and a party in interest with respect to the plan or transfer to, or use by, or for the benefit of, a party in interest, of any assets of the plan. Section 406(b)(1) of ERISA further prohibits a fiduciary with respect to a plan from dealing with the assets of the plan in his or her own interest or for his or her own account. Section 406(b)(2) of ERISA provides that a fiduciary shall not in his or her individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries. Section 406(b)(3) of ERISA prohibits a fiduciary from receiving a fee or other consideration for his or her own personal account from a party dealing with a plan in connection with a transaction involving the assets of the plan.

Subject to the limitations of section 408(d) of ERISA , section 408(b)(2) exempts from the prohibitions of section 406(a) any contract or reasonable arrangement with a party in interest, including a fiduciary, for office space, or legal accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid thereof. Section 408(c)(2) of ERISA provides, in relevant part, that nothing in section 406 shall be construed to prohibit any fiduciary from receiving compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his or her duties with respect to the plan. Regulations issued by the Department clarify the terms "necessary service" ( 29 CFR §2550.408b-2(b) ), "reasonable contract or arrangement" ( 29 CFR §2550.408b-2(c) ), and "reasonable compensation" ( 29 CFR §2550.408b-2(d) and 2550.408c-2 ) as used in sections 408(b)(2) and 408(c)(2) of ERISA .

Accordingly, the provisions of administrative and asset management services by Manville to the Plans would be exempt from the prohibitions of section 406(a) of ERISA if the conditions of section 408(b)(2) are met. We note, however, that the question of what constitutes a necessary service, a reasonable contract or arrangement, and reasonable compensation are inherently factual in nature. Section 5.01 of ERISA Advisory Opinion Procedure 76-1 ( ERISA Pro. 76-1 , 41 FR 36281, August 27, 1976) states that the Department of Labor (the Department) generally will not issue opinions on such questions. The appropriate plan fiduciaries must determine, based on all of the relevant facts and circumstances, whether the conditions of section 408(b)(2) are satisfied.

With respect to the prohibitions is section 406(b), regulation 29 CFR §2550.408b-2(a) indicates that section 408(b)(2) of ERISA does not contain an exemption for an act described in section 406(b) of ERISA even if such act occurs in connection with a provision of services which is exempt under section

408(b)(2). As explained in regulation 29 CFR §2550.408b-2(e)(1), if a fiduciary uses the authority, control, or responsibility which makes him or her a fiduciary to cause the plan to enter into a transaction involving the provision of services when such fiduciary has an interest in the transaction which may affect the exercise of his or her best judgment as a fiduciary, a transaction described in section 406(b) of ERISA would occur, and that transaction would be deemed to be a separate transaction from the one involving the provision of services and would not be exempt by section 408(b)(2) of ERISA. However, regulation section 29 CFR 2550.408b-2(e)(3) provides that if a fiduciary furnishes services to a plan without the receipt of compensation or other consideration (other than reimbursement of direct expenses properly and actually incurred in the performance of such services within the meaning of 29 CFR 2550.408c-2(b)(3)), the provision of such services does not, in and of itself, constitute an act described in section 406(b) of ERISA.

The mere selection of Manville to provide administrative and asset management services to the plans without the receipt of compensation other than the reimbursement of direct expenses would not, in itself, constitute a violation of section 406(b) of ERISA. However, because a violation of section 406(b) could occur in the course of the Retirement Committee's decision to retain Manville in accordance with the proposed arrangement described above, the Department is unable to rule that the decision, in operation, would, in no case, violate that section.

With regard to whether "direct expenses" includes the compensation paid to employees of Manville, 29 CFR 2550.408c-2(b)(3) provides that an expense is not a direct expense to the extent it would have been sustained had the service not been provided or if it represents an allocable portion of overhead costs. You represent that none of the employment positions for which reimbursement is sought would exist if it were not for the services Manville provides to the Plans.[2]

You further indicate that, if Manville ceased providing such services to the Plans, Manville would eliminate the positions and either lay off the employees who hold them or allow such employees to compete for then-open positions in other areas of the Company.

In the Department's view, compensation paid by a service provider to its employees may be a properly reimbursable expense under 29 CFR 2550.408c-2(b)(3) if the expenses would not, in fact, have been sustained had the services not been provided, if it can be properly allocated to the particular services provided and the expenses does not represent an allocable portion of overhead costs. What constitutes a direct expense in a particular case, however, is a factual matter which can only be resolved by taking into account the relevant facts and circumstances. As noted above, however, the Department ordinarily

will not issue an advisory opinion on such question. To reiterate, the Department notes that an expense would not be properly reimbursable to the extent it was incurred in connection with a service that was not otherwise exempt under section 408(b)(2) of ERISA. Thus, the Retirement Committee, in its fiduciary capacity, and not Manville, as plan sponsor, must review each service to be provided by Manville to determine whether such service is a "necessary service" for which reimbursement is lawful.

We wish to point out that ERISA's general standards of fiduciary conduct would apply to the proposed arrangement. Section 404(a)(1)(B) of ERISA requires that a fiduciary discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. Accordingly, the Retirement Committee must act "prudently" and "solely in the interest" of the Plans' participants and beneficiaries when causing the Plans to enter into the proposed arrangement. If the decision by the Retirement Committee to retain Manville to provide the administrative and asset management services specified in the proposed arrangement and to reimburse Manville for the services in accordance with the proposed arrangement is not "prudent" and "solely in the interest" of the Plans' participants and beneficiaries, the Retirement Committee would be liable for any loss resulting from such breach of fiduciary responsibility, even though the retention and reimbursement of Manville may not constitute a prohibited transaction.

This letter is an advisory opinion under ERISA Procedure 76-1. Section 10 of the procedure explains the effect of an advisory opinion.

Sincerely,

Robert J. Doyle

Director of Regulations and Interpretations

---

[1] Hereinafter the term Retirement Committee refers to both committees.

[2] The Department previously addressed a similar situation in Advisory Opinion 86-1A (January 2, 1986). In that situation, employees of the employer who sponsored the plan provided administrative services to

the plan. The employer sought to be reimbursed for the salary and fringe benefit costs attributable to these employees. The employer represented that the employees for whom it sought reimbursement, spent 100 percent of their time providing administrative services to its employee benefit plans. The employer also represented that each of the employees with respect to whom it would be reimbursed for its salary and fringe benefit costs would not receive full-time compensation for duties performed in connection with the administrative services the employer provided to the plan, and, absent this function, would not be employed by the employer. In that opinion, the Department stated that compensation paid by a service provider to its employees may be a properly reimbursable expense under 29 CFR section 2550.408c-2(b)(3) if the expense would not, in fact, have been sustained had the services not been provided and if it can be properly allocated to the particular services provided and the expense does not represent an allocable portion of overhead costs.

© 2016 Thomson Reuters/Tax & Accounting. All Rights Reserved.