# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

THOMAS E. PEREZ, SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF LABOR,
201 12th Street South, Suite 500, Arlington, VA
222202,

                  Plaintiff,

           v.

CHIMES DISTRICT OF COLUMBIA, INC.,
4815 Seton Drive,
Baltimore, Maryland 21215 (Baltimore City);
CHIMES INTERNATIONAL LTD,
4815 Seton Drive,
Baltimore, Maryland 21215 (Baltimore City);
FCE BENEFIT ADMINISTRATORS, INC.,
887 Mitten Road,
Burlingame, California, 94010;
GARY BECKMAN,
887 Mitten Road,
Burlingame, California, 94010;
STEPHEN PORTER,
887 Mitten Road,
Burlingame, California, 94010;
MARTIN LAMPNER,
4815 Seton Drive,
Baltimore, Maryland 21215 (Baltimore City);
ALBERT BUSSONE,
4815 Seton Drive,
Baltimore, Maryland 21215 (Baltimore City);
BENEFITS CONSULTING GROUP,
2648 FM 407E, Suite 200,
Bartonville, Texas 76226;
JEFFREY RAMSEY,
2648 FM 407E, Suite 200,
Bartonville, Texas 76226; ~~and~~
CHIMES D.C. INC. HEALTH & WELFARE PLAN,
4815 Seton Drive,
Baltimore, Maryland 21215 (Baltimore City~~,~~); and

MARILYN WARD,
3615 Capistrano Trail
Austin, TX 78739.

Civil Action No.
~~============~~ 15-3315

Defendants.

## FIRST AMENDED COMPLAINT

Thomas E. Perez, Secretary of the United States Department of Labor (the "Secretary"), hereby alleges:

1. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA" or the "Act"), as amended, 29 U.S.C. §§1001, et seq., against fiduciaries of and service providers to the Chimes D.C. Health & Welfare Plan (the "Plan").

2. Chimes D.C., Inc. ("Chimes DC") established the Plan to provide a package of medical, prescription, life insurance, accidental death and dismemberment, disability, and unemployment benefits to over a thousand participants and beneficiaries, most of whom were disabled workers who provided janitorial and custodial services for government contracts.

3. Since as early as 2008, Chimes DC, its parent company Chimes International, Limited ("Chimes International"), and its executives, Martin Lampner and Albert Bussone (collectively, the "Chimes Defendants"), caused the Plan to pay excessive fees for services and failed to prudently monitor the management of the Plan and its assets.

4. In addition, the Chimes Defendants, the Plan's service providers -- FCE Benefits Administrators, Inc. ("FCE") and"), Benefits Consulting Group ("BCG") -- and the service providers' owners caused the Plan to engage in a number of transactions for their personal benefit or knowingly participated in such transactions. The Plan's trustee, Marilyn Ward ("Ward"), knowingly participated in many such transactions, failed to take reasonable steps to disclose or remedy the conflicts, and engaged in her own fiduciary breaches.

5. FCE exercised its fiduciary authority and control over the Plan's contracts with other service providers to increase its compensation through undisclosed commissions, fees, and

other payments.  To the extent that the Chimes Defendants were aware that FCE might be receiving such payments, they failed to monitor the third party administrator that they had appointed, thus enabling FCE's fiduciary breaches and prohibited transactions.

6.     The Secretary brings this action against Chimes International, Chimes DC, Martin Lampner, Albert Bussone, FCE, FCE's owners Gary Beckman and Stephen Porter, BCG, ~~and~~ BCG's owner Jeffrey Ramsey, and Ward in order to obtain relief under Sections 409 and 502(a)(2) and (5) of ERISA, 29 U.S.C. §§1109 and 1132(a)(2) and (5), in the form of equitable remedies that will restore losses to the Plan, require the defendants to disgorge unlawful profits to the Plan, and otherwise redress violations and enforce the provisions of Title I of ERISA.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1).

8.     Venue with respect to this action lies in the United States District Court for the District of Maryland, pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), because the Plan was administered in Baltimore, Maryland, the fiduciary breaches at issue took place within this district, and several defendants reside or may be found in this district.

## PARTIES

9.     The Secretary, pursuant to Sections 502(a)(2) and (5) of the Act, 29 U.S.C. §1132(a)(2) and (5), has the authority to enforce the provisions of Title I of ERISA by, among other means, the filing and prosecution of claims against fiduciaries and others who committed violations of ERISA.

10.    Defendant Chimes DC is a Washington, D.C. corporation established under Section 501(c)(3) of the Internal Revenue Code, with its principal place of business in Baltimore,

Maryland.  It is a federal government contractor who employs disabled workers for janitorial and custodial services.  At all relevant times, Chimes DC was the Plan Sponsor and named Plan Administrator of the Plan.  As Plan Administrator, Chimes DC was a named fiduciary of the Plan.  At all relevant times, Chimes DC had and exercised discretionary authority and discretionary control respecting the appointment, retention, and payment of the Plan's service providers, insurers, and/or fiduciaries, including FCE and BCG, as well as other aspects of managing and administering the Plan and its assets.  At all relevant times, Chimes DC therefore was a fiduciary with respect to the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), because it exercised discretionary authority and/or discretionary control respecting management of the Plan and/or exercised any authority or control respecting management or disposition of its assets, and had discretionary authority and/or discretionary responsibility in the administration of the Plan.  As a Plan fiduciary, a person providing services to the Plan, and an employer of employees covered by the Plan, Chimes DC was a party in interest within the meaning of ERISA §3(14)(A), (B), and (C), 29 U.S.C. §1002(14)(A), (B) and (C), for the relevant time period.

11.     At all relevant times, Defendant Chimes International Limited ("Chimes International") was the parent company of Chimes DC and The Chimes Foundation, Inc. (the "Chimes Foundation"), a fundraising arm of Chimes International and its subsidiaries.  During the relevant time period, Chimes International, through the Governance Committee of its Board of Directors, had and exercised discretionary authority and discretionary control respecting appointment, retention, and payment of the Plan's services providers, insurers, and/or fiduciaries, including FCE and BCG.  At all relevant times, Chimes International therefore was a fiduciary with respect to the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C.

§1002(21)(A), because it exercised discretionary authority and/or discretionary control respecting management of the Plan and/or exercised any authority or control respecting management or disposition of its assets, and had discretionary authority and/or discretionary responsibility in the administration of the Plan.  For the relevant time period, Chimes International also was a party in interest under ERISA §3(14)(A) and (E), 29 U.S.C. §1002(14)(A) and (E), because it was a fiduciary and an owner of 50 percent or more of Chimes DC.

12.     From at least 2008 until his retirement in December 2014, Defendant Albert Bussone ("Bussone") was Vice President of Chimes DC and Chief Operating Officer and Executive Vice President of Chimes International.  From February 2012 until December 2014, he was also Chief Development Officer and Vice President of Chimes DC and Chimes International.  While negotiating, vetting, and/or executing the Plan's contracts with FCE and BCG, Bussone individually exercised discretionary authority or discretionary control respecting appointment, retention, and payment of Plan service providers, insurers, and/or fiduciaries, including FCE and BCG, and exercised discretionary authority or discretionary control over other aspects of managing and administering the Plan and its assets.  Therefore, Bussone was a fiduciary with respect to the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), because he exercised discretionary authority and/or discretionary control respecting management of the Plan and/or exercised any authority or control respecting management or disposition of its assets, and had discretionary authority and/or discretionary responsibility in the administration of the Plan.  As a Plan fiduciary and an employee and corporate officer of Chimes DC and Chimes International, Bussone also was a party in interest under ERISA §3(14)(A) and (H), 29 U.S.C. §1002(14)(A) and (H).

13.     From at least 2008 until July 2010, Defendant Martin Lampner ("Lampner") was Executive Vice President of Chimes DC and Chimes International.  From July 2010 to the present, he has been President of Chimes DC and Chimes International.  From at least 2008 until January 2011, Lampner was Chief Financial Officer of Chimes DC and Chimes International.  From January 2011 to the present, he has been Chief Executive Officer of Chimes DC and Chimes International.  While negotiating, vetting, and/or executing the Plan's contracts with FCE and BCG, Lampner individually exercised discretionary authority or discretionary control respecting appointment, retention, and payment of Plan service providers, insurers, and/or fiduciaries, including FCE and BCG, and exercised discretionary authority or discretionary control over other aspects of managing and administering the Plan and its assets.  Therefore, Lampner was a fiduciary with respect to the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), because he exercised discretionary authority and/or discretionary control respecting management of the Plan and/or exercised any authority or control respecting management or disposition of its assets, and had discretionary authority and/or discretionary responsibility in the administration of the Plan.  As a Plan fiduciary and an employee and corporate officer of Chimes DC and Chimes International, Lampner also was a party in interest under ERISA §3(14)(A) and (H), 29 U.S.C. §1002(14)(A) and (H).

14.     At all relevant times, Defendant FCE was the third party administrator of the Plan.  As the Plan's third party administrator, FCE exercised discretionary control or discretionary authority over claims processing, payment of claims, recordkeeping, coverage administration, and negotiating the Plan's contracts with service providers and/or insurers, and exercised authority or control over Plan assets.  At all relevant times, FCE was a Plan fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), because it exercised

6

discretionary authority and/or discretionary control respecting management of the Plan and/or exercised any authority or control respecting management or disposition of its assets, and had discretionary authority and/or discretionary responsibility in the administration of the Plan. As a Plan fiduciary and service provider, FCE also was a party in interest under ERISA §3(14)(A) and (B), 29 U.S.C. §1002(14)(A) and (B).

15.     At all relevant times, Defendant Gary Beckman ("Beckman") was the President and Chief Executive Officer of FCE, and owned 50 percent of FCE. As a Plan service provider and an officer and 10 percent or more shareholder of a service provider, Beckman also was a party in interest under ERISA §3(14)(B) and (H), 29 U.S.C. §1002(14)(B) and (H).

16.     At all relevant times, Defendant Stephen Porter ("Porter") was the Chief Operating Officer of FCE, and owned 50 percent of FCE. As a Plan service provider and an officer and 10 percent or more shareholder of a service provider, Porter also was a party in interest under ERISA §3(14)(B) and (H), 29 U.S.C. §1002(14)(B) and (H).

17.     FCE, Porter, and Beckman collectively shall be referred to as the "FCE Defendants."

18.     At all relevant times, Defendant BCG was a sole proprietorship and was engaged to provide plan representation services to the Plan. At all relevant times, Defendant Jeffrey Ramsey ("Ramsey") was the owner and an officer of BCG. BCG provided services to the Plan and thus was a party in interest under ERISA §3(14)(B), 29 U.S.C. §1002(14)(B). In addition, at all relevant times, Ramsey was a person providing services to the Plan, as well as an officer and 10 percent or more shareholder of a service provider, and thus was a party in interest under ERISA §3(14)(B) and (H), 29 U.S.C. §1002(14)(B) and (H).

19.     BCG and Ramsey collectively shall be referred to as the "BCG Defendants."

20.      At relevant times, Marilyn Ward was a Plan trustee and named fiduciary of the Plan.  Ward was a Plan fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), because she exercised discretionary authority and/or discretionary control respecting management of the Plan and/or exercised any authority or control respecting management or disposition of its assets, and had discretionary authority and/or discretionary responsibility in the administration of the Plan.  Under the Amended and Restated Trust Agreement governing her appointment as Trustee, Ward had "exclusive authority and discretion to manage and control funds" except to the extent delegated to the Plan Administrator (Chimes DC) or an investment manager, and "[a]ll discretions . . . conferred on her" were "absolute" "unless specifically limited[.]"  The Trust Agreement granted Ward exclusive powers over various aspects of the Plan, including but not limited to investments, obligations and litigation, deposits, insurance benefits, insurance protection, advances to the trust, distributions, and hiring agents.  The Trust Agreement also required Ward to "maintain full and complete records of her transactions for, and funds held for the account of, the Trust," and she had discretionary authority and/or responsibility over such records, including payments to FCE.  In addition to her enumerated powers and responsibilities, Ward exercised discretionary control and authority over her and FCE's fees by authorizing fees that were not made in accordance with the fee schedules agreed upon and approved by Chimes DC.  As a Plan fiduciary and service provider, Ward also was a party in interest under ERISA §3(14)(A) and (B), 29 U.S.C. §1002(14)(A) and (B).

20.21.  The Chimes D.C. Health & Welfare Plan (the "Plan") was established by Chimes DC in 1999, primarily to fulfill its obligations under various government contracts to provide fringe benefits to its employees.  The Plan is a partially self-insured health and welfare plan and is mostly funded by contributions required to be paid under Chimes DC's federal government

contracts and federal prevailing wage laws.  At all relevant times, the Chimes D.C. Health &

Welfare Plan (the "Plan") was an employee benefit plan as defined by ERISA §3(3), 29 U.S.C.

§1002(3), and was subject to ERISA pursuant to ERISA §4(a)(1), 29 U.S.C. §1003(a)(1).  The

Plan is joined as a defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure to

assure that complete relief can be granted.

<u>FACTUAL ALLEGATIONS</u>

<u>The Plan's Excessive Expenses, Including FCE and BCG's Fees</u>

21.22.  From at least 2008 to the present, the Chimes Defendants have had responsibility

for prudently and loyally monitoring the Plan's administration and expenses, including the

performance and fees of service providers appointed by the Chimes Defendants.  As detailed

below, the Chimes Defendants failed to meet their obligations, resulting in substantial losses to

the Plan.  The Plan paid millions of dollars in excessive expenses, most of which benefitted the

Plan's third party administrator, FCE, and the plan representative, BCG.  While Chimes

Defendants reaped substantial benefits from the Plan's retention of FCE and BCG, FCE and

BCG received exorbitant fees from the Plan.  Despite these fees, FCE failed to provide

reasonably accurate or timely adjudication of claims for participants and beneficiaries, while

BCG failed to provide broker services or other services commensurate with its fees.

22.23.  Each year, the Chimes Defendants received financial and other reports

summarizing the Plan's expenses and administration.  Based on these reports, the Chimes

Defendants knew or should have known that the Plan's expenses were excessive for a plan of its

size and nature, but failed to take adequate steps to reduce expenses by searching for alternate

providers.

23.24.  From at least 2008 through the present, the Plan has spent millions of dollars more than would be reasonable for a partially self-funded plan of this size and nature.  Most of the Plan's expenses were used to pay FCE and BCG's fees and to pay service providers who were selected and recommended by FCE and whose fees were negotiated by FCE.

The Chimes Defendants' Conflicted Relationships With FCE and BCG

24.25.  At all relevant times, the Plan's relationship with FCE and BCG, including the fees paid by the Plan to FCE and BCG, was governed by the Amended and Restated Adoption Agreement for the Health & Welfare Plan of The Chimes, D.C., Inc. and its accompanying exhibits, including the fee schedule and the Third Party Administrator Agreement executed by FCE, BCG, and Chimes DC (collectively, the "Adoption Agreement").

25.26.  The Adoption Agreement granted Chimes DC authority to appoint, retain, and/or remove the Plan's service providers, including the third party administrator, FCE, and plan representative, BCG.  At all relevant times, the Adoption Agreement allowed Chimes DC, as the employer, to terminate the Plan's contract with FCE, and thus BCG, upon 60 days' notice.

26.27.  At relevant times, the Chimes Defendants exercised authority and control over FCE and BCG's appointment and retention, as well as the fees paid to FCE and BCG.

27.28.  At relevant times, Bussone and Lampner solicited FCE and BCG to make donations to the Chimes Foundation.  The Chimes Foundation was the fundraising entity of Chimes International and its other subsidiaries, and its assets could be used by Chimes International and any subsidiary of Chimes International, including Chimes DC.

28.29.  At relevant times and as early as 2008, FCE and BCG made donations to the Chimes Foundation.

29.30.  In 2009 and thereafter, the Plan's third party administrator, FCE, and the Plan's representative, BCG, jointly pledged at least $330,000 to the Chimes Foundation.  In making one such pledge, FCE and BCG expressly referenced their status as service providers to Chimes and their "special relationship" and "gratifying partnership with the Chimes," and FCE and BCG specifically stated that "[a]n additional $55,000 will be paid for a one (1) year option of continuing benefit services to our Chimes partner."

30.31.  Between 2009 and 2014, FCE paid at least $400,000 to the Chimes Foundation in connection with its engagement as service provider to the Plan.

31.32.  In 2010, Lampner solicited FCE to employ his child and FCE hired his child.  At relevant times, including during the Chimes Defendants' renewal of FCE's engagement in 2009 and 2011, Lampner took part in the negotiation of FCE's fees and recommended to Chimes DC and Chimes International that FCE's engagement under the Adoption Agreement be renewed.

32.33.  Between 2009 and 2014, BCG paid at least $282,500 to the Chimes Foundation in connection with its engagement as service provider to the Plan.

33.34.  In 2013, Jeffrey Ramsey, the owner of BCG, provided discounts to Chimes DC on work performed by BCGHR LLC, another company owned by Ramsey.

34.35.  In connection with the payments and benefits described in paragraphs 28 through 33, the Chimes Defendants exercised their authority to cause the Plan to retain and pay FCE and BCG as service providers.

35.36.  In 2009 and 2011, the Governance Committee of the Board of Directors of Chimes International and Chimes DC (the "Governance Committee") reviewed Chimes DC's contract with FCE and BCG to perform services for the Plan and were informed by Bussone and Lampner of the amount of donations pledged by FCE and BCG.

36.37.  In 2009 and 2011, Lampner and Bussone assured the Governance Committee that they had consulted with an independent broker, who was unable to find suitable alternative service providers to FCE.

37.38.  In fact, in 2004, an independent broker had identified possible alternative providers for Bussone and Lampner, but the Chimes Defendants failed to request bid proposals from these alternative providers or even set up meetings to discuss their services and fees.

38.39.  After 2004 and at the time of their recommendations to the Governance Committee in 2009 and 2011, Bussone and Lampner failed to conduct a full request for bid proposals from alternative providers, or request that an independent broker obtain and compare bid proposals from alternative providers.

39.40.  At most, Bussone and Lampner relied on BCG and Ramsey's recommendation to continue retaining FCE, even though BCG and Ramsey were conflicted.  From the beginning of the Plan's relationship with FCE and BCG, FCE and BCG jointly marketed FCE's products to Chimes DC, and BCG was at all times being paid from the Plan pursuant to the same agreement as FCE.  BCG did not conduct a request for bid proposals from alternative providers.

40.41.  The Chimes Defendants did not take other steps to ensure that FCE's fees were reasonable, such as consulting with an independent expert regarding FCE's fees or comparing FCE's fees to industry benchmarks.

41.42.  The Chimes Defendants also did not take steps to ensure that BCG's fees were reasonable for the services actually provided by BCG.  BCG's services amounted to participant communications and client assistance that did not justify its compensation, which ranged from $400,000 to $600,000 per year from 2008 to the present.

42.43.  In 2009 and 2011, relying on Lampner and Bussone's recommendations, the Governance Committee approved the extensions to Chimes DC's contract with FCE and BCG to perform services for the Plan.  To date, the Plan continues to retain and pay FCE and BCG as service providers.

43.44.  The retention of FCE and BCG in connection with the Chimes Defendants' receipt of payments and other benefits caused losses to the Plan, including but not limited to FCE and BCG's excessive fees, and profited the Chimes Defendants in the form of the charitable contributions and discounts for work performed by BCGHR LLC.

FCE's Receipt of Payments from Plan Service Providers

44.45.  At relevant times, and consistent with the Adoption Agreement, FCE had and exercised fiduciary authority to recommend, negotiate, and execute contracts between the Plan and various service providers, thereby exercising authority and control over the management of Plan assets.  Such service providers included the Plan's trustees as well as service providers related to the Plan's stop loss insurance, prescription drug benefits, behavioral health and employee assistance programs, and medical benefits.  In connection with the Plan's contracts with the service providers, the FCE Defendants caused FCE to receive rebates, commissions, and other payments from the service providers.  This compensation, received from Plan service providers, was paid in addition to fees paid directly by the Plan.

46.      FCE's Third Party Administrator Agreement with Chimes DC attaches fee schedules for various service providers, including FCE, BCG, and the Plan trustee, and states that "no change in any Service Provider to the Plan and Trust will be effective unless approved in writing by both TPA and Employer."  Ward could not be removed as Trustee without FCE's consent.  At all relevant times, FCE recommended and retained Ward as the Plan trustee and at

no time did the Chimes Defendants question or independently review Ward's appointment as a Trustee.

45.47.  While Chimes DC generally was aware that payments could be made by unidentified Plan service providers to FCE, Chimes DC and FCE had agreed that, with a few specific exceptions, any commissions or rebates paid by Plan service providers to FCE should be forwarded to the Plan.

46.48.  Contrary to this agreement between Chimes DC and FCE, FCE failed to forward all payments that it received from service providers to the Plan.

47.49.  FCE failed to disclose to Chimes DC that it was retaining some of the payments and often failed to disclose the specific amounts being paid by Plan service providers to FCE and retained by FCE.  Each year, FCE misrepresented to Chimes DC that it had forwarded all such payments to the Plan, thus fraudulently concealing its receipt of additional, unauthorized compensation.

48.50.  As a result of its conduct, FCE not only enriched itself but also prevented the Chimes Defendants from having all of the facts necessary to make prudent decisions about whether to retain FCE or use the service providers recommended by FCE.  FCE's conduct also prevented the Chimes Defendants from accurately assessing the true cost of FCE's services and negotiating with FCE at arm's length over FCE's fees for its services.  As a result of its retention of payments from Plan service providers, FCE increased its own compensation at the Plan's expense and without Chimes DC's authorization.

49.51.  Notwithstanding FCE's failure to disclose its additional compensation, Chimes DC was generally aware that FCE was receiving payments and had a duty to take steps to ensure that FCE properly forwarded the payments to the Plan as promised to Chimes DC.  At all

relevant times, Chimes DC had authority to remove FCE.  Chimes DC also failed to maintain adequate records of its agreements with FCE regarding such payments.

50.52.  In addition to the payments that FCE retained without Chimes DC's approval, FCE received other payments from Plan service providers that FCE disclosed to Chimes DC and that Chimes DC approved.  Such payments were made in connection with the Plan's contracts for life insurance, accidental death and dismemberment insurance, and prescription drug benefits.  With respect to this compensation, Chimes DC failed to negotiate corresponding reductions in FCE's fees from the Plan.  As a result, the Plan suffered losses because FCE's direct fees were excessive considering the other income that FCE was earning in connection with the Plan.

51.53.  FCE's retention of payments from Plan service providers, whether or not they were approved by Chimes DC, caused losses to the Plan, and FCE improperly received profits.  As officers and owners of FCE who knowingly participated in FCE's conduct, Porter and Beckman personally benefitted and profited from FCE's retention of the payments.

Ward's Payments to FCE and Knowledge of FCE's Payments to Chimes

54.      FCE's own records characterized the charitable contributions made by FCE to The Chimes Foundation as "promotional expenses" that FCE itemized as "Business Development and Retention Expenses."  As a result, at least some of Ward's payments to FCE for business development and retention expenses were used to pay charitable donations to The Chimes Foundation.  The FCE Defendants told Ward that the Chimes Defendants had solicited and FCE paid donations to the Chimes Foundations.  On information and belief, Ward knew or should have known that her payments to FCE were being used to pay donations to The Chimes Foundation.  Ward also knew that FCE agreed to and did employ Martin Lampner's child in connection with the Plan's retention of FCE as a service provider for the Plan.

15

55.     During Ward's tenure as Plan trustee, Ward paid the FCE Defendants the following payments: (1) 10.9% of total trustee fees received by Ward for "Business Development and Retention Costs"; (2) payments for "trustee assistants" who were employed by FCE, received W-2s from FCE, and worked in FCE's offices, for performing work, including but not limited to Plan work; (3) an additional 10% Management Fee of the total of all trustee assistant costs, as well as $250/month in "overhead" fees; and (4) rent payments for use of property owned by JMA Investments ("JMA"), an entity owned by Porter and Beckman.

56.     Ward had no written agreement regarding the rent payments, and she did not compare the rental price to any alternative facilities.  The facilities were used for Plan work, along with other work.

57.     Ward did not disclose her arrangements with FCE to the Chimes Defendants, despite the fact that FCE had fiduciary authority and control over Ward's continuing appointment as Plan Trustee and thus the Plan's payment of her fees, and despite the fact that Ward had fiduciary authority and control over the Plan's payment of FCE's fees and responsibility for ensuring their accuracy.

Ward's Imprudent Payment of Fees from Plan to FCE and Ward

58.     Ward had authority and control over the Plan's payment of fees to service providers, and responsibility for verifying that fees -- including her own fees -- were being calculated in accordance with the fee schedules agreed upon by Chimes DC.

59.     Ward failed to prudently verify whether the fees paid by the Plan matched the fee schedules agreed upon by Chimes DC.  She imprudently failed to request or review supporting documentation and invoices for fees, including insurance premiums.

60.     The Chimes Defendants had negotiated a tiered fee structure with FCE and Ward, with the fee rates based on the number of participants.

61.     At relevant times, FCE informed Ward that their computer system could not handle the fluctuations in participant counts, and thus FCE provided Ward with a blended fee rate and average participant count, which Ward used to authorize fee payments from the Plan to FCE and herself.  These rates differed from the fee schedule agreed upon by Chimes DC.

62.     Defendant Ward failed to alert Chimes DC that FCE's computer system was unable to adequately manage fluctuations in participant counts.  The inadequate computer system contributed many of FCE's administrative problems described in paragraphs 65 through 69, including FCE's inability to accurately maintain accurate expense and claims records, timely update participant coverage information, and administer a reasonable claims process.

63.     Ward caused the Plan to pay administrative fees for non-Service Contract Act employees which differed from the fee schedule agreed upon by Chimes DC.  Ward also paid administrative fee rates for the unemployment insurance fund, also known as the DUB, that differed from the written fee schedule.

64.     Ward failed to disclose to Chimes DC that she was applying different fee rates calculated by FCE, maintain any documentation to explain the differences in rates, or allow a proper accounting of fee payments to FCE or Ward

 FCE's Imprudent Administration and Management of Plan and Its Assets

52.65.  FCE provided inadequate services that failed to meet a prudent standard of care for a fiduciary and third party administrator and that were not commensurate with FCE's high fees.

~~53.~~66.  During the relevant time period, FCE, with Porter and Beckman's knowledge and participation, failed to prudently manage the Plan and its assets.  In particular, FCE:

a.      Failed to maintain a computer system capable of accurately calculating fees to FCE and the Plan's trustees;

b.      Failed to maintain accurate records, including calculations and supporting documentation for Plan expenses and payments to FCE and participant information;

c.      Failed to administer a reasonable claims procedure, including establishing protocols such as claims audits, claims manuals, and trainings, to ensure timely and consistent adjudication of claims;

d.      Failed to timely update coverage information for participants; and

e.      Altered data to conceal errors.

~~54.~~67.  FCE failed to take other measures to ensure that benefit claim determinations were made in accordance with governing plan documents and that, where appropriate, the plan provisions were applied consistently with respect to similarly situated claimants.  Due to systemic computer and personnel limitations, FCE at relevant times failed to process claims in a timely and accurate manner and was unable to auto-adjudicate claims.  At relevant times, FCE failed to consistently require its claims adjudicators to follow a claims manual.  At relevant times, FCE also failed to consistently use sufficient auditing protocols and failed to adequately address high rates of claims errors that were disclosed by internal and external audits.

~~55.~~68.  Because the Chimes Defendants had appointed FCE and had authority to remove FCE as third party administrator, the Chimes Defendants also were responsible for monitoring FCE's fees and performance, but failed to do so.

18

56.69.  FCE's failure to properly administer the Plan caused losses to the Plan and provided improper profits to FCE, including but not limited to excessive fees.

Payments by the Plan to Chimes DC

57.70.  During the relevant time period, Chimes DC provided administrative services to the Plan relating to participant communications.  The services were performed by a full-time employee of Chimes DC who otherwise would have been employed by Chimes DC.

58.71.  From at least 2008, Chimes DC and Bussone directed FCE and the Plan's trusteeWard to reimburse Chimes DC for this work using Plan assets.  Chimes DC set its own fees, without a contract for the arrangement, and in so doing caused losses to the Plan and received profits.

72.     Ward executed the payments to Chimes DC without determining whether the payments were direct expenses of Chimes DC, or otherwise allowable under ERISA.  She did not require documentation of the expenses or inquire whether the Chimes DC employee would have otherwise been employed by Chimes DC, despite the fact that Chimes DC only requested reimbursement for about fifty percent of the employee's hours.

<u>COUNT I</u>
(Excessive Plan Expenses)
(Against all Defendants)

59.73.  Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 5853 and 65 through 72 inclusive.

60.74.  By the conduct alleged in paragraphs 21 through 58 abovethis complaint, the Chimes Defendants failed to prudently and loyally monitor the Plan's expenses, thereby resulting in excessive Plan expenses, including the fees of FCE, BCG, certain service providers recommended by FCE, and administrative reimbursements to Chimes DC.

61.75.  The Chimes Defendants therefore:

a.      Failed to loyally discharge their fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

b.      Failed to prudently discharge their fiduciary duties, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

c.      Caused the Plan to engage in transactions which they knew or should have known constituted direct or indirect furnishing of goods, services, or facilities between the plan and a party in interest, in violation of ERISA §406(a)(1)(C), 29 U.S.C. §1106(a)(1)(C); and

d.      Caused the Plan to engage in transactions which they knew or should have known constituted direct or indirect transfers of assets of the Plan to, or use of assets to the Plan by, or for the benefit of, parties in interest, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D).

62.76.  Martin Lampner and Albert Bussone's knowledge as officers of Chimes DC and Chimes International should be imputed to Chimes DC and Chimes International.

63.77.  As a result of their conduct described above, the Chimes Defendants caused the Plan to suffer losses for which they are liable, pursuant to ERISA §409, 29 U.S.C. §1109(a).

64.78.  The Chimes Defendants and FCE have joint and several liability for the breaches of their co-fiduciaries alleged herein pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because (1) the Chimes Defendants and FCE knowingly participated in their co-fiduciaries' misconduct, (2) as a result of the Chimes Defendants and FCE's failures to comply with their own fiduciary duties they enabled their co-fiduciaries to commit the breaches alleged herein, and (3) the

Chimes Defendants and FCE had knowledge of the breaches by their co-fiduciaries alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

65.79.  The FCE Defendants also knowingly participated in the Plan's payment of excessive fees to FCE.  Each, therefore, may be enjoined from any act or practice which violates Title I of ERISA and may be made subject to such other appropriate equitable relief to redress the violations in which they knowingly participated, including injunctive relief or disgorgement of unjust profits. ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

66.80.  BCG and Ramsey also knowingly participated in the Plan's payment of excessive fees to BCG and Ramsey.  Each, therefore, may be enjoined from any act or practice which violates Title I of ERISA and may be made subject to such other appropriate equitable relief to redress the violations in which they knowingly participated, including injunctive relief or disgorgement of unjust profits. ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

## COUNT II

(Chimes Defendants' Receipt of Benefits in Connection with Plan's Retention of FCE)
(Against the Chimes Defendants and the FCE Defendants)

67.81.  Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 5880 inclusive.

68.82.  By the conduct alleged in paragraphs 21 to 58 abovethis complaint, the Chimes Defendants received benefits, in the form of FCE's payments to the Chimes Foundation and FCE's employment of Martin Lampner's child, in connection with the Plan's retention of FCE, and thus:

      a.     Failed to loyally discharge their fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

      b.     Failed to prudently discharge their fiduciary duties, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B); and

      c.     Dealt with assets of the plan in their own interest or for their own account, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1).

69.83.  Chimes International and Chimes DC also received consideration for their own personal accounts from a party dealing with such plan in connection with a transaction involving the assets of the plan, in violation of ERISA §406(b)(3), 29 U.S.C. §1106(b)(3).

70.84.  Martin Lampner and Albert Bussone's knowledge as officers of Chimes DC and Chimes International should be imputed to Chimes DC and Chimes International.

71.85.  As a result of their conduct described above, the Chimes Defendants caused the Plan to suffer losses for which they are liable, and Chimes International received unjust profits which it must disgorge to the Plan, pursuant to ERISA §409, 29 U.S.C. §1109(a).

72.86.  The Chimes Defendants and FCE have joint and several liability for the breaches of their co-fiduciaries alleged herein pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because (1) Chimes Defendants and FCE knowingly participated in their co-fiduciaries' misconduct, (2) as a result of the Chimes Defendants and FCE's failures to comply with their own fiduciary duties they enabled their co-fiduciaries to commit the breaches alleged herein, and (3) the Chimes Defendants and FCE had knowledge of the breaches by their co-fiduciaries alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

73.87.  The FCE Defendants also knowingly participated in the Plan's retention of FCE in connection with FCE's payments to the Chimes Foundation and FCE's employment of Lampner's child.  Each, therefore, may be enjoined from any act or practice which violates Title I of ERISA and may be made subject to such other appropriate equitable relief to redress the violations in which they knowingly participated, including injunctive relief or disgorgement of unjust profits. ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

COUNT III

(Chimes Defendants' Receipt of Payments and Discounts from BCG and Ramsey in Connection with Plan's Retention of BCG)
(Against the Chimes Defendants, BCG, and Ramsey)

74.88.  Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 5887 inclusive.

75.89.  By the conduct alleged in the paragraphs 21 through 58this complaint, the Chimes Defendants engaged BCG's services on behalf of the Plan, in connection with BCG's payments to the Chimes Foundation and discounts provided by another entity owned by Ramsey, thereby causing losses to the Plan in the form of BCG's fees.  The Chimes Defendants imprudently relied on BCG and Ramsey's recommendations to retain FCE.  The Chimes Defendants therefore:

24

a.      Failed to loyally discharge their fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

b.      Failed to prudently discharge their fiduciary duties, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

c.      Dealt with assets of the plan in their own interest or for their own account, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1); and

d.      Received consideration for their own personal accounts from a party dealing with such plan in connection with transactions involving the assets of the plan, in violation of ERISA §406(b)(3), 29 U.S.C. §1106(b)(3).

76.90.  As a result of their conduct described above, the Chimes Defendants caused the Plan to suffer losses for which they are liable, and Chimes International received unjust profits which it must disgorge to the Plan, pursuant to ERISA §409, 29 U.S.C. §1109(a).

77.91.  The Chimes Defendants have joint and several liability for each other's breaches as alleged herein pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because (1) the Chimes Defendants knowingly participated in their co-fiduciaries' misconduct, (2) as a result of the Chimes Defendants' failures to comply with their own fiduciary duties they enabled their co-fiduciaries to commit the breaches alleged herein, and (3) the Chimes Defendants had knowledge of the breaches by their co-fiduciaries alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

78.92.  BCG and Ramsey knowingly participated in the Plan's payment of fees to BCG in connection with BCG's payments to the Chimes Foundation and discounts to Chimes DC.  Each, therefore, may be enjoined from any act or practice which violates Title I of ERISA and may be made subject to such other appropriate equitable relief to redress the violations in which they

25

knowingly participated, including injunctive relief or disgorgement of unjust profits. ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

<u>COUNT IV</u>
(FCE's Receipt of Payments from Service Providers)
(Against the FCE Defendants and the Chimes Defendants)

~~79.~~93.  Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through ~~58~~92 inclusive.

~~80.~~94.  By the conduct alleged in ~~paragraphs 44 through 56~~this complaint, FCE retained payments from Plan service providers and failed to forward them to the Plan as required by Chimes DC, and received compensation in relation to FCE's management of Plan assets that was not disclosed to Chimes DC, and thereby:

      a.      Failed to loyally discharge its fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

      b.      Failed to prudently discharge its fiduciary duties, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

      c.      Dealt with assets of the plan in its own interest or for its own account, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1); and

      d.      Received consideration for its own personal accounts from a party dealing with such plan in connection with transactions involving the assets of the plan, in violation of ERISA §406(b)(3), 29 U.S.C. §1106(b)(3).

~~81.~~95.  As a result of its conduct described above, FCE caused the Plan to suffer losses for which it is liable, and received unjust profits which it must disgorge to the Plan, pursuant to ERISA §409, 29 U.S.C. §1109(a).

82.96.  Porter and Beckman knowingly participated in the violations of FCE with respect to the payments received in connection with Plan asset transactions.  Each, therefore, may be enjoined from any act or practice which violates Title I of ERISA and may be made subject to such other appropriate equitable relief to redress the violations in which they knowingly participated, including injunctive relief or disgorgement of unjust profits. ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

83.97.  The Chimes Defendants failed to prudently and loyally monitor FCE and ensure that FCE had forwarded the service provider payments to the Plan or offset their fees paid directly from the Plan, thereby breaching their fiduciary duties of loyalty and prudence under ERISA §404(a)(1)(A) and (B), 29 U.S.C. §1104(a)(1)(A), and causing Plan losses.  The Chimes Defendants also have joint and several liability for each other's breaches as alleged herein pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because the Chimes Defendants' failures to comply with their own fiduciary duties to monitor FCE enabled FCE to commit the breaches alleged herein.

<u>COUNT V</u>
(Failure to Prudently and Loyally Administer the Plan)
(Against the FCE Defendants and Chimes DC as Plan Administrator)

84.98.  Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 5897 inclusive.

85.99.  By the conduct alleged in paragraphs 52 through 56 abovethis complaint, FCE failed to prudently and loyally administer the Plan's coverage and claims administration, and thus FCE:

a.      Failed to loyally discharge its fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A); and

b.      Failed to prudently discharge their fiduciary duties, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

86.100.          As a result of its conduct described above, FCE caused the Plan to suffer losses for which it is liable, and received unjust profits which it must disgorge to the Plan, pursuant to ERISA §409, 29 U.S.C. §1109(a).

87.101.          By the conduct alleged in paragraph 53 abovethis complaint, the Plan also was in violation of ERISA §503 because it failed to afford a reasonable opportunity to participants whose claims for benefits had been denied for a full and fair review by the appropriately named fiduciary of the decision denying the claim.  The claims procedures failed to contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations were made in accordance with governing plan documents and that, where appropriate, the plan provisions were applied consistently with respect to similarly situated claimants.  Likewise, FCE failed to ensure that claims were adjudicated in a timely manner.  The Plan, through its plan administrator Chimes DC, may be enjoined from future violations of section 503 of ERISA, pursuant to ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

88.102.          As officers and owners of FCE, Porter and Beckman were knowing participants in FCE's breaches.  Each, therefore, may be enjoined from any act or practice which violates Title I of ERISA and may be made subject to such other appropriate equitable relief to redress the violations in which they knowingly participated, including injunctive relief or disgorgement of unjust profits. ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

COUNT VI

(Plan's Reimbursements to Chimes DC for Work of Its Full-Time Employee)
(Against Chimes DC, Bussone, and FCE)

~~89.~~103.	Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the

Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1

through ~~58~~102 inclusive.

~~90.~~104.	By the conduct alleged in ~~paragraph 57~~this complaint and ~~58 above,~~ by

causing the Plan to pay Chimes DC for work performed by a full-time employee of Chimes DC

who otherwise would have been paid by Chimes DC, Chimes DC and Bussone:

a.	Caused the assets of the Plan to inure to the benefit of the employer

Chimes DC, in violation of ERISA §403, 29 U.S.C. §1103;

b.	Failed to loyally discharge their fiduciary duties, in violation of ERISA

§404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

c.	Failed to prudently discharge their fiduciary duties, in violation of ERISA

§404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

d.	Caused the Plan to engage in a transaction that they knew or should have

known constituted a direct or indirect furnishing of goods, services, or facilities between

the Plan and a party in interest; in violation of ERISA §406(a)(1)(C), 29 U.S.C.

§1106(a)(1)(C);

e.	Caused the Plan to engage in a transaction that they knew or should have

known constituted a transfer to, or use by or for the benefit of, a party in interest, of any

assets of the plan, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D);

f.	Dealt with assets of the Plan in their own interest or for their own account,

in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1); and

29

g.      In their individual or in any other capacity, acted in a transaction involving the Plan on behalf of a party (or representing a party) whose interests are adverse to the interests of the Plan or the interests of its participants or beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

~~91.~~105.       As a result of their conduct ~~described above~~alleged in this complaint, Chimes DC and Bussone caused the Plan to suffer losses for which they are liable, and Chimes DC received unjust profits which it must disgorge, pursuant to ERISA §409, 29 U.S.C. §1109(a).

~~92.~~106.       Chimes DC, Bussone and FCE have joint and several liability for the breaches of their co-fiduciaries alleged herein pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because (1) Chimes DC, Bussone and FCE knowingly participated in their co-fiduciaries' misconduct, (2) as a result of the failure of Chimes DC, Bussone and FCE to comply with their own fiduciary duties, they enabled their co-fiduciaries to commit the breaches alleged herein, and (3) Chimes DC, Bussone and FCE had knowledge of the breaches by their co-fiduciaries alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

COUNT VII
(Ward's Liability for FCE's Payments to the Chimes Foundation
and FCE's Employing Lampner's Child)
(Against Defendant Ward)

107.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 106 inclusive.

108.    As a result of the conduct alleged in this complaint, Ward has joint and several liability for the breaches of her co-fiduciaries relating to FCE's payments to the Chimes Foundation and FCE's employment of Martin Lampner's child, in connection with the Plan's

retention of FCE, pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because Ward had knowledge of the breaches by her co-fiduciaries alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

109.    Ward also knowingly participated in the Plan's retention of FCE in connection with FCE's payments to the Chimes Foundation.  She therefore may be enjoined from any act or practice which violates Title I of ERISA and may be made subject to such other appropriate equitable relief to redress the violations in which she knowingly participated, including injunctive relief or disgorgement of unjust profits. ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

COUNT VIII
(Ward's Conflicted Arrangements with FCE)
(Against Defendant Ward)

110.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 109 inclusive.

111.    Ward failed to prudently and loyally disclose to Chimes DC or the Plan participants that she was making payments to the FCE Defendants and receiving services, benefits, and facilities from the FCE Defendants related to her Plan work and FCE's recommendation and retention of Ward as a trustee.  Ward thus breached her fiduciary duty of loyalty and prudence under ERISA §404(a)(1)(A) and (B), 29 U.S.C. §1104(a)(1)(A), and received profits in the form of her fees.

112.    As a result of the conduct alleged in this complaint, Ward has joint and several liability pursuant to ERISA §405(a), 29 U.S.C. §1105(a) for the breaches of her co-fiduciaries, the FCE Defendants, as alleged herein relating to their receipt of those payments from Ward to FCE, because (1) she knowingly participated in the FCE Defendants' misconduct, (2) as a result

of her failure to comply with her own fiduciary duty to disclose the arrangements, she enabled the FCE Defendants' breaches and violations alleged herein, and (3) she had knowledge of the FCE Defendants' breaches alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

COUNT IX
(Ward's Liability for Payment of Fees that Differ from Approved Fee Schedules and
for FCE's Administrative Failures)
(Against Defendant Ward)

113.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 112 inclusive.

114.    By causing the Plan to pay fees that differed from the fee schedules approved by Chimes DC, and by failing to disclose such disparities to Chimes DC or maintain adequate records documenting the changes, Ward:

a.    Failed to loyally discharge her fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

b.    Failed to prudently discharge her fiduciary duties, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

c.    Dealt with assets of the Plan in her own interest or for her own account, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1); and

d.    In her individual or in any other capacity, acted in a transaction involving the Plan on behalf of a party (or representing a party) whose interests are adverse to the interests of the Plan or the interests of its participants or beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

115.    As a result of the conduct alleged in this complaint, Ward has joint and several liability for certain breaches of her co-fiduciaries, the FCE Defendants, as alleged herein pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because (1) she knowingly participated in the FCE Defendants' misconduct alleged in Count V by authorizing fee payments that were not in accordance with the fee schedule and not properly recorded, knowing that FCE's computer systems were inadequate, (2) as a result of her failure to comply with her own fiduciary duty to disclose the computer system problems, she enabled the FCE Defendants' breaches alleged in Count V, and (3) she had knowledge of the FCE Defendants' breaches alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

## COUNT X
### (Ward's Liability for Plan's Reimbursements to Chimes DC for Work of Its Full-Time Employee)
### (Against Defendant Ward)

116.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 115 inclusive.

117.    By causing the Plan to pay Chimes DC for work performed by a full-time employee of Chimes DC who otherwise would have been paid by Chimes DC, Ward:

a.    Caused the assets of the Plan to inure to the benefit of the employer Chimes DC, in violation of ERISA §403, 29 U.S.C. §1103;

b.    Failed to loyally discharge her fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

c.    Failed to prudently discharge her fiduciary duties, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

d.    Caused the Plan to engage in a transaction that she knew or should have known constituted a direct or indirect furnishing of goods, services, or facilities between the Plan and a party in interest; in violation of ERISA §406(a)(1)(C), 29 U.S.C. §1106(a)(1)(C);

e.    Caused the Plan to engage in a transaction that she knew or should have known constituted a transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D);

f.    In her individual or in any other capacity, acted in a transaction involving the Plan on behalf of a party (or representing a party) whose interests are adverse to the

interests of the Plan or the interests of its participants or beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

118.    As a result of the conduct alleged in this complaint, Ward caused the Plan to suffer losses for which she is liable, pursuant to ERISA §409, 29 U.S.C. §1109(a).

119.    Ward has joint and several liability for the breaches of her co-fiduciaries alleged herein pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because (1) Ward knowingly participated in her co-fiduciaries' misconduct, (2) as a result of the failure of Ward to comply with her own fiduciary duties, she enabled her co-fiduciaries to commit the breaches alleged herein, and (3) Ward had knowledge of the breaches by her co-fiduciaries alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

120.    As a result of her conduct alleged in this complaint, Ward must provide an accounting of all profits received pursuant to her violations and account for any losses suffered by the Plan, pursuant to ERISA §§409, 29 U.S.C. §1109(a) and 502(a)(5), 29 U.S.C. §1132.

## PRAYER FOR RELIEF

WHEREFORE, the Secretary of Labor prays that this Court enter an Order:

1. Requiring the Chimes Defendants and, FCE Defendants, and Ward to restore all losses caused to the Plan as a result of their fiduciary breaches;

2. Requiring Defendants to provide an accounting of all profits that they received as a result of the violations described in the Complaint;

3. Requiring Defendants to disgorge to the Plan all profits from their fiduciary breaches and prohibited transactions, or from their knowing participation in fiduciary breaches and prohibited transactions;

4. Permanently removing the FCE Defendants, Porter, Beckman, Bussone, Lampner, BCG, ~~and~~ Ramsey, and Ward as fiduciaries and/or service providers to the Plan or any ERISA-covered plan sponsored by Chimes International or any of its subsidiaries or affiliates;

5. Permanently enjoining FCE, Bussone, Lampner, BCG, ~~and~~ Ramsey, and Ward from acting as fiduciaries or service providers for any ERISA-covered employee benefits plan;

6. Appointing a permanent independent fiduciary, appropriately bonded pursuant to ERISA §412, 29 U.S.C. §1112, with control over the Plan and its assets;

7. Requiring Chimes DC, FCE, and ~~FCE~~Ward to provide an accounting of the Plan's claims and fees;

8. Requiring Chimes DC to cause the Plan to comply with the claims processing procedures of section 503;

9. Barring future violations of ERISA; and

10. Granting such other relief as may be equitable, just, and proper.

Dated: ~~October 30, 2015~~April 29, 2016          ~~For the Secretary:~~Respectfully submitted,

                                        M. PATRICIA SMITH
                                        Solicitor of Labor

                                        OSCAR L. HAMPTON III
                                        Regional Solicitor of Labor
                                        ~~Philadelphia Regional Solicitor's Office~~

                                        ~~DOUGLAS N. WHITE~~
                                        ~~Associate Regional Solicitor~~
                                        ~~Arlington Regional Solicitor's Office~~

Mailing Address:                        /
                                        s/~~/~~Evelyn H.
Office of the Solicitor                 Chung
Arlington Regional Solicitor            EVELYN H. CHUNG
201 12th Street~~, Suite 500~~           Senior Trial Attorney
Arlington, VA 22202
~~chung.evelyn@dol.gov~~                  GEOFFREY FORNEY

36

chung.evelyn@dol.gov                          Trial Attorney

                                              Attorneys for Plaintiff
                                              Secretary of Labor
                                              U.S. Department of Labor