## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMAS E. PEREZ, | ) | |
| UNITED STATES SECRETARY | ) | |
| OF LABOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:15-3315-RDB |
| | ) | |
| CHIMES DISTRICT OF COLUMBIA | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### SECRETARY'S RESPONSE TO THE BCG DEFENDANTS' MOTION TO DISMISS

On October 30, 2015, the Secretary of Labor (Secretary) filed a complaint under the

Employee Retirement Income Security Act of 1974 (ERISA) alleging, among other things, that

the defendants violated their fiduciary duties in administering and managing The Chimes D.C.

Health & Welfare Plan (the Plan).  Compl., ECF No. 1.  The complaint alleges in detail how The

Chimes DC, Chimes International, and its executives (collectively, the Chimes defendants) failed

prudently to assess, select, and monitor the Plan's third party administrator, FCE Benefit

Administrators, Inc. (FCE).  The complaint further alleges that the Chimes defendants grossly

overpaid the Benefits Consulting Group (BCG) and its owner, Jeffrey Ramsey, from $400,000 to

$600,000 per year for its services to the Plan, which only amounted to providing participant

communications and client assistance.  Compl., ¶ 41.  BCG's minimal services to the Plan did

not justify the excessive compensation it received.  *Id.*  Moreover, the complaint alleges that the

Chimes defendants, through Lampner and Bussone, solicited consideration from BCG in the

form of "contributions" in exchange for the Plan's continued retention of BCG as a service

provider receiving compensation far in excess of the actual work BCG was performing. *Id.* ¶¶ 32-34.  These allegations are in no way "conclusory," as BCG repeatedly and unconvincingly argues.  They are detailed factual allegations that support BCG's ERISA liability as a knowing participant in prohibited transactions.

Based on BCG's receipt of excessive fees from the Plan for the performance of minimal duties, the Secretary alleges that BCG knowingly participated in the Chimes defendants' prohibited transactions involving the furnishing of goods, services, or facilities between the plan and a party in interest, and the transfer of Plan assets to a party in interest. *Id.* ¶¶ 61, 66.  In addition, based on BCG's knowing payment of kickbacks to the Chimes as consideration for having the Plan continue to retain BCG, the BCG defendants knowingly participated in the Chimes defendants' prohibited transaction of dealing with Plan assets to pay BCG in return for payments from BCG for their own interest. *Id.* ¶¶ 75, 78.

On April 18, 2016, the BCG defendants filed a motion to dismiss arguing that the Secretary's complaint fails to state a claim in addition to raising a statute of limitations defense. *See* ECF No. 87.  The Secretary's response is due on May 16, 2016. *See* Order, ECF No. 89. Because the Secretary's complaint contains more than adequate factual allegations concerning BCG's liability, BCG's motion to dismiss should be denied.

## STATUTORY AND REGULATORY BACKGROUND

ERISA governs welfare plans, which provide "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . ." 29 U.S.C. § 1002(1).  Employers are generally free to adopt, modify, or terminate welfare plans, *see Curtis-Wright Corp. Schoonejongen*, 514 U.S. 73, 78-81 (1995), but once a plan is established,

fiduciaries under the plan are bound by the statutory restrictions and fiduciary requirements.  *See* 29 U.S.C. § 1104(a); *Aetna Health v. Davila*, 542 U.S. 200, 218-19 (2004).

ERISA imposes on fiduciaries three different but overlapping standards, including the duty of loyalty, the duty of prudence, and the duty to act for the exclusive purpose of providing benefits to plan participants.  *See* 29 U.S.C. § 1104(a)(1)(A)-(B); *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982).  Congress meant for the courts to interpret the fiduciary standards through the development of a federal common law of rights and obligations under the statute, *see Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996), with the underlying principle that fiduciary duties are "the highest known to the law."  *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 356 (4th Cir. 2014) (citation omitted).  Breaching these duties subjects the fiduciary to personal liability to make good to the plan any losses resulting from any breach of fiduciary duty.  *See* 29 U.S.C. § 1109(a); *Tatum,* 761 F.3d at 356.

To ensure that plans have adequate protection, the statute precludes self-dealing transactions between a fiduciary and the plan, including prohibiting a fiduciary from dealing with the assets of the plan in his own interest or for his own account, and receiving any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving plan assets.  *See* 29 U.S.C. § 1106(b)(1), (3); *Pipefitters Local 636 Ins. Fund v. Blue Cross and Blue Shield*, 722 F.3d 861, 868 (6th Cir. 2013).  There is no statutory exception to the prohibition on fiduciary self-dealing.  *See* 29 C.F.R. §§ 2550.408b-2(a), 2550.408c-2(a); *Nat'l Sec. Systems v. Iola*, 700 F.3d 65, 94-95 (3d Cir. 2012).  Moreover, a non-fiduciary must disgorge profits relating to his knowing participation in a fiduciary's prohibited self-dealing.  *See LeBlanc v. Cahill*, 153 F.3d 134, 152-53 (4th Cir. 1998).

ERISA also prohibits a fiduciary from causing the plan to engage in a transaction that she knows or should know constitutes a direct or indirect furnishing of goods, services, or facilities between the plan and a party in interest.  *See* 29 U.S.C. § 1106(a)(1)(C).[1]  The statute further prohibits a fiduciary from causing the plan to engage in a transaction, if she knows or should know that such transaction constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of any plan assets.  *See* 29 U.S.C. § 1106(a)(1)(D).  The statute provides a narrow exception to prohibited party-in-interest transactions for "reasonable arrangements" involving "services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor."  29 U.S.C. § 1108(b)(2).  This exception does not apply if the fiduciary fails to show -- as is its burden -- that the services were necessary and have an objective basis.  *See* 29 C.F.R. § 2550.408b-2(a)(1)-(3); *Chao v. Malkani*, 452 F.3d 290, 296 (4th Cir. 2006); *Lowen v. Tower Asset Management*, 829 F.2d 1209, 1215 (2d Cir. 1987) (defendant fiduciary bears the burden of showing that prohibited transaction exception applies).  Moreover, and of particular significance for BCG, a non-fiduciary must disgorge profits relating to his knowing participation in a fiduciary's prohibited transaction with a party in interest.  *See Harris Trust & Sav. Bank v. Salomon Smith Barney,* 530 U.S. 238, 248-49 (2000); *Reich v. Compton*, 57 F.3d 270, 287 (3d Cir. 1995).

### FACTS AND COURSE OF PROCEEDINGS

The Chimes DC established the Plan in 1999, primarily to fulfill the employer's obligations under various government contracts to provide fringe benefits to its employees.  Compl., ¶ 20.  The Plan is a partially self-insured health and welfare plan and is mostly funded

---

[1]  The definition of a "party in interest" includes "any fiduciary" and "a person providing services to such plan."  29 U.S.C. § 1002(14)(A), (B).  The term "person" includes an "individual" "corporation" and "association."  29 U.S.C. § 1002(9).

by contributions required to be paid under The Chimes DC's federal government contracts and federal prevailing wage laws. *Id.* Effective March 15, 2004, The Chimes DC revised the Plan under an Amended Adoption Agreement (Adoption Agreement) "to provide health and welfare benefits for certain eligible employees of [the Chimes DC] and their eligible dependents," with the intent "to comply with the applicable Internal Revenue Code of 1986 . . . and the Employee Retirement Income Security Act of 1974." ECF No. 86-3 at 2 (Adoption Agreement (Recital)).

During the relevant time frame alleged in the complaint, the Amended Adoption Agreement along with the accompanying Fee Schedule and Third Party Administrator Agreement (Administrator Agreement) outlined FCE's duties for the Plan and its related fees. *See* Compl. ¶ 24; ECF No. 67-1 at 24-26, 31-41. Under the Adoption Agreement, FCE is named as the "third party administrator" with responsibilities for receiving, processing, and issuing decisions on all benefits claims for Plan participants. ECF No. 67-1 at 7 (Adoption Agreement § 1.16), 34-35 (Administrator Agreement, Art. IV(a)).

When The Chimes DC retained FCE, it also employed BCG to provide plan representative services. *See* Compl., ¶¶ 18, 41; ECF No. 86-3 at 36-37 (Administrator Agreement, Sec. IV(e)). The complaint alleges that the Chimes defendants, through Lampner and Bussone, solicited consideration from BCG in the form of "contributions" in exchange for continuing to retain BCG as a service provider. *Id.* ¶¶ 32-34. As a result of this arrangement, and despite any agreement between the parties, the Plan suffered losses in the form of BCG's fees. BCG only performed minimal services for the Plan, limited to participant communications and client assistance, and was overpaid by the Plan $400,000 to $600,000 per year. *See* Compl., ¶ 41. BCG's minimal services to the Plan did not justify the excessive compensation that it received. *Id.*

**STANDARD OF REVIEW**

Under to Rule 8(a)(2), a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.  *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Moreover, the Court "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences [from those facts] in favor of the plaintiff."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and quotation marks omitted).  But to survive a motion to dismiss for failure to state a claim, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  To satisfy this standard, a plaintiff need not "forecast" evidence sufficient to prove the elements of the claim.  *See Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 291 (4th Cir. 2009).  The complaint must simply allege sufficient facts to establish the elements of the claim.  *See Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012).  Moreover, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible. *See Braden v. Wal-Mart Stores*, 588 F.3d 585, 594 (8th Cir. 2009).

**ARGUMENT**

**A.  BCG's Excessive Fees**

The defendants contend that the Secretary has no basis for claiming that BCG's fees were excessive, but their contention is based on selectively citing or quoting isolated portions of the

complaint while neglecting to mention additional relevant allegations.  *See* ECF No. 87-1 at 6.

Of course, this tactic has been consistently rejected by the courts, which read complaints as a

whole, not parsing them piece by piece to determine whether each allegation, in isolation, is

plausible.  *See Braden*, 588 F.3d at 594.

As a factual matter, the Secretary alleges that the "Plan paid millions of dollars in

excessive expenses, most of which benefitted the Plan's third party administrator, FCE, and the

Plan representative, BCG."  Compl., ¶ 21.  The complaint further states the basis for the claim

that BCG's fees were excessive by alleging that "the Plan spent millions of dollars more than

would be reasonable for a partially self-funded plan of this size and nature."  *Id*. ¶ 23.  More

specifically, the complaint alleges that the Chimes defendants caused the Plan to overpay BCG

from $400,000 to $600,000 per year for its services to the Plan, which only amounted to

providing participant communications and client assistance.  *Id*. ¶ 41.  BCG's minimal services

to the Plan did not justify the excessive compensation it received.  *Id*.  These allegations

regarding the disparate connection between BCG's fees and the actual services rendered are

more than adequate to state a claim for relief against BCG for knowingly participating in the

Chimes defendants' prohibited transaction of draining Plan assets by paying BCG's

unreasonable fees in terms of its minimal duties for the Plan.  *See* 29 U.S.C. § 1106(a)(1)(C)-(D);

*Braden*, 588 F.3d at 595-96; *Kruger v. Novant Health, Inc.*, --- F. Supp. 3d ---, 2015 WL

5511052, *6 (M.D.N.C. 2015) ("This court finds *Braden* persuasive on the issue of what is

required for a plaintiff to state an excessive fee claim for breach of fiduciary duty under ERISA

at the motion to dismiss stage.").  Moreover, as outlined below, the complaint also alleges that

BCG made contributions to the Chimes defendants as an inducement for the Plan continuing to

pay BCG's fees, which further supports the allegations that BCG's fees were excessive.  Compl., ¶¶ 28, 32, 34.

At this stage of the litigation, the burden shifts to BCG to show that a statutory exception applies to its receipt of fees from the Plan.  *See Braden*, 588 F.3d at 600-01.  The statute provides a narrow exception to the prohibited party-in-interest transactions for "reasonable arrangements" involving "services necessary for the establishment or operation of the plan, if no more than *reasonable compensation* is paid therefor, 29 U.S.C. § 1108(b)(2) (emphasis added), but this exception does not apply if the offending party fails to show that its services were necessary and had an objective basis, *see Malkani*, 452 F.3d at 296.  Thus, BCG bears the burden of showing that its receipt of $400,000 to $600,000 per year from the Plan for services, limited to providing participant communications and client assistance, was reasonable and had an objective basis.

Despite the Secretary's specific allegations regarding BCG's excessive fees for obviously limited duties, the defendants nevertheless argue that the Secretary's excessive fee claim fails for want of providing a supposedly required benchmark for comparing FCE's rates.  ECF No. 87-1 at 8.  Defendants' contention is not based on any rule under ERISA, but stems from a requirement that some circuits have read into the investment advisor fiduciary obligations under the Investment Company Act of 1940.  *See* 15 U.S.C. § 80a-35(b); *Krinsk v. Fund Asset Management*, 875 F.2d 404, 411-12 (2d Cir. 1989).

The most obvious difficulty with defendants' argument on this point is that ERISA does not require a plaintiff to make an allegation of that fees are unreasonable when alleging a prohibited transaction.  *See* 29 U.S.C. § 1106(a)(1).  Because the statute contains an exemption to the prohibited transaction rule for the payment of "reasonable compensation" for "reasonable arrangements," 29 U.S.C. § 1108(b)(2), the burden is on the defendant to show that its

compensation was reasonable, *see Braden*, 588 F.3d at 601-02.  Moreover, the statute does not require any specific benchmark for determining whether a fiduciary has breached his duty of prudence in hiring service providers.  *See* 29 U.S.C. § 1104(a)(1)(B).  Under ERISA, fiduciaries bear the unwavering duty to preserve trust property, *see Central States, Southeast and Southwest Area Pension Fund v. Central Transpor*t, 472 U.S. 559, 571 (1985), and they must correspondingly evaluate the fees of any service provider in terms of the plan's specific needs. *See* 29 C.F.R. § 2509.75-8, FR-17; *Restatement (Third) of Trusts* §§ 76, cmt. d, 80 cmt. d(2). Whether a fiduciary fulfills his duty of prudence in that connection is a fact-specific inquiry turning on the specific needs of the plan.  *See Srein v. Frankford Trust Co*., 323 F.3d 214, 223 (3d Cir. 2003) (whether a fiduciary meets the standard under 29 U.S.C. § 1104(a)(1)(B) is a "fact intensive issue"); *Restatement (Third) of Trusts* § 77 cmt. a.  Because the burden is on the defendants to show that their fees were reasonable in terms of the specific circumstances of the plan, the plaintiff is not required to plead a specific benchmark to state a prohibited transaction claim.

Relatedly, there is no legitimate basis for importing the lower fiduciary standards under the Investment Company Act into ERISA, which incorporates the fiduciary duties from the common law of trusts, the highest duties known to the law.  *See Tatum*, 761 F.3d at 356; *Restatement (Third) of Trusts* § 2 cmt. b ("The duties of a trustee are more rigorous than those of most other fiduciaries.").   For this reason, defendants' reliance on the Second Circuit's unpublished decision in *Young v. General Motors Investment Management Corp*., 325 F. App'x 31 (2d Cir. 2009), is misplaced.  *See* ECF No. 87-1 at 6-7.

Without any reasoning or justification, the Second Circuit's unpublished decision in *Young* applied the test for excessive fees under the Investment Company Act to the plaintiff's

ERISA claims.  *See Young,* 325 F. App'x at 33.  Setting aside the fact that the *Young* Court's

unpublished opinion failed to provide any reasoning justifying its decision, the court's

unsupported opinion is further undermined by the Supreme Court's subsequent clarification that

the fiduciary standards under the Investment Company Act are less demanding than the fiduciary

standards under the law of trusts.  In *Jones v. Harris Associates*, the Supreme Court adopted a

standard it had articulated in an earlier decision pertaining to controlling shareholder fiduciary

duties in the corporate law context to determine whether an investment advisor's fees were

excessive under the Investment Company Act.  559 U.S. 335, 346-47 (2010).  Because it is

settled law that the more demanding fiduciary standards under the common law of trusts apply to

ERISA fiduciaries, *see Tatum*, 761 F.3d at 356, the lower fiduciary standards under the

Investment Company Act have no application to an excessive fee claim under ERISA.  Thus, the

line of cases settling the elements required to state an excessive fee claim under the Investment

Company Act do not apply in this case.

       Even if the standards under the Investment Company Act did apply in the ERISA

context, which again is highly doubtful, the allegations in the complaint in this case state a cause

of action under controlling Fourth Circuit case law.  To survive a motion to dismiss under the

Investment Company Act on an excessive fee claim, the plaintiff must allege facts regarding the

"relationship between the fees charged and the services rendered by the investment advisor."

*Migdal v. Rowe Price-Fleming International*, 248 F.3d 321, 327 (4th Cir. 2001).  Under this

standard, the complaint must allege facts about the particular services offered by the defendant

investment advisor.  *Id*.  Because the complaint here alleges sufficient detail regarding BCG's

fees in the context of its exceedingly limited duties under the Plan, the Secretary easily states a

claim under Fourth Circuit case law.  Compl., ¶¶ 23, 41.

The BCG defendants also rely on cases discussing excessive fee claims against mutual fund advisors, but these cases have no bearing on the allegations or claims in this case.  For example, the decision in *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011), is distinguishable on the ground that it simply reaffirmed as a matter of law that it is not per se imprudent for a plan administrator to offer retail mutual funds as opposed to institutional funds because despite the cost of retail funds, they carry off-setting advantages to plan participants.  *See Loomis*, 658 F.3d at 671-72.  Unlike the situation in *Loomis*, the allegations here have nothing to do with selecting retail versus institutional funds and the comparative advantages between these two investment vehicles.  Rather, the Secretary's claims in this case against BCG involve a fiduciary overpaying BCG for minimal work performed for the Plan.  Compl., ¶¶ 21-23, 41.  Moreover, unlike the operative policy considerations motivating the court in *Loomis* to encourage plan participants' freedom of choice in investment options, *see* 658 F.3d at 673, the complaint in this case makes clear that the Chimes defendants and BCG ensured BCG's capture as an overpaid service provider through BCG's payment of kickbacks to the Chimes defendants.  Compl., ¶¶ 28, 32, 34-35.  Thus, unlike *Loomis*, the plan participants here have no choice in plan administrative matters, and have been consistently harmed by the Chimes defendants' and BCG's self-dealing arrangements to ensure the continuation of BCG as an overpaid service provider.

Similarly, *Goldenberg v. Indel*, 741 F. Supp. 2d 618 (D.N.J. 2010), provides no basis for BCG's motion to dismiss.  In that case, the district court held that an excessive fee claim against an investment advisor requires more than "[a] bare comparison of fees between different kinds of service providers."  *Id*. at 631.  But the complaint here is not based on a bare comparison of fees between service providers.  Rather, the complaint alleges that the Chimes defendants caused the Plan to overpay BCG in terms of the minimal work it actually performed for the Plan.  Compl.,

¶ 41.  For the same reason, the defendants' reliance on *Lee v. Verizon Communications*, 954 F. Supp. 2d 486, 494 (N.D. Texas 2013), is misplaced because that case involved a complaint that did not specify how the fees at issue were unreasonable, unlike the allegations here that identify the exceedingly limited role that BCG performed for the Plan.

### B.  FCE's Payment of Kickbacks to the Chimes Defendants

The BCG defendants assert that the Secretary is only advancing "legal conclusions" by alleging that BCG paid $282,500 to the Chimes defendants and provided discounts to The Chimes DC for other matters in consideration for The Chimes DC causing the Plan to retain and pay inflated fees to BCG as a service provider.  ECF No. 87-1 at 9.  These allegations are not legal conclusions, contrary to the defendants' mistaken characterization.  In any event, the defendants have not and cannot demonstrate that these factual allegations fail to establish a claim against BCG as a knowing participant in a prohibited transaction.

The complaint alleges that the Chimes defendants, through Lampner and Bussone, solicited consideration from BCG in the form of "contributions" in exchange for the Plan continuing to retain and pay BCG fees that were unwarranted in terms of the actual work BCG was performing.  Compl., ¶¶ 32-34.  As a matter of law, these contributions constitute prohibited self-dealing transactions under 29 U.S.C. § 1106(b)(3), *see Lowen*, 829 F.2d at 1214, for which there is no "good faith" defense and which require BCG as non-fiduciary knowing participant in the prohibited transactions to disgorge its profits received through its participation in these fiduciary breaches.  *See Iola,* 700 F.3d at 91; *Restatement (Third) of Trusts* § 78, cmt. d(1).

The BCG defendants also miss the basic point that a plan sponsor like The Chimes DC breaches its fiduciary duty to the Plan when it solicits and receives a "contribution" from a service provider in consideration for causing the Plan to retain a service provider that is not in

the interest of the Plan beneficiaries.  *See* 29 U.S.C. § 1104(a)(1); *Waller v. Blue Cross of California*, 32 F.3d 1337, 1342 (9th Cir. 1994); *Scott and Ascher on Trusts* § 17.2.8 at 1122 (5th ed. 2007).  Because the Secretary alleges a connection between the Chimes defendants acting as fiduciaries in retaining BCG as a service provider and BCG's "contributions" to the Chimes defendants, the complaint contains sufficient detail to state a claim against BCG for knowingly participating in a fiduciary breach.

Based on the detailed allegations in the complaint, the defendants' reliance on a non-binding Department statement purportedly made to the American Bar Association is misplaced. ECF No. 87-1 at 9-10.  The complaint here alleges in no uncertain terms that BCG's contributions to the Chimes defendants were not made "merely" as disinterred charitable donations, nor did the Chimes defendants solicit these donations "merely" as an exercise in charity.  Rather, as alleged in the complaint, BCG paid consideration to the Chimes Foundation in exchange for The Chimes DC continuing to cause the Plan to employ BCG as a Plan service provider.  Compl., ¶¶ 29, 32, 34.  Between 2009 and 2014 the Chimes defendants, through Lampner and Bussone, solicited consideration from BCG in the form of "contributions" in the amount of $282,500 in exchange for continuing to retain BCG as a service provider receiving compensation far in excess of the actual work BCG was performing.  *Id.* ¶¶ 32-34, 41.

Moreover, the defendants' argument (ECF No. 87-1 at 10) that the actual recipient of the kickbacks, the Chimes Foundation, operated as a separate legal entity from The Chimes DC is irrelevant because the complaint clearly alleges that the Chimes International is the parent company of the Chimes Foundation, and any donations to the Chimes Foundation constitute consideration to Chimes International.  Compl., ¶ 27.  The complaint alleges that the affiliate, the Chimes Foundation, is the fundraising arm of the Chimes International, of which Defendants

Lampner and Bussone were officers when BCG paid its kickbacks. *Id*. ¶¶ 12-13, 27.  Likewise,

The Chimes DC had access to funds in the Chimes Foundation because the Chimes Foundation

was the fund-raising arm to all of Chimes International's subsidiaries, including Chimes DC.  *Id*.

¶ 27.  The Chimes DC and Chimes International, acting through Lampner and Bussone, cannot

evade their obligations as a fiduciary by interposing an affiliated corporation to do that which

neither The Chimes DC nor Chimes International cannot do.  *See Lowen*, 829 F.2d at 1220

("Parties may not use shell-game-like maneuvers to shift fiduciary obligations to one legal entity

while channeling profits from self-dealing to a separate legal entity under their control.").

### C.  Equitable Tracing is Not Required

As an alternative argument, the BCG defendants contend that the Secretary cannot seek

equitable relief against BCG and Ramsey as knowing participants in fiduciary breaches because

in their view the Secretary must show that the BCG defendants are still in possession of the

proceeds they received from the Plan.  ECF No. 87-1 at 10-11.  Defendants' argument

misconstrues the remedies that the Secretary seeks in this case against BCG and Ramsey.  As

stated in the complaint, the Secretary is not seeking an equitable lien on specific property, so

defendants' reliance on *Montanile v. Board of Trustees*, 136 S. Ct. 651 (2016), involving an

equitable lien issue, has no bearing on the relief sought in this case.[2]  Rather, the complaint here

seeks to disgorge the profits that BCG and Ramsey realized as a result of their participation in

the Chimes defendants' causing the Plan to pay BCG unreasonable fees for minimal work and by

accepting contributions from BCG in connection with Plan work.  Compl., ¶¶ 66, 78.

---

[2]  An equitable lien concerns by definition specific property flowing from a trust. *See Restatement (Third) of Restitution* §§ 55, cmt. f, 56, cmt. b; George Bogert, *Handbook of the Law of Trusts* 504, 509 (West 1921).  Accounting for profits, on the other hand, "conern[s] identification and measurement of those gains to the defendant that should be regarded as unjust enrichment, in that they are properly attributable to the defendant's interference with the claimant's legally protected right." *Restatement (Third) of Restitution* § 51, cmt. a.

Compelling a third party to disgorge profits in connection with a fiduciary breach is an appropriate equitable remedy under ERISA, *see LeBlanc v. Cahill*, 153 F.3d 134, 152-53, which does not require an equitable tracing of specific trust assets, *see Iola*, 700 F.3d at 101.

The Secretary is authorized to pursue a civil action to enjoin any act or practice which violates any provision of ERISA and to obtain other appropriate equitable relief, *see* 29 U.S.C. § 1132(a)(5), including an "accounting for profits" to disgorge the financial gains stemming from a breach of duty. *Pender v. Bank of America Corp.*, 788 F.3d 354, 365-66 (4th Cir. 2015). A non-fiduciary, third party who obtains a benefit in consequence of another's fiduciary breach is also liable in restitution or "accounting for profits" to the person to whom the duty is owed. *See Restatement (Third) of Restitution* § 43, cmt. g. In that connection, the focus is on the third party's consequential gain, not harm to the beneficiaries or the plan. *Id*. cmt. h. The plaintiff seeking an accounting for profits is not required to identify a particular res containing the profits sought to be recovered. *See Great West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 n.2 (2002). Rather, the plaintiff may seek to disgorge the profits or net increase attributed to the defendants' underlying wrong. *See In re Beacon Associates Litigation*, 818 F. Supp. 2d 697, 708 (S.D.N.Y. 2011); *Restatement (Third) of Restitution* § 51, cmt. g. The plaintiff is only required to show a reasonable approximation of the third party's unjust enrichment arising from a fiduciary breach, after which the burden shifts to the defendant to show that the unjust enrichment is something less. *Id*. cmt. i.

The Secretary has met his initial burden of alleging how the BCG defendants profited $400,000 to $600,0000 per year as a result of participating in the Chimes defendants' fiduciary breaches. The complaint shows how the Chimes defendants caused the Plan to pay BCG excessive fees for minimal work and continued to compel the Plan to pay BCG an enhanced rate

in exchange for the Chimes defendants' receiving payments and discounts from BCG.  Compl., ¶¶ 28, 32, 34-35, 41.  As such, the complaint shows that BCG knowingly accepted from the Plan fees that were unwarranted in terms of the minimal work it performed.  BCG further induced the Chimes defendants, through kickbacks, to compel the Plan to continue retaining BCG at an unwarranted enhanced rate.  The Secretary seeks through an accounting for profits to disgorge the amount of unwarranted fees that BCG received from the Plan, which is a form of relief that sounds in equity and is available under ERISA.  *See Iola*, 700 F.3d at 101.  Under established pleading standards, the burden now shifts to the BCG defendants to show that the unjust enrichment alleged is something less.  *See Restatement (Third) of Restitution* § 51, cmt. i.  Because equitable tracing has no place under an accounting for profits, the defendants' sole argument in opposition to the relief sought here necessarily fails.

Even supposing for the sake of argument that equitable tracing is required in this case in connection with the Plan assets BCG received as a result of a fiduciary breach, the Secretary has met his initial burden of showing the transactional nexus between the Plan assets and BCG's receipt of them.  *See* Compl., ¶¶ 41, 66; *Restatement (Third) of Restitution* § 58, cmt. e (plaintiff is only required to make an initial showing of the transactional nexus on which the tracing depends).  The complaint satisfies the plaintiff's initial burden of identifying the particular assets at issue, namely, the funds that the Plan paid to BCG for work purportedly done under the Adoption Agreement.  *See Restatement (Third) of Restitution* § 59, cmt. b.

As a defense, BCG now asserts that it is no longer in possession of the Plan's assets, but this assertion of a new alleged fact is an affirmative defense, *see Emergency One, Inc. v. American Fire Eagle Engine Co*., 332 F.3d 264, 271 (4th Cir. 2003) (defining affirmative defenses), which the BCG defendants have the burden of proving, *see Surles v. Andison*, 678

F.3d 452, 458 (6th Cir. 2012).  BCG cannot defeat the Secretary's complaint by raising this affirmative defense.  Yet, even if the BCG defendants did not bear the burden of proving this alleged new matter, the Secretary is still entitled to discovery on the issue to show that the defendants' assertion is misplaced or that the actual facts entitle the Secretary to the benefit of equitable presumptions in favor of tracing the assets where they may be obtained through equity. *See Restatement (Third) of Restitution* § 59, cmt. b.  In any event, this new matter regarding BCG's supposed dissipating of assets cannot be resolved at this stage of the proceedings, but must be advanced or defeated based on the facts developed through discovery.

### D.  The Secretary's Claims Fall within ERISA's Statute of Limitations

Finally, the BCG defendants argue that ERISA does not prescribe an applicable statute of limitations in connection with the claims against them as non-fiduciary, parties in interest.  ECF No. 87-1 at 13-14.  Without an applicable ERISA statute of limitations provision, the defendants contend that the claims against the BCG defendants are analogous to a cause of action for common law conversion, which in Maryland must be brought within three years from the date it accrues.  *Id.*; Md. Code, Courts and Judicial Proceedings § 5-101.  This argument fails because it ignores the way in which the courts apply the fiduciary standards falling under ERISA's statute of limitations to claims against non-fiduciary parties in interest like BCG.

ERISA provides that "[n]o action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of" six years after the date of the last action constituting a part of the breach or violation, or three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.  29 U.S.C. § 1113.  The defendants argue that the phrase "this part," which presumably refers to Part 4 "Fiduciary Responsibility," containing 29

U.S.C. § 1101 through 29 U.S.C. § 1114, means that claims brought under 29 U.S.C.

§ 1132(a)(5) against non-fiduciary parties in interest do not fall within the six year statute of

limitations.  ECF No. 87-1 at 13.  Several courts have rejected this argument.  *See Iola*, 700 F.3d

at 99-100 (applying § 1113 to a knowing participation claim under 29 U.S.C. § 1132(a)(3));

*Radford v. Gen. Dynamics Corp.*, 151 F.3d 396, 399 (5th Cir.1998) (same); *but see Wright v.

Southwestern Bell Telephone Co.*, 925 F.2d 1288 (10th Cir. 1991).

  In *Cherochak v. Unum Life Insurance*, 586 F. Supp. 2d 522 (D.S.C. 2008), the court

rejected the same argument that BCG advances in this case.  The court noted that defendants'

argument for excluding claims under 29 U.S.C. § 1132(a)(3) from ERISA's statute of limitations

provision ignores the fact that claims under 29 U.S.C. § 1132(a)(3) involving fiduciary breaches

necessarily turn on the fiduciary standards set forth under "Part 4," which falls within the scope

of the statute of limitations.  *See Cherochak*, 586 F. Supp. 2d at 529.  The same principle applies

to the Secretary's claims against BCG under 29 U.S.C. § 1132(a)(5),[3] which turn on BCG's

knowing participation in fiduciary breaches prohibited under Part 4 of the statute.  *See* Compl.,

¶¶ 66, 75; *see also* 29 U.S.C. §§ 1104(a)(1) (duty of loyalty and prudence), 1106(a)-(b)

(prohibited transactions).  As the *Cherochak* Court further noted, its decision finds support in

related Fourth Circuit cases strongly implying that any claim alleging a breach of a fiduciary

duty falls under ERISA's statute of limitations.  586 F. Supp. 2d at 530 (relying on *Shofer v.*

---

[3]  Sections 1132(a)(3) and 1132(a)(5) both provide a cause of action against any "other person"
who "knowing[ly] participat[es]" in a fiduciary's violation.  *Harris Trust*, 530 U.S. at 248-49.
Section 1132(a)(5) provides the Secretary with a cause of action against knowing participants.

*Hack Co.*, 970 F.2d 1316, 1318 (4th Cir. 1992)).[4]  For the same reason, the Court should reject

BCG's statute of limitations argument in this case.

Even if the BCG defendants were correct that ERISA's statute of limitations did not

apply to the claims against them, they still would not benefit from the more limited Maryland

statute of limitations.  Rather, BCG knowingly participated and benefited from a fiduciary

breach occurring under the Adoption Agreement, signed by Jeffrey Ramsey, which is governed

by the laws of the State of California.  *See* ECF No. 86-3 at 36 (Art. IV(e) naming BCG as the

"Plan Representative"), 40 (Art. VIII(f) containing the governing law), 41 (signed by "Jeff

Ramsey").  The most analogous California statute pertaining to the Secretary's claims against

BCG for knowingly participating in fiduciary breaches is the catchall four-year statute of

limitations applicable to aiding and abetting a fiduciary breach.  *See* Cal. Code Civ. P. 343;

*American Master Lease LLC v. Idanta Partners*, 225 Cal. App. 4th 1451, 1477-78 (2014).

Because BCG's owner, Ramsey, signed the Adoption Agreement under which BCG accepted

overpayments from the Plan, Ramsey and BCG had knowledge that trust assets were at issue in

the overpayments made to BCG.  *See AirTran Airways v. Elem*, 771 F. Supp. 2d 1344, 1351

(N.D. Ga. 2011).  By providing kickbacks to the Chimes defendants as an inducement for The

Chimes DC continuing to compel the Plan to overpay BCG, the BCG defendants are liable for

aiding and abetting fiduciary breaches, which under California law is governed by a four-year

statute of limitations.  *See In re Brocade Communications Systems, Inc. Derivative Litigation*,

615 F. Supp. 2d 1018, 1036 (N.D. Cal. 2009) (fiduciary breaches are subject to the four-year

statute of limitations).  Thus, if ERISA's six year statute of limitations does not apply, under the

---

[4]  Claims challenging denied benefits under 29 U.S.C. § 1132(a)(1)(B) do not fall within
ERISA's statute of limitations, *see Pender*, 788 F.3d at 368, but the Secretary's complaint here
does not involve a claim under 29 U.S.C. § 1132(a)(1)(B).  *See* Compl., ¶¶ 59-92.

applicable California statute, BCG is liable to disgorge its profits stemming from its knowing participation in fiduciary breaches for four years from the date the Secretary filed the complaint on October 30, 2015.  *See* ECF No. 1.

## CONCLUSION

Based on the foregoing, the BCG defendants' motion to dismiss has no legal basis and fails to defeat the Secretary's well-pled complaint.  The Court should deny the defendants' motion and enter an appropriate scheduling order for discovery in this case.

Dated:  May 16, 2016                                Respectfully,

M. PATRICIA SMITH
Solicitor of Labor

OSCAR L. HAMPTON III
Regional Solicitor of Labor

By:      s/Geoffrey Forney
GEOFFREY FORNEY
Trial Attorney
United States Department of Labor
Office of the Solicitor
170 S. Independence Mall West
Curtis Center, Ste. 630E
Philadelphia, PA 19106
215-861-5137/ forney.geoffrey@dol.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 16, 2016, I electronically filed the foregoing SECRETARY'S

RESPONSE TO THE BCG DEFENDANTS' MOTION TO DISMISS with the Clerk of Court

by using the CM/ECF system, which will provide notice and an electronic link to this document

to the following attorneys of record:

Theresa Gee (tgee@milchev.com)
Robert Eassa (robert.eassa@sedgwicklaw.com)
David Crutcher (david@crutcherlaw.com)
Brooks R. Amiot (amiot@jacksonlewis.com)
Douglas William Desmarais (ddesmarais@smithdowney.com)
Delia A. Isvoranu (delia.isvoranu@sedgwicklaw.com)
Marc A. Koonin (marc.koonin@sedgwicklaw.com)
Ramsay C McCullough  (Ramsay.McCullough@jacksonlewis.com)
Kerstin Marie Miller (kmiller@smithdowney.com)
Dawn Elise Murphy-Johnson (dmurphyjohnson@milchev.com)

s/ Geoffrey Forney
GEOFFREY FORNEY
Trial Attorney
United States Department of Labor