IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                                          |     |                               |
|----------------------------------------------------------|-----|-------------------------------|
| THOMAS E. PEREZ,<br>Secretary of Labor,                  | *   |                               |
| Plaintiff,                                               | *   |                               |
| v.                                                       | *   | Civil Action No.: RDB-15-3315 |
| CHIMES DISTRICT OF<br>COLUMBIA, INC., *et al.*,          | *   |                               |
|                                                          | *   |                               |
| Defendants.                                              | *   |                               |
|                                                          | *   |                               |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

United States Secretary of Labor, Thomas E. Perez, ("the Secretary") has brought a ten-count Amended Complaint against Chimes D.C. Inc. Health & Welfare Plan (the "Plan") and its alleged fiduciaries and service providers, including Defendants Chimes District of Columbia, Inc.; Chimes International Ltd; FCE Benefit Administrators, Inc.; Gary Beckman; Stephen Porter; Martin Lampner; Albert Bussone; Benefits Consulting Group; Jeffrey Ramsey; and Marilyn Ward, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.* First Am. Compl., p. 1-2, ECF No. 102. Currently pending before this Court is Defendants FCE Benefit Administrators, Inc. ("FCE"), Gary Beckman, and Stephen Porter's[1] (the "FCE Defendants") Motion to Dismiss (ECF No. 67)[2]. The parties' submissions have been

---

[1] As explained *infra*, the First Amended Complaint alleges that Beckman and Porter are FCE's owners.

[2] Pursuant to this Court's Letter Order of June 6, 2016 (ECF No. 101), the FCE Defendants' pending Motion to Dismiss the Complaint shall be treated as a Motion to Dismiss the First Amended Complaint.

reviewed, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2016).  For the reasons

stated herein, the FCE Defendants' Motion to Dismiss (ECF No. 67) is DENIED[3].

<u>BACKGROUND</u>

In a ruling on a motion to dismiss, this Court must accept the factual allegations in

the plaintiff's complaint as true and construe those facts in the light most favorable to the

plaintiff.  *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Harris v.

Publish Am., LLLP*, No. RDB-14-3685, 2015 WL 4429510, at *1 (D. Md. July 17, 2015).  The

alleged facts of this case, in relevant part[4], are as follows:

Chimes D.C., Inc. ("Chimes DC") is a Washington, D.C. corporation established

under Section 501(c)(3) of the Internal Revenue Code.  First Am. Compl., ¶ 10, ECF No.

102.  Chimes DC "is a federal government contractor who employs disabled workers for

janitorial and custodial service."  *Id.*  Chimes DC "established  the [Chimes D.C. Inc. Health

& Welfare Plan (the "Plan")] to provide a package of medical, prescription, life insurance,

accidental death and dismemberment, disability, and unemployment benefits" to its

employees.  *Id.* at ¶ 2.  Defendant Marilyn Ward ("Ward") was a "Plan trustee and named

fiduciary of the Plan."  *Id.* at ¶ 20.   At all relevant times, Chimes DC "was the Plan Sponsor

and named Plan Administrator of the Plan" and "had and exercised discretionary authority

and discretionary control respecting the appointment, retention, and payment of the Plan's

service providers, insurers, and/or fiduciaries, including FCE Benefit Administrators, Inc.

---

[3] The following Motions to Dismiss remain pending before this Court: Defendants Chimes District of Columbia, Inc., Chimes International, Ltd., Martin Lampner, and Albert Bussone's (collectively, the "Chimes Defendants") Motion to Dismiss (ECF No. 86); Defendants Benefits Consulting Group and Jeffrey Ramsey's Motion to Dismiss (ECF No. 87); and Defendant Marilyn Ward's Motion to Dismiss (ECF No. 124).
[4] Only Counts I, II, IV, V, and VI of the First Amended Complaint raise claims against the FCE Defendants. Accordingly, allegations pertaining specifically to the remaining counts, Counts III, VII, VIII, IX, and X, are omitted.

("FCE"). *Id.* at ¶ 10. Defendant Chimes International, Ltd ("Chimes International") was the parent company of Chimes DC and the Chimes Foundation, Inc. (the "Chimes Foundation"), a fundraising arm of Chimes International and its subsidiaries. *Id.* at ¶ 11.

Defendant Albert Bussone ("Bussone") has served as Chief Development Officer and Vice President of Chimes DC and Chief Operating Officer and Executive Vice President of Chimes International. *Id.* at ¶ 12. Martin Lampner ("Lampner") has served as Executive Vice President, President, and Chief Financial Officer of Chimes DC and Executive Vice President and Chief Financial Officer of Chimes International. *Id.* at ¶ 13.

At all relevant times, "Defendant FCE was the third party administrator of the Plan." *Id.* at ¶ 14. As the Plan's third party administrator, FCE exercised "discretionary control or discretionary authority over claims processing, payment of claims, recordkeeping, coverage administration, and negotiating the Plan's contracts with service providers and/or insurers, and exercised authority or control over Plan assets." *Id.* Accordingly, the Secretary alleges that "FCE was a Plan fiduciary" under Section 3(21)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(21)(A). *Id.* Defendant Gary Beckman ("Beckman") and Defendant Stephen Porter ("Porter")[5] were 50 % owners and officers of FCE and, accordingly, were parties in interest under ERISA Sections 3(14)(B) and (H), 29 U.S.C. § 1002(14)(B), (H). *Id.* at ¶¶ 15-16. The Plan's relationship with FCE was governed by the Amended and Restated Adoption Agreement for the Health & Welfare Plan of The Chimes, D.C., Inc. and its accompanying exhibits, including the fee schedule for the Third Party Administrator Agreement (collectively, the "Adoption Agreement"). *Id.* at ¶ 25.

---

[5] Collectively, FCE, Beckman, and Porter are referred to as the "FCE Defendants."

From at least 2008 to the present, Chimes DC, Chimes International, Lampner, and Bussone (collectively the "Chimes Defendants") "have had responsibility for prudently and loyally monitoring the Plan's administration and expenses, including the performance and fees of service providers appointed by the Chimes Defendants." *Id.* at ¶ 22. "Every year, the Chimes Defendants received financial and other reports summarizing the Plan's expenses and administration." *Id.* at ¶ 23. However, "the Plan has spent millions of dollars more than would be reasonable for a partially self-funded plan of this size and nature." *Id.* at ¶ 24. "Most of the Plan's expenses were used to pay FCE and [Benefits Consulting Group's ("BCG")][6] fees and to pay service providers who were selected and recommended by FCE and whose fees were negotiated by FCE." *Id.*

"The Adoption Agreement granted Chimes DC authority to appoint, retain, and/or remove the Plan's service providers, including [FCE]." *Id.* at ¶ 26. While serving as officers of Chimes DC and/or Chimes International, Defendants Lampner and Bussone "solicited" FCE "to make donations to the Chimes Foundation." *Id.* at ¶ 28. The assets of the Chimes Foundation "could be used by Chimes International and any subsidiary of Chimes International, including Chimes DC." *Id.* FCE made donations to the Chimes Foundation as early as 2008. *Id.* at ¶ 29. "In 2009 and thereafter . . . FCE [and BCG] jointly pledged at least $330,000 to the Chimes Foundation." *Id.* at ¶ 30. "In making one such pledge, FCE and BCG expressly referenced their status as service providers to Chimes and their 'special relationship' and 'gratifying partnership' with the Chimes." *Id.* Between 2009 and 2014, "FCE paid at least $400,000 to the Chimes Foundation in connection with its engagement as

---

[6] BCG is another Plan service provider, "engaged to provide plan representation services." *Id.* at ¶ 18.

service provider to the Plan." *Id.* at ¶ 31. Additionally, "[i]n 2010, Lampner solicited FCE to employ his child and FCE hired his child." *Id.* at ¶ 32. The Secretary alleges that FCE's employment of Lampner's child was "in connection with the Plan's retention of FCE." *Id.* at ¶ 82.

"[D]uring the Chimes Defendants' renewal of FCE's engagement in 2009 and 2011, Lampner took part in the negotiation of FCE's fees and recommended . . . that FCE's engagement under the Adoption Agreement be renewed." *Id.* "In 2009 and 2011, the Governance Committee of the Board of Directors of Chimes International and Chimes DC (the "Governance Committee") reviewed Chimes DC's contract with FCE and BCG . . . and were informed by Bussone and Lampner of the amount of donations pledged by FCE to BCG." *Id.* at ¶ 36. "Lampner and Bussone assured the Governance Committee that they had consulted with an independent broker, who was unable to find suitable alternative providers to FCE." *Id.* at ¶ 37. However, in 2004 "an independent broker had identified possible alternative providers for Bussone and Lampner, but the Chimes Defendants failed to request bid proposals from these alternative providers or even set up meetings to discuss their services and fees." *Id.* at ¶ 38. "The Chimes Defendants did not take other steps to ensure that FCE's fees were reasonable, such as consulting with an independent expert regarding FCE's fees or comparing FCE's fees to industry benchmarks." *Id.* at ¶ 41. In 2009 and again in 2011, "the Governance Committee approved the extensions to Chimes DC's contract with FCE and BCG to perform services for the Plan." *Id.* at ¶ 43. "The retention of FCE and BCG in connection with the Chimes Defendants' receipt of payments and other benefits caused losses to the Plan, including but not limited to FCE and BCG's

excessive fees, and profited the Chimes Defendants in the form of [inter alia] the charitable contributions . . . ." *Id.* at ¶ 44.

Consistent with the Adoption Agreement, "FCE had and exercised fiduciary authority to recommend, negotiate, and execute contracts between the Plan and various service providers, thereby exercising authority and control over the management of Plan assets." *Id.* at ¶ 45. In connection with the Plan's contracts with these service providers, "the FCE Defendants caused FCE to receive rebates, commissions, and other payments from the service providers . . . in addition to fees paid directly by the Plan." *Id.* "Chimes DC and FCE had agreed that, with a few specific exceptions, any commissions or rebates paid by the Plan service providers to FCE should be forwarded to the Plan." *Id.* at ¶ 47. However, "[c]ontrary to this agreement . . . FCE failed to forward all payments that it received from service providers to the Plan" and failed to disclose this to Chimes DC, "fraudulently concealing its receipt of additional, unauthorized compensation." *Id.* at ¶¶ 48-49. "In addition to the payments that FCE retained without Chimes DC's approval, FCE received other payments from Plan service providers that FCE disclosed to Chimes DC and that Chimes approved." *Id.* at ¶ 52. These  payments "were made in connection with the Plan's contracts for life insurance, accidental death and dismemberment insurance, and prescription drug benefits." *Id.* "FCE's retention of payments from Plan service providers . . . caused losses to the Plan, and FCE improperly received profits." *Id.* at ¶ 53.

Additionally, FCE "failed to prudently manage the Plan and its assets." *Id.* at ¶ 66. In particular, FCE [f]ailed to maintain a computer system capable of accurately calculating fees to FCE and the Plan's trustees; [f]ailed to maintain accurate records, including

calculations and supporting documentation for Plan expenses and payments to FCE and participant information; [f]ailed to administer a reasonable claims procedure, including establishing protocols such as claims audits, claims manuals, and trainings, to ensure timely and consistent adjudication of claims; [f]ailed to timely update coverage information for participants; and [a]ltered data to conceal errors." *Id.* "FCE failed to take other measures to ensure that benefit claim determinations were made in accordance with governing plan documents." *Id.* at ¶ 67. "FCE's failure to properly administer the Plan caused losses to the Plan and provided improper profits to FCE, including but not limited to excessive fees." *Id.* at ¶ 69. Furthermore, "Chimes DC provided administrative services to the Plan relating to participant communications," which "were performed by a full-time employee of Chimes DC who otherwise would have been employed by Chimes DC." *Id.* at ¶ 70. However, "Chimes DC and Bussone directed FCE and Ward to reimburse Chimes DC for this work using Plan assets." *Id.* at ¶ 71. "Chimes DC set its own fees, without a contract for the arrangement, and in so doing caused losses to the Plan and received profits." *Id.*

In connection with these allegations, Secretary Perez has brought a ten-count Amended Complaint (ECF No. 102)[7] against the Defendants, pursuant to ERISA, 29 U.S.C. § 1001, *et seq.* As discussed herein, the Secretary alleges breach of fiduciary duties, prohibited transactions, co-fiduciary liability, and non-fiduciary "knowing participation" in these violations. Subsequently, the FCE Defendants have filed a Motion to Dismiss (ECF No. 67) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the allegations raised against them, specifically Counts I, II, IV, V, and VI.

---

[7] The operative complaint in this case is the First Amended Complaint (ECF No. 102).

STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

<u>ANALYSIS</u>

I.     <u>Count I: Excessive Plan Expenses</u>

Count I of the First Amended Complaint (ECF No. 102) alleges that "the Chimes Defendants failed to prudently and loyally monitor the Plan's expenses, thereby resulting in excessive Plan expenses, including the fees of FCE, BCG, certain service providers recommended by FCE, and administrative reimbursements to Chimes DC."   First Am. Compl., ¶ 74, ECF No. 102.   Therefore, the Secretary alleges that the Chimes Defendants breached their fiduciary duties of loyalty and prudence, in violation of 29 U.S.C. §§ 1104(a)(1)(A)-(B), and engaged in prohibited transactions between a plan and a party in interest, in violation of 29 U.S.C. §§ 1106(a)(1)(C)-(D)[8].  *Id.* at ¶ 75.

Count I alleges that FCE is jointly and severally liable for these violations as a *co-fiduciary* of the Chimes Defendants, pursuant to 29 U.S.C. § 1105(a), "because (1) the Chimes Defendants and FCE knowingly participated in their co-fiduciaries' misconduct, (2) as a result of the Chimes Defendants and FCE's failure to comply with their own fiduciary duties they enabled their co-fiduciaries to commit the breaches alleged herein, and (3) the Chimes Defendants and FCE had knowledge of the breaches by their co-fiduciaries alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches."   *Id.* at 78.  Additionally, the Secretary alleges that FCE (in the alternative), Beckman, and Porter

---

[8] 29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . (C) furnishing of goods, services, or facilities between the plan and a party in interest . . . [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan . . . ."

are liable for these violations because they "*knowingly participated* in the Plan's payment of excessive fees to FCE," pursuant to 29 U.S.C. § 1132(a)(5)[9].  *Id.* at ¶ 79 (emphasis added).

In support of their Motion to Dismiss the Amended Complaint (ECF No. 67), the FCE Defendants object that FCE cannot be liable as a *co-fiduciary* of the Chimes Defendants in Count I because "Chimes DC did not act in a fiduciary capacity in establishing the Plan." Mem. Supp. Mot. to Dismiss, p. 31, ECF No. 67-1.  The FCE Defendants contend that "[a]ctions taken in a settlor or plan sponsor capacity," as opposed to a "fiduciary in administering its terms," "are **not** subject to ERISA fiduciary requirements." *Id.* at 32.

"To state a claim for breach of fiduciary duty under ERISA, the threshold question is whether the plaintiff has sufficiently alleged that the defendant was a 'fiduciary.' " *Moon v. BWX Techs., Inc.*, 577 F. App'x 224, 229 (4th Cir. 2014).  The ERISA statute provides that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

The United States Court of Appeals for the Fourth Circuit has observed that "a plan sponsor does not become a fiduciary by performing settlor-type functions such as

---

[9] The FCE Defendants have argued that Counts I and II allege inconsistent theories in that they raise claims against FCE as both a "co-fiduciary" and "non-fiduciary" *knowing participant* in the alleged ERISA violations. However, the FCE Defendants have cited no authority indicating that Counts I and II should be dismissed as to either of these theories at this stage in the litigation.  A factual determination has not yet been made as to whether FCE is a co-fiduciary or, alternatively, a non-fiduciary.

establishing a plan and designing its benefits. *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996) (citing *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996)). However, "a plan sponsor does become a fiduciary under the definition if (that is, 'to the extent') it retains or exercises 'any discretionary authority' over the management or administration of a plan." *Id.* (quoting Jane Kheel Stanley, The Definition of a Fiduciary Under ERISA: Particular Persons and Entities, 27 Real Prop., Prob. & Tr. J. 711, 758-62 (1993)). The Fourth Circuit in *Coyne & Delany Co.* concluded that "the power (through plan amendment) to appoint, retain and remove plan fiduciaries constitutes 'discretionary authority' over the management or administration of a plan within the meaning of § 1002(21)(A)." *Id.* at 1465. Accordingly, the Court held that Plaintiff Delany, a New York corporation, "was a fiduciary to the limited extent it exercised its discretionary responsibility 'to monitor appropriately' and remove the Plan Administrator and Plan Supervisor."

Here, the Secretary alleges that "Chimes DC was the Plan Sponsor," but also the "named Plan Administrator," a named fiduciary of the Plan. First Am. Compl., p. 4, ECF No. 102. The Secretary alleges that "[a]t all relevant times," like Plaintiff Delany, "Chimes DC had and exercised discretionary authority and discretionary control respecting the appointment, retention, and payment of the Plan's service providers, insurers, and/or fiduciaries, including FCE." *Id.* While recognizing that Chimes DC did "*establish*[]" the Plan, the Secretary has also alleged that "the Amended Restated Adoption Agreement for the Health & Welfare Plan of The Chimes, D.C., Inc. . . . *executed by* FCE, BCG, and Chimes DC . . . granted Chimes DC authority to appoint, retain, and/or remove the Plan's service providers, including the third party administrator, FCE." *Id.* at ¶ 25-26 (emphasis added).

11

The Secretary alleges that "[a]t all relevant times, the Chimes Defendants exercised authority and control over FCE and BCG's appointment and retention, as well as the fees paid to FCE and BCG." *Id.* at 27. Accordingly, the Secretary has alleged that Chimes DC was a Plan fiduciary with the duty to monitor FCE's fees and performance.

The FCE Defendants further argue that the Chimes Defendants "could not have breached any duty by continuing to use FCE as a service provider since they properly monitored FCE, obtaining an independent broker's opinion that there were no other suitable options." Mem. Supp. Mot. to Dismiss, p. 31-32, ECF No. 67-1. The FCE Defendants object that the Secretary has failed to allege any "plausible factual allegations that continuing with FCE in 2009 and 2011 was inconsistent with Chimes DC's fiduciary duties under ERISA." *Id.* at 33.

"The power to remove carries with it 'a duty to monitor appropriately those subject to removal.' " *Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 496 (D. Md. 2010) (quoting *Coyne & Delany*, 98 F. 3d at 1465. The First Amended Complaint alleges that "[i]n 2009 and 2011, Lampner and Bussone assured the Governance Committee that they had consulted with an independent broker, who was unable to find suitable alternative service providers to FCE." First Am. Compl., ¶ 37, ECF No. 102. However, the Secretary also alleges that "in 2004, an independent broker had identified possible alternative providers for Bussone and Lampner, but the Chimes Defendants failed to request bid proposals from these alternative providers or even set up meetings to discuss their services and fees." *Id.* at 38. The Secretary further alleges that "[t]he Chimes Defendants did not take other steps to ensure that FCE's fees were reasonable, such as consulting with an independent expert regarding

FCE's fees or comparing FCE's fees to industry benchmarks." *Id.* at 41.  The Secretary alleges that the Chimes Defendants' actions "caused losses to the Plan, including but not limited to FCE and BCG's excessive fees, and profited the Chimes Defendants in the form of the charitable contributions and discounts for work performed by BCGHR LLC." *Id.* at 44.  Accordingly, the Secretary has sufficiently pled that the Chimes Defendants failed to monitor FCE's activities and failed to investigate whether FCE's fees and performance satisfied the needs of the Plan. *See Cuthie*, 743 F. Supp. 2d at 496 (holding that Plaintiff had sufficiently pled a claim for breach of fiduciary duty under ERISA where he had alleged that Defendant was a fiduciary with the power to remove the Plan administrator, but failed to investigate or remove the administrator despite knowledge that the administrator's "conduct conflicted with the interests of Plan participants.").[10]

Additionally, the FCE Defendants object that Count I "fails to properly plead FCE's co-fiduciary status."  Mem. Supp. Mot. to Dismiss, p. 24, ECF No. 67-1.  The FCE Defendants argue that FCE cannot be deemed a co-fiduciary with respect to its fees because "FCE never controlled the Plan Sponsor or its negotiation or approval" of FCE's services contract "or its decision to remain with FCE." *Id.*  The FCE Defendants further contend that "after entering into a services agreement, the services provider [FCE] does not become

---

[10] The FCE Defendants further contend that the Chimes Defendants' decision to retain FCE as the Plan administrator did not constitute a prohibited "transaction" under ERISA because "inaction," or the failure to remove a service provider, is not a "transaction." Mem. Supp. Mot. to Dismiss, p. 33, ECF No. 67-1. The FCE Defendants cite *David v. Alphin*, 704 F.3d 327, 340 (4th Cir. 2013), in which the Fourth Circuit observed that "a decision to continue certain investments, or a defendant's failure to act, cannot constitute a 'transaction' " under ERISA and that "an affirmative action is required." However, the First Amended Complaint specifically alleges that in 2009 and 2011 the Chimes Governance Committee "approved the extensions to Chimes DC's contract with FCE." First Am. Compl., p. 13, ECF No. 102. The FCE Defendants have cited no authority indicating that this allegation fails to qualify as a "transaction" under ERISA Sections 406(a)(1)(C) and (D). This Court is aware of no decision holding that the decision to extend a services contract fails to qualify as a "transaction" under ERISA. Accordingly, the FCE Defendants' argument fails.

a fiduciary by performing its bargained-for services and retaining its contractually agreed-upon fees or other compensation." *Id.* The FCE Defendants cite *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1005 (8th Cir. 2016), in which the United States Court of Appeals for the Eighth Circuit dismissed a class action suit on behalf of ERISA Plan participants, alleging that the Plan's service provider had charged excessive fees. The Court concluded that the service provider "owed no duty to plan participants during its arms-length negotiations" setting its fees and that the Plan participants "did not plead a connection between any fiduciary duty [the Defendant] may have [later] owed and the excessive fees [the Defendant] allegedly charged. *McCaffree Fin. Corp.*, 811 F.3d at 1002-03.

The United States Court of Appeals for the Fourth Circuit has observed that fiduciary status under ERISA "is not 'an all-or-nothing concept' " and that " 'a party is a fiduciary only as to the activities which bring the person within the definition [of fiduciary].' " *Coyne & Delany Co.*, 98 F.3d at 1465 (quoting *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992)). "[A]n entity can become an ERISA fiduciary by performing specified discretionary functions with respect to the plan's management, assets, or administration of a plan in a *de facto* capacity. *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d 434, 445 (D. Md. 2005) (citing *Custer v. Sweeney*, 89 F.3d 1156, 1160 (4th Cir. 1996)). In this case, the Secretary alleges that "FCE exercised discretionary control or discretionary authority over claims processing, payment of claims, recordkeeping, coverage administration, and negotiating the Plan's contracts with service providers and/or insurers, and *exercised authority or control over Plan assets*." First Am. Compl., ¶ 14, ECF No. 102. The Adoption Agreement between FCE and Chimes DC provides that FCE "will be *responsible for making decisions on claims for benefits*."

TPA Ex. B, p. 35, ECF No. 67-5.  Additionally, the Secretary alleges that FCE "exercised discretionary authority and/or discretionary control respecting management of the Plan," "disposition of its assets," and "in the administration of the Plan." *Id.*

Furthermore, the First Amended Complaint alleges that the Plan paid excessive fees both "to pay FCE and BCG" and "to pay service providers who were *selected and recommended by FCE and whose fees were negotiated by FCE.*"  First Am. Compl., ¶ 24, ECF No. 102.  Unlike in *McCaffree*, the Complaint does not "only challenge[] the management fees as provided for by the contract" initially negotiated between FCE and Chimes DC prior to FCE's provision of services to the Plan.  *See McCaffree*, 811 F.3d at 1004.  Rather, it alleges that the Plan paid excessive fees as a direct result of FCE's exercise of its "fiduciary authority to recommend, negotiate, and execute contracts between the Plan and various service providers, thereby exercising authority and control over the management of Plan assets."  First Am. Compl., ¶ 45, ECF No. 102. The parties Fee Schedules, identified in the First Amended Complaint as part of the Adoption Agreement and appended to the FCE Defendants' Motion to Dismiss, specifically provide that FCE "may receive commissions and/or administrative fees from insurance companies and benefits providers for services provided by FCE to this Plan."  Fee Agreement, p. 26, ECF No. 67-5.    The Secretary alleges that "[i]n connection with the Plan's contracts with the service providers, the FCE Defendants caused FCE to receive rebates, commissions, and other payments from the service providers."  *Id.* at ¶ 45.  The Secretary further alleges that "Chimes DC and FCE had agreed that, with a few specific exceptions, any commissions or rebates paid by the Plan service providers to FCE should be forwarded to the Plan," but "[c]ontrary to this agreement," "FCE failed to forward all

payments that it received from service providers to the Plan," "caus[ing] losses to the Plan." *Id.* at ¶ 47-48, 53.

Because the parties' Fee Schedule gave FCE control to increase its compensation through commissions and/or administrative fees paid by service providers and because the Secretary has alleged that FCE took advantage of this opportunity in violation of a separate agreement between FCE and DC Chimes, the Secretary has sufficiently alleged that FCE became a fiduciary with respect to that other compensation. *See Golden Star, Inc. v. Mass Mut. Life Ins.*, 22 F. Supp. 3d 72, 81 (D. Mass. 2014) (service provider's retention of discretion to set compensation creates fiduciary duties under ERISA with respect to its compensation).

Finally, the FCE Defendants object that the First Amended Complaint fails to "plead plausible facts establishing that FCE's fees were excessive." Mem. Supp. Mot. to Dismiss, p. 29, ECF No. 67-1.   The Secretary's allegations that FCE received "exorbitant" and "excessive" fees that were "more than would be reasonable," they contend, "are exactly the kinds of bare assertions which fail to meet the federal pleading requirements." *Id.* The FCE Defendants argue "that FCE's fees based on the fee schedule remained the same from 2004 to 2012," that "in 2009 and 2011 an independent broker verified the reasonableness of FCE's services," and that the Secretary "provides no points of comparison, benchmarks, or standards against which FCE's fees could (or should) be measured." *Id.* The FCE Defendants cite *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009), in which the United States Court of Appeals for the Second Circuit dismissed an excessive fee claim under ERISA because the plaintiffs "fail[ed] to allege that the fees were excessive relative to the services rendered" and also failed to allege "facts concerning other factors

relevant to determining whether a fee is excessive under the circumstances." *Young*, 325 F. App'x at 33 (internal quotations omitted).

The First Amended Complaint alleges that "[t]he Plan paid millions of dollars in excessive expenses, most of which benefitted the Plan's third party administrator, FCE, and the Plan representative, BCG."  First Am. Compl. at ¶ 22, ECF No. 102.  Contrary to the FCE Defendants' representations, the Secretary does not allege that an independent broker approved FCE's fees in 2009 and 2001, but rather that the "Chimes Defendants *did not take* other steps to ensure that FCE's fees were reasonable, *such as consulting with an independent expert* regarding FCE's fees or comparing FCE's fees to industry benchmarks."  *Id.* at ¶ 41.

Additionally, the Secretary alleges that "the Plan has spent [on FCE and its selected service providers] millions of dollars more than would be reasonable for a partially self-funded plan of this size and nature" and that "[c]ontrary to [an] agreement between Chimes DC and FCE, FCE failed to forward all payments that it received from service providers to the Plan . . . fraudulently concealing its receipt of additional, unauthorized compensation."  *Id.* at ¶¶ 24, 48-49.  Furthermore, unlike in *Young*, the Secretary alleges that FCE has "failed to prudently manage the Plan and its assets," including failure "to maintain accurate records" or "administer a reasonable claims procedure," indicating that the fees were excessive relative to services rendered.  *Id.* at ¶ 66.  In fact, the FCE Defendants have admitted, quoting a recent Department of Labor determination, that " 'the essential question' " in determining the reasonableness of a fee " 'is whether the charges are reasonable *in relation to what the [plan] receives*.' "  Defs.' Reply, p. 5, n. 4, ECF No. 110 (quoting 81 Fed. Reg. 21002, 21030 (col. 3) (Apr. 8, 2016) (emphasis added).

The FCE Defendants have recently filed a Notice of Supplemental Authority (ECF No. 128), directing this Court to consider *White, et al. v. Chevron Corp., et al.*, No. 16-cv-0793-PJH, 2016 U.S. Dist. LEXIS 115875 (N.D. Cal. Aug. 29, 2016), in which the United States District Court for the Northern District of California dismissed allegations of excessive investment and administrative fees under ERISA.  However, the specific allegations in that case are readily distinguishable from those raised by the Secretary here.  For example, in *White*, the Plaintiff's excessive fees claim was only based on two allegations: "that for two years at the beginning of the six-plus-year proposed class period, defendants paid recordkeeping fees using an asset-based revenue-sharing arrangement, and that those fees necessarily exceeded a prudent amount purely because they were asset-based and not based on the number of participants, and because plaintiffs believe that the fiduciaries did not seek competitive bids for the recordkeeping services." *White*, 2016 U.S. Dist. LEXIS at *43.  In contrast, the Secretary's allegations describe a completely different situation involving additional facts discussed herein, including allegations that the fees paid to FCE were excessive compared to similar partially self-funded plans and that FCE failed to provide accurate and timely claim adjudication services.  The allegations in *White* included no facts regarding the services provided in exchange for the allegedly "excessive fees." *Id.* at *7-8.  Additionally, the court in *White* specifically noted that plaintiffs "alleged no facts suggesting that the Plan fiduciaries could have obtained less-expensive [] services."  In contrast, as discussed *supra*, the Secretary here has alleged that an independent broker had identified alternatives to FCE, but that the Chimes Defendants did not investigate those options.  For these reasons, the FCE Defendants' arguments for dismissal of Count I must fail.

II.    Count II: Chimes Defendants' Receipt of Benefits in Connection with Plan's Retention of FCE

Count II of the First Amended Complaint (ECF No. 102) alleges that the Chimes Defendants breached their fiduciary duties of loyalty and prudence, in violation of 29 U.S.C. §§ 1104(a)(1)(A)-(B), and engaged in prohibited self-dealing with Plan assets, in violation of 29 U.S.C. § 1106(b)(1), by "receiv[ing] benefits, in the form of FCE's payments to the Chimes Foundation and FCE's employment of Martin Lampner's child, in connection with the Plan's retention of FCE."   First Am. Compl., ¶ 82, ECF No. 102.   Count II further alleges that "Chimes International and Chimes DC . . . received consideration for their own personal accounts" from these transactions, in violation of 29 U.S.C. § 1106(b)(3).   *Id.* at ¶ 83.   Like Count I, Count II alleges that FCE and the Chimes Defendants are jointly and severally liable for these breaches of their "*co-fiduciaries*," pursuant to 29 U.S.C. § 1105(a) and (in the alternative for FCE) that the FCE Defendants, including Beckman and Porter, are liable for these violations because they "*knowingly participated* in the Plan's retention of FCE in connection with FCE's payments to the Chimes Foundation and FCE's employment of Lampner's child," pursuant to 29 U.S.C. § 1132(a)(5).   *Id.* at ¶¶ 86-87 (emphasis added).

In support of their Motion to Dismiss, the FCE Defendants object that "Count II fails to sufficiently plead a claim since the charitable donations and the employment decision complained of were not unlawful."   Mem. Supp. Mot. to Dismiss, p. 33, ECF No. 67-1. They contend that FCE's donation to the Chimes Foundation, a non-fiduciary, did not benefit any Plan fiduciary as the Secretary has failed to allege that any of the Chimes Defendants personally benefitted from the donation.   *Id.* at 34-35.   As to FCE's hiring of Lampner's child, the FCE Defendants argue that "FCE owes no fiduciary duties to the Plan

in operating its own business" and that "[a]ny claim that the continuation of FCE's services was linked to the employment of Lampner's child is simply implausible" because Lampner's child was hired in 2010, a year after FCE approved continuing with FCE's services in 2009, and because the Secretary "cannot allege that Lampner, a non-board member, controlled either of the governance committees" that made that decision. *Id.* at 35-37.

The Secretary alleges that "Bussone and Lampner solicited FCE and BCG to make donations to the Chimes Foundation." First Am. Compl., ¶ 28, ECF No. 102. Additionally, the Secretary alleges that "Lampner individually exercised discretionary authority or discretionary control respecting appointment, retention, and payment of Plan service providers . . . including FCE" and that FCE and BCG did in face make donations to the Chimes Foundation as early as 2008. *Id.* at ¶ 13, 29. Although the Chimes Foundation, and not the Chimes Defendants, directly received these donations, the Secretary has alleged that "[t]he Chimes Foundation was the fundraising entity of Chimes International and its other subsidiaries, and *its assets could be used by Chimes International and any subsidiary of Chimes International, including Chimes DC.*" *Id.* at ¶ 28 (emphasis added). The fact that the donations were not directly credited to one of the Chimes Defendants does not disqualify this claim. *See, e.g., Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1220 (2d Cir. 1987) ("Parties may not use shell-game-like maneuvers to shift fiduciary obligations to one legal entity while channeling profits from self-dealing to a separate legal entity under their control.")

As to the hiring of Lampner's child, the First Amended Complaint alleges that "Lampner solicited FCE to employ his child and FCE hired his child [and] Lampner took part in the negotiation of FCE's fees and recommended to Chimes DC and Chimes

International that FCE's engagement under the Adoption Agreement be renewed." *Id.* at ¶ 32. Although FCE hired Lampner's child in 2010, after DC Chimes' had already decided to renew its contract with FCE in 2009, DC Chimes again decided to renew its contract with FCE in 2011. *Id.* at ¶ 32. The First Amended Complaint alleges that "[i]n connection with the[se] payments and benefits . . . the Chimes Defendants exercised their authority to cause the Plan to retain and pay FCE and BCG as service providers." *Id.* at ¶ 35. For these reasons, the FCE Defendants' arguments for dismissal of Count II fail.

III.   <u>Count IV: FCE's Receipt of Payments from Service Providers</u>

In Count IV of the First Amended Complaint (ECF No. 102), the Secretary alleges that FCE breached its fiduciary duties of loyalty and prudence, in violation of 29 U.S.C. §§ 1104(a)(1)(A)-(B), and engaged in prohibited self-dealing with Plan assets, in violation of 29 U.S.C. § 1106(b)(1), by "retain[ing] payments from Plan service providers and fail[ing] to forward them to the Plan as required by Chimes DC, and receiv[ing] compensation in relation to FCE's management of Plan assets that was not disclosed to Chimes." First Am. Compl., ¶ 94, ECF No. 102. Count II further alleges that FCE "received consideration for its own personal accounts" from these transactions, in violation of 29 U.S.C. § 1106(b)(3). *Id.* Like in Counts I and II, Count IV also alleges that Beckman and Porter are liable for these violations because they "*knowingly participated* in the violations of FCE with respect to the payments received in connection with Plan asset transactions," pursuant to 29 U.S.C. § 1132(a)(5). *Id.* at ¶¶ 86-87 (emphasis added).

In support of their Motion to Dismiss, the FCE Defendants argue that "Count IV fails because FCE is contractually entitled to receive payments from other service providers

and did not control plan assets." Mem. Supp. Mot. to Dismiss, ¶ 37, ECF No. 67-1. They contend that FCE could not have breached any of its obligations under ERISA by receiving payments from service providers because "[t]he Fee Schedule incorporated by reference in the Complaint expressly provides that FCE may receive payments and commissions from the Plan's insurers and other service providers." *Id.* at 37. Additionally, they argue that Count IV must fail "because the third party payments to FCE were not Plan assets," but "were made by the Plan's third party service providers to FCE in accordance with the Fee Disclosure statement." *Id.* at 38.

In this case, the Secretary alleges that "[i]n connection with the Plan's contracts with the service providers, the FCE Defendants caused FCE to receive rebates, commissions, and other payments from the service providers." First Am. Compl., ¶ 45, ECF No. 102. Additionally, the Secretary alleges that "FCE exercised its fiduciary authority and control over the Plan's contracts with other service providers to increase its compensation through undisclosed commissions, fees and other payments." *Id.* at ¶ 5. The Secretary further alleges that "Chimes DC and FCE had agreed that, with a few specific exceptions, any commissions or rebates paid by the Plan service providers to FCE should be forwarded to the Plan," but "[c]ontrary to this agreement," "FCE failed to forward all payments that it received from service providers to the Plan," "caus[ing] losses to the Plan." *Id.* at ¶ 47-48, 53. "Congress intended ERISA's fiduciary responsibility provisions to codify the common law of trusts." *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 380 (4th Cir. 2001) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989)). The duty of loyalty under trust law includes a "strict prohibition against self-dealing." *French v. Wachovia Bank, N.A.*, 722 F.3d 1079, 1085

(7th Cir. 2013).   This prohibition applies whether or not the self-dealing results in profits drawn from the trust itself or paid by a third party. *Id.* (citing Restatement (Third) of Trusts § 78 cmt. d(1) ("A trustee engages in self-dealing and therefore normally violates the duty of loyalty by personally accepting from a third person any . . . compensation for an act done by the trustee in connection with the administration of the trust.")).

With respect to the "plan assets" at issue, the Secretary has clarified that the " 'plan assets' " at issue in this case are not the compensation FCE received from third parties but rather FCE's use of payments from the Plan, which it negotiated, to third parties as a means by which FCE was able to obtain commissions and other payments from third parties." Secretary's Opp'n, p. 52, ECF No. 83.   The FCE Defendants have cited no case authority rejecting this theory under the facts alleged here.[11]   For these reasons, the FCE Defendants' arguments fail with respect to Count IV.

## IV.   Count V: Failure to Prudently and Loyally Administer the Plan

Count V of the First Amended Complaint (ECF No. 102) alleges that FCE breached its fiduciary duties of loyalty and prudence, in violation of 29 U.S.C. §§ 1104(a)(1)(A)-(B),

---

[11] The FCE Defendants rely on *Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F. 3d 463, 477 n.6 (7th Cir. 2007) and *Moeckel v. Caremark, Inc.*, 622 F. Supp. 2d 663, 685-86 (M.D. Tenn. 2007), but those cases are readily distinguishable from the present case.   Unlike the third party administrator in *Moeckel* that acted as a middleman under a previously agreed upon price schedule for obtaining drug coverage for plan members, *see Moeckel*, 622 F. Supp. 2d at 684-86, the Secretary has alleged that FCE exercised discretionary control over plan management and plan assets by recommending specific coverage for the Plan and negotiating the terms and cost of coverage relating to the Plan's benefits.   Unlike the third party administrator in *Chicago District Council*, which exercised *ministerial* duties, *see Chicago District Council*, 474 F.3d at 466-67, the Secretary has alleged that FCE exercised complete control over the Plan's investment in insurance products. Additionally, the third party administrator and Plan sponsor in *Chicago District Council* negotiated the fixed terms and rates for pharmaceutical products along with a fixed rebate that the third party administrator would pass along to the Plan from pharmaceutical providers.   *Chicago District Council*, 474 F.3d at 472-73. Furthermore, the contract in *Chicago District Council* specifically provided that the administrator "was not a fiduciary as that term is defined in ERISA."   *Id.* at 467.

with respect to "the Plan's coverage and claims administration" and "failed to ensure that claims were adjudicated in a timely manner."   First Am. Compl., ¶¶ 99, 101, ECF No. 102. Additionally, like Counts I, II, and IV, Count V alleges that Beckman and Porter are liable for these violations because they "were *knowing* participants in FCE's breaches." *Id.* at ¶ 102.

The FCE Defendants argue that "Count V must be dismissed because FCE is not a fiduciary in connection with the ministerial services it provides to the Plan." Mem. Supp. Mot. to Dismiss, p. 39, ECF No. 67-1. On the contrary, they contend that "as the Plan's [Third-Party Administrator], FCE provides ministerial services subject to Chimes DC's review and approval" which, "by definition, [indicates that] FCE was not a fiduciary." *Id.* The FCE Defendants argue that a third-party administrator or service provider is not a fiduciary " 'if [its] discretion is sufficiently limited by a pre-existing framework of policies, practices and procedures.' " *Id.* at 40 (quoting *Useden v. Acker*, 947 F.2d 1563, 1575 (11th Cir. 1991)). The Defendants have provided a list of duties that are "ministerial" under 29 C.F.R. § 2509.75-8 "when done within a framework of policies, interpretations, rules, practices, and procedures made by other persons," including "[a]pplication of rules determining eligibility for participation or benefits," "[c]alculation of services and compensation credits for benefits," and "processing of claims." *Id.*

The United States Supreme Court has concluded that "[a] benefit determination under ERISA . . . is generally a fiduciary act." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 218 (2004); *see also* " 'At common law, fiduciary duties characteristically attach to decisions about managing assets and distributing property to beneficiaries.' " *Id.* (quoting *Pegram v. Herdrich*, 530 U.S. 211, 231(2000)). Additionally, the United States Court of Appeals for the

Fourth Circuit has concluded that "an ERISA fiduciary is 'any individual who *de facto* performs specified discretionary functions with respect to the management, assets, or administration of a plan.' " *Moon*, 577 F. App'x 224, 229 (4th Cir. 2014) (quoting *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir.1996)).  Here, the Secretary alleges that "FCE exercised discretionary control or discretionary authority over claims processing, payment of claims, recordkeeping, coverage administration, and negotiating the Plan's contracts with service providers and/or insurers, and *exercised authority or control over Plan assets*."  First Am. Compl., ¶ 14, ECF No. 102.  The Third Party Administrator Agreement between FCE and Chimes DC provides that FCE "will be *responsible for making decisions on claims for benefits*."  TPA Ex. B, p. 35, ECF No. 67-5.  Additionally, the Secretary alleges that FCE "exercised discretionary authority and/or discretionary control respecting management of the Plan," "disposition of its assets," and "in the administration of the Plan."  *Id.*  The First Amended Complaint does not allege that these responsibilities were carried out "within a framework of policies, interpretations, rules, practices, and procedures made by other persons" as the FCE Defendants suggest.  *See supra* Mem. Supp. Mot. to Dismiss, p. 40, ECF No. 67-1.  On the contrary, the First Amended Complaint indicates only that "the Chimes Defendants had appointed FCE and *had authority to remove* FCE as a third party administrator . . . [and] *were responsible for monitoring* FCE's fees and performance."  First Am. Compl., ¶ 68, ECF No. 102.  For these reasons, the FCE Defendants' efforts to dismiss Count V must fail.

V.    Count VI: Plan's Reimbursements to Chimes DC for Work of Its Full-Time Employee

Count VI alleges that "by causing the Plan to pay Chimes DC for work performed by a full-time employee of Chimes DC who otherwise would have been paid by Chimes DC,

Chimes DC and Bussone "[c]aused the assets of the Plan to inure to the benefit of the employer Chimes DC," in violation of 29 U.S.C. § 1103; breached their fiduciary duties of loyalty and prudence, in violation of 29 U.S.C. §§ 1104(a)(1)(A)-(B); engaged in prohibited transactions between a plan and a party in interest, in violation of 29 U.S.C. §§ 1106(a)(1)(C)-(D); engaged in prohibited self-dealing with Plan assets, in violation of 29 U.S.C. § 1106(b)(1); and "acted in a transaction involving the Plan on behalf of a party (or representing a party) whose interests are adverse to the interests of the Plan or the interests of its participants or beneficiaries," in violation of 29 U.S.C. § 1106(b)(2). First Am. Compl., ¶ 104, ECF No. 102. Like Counts I and II, Count VI alleges that FCE, Chimes DC, and Bussone are jointly and severally liable for these breaches of their "*co-fiduciaries*," pursuant to 29 U.S.C. § 1105(a). *Id.* at ¶ 106.

In support of its Motion to Dismiss (ECF No. 67), FCE objects that the First Amended Complaint fails to allege that FCE "had knowledge of the circumstances concerning this directed payment" or "had any control over disbursements from Plan assets." Mem. Supp. Mot. to Dismiss, p. 42, ECF No. 67-1. However, the Secretary specifically alleges that a "full-time employee of Chimes DC" "provided administrative services to the Plan relating to participant communications," that "Chimes DC and Bussone *directed* FCE . . . to reimburse Chimes DC for this work *using Plan assets*," and that "FCE *knowingly* participated" in this misconduct. First Am. Compl., ¶¶ 70-71, 106, ECF No. 102 (emphasis added). Additionally, as discussed *supra*, the First Amended Complaint alleges that FCE had authority to "negotiate" and "execute" agreements "between the Plan and various service providers [including those "related to . . . employee assistance programs"],

26

thereby exercising authority and control over the management of Plan assets." *Id.* at ¶ 45. FCE cites *Custer v. Sweeney*, 89 F.3d 1156, 1161-62 (4th Cir. 1996), a case in which the United States Court of Appeals for the Fourth Circuit affirmed dismissal of an amended complaint for failure to adequately plead that a pension plan's legal counsel qualified as an ERISA fiduciary.   However, unlike the present case, documents appended to the amended complaint in *Custer* specifically illustrated that the legal counsel "performed only ministerial functions . . . and that he lacked check-writing authority."   *Custer*, 89 F.3d at 1163. Therefore, FCE's arguments fail with respect to Count VI.

CONCLUSION

For the reasons stated above, the FCE Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 67) is DENIED.

Dated:        September 19, 2016

                                          /s/
                                          Richard D. Bennett
                                          United States District Judge