IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| THOMAS E. PEREZ, Secretary of Labor, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-15-3315 |
| CHIMES DISTRICT OF COLUMBIA, INC., *et al.*, | * | |
| | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

United States Secretary of Labor, Thomas E. Perez, ("the Secretary") has brought a ten-count Amended Complaint against The Chimes D.C., Inc. Health & Welfare Plan (the "Plan") and its alleged fiduciaries and service providers, including Defendants Chimes District of Columbia, Inc.; Chimes International, Ltd.; FCE Benefit Administrators, Inc.; Gary Beckman; Stephen Porter; Martin Lampner; Albert Bussone; Benefits Consulting Group; Jeffrey Ramsey; and Marilyn Ward, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, *et seq*. First Am. Compl., p. 1-2, ECF No. 102. Currently pending before this Court is Defendants Chimes District of Columbia, Inc. ("Chimes DC"), Chimes International, Ltd. ("Chimes International"), Martin Lampner ("Lampner"), and Albert Bussone's ("Bussone") (collectively, the "Chimes Defendants") Motion to Dismiss or, in the alternative, for

Summary Judgment (ECF No. 86)[1].  The parties' submissions have been reviewed, and no

hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2016).  For the reasons stated herein, the

Chimes Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 86) is

DENIED.[2]

BACKGROUND

In ruling on a motion to dismiss, this Court must accept the factual allegations in the

plaintiff's complaint as true and construe those facts in the light most favorable to the

plaintiff.  *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Harris v.*

*Publish Am., LLLP*, No. RDB-14-3685, 2015 WL 4429510, at *1 (D. Md. July 17, 2015).  The

facts of this case have previously been set forth in this Court's Memorandum Opinion of

September 19, 2016 (ECF No. 135).  *See Perez v. Chimes D.C., Inc., et al.*, No. RDB-15-3315,

2016 WL 4993293, at *1 (D. Md. Sept. 19, 2016).  The following factual allegations pertain

specifically to those claims raised against the Chimes Defendants in Counts I through VI of

the First Amended Complaint, the subject of the pending motion:

I.    The Chimes Defendants

Chimes D.C., Inc. ("Chimes DC") "is a federal government contractor who employs

disabled workers for janitorial and custodial services."  First Am. Compl., ¶ 10, ECF No.

102.  Chimes DC "established  the [Chimes D.C., Inc. Health & Welfare Plan (the "Plan")] .

. . to provide a package of medical, prescription, life insurance, accidental death and

---

[1] Pursuant to this Court's Letter Order of June 6, 2016 (ECF No. 101), the Chimes Defendants' pending Motion to Dismiss the Complaint shall be treated as a Motion to Dismiss the First Amended Complaint.

[2] Via separate Memorandum Opinion and Order (ECF Nos. 135 & 136), this Court has previously denied Defendants FCE Benefit Administrators, Inc. ("FCE"), Gary Beckman ("Beckman"), and Stephen Porter's ("Porter") (collectively, the "FCE Defendants") Motion to Dismiss (ECF No. 67).  *See Perez v. Chimes D.C., Inc., et al.*, No. RDB-15-3315, 2016 WL 4993293, at *1 (D. Md. Sept. 19, 2016).

dismemberment, disability, and unemployment benefits" to its employees.  *Id.* at ¶ 2.  "The Plan is a partially self-insured health and welfare plan and is mostly funded by contributions required to be paid under Chimes DC's federal government contracts and federal prevailing wage laws."  *Id.* at ¶ 21.  "At all relevant times, [the Plan] was an employee benefit plan as defined by . . . 29 U.S.C. § 1002(3), and was subject to [the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.*] pursuant to 29 U.S.C. §1003(a)(1)."  *Id.*  "At all relevant times, Chimes DC was the Plan Sponsor and named Plan Administrator of the Plan" and "had and exercised discretionary authority and discretionary control respecting the appointment, retention, and payment of the Plan's service providers, insurers, and/or fiduciaries, including FCE and BCG, as well as other aspects of managing and administering the Plan and its assets."  *Id.* at ¶ 10.  Accordingly, the Secretary alleges that Chimes DC was a Plan fiduciary within the meaning of 29 U.S.C. §1002(21)(A) and a party in interest  within the meaning of 29 U.S.C. §1002(14)(A), (B) and (C).  *Id.*

"At all relevant times, Defendant Chimes International Limited ("Chimes International") was the parent company of Chimes DC and The Chimes Foundation, Inc. (the "Chimes Foundation"), a fundraising arm of Chimes International and its subsidiaries."  *Id.* at ¶ 11.  "During the relevant time period, Chimes International, through the Governance Committee of its Board of Directors, had and exercised discretionary authority and discretionary control respecting appointment, retention, and payment of the Plan's services providers, insurers, and/or fiduciaries, including FCE and BCG."  *Id.*  Accordingly, the Secretary alleges that Chimes International was a Plan fiduciary within the meaning of 29

U.S.C. § 1002(21)(A) and a party in interest within the meaning of 29 U.S.C. § 1002(14)(A) and (E). *Id.*

"From at least 2008 until his retirement in December 2014, Defendant Albert Bussone ("Bussone") was Vice President of Chimes DC and Chief Operating Officer and Executive Vice President of Chimes International." *Id.* at ¶ 12. "From February 2012 until December 2014, he was also Chief Development Officer and Vice President of Chimes DC and Chimes International." *Id.* "While negotiating, vetting, and/or executing the Plan's contracts with FCE and BCG, Bussone individually exercised discretionary authority or discretionary control respecting appointment, retention, and payment of Plan service providers, insurers, and/or fiduciaries, including FCE and BCG, and exercised discretionary authority or discretionary control over other aspects of managing and administering the Plan and its assets." *Id.* Accordingly, the Secretary alleges that Bussone was a Plan fiduciary within the meaning of 29 U.S.C. §1002(21)(A) and a party in interest within the meaning of 29 U.S.C. § 1002(14)(A) and (H). *Id.*

"From at least 2008 until July 2010, Defendant Martin Lampner ("Lampner") was Executive Vice President of Chimes DC and Chimes International." *Id.* at ¶ 13. "From July 2010 to the present, he has been President of Chimes DC and Chimes International." *Id.* "From at least 2008 until January 2011, Lampner was Chief Financial Officer of Chimes DC and Chimes International." *Id.* "From January 2011 to the present, he has been Chief Executive Officer of Chimes DC and Chimes International." *Id.* "While negotiating, vetting, and/or executing the Plan's contracts with FCE and BCG, Lampner individually exercised discretionary authority or discretionary control respecting appointment, retention,

and payment of Plan service providers, insurers, and/or fiduciaries, including FCE and BCG, and exercised discretionary authority or discretionary control over other aspects of managing and administering the Plan and its assets." Accordingly, the Secretary alleges that Lampner was a Plan fiduciary within the meaning of 29 U.S.C. § 1002(21)(A) and a party in interest within the meaning of 29 U.S.C. § 1002(14)(A) and (H). *Id.*

## II.   Alleged Violations of the Employee Retirement Income Security Act ("ERISA")

### A.   The Plan's Excessive Expenses, Including FCE and BCG's Fees

The Secretary alleges that the "Chimes Defendants failed to meet their obligations [to the Plan], resulting in substantial losses to the Plan," including "millions of dollars in excessive expenses, most of which benefitted the Plan's third party administrator, FCE, and the plan representative, BCG." *Id.* at ¶ 22. "Each year, the Chimes Defendants received financial and other reports summarizing the Plan's expenses and administration." *Id.* at ¶ 23. "Based on these reports, the Chimes Defendants knew or should have known that the Plan's expenses were excessive for a plan of its size and nature, but failed to take adequate steps to reduce expenses by searching for alternate providers." *Id.* "From at least 2008 through the present, the Plan has spent millions of dollars more than would be reasonable for a partially self-funded plan of this size and nature." *Id.* at ¶ 24. "Most of the Plan's expenses were used to pay FCE and BCG's fees and to pay service providers who were selected and recommended by FCE and whose fees were negotiated by FCE." *Id.*

### B.   The Chimes Defendants' Conflicted Relationships With FCE and BCG

"[T]he Plan's relationship with FCE and BCG, including the fees paid by the Plan to FCE and BCG, was governed by the Amended and Restated Adoption Agreement for the

Health & Welfare Plan of The Chimes, D.C., Inc. and its accompanying exhibits, including the fee schedule and the Third Party Administrator Agreement executed by FCE, BCG, and Chimes DC (collectively, the "Adoption Agreement")." *Id.* at ¶ 25. "The Adoption Agreement granted Chimes DC authority to appoint, retain, and/or remove the Plan's service providers, including the third party administrator, FCE, and plan representative, BCG." *Id.* at ¶ 26. "[T]he Adoption Agreement allowed Chimes DC, as the employer, to terminate the Plan's contract with FCE, and thus BCG, upon 60 days' notice." *Id.*

"At all relevant times, Bussone and Lampner solicited FCE and BCG to make donations to the Chimes Foundation." *Id.* at ¶ 28. "The Chimes Foundation was the fundraising entity of Chimes International and its other subsidiaries, and its assets could be used by Chimes International and any subsidiary of Chimes International, including Chimes DC." *Id.* "[A]s early as 2008, FCE and BCG made donations to the Chimes Foundation." *Id.* at ¶ 29. "In 2009 and thereafter, the Plan's third party administrator, FCE, and the Plan's representative, BCG, jointly pledged at least $330,000 to the Chimes Foundation." *Id.* at ¶ 30. "In making one such pledge, FCE and BCG expressly referenced their status as service providers to Chimes and their 'special relationship' and 'gratifying partnership with the Chimes,' and FCE and BCG specifically stated that '[a]n additional $55,000 will be paid for a one (1) year option of continuing benefit services to our Chimes partner.' " *Id.* "Between 2009 and 2014, FCE paid at least $400,000 to the Chimes Foundation in connection with its engagement as service provider to the Plan." *Id.* at 31. "Between 2009 and 2014, BCG paid at least $282,500 to the Chimes Foundation in connection with its engagement as service provider to the Plan." *Id.* at ¶ 33.

Additionally, "[i]n 2010, Lampner solicited FCE to employ his child and FCE hired his child." *Id.* at ¶ 32. "At relevant times, including during the Chimes Defendants' renewal of FCE's engagement in 2009 and 2011, Lampner took part in the negotiation of FCE's fees and recommended to Chimes DC and Chimes International that FCE's engagement under the Adoption Agreement be renewed." *Id.* Furthermore, "[i]n 2013, Jeffrey Ramsey, the owner of BCG, provided discounts to Chimes DC on work performed by BCGHR LLC, another company owned by Ramsey." *Id.* at ¶ 34.

"In connection with" these payments and benefits, "the Chimes Defendants exercised their authority to cause the Plan to retain and pay FCE and BCG as service providers." *Id.* at ¶ 35. "In 2009 and 2011, the Governance Committee of the Board of Directors of Chimes International and Chimes DC (the "Governance Committee") reviewed Chimes DC's contract with FCE and BCG to perform services for the Plan and were informed by Bussone and Lampner of the amount of donations pledged by FCE and BCG." *Id.* at ¶ 36. "In 2009 and 2011, Lampner and Bussone assured the Governance Committee that they had consulted with an independent broker, who was unable to find suitable alternative service providers to FCE." *Id.* at ¶ 37.

However, "in 2004, an independent broker had identified possible alternative providers for Bussone and Lampner, but the Chimes Defendants failed to request bid proposals from these alternative providers or even set up meetings to discuss their services and fees." *Id.* at ¶ 38. "After 2004 and at the time of their recommendations to the Governance Committee in 2009 and 2011, Bussone and Lampner failed to conduct a full request for bid proposals from alternative providers, or request that an independent broker

obtain and compare bid proposals from alternative providers." *Id.* at ¶ 39. "At most, Bussone and Lampner relied on BCG and Ramsey's recommendation to continue retaining FCE, even though BCG and Ramsey were conflicted." *Id.* at ¶ 40. "From the beginning of the Plan's relationship with FCE and BCG, FCE and BCG jointly marketed FCE's products to Chimes DC, and BCG was at all times being paid from the Plan pursuant to the same agreement as FCE." *Id.* "BCG did not conduct a request for bid proposals from alternative providers." *Id.* "The Chimes Defendants did not take other steps to ensure that FCE's fees were reasonable, such as consulting with an independent expert regarding FCE's fees or comparing FCE's fees to industry benchmarks." *Id.* at ¶ 41.

"The Chimes Defendants also did not take steps to ensure that BCG's fees were reasonable for the services actually provided by BCG." *Id.* at ¶ 42. "BCG's services amounted to participant communications and client assistance that did not justify its compensation, which ranged from $400,000 to $600,000 per year from 2008 to the present." *Id.* "In 2009 and 2011, relying on Lampner and Bussone's recommendations, the Governance Committee approved the extensions to Chimes DC's contract with FCE and BCG to perform services for the Plan." *Id.* at ¶ 43. "To date, the Plan continues to retain and pay FCE and BCG as service providers." *Id.* The Secretary alleges that "[t]he retention of FCE and BCG in connection with the Chimes Defendants' receipt of payments and other benefits caused losses to the Plan, including but not limited to FCE and BCG's excessive fees, and profited the Chimes Defendants in the form of the charitable contributions and discounts for work performed by BCGHR LLC." *Id.* at ¶ 44.

C.      FCE's Receipt of Payments from Plan Service Providers

"At relevant times, and consistent with the Adoption Agreement, FCE had and exercised fiduciary authority to recommend, negotiate, and execute contracts between the Plan and various service providers, thereby exercising authority and control over the management of Plan assets." *Id.* at ¶ 45.   "Such service providers included the Plan's trustees as well as service providers related to the Plan's stop loss insurance, prescription drug benefits, behavioral health and employee assistance programs, and medical benefits." *Id.*  "In connection with the Plan's contracts with the service providers, the FCE Defendants caused FCE to receive rebates, commissions, and other payments from the service providers." *Id.*  "This compensation, received from Plan service providers, was paid in addition to fees paid directly by the Plan." *Id.*  "FCE's Third Party Administrator Agreement with Chimes DC attaches fee schedules for various service providers, including FCE, BCG, and the Plan trustee, and states that 'no change in any Service Provider to the Plan and Trust will be effective unless approved in writing by both TPA and Employer.' " *Id.* at ¶ 46.

"While Chimes DC generally was aware that payments could be made by unidentified Plan service providers to FCE, Chimes DC and FCE had agreed that, with a few specific exceptions, any commissions or rebates paid by Plan service providers to FCE should be forwarded to the Plan." *Id.* at ¶ 47.   "Contrary to this agreement between Chimes DC and FCE, FCE failed to forward all payments that it received from service providers to the Plan." *Id.* at ¶ 48.  The Secretary further alleges that "FCE failed to disclose to Chimes DC that it was retaining some of the payments and often failed to disclose the specific amounts

being paid by Plan service providers to FCE and retained by FCE." *Id.* at 49. "Each year, FCE misrepresented to Chimes DC that it had forwarded all such payments to the Plan, thus fraudulently concealing its receipt of additional, unauthorized compensation." *Id.* "As a result of its conduct, FCE not only enriched itself but also prevented the Chimes Defendants from having all of the facts necessary to make prudent decisions about whether to retain FCE or use the service providers recommended by FCE." *Id.* at ¶ 50. "FCE's conduct also prevented the Chimes Defendants from accurately assessing the true cost of FCE's services and negotiating with FCE at arm's length over FCE's fees for its services." *Id.* "As a result of its retention of payments from Plan service providers, FCE increased its own compensation at the Plan's expense and without Chimes DC's authorization." *Id.* "Notwithstanding FCE's failure to disclose its additional compensation, Chimes DC was generally aware that FCE was receiving payments and had a duty to take steps to ensure that FCE properly forwarded the payments to the Plan as promised to Chimes DC." *Id.* "At all relevant times, Chimes DC had authority to remove FCE." *Id.* at ¶ 51. Furthermore, "Chimes DC . . . failed to maintain adequate records of its agreements with FCE regarding such payments." *Id.*

"In addition to the payments that FCE retained without Chimes DC's approval, FCE received other payments from Plan service providers that FCE disclosed to Chimes DC and that Chimes approved." *Id.* at ¶ 52. "Such payments were made in connection with the Plan's contracts for life insurance, accidental death and dismemberment insurance, and prescription drug benefits." *Id.* "With respect to this compensation, Chimes DC failed to negotiate corresponding reductions in FCE's fees from the Plan." *Id.* "As a result, the Plan

suffered losses because FCE's direct fees were excessive considering the other income that FCE was earning in connection with the Plan." *Id.* "FCE's retention of payments from Plan service providers, whether or not they were approved by Chimes DC, caused losses to the Plan, and FCE improperly received profits." *Id.* at ¶ 53. "As officers and owners of FCE who knowingly participated in FCE's conduct, Porter and Beckman personally benefitted and profited from FCE's retention of the payments." *Id.*

    D.    <u>FCE's Imprudent Administration and Management of Plan and Its Assets</u>

FCE provided inadequate services that failed to meet a prudent standard of care for a fiduciary and third party administrator and that were not commensurate with FCE's high fees. *Id.* at ¶ 65. "FCE, with Porter and Beckman's knowledge and participation, failed to prudently manage the Plan and its assets." *Id.* at ¶ 66. FCE "Failed to maintain a computer system capable of accurately calculating fees to FCE and the Plan's trustees; . . . [f]ailed to maintain accurate records, including calculations and supporting documentation for Plan expenses and payments to FCE and participant information; . . . [f]ailed to administer a reasonable claims procedure, including establishing protocols such as claims audits, claims manuals, and trainings, to ensure timely and consistent adjudication of claims; . . . [f]ailed to timely update coverage information for participants; and . . . [a]ltered data to conceal errors." *Id.* "FCE failed to take other measures to ensure that benefit claim determinations were made in accordance with governing plan documents and that, where appropriate, the plan provisions were applied consistently with respect to similarly situated claimants." *Id.* at ¶ 67. "Due to systemic computer and personnel limitations, FCE at relevant times failed to process claims in a timely and accurate manner and was unable to auto-adjudicate claims."

*Id.* Additionally, "FCE failed to consistently require its claims adjudicators to follow a claims manual . . . , failed to consistently use sufficient auditing protocols and failed to adequately address high rates of claims errors that were disclosed by internal and external audits." *Id.* "Because the Chimes Defendants had appointed FCE and had authority to remove FCE as third party administrator, the Chimes Defendants also were responsible for monitoring FCE's fees and performance, but failed to do so." *Id.* at 68.

  E.  <u>Payments by the Plan to Chimes DC</u>

  "During the relevant time period, Chimes DC provided administrative services to the Plan relating to participant communications." *Id.* at ¶ 70. "The services were performed by a full-time employee of Chimes DC who otherwise would have been employed by Chimes DC." *Id.* "From at least 2008, Chimes DC and Bussone directed FCE and Ward to reimburse Chimes DC for this work using Plan assets." *Id.* "Chimes DC set its own fees, without a contract for the arrangement, and in so doing caused losses to the Plan and received profits." *Id.*

<u>STANDARD OF REVIEW</u>

  Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

12

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).  Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

<u>ANALYSIS</u>

I.   <u>The Secretary Has Sufficiently Alleged that the Chimes Defendants are Plan Fiduciaries</u>

The Chimes Defendants admit that Chimes DC is a Plan fiduciary.  *See* Mem. Supp. Mot. to Dismiss, p. 9, ECF No. 86-1 ("The Plan designates Chimes DC as the Plan Administrator.   Compl. ¶ 10; *see also* Plan [Exh. 2B], § 1.13.   Chimes DC is therefore 'a named fiduciary of the Plan.' *Id.*, ¶ 10.").  However, they contend that "the [First Amended][3]

---

[3] As noted *supra*, the pending Motion to Dismiss the Complaint (ECF No. 86) is treated as a Motion to Dismiss the First Amended Complaint.  *See* Letter Order, ECF No. 101.

Complaint fails to state a claim against Defendants Chimes International, [ ] Bussone, or [ ] Lampner because it fails to properly plead that any of them are fiduciaries or co-fiduciaries of the . . . Plan." *Id.* at 16.  No party contends that the Plan specifically names Chimes International, Bussone, or Lampner as a Plan fiduciary.

Under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, an individual or entity may become a Plan fiduciary in one of two ways: first, "by being expressly identified in the plan documents, either by name or according to a procedure specified in the plan, as having the authority to control and manage the operation and administration of the plan;" and second, "by performing specified discretionary functions with respect to the plan's management, assets, or administration of a plan in a *de facto* capacity." *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d 434, 445 (D. Md. 2005) (citing *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996)).  Specifically, ERISA provides as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.  29 U.S.C. § 1002(21)(A).

A.    The Secretary Has Sufficiently Alleged that Chimes International is a Plan Fiduciary

The Secretary alleges that "Chimes International . . . was the parent company of Chimes DC," "had and exercised discretionary authority and discretionary control respecting appointment, retention, and payment of the Plan's service providers, insurers, and/or

fiduciaries, including FCE and BCG," and, accordingly, "was a fiduciary with respect to the Plan." First Am. Compl., ¶ 11, ECF No. 102. "Fourth Circuit decisions strongly support the conclusion that [a] plaintiff[ ] must do more than quote the statutory language regarding 'discretionary control' to plead adequately that a given defendant is a *de facto* ERISA fiduciary." *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d at 446. "[A]llegations that a given defendant had the discretionary authority 'to add and/or remove investment options,' or 'to hire and terminate [ ] officers and employees,' are not sufficient without a proffer of some factual basis for concluding that a given entity possessed such discretionary authority." *Id.* at 446-47. "The parent companies of plan sponsors and administrators lack fiduciary status to the extent they do not actually exercise any control over plan assets or discretion over the plans of their subsidiaries, or exercise the power to appoint the actual fiduciaries." *Id.* at 447.

Here, in contrast, the Secretary has alleged a "factual basis" for Chimes International's fiduciary status—Chimes International's control over plan assets and power to appoint plan fiduciaries. The First Amended Complaint alleges that "Chimes International . . . caused the Plan to pay excessive fees for services and failed to prudently monitor the management of the Plan and its assets." First Am. Compl., ¶ 3, ECF No. 102. Additionally, the Secretary alleges that Lampner "recommended to . . . Chimes International that FCE's engagement under the Adoption Agreement be renewed," that "the Governance Committee of the Board of Directors of Chimes International . . . reviewed Chimes DC's contract with FCE and BCG to perform services for the Plan," and that in 2009 and 2011 "the Governance Committee approved the extensions to Chimes DC's contract with FCE and BCG." *Id.* at ¶¶ 32, 36, 43. Furthermore, the Management Agreement between Chimes DC and Chimes

International provides that Chimes International shall "possess full, exclusive and complete discretion, power and authority to manage, control, administer and operate the business and affairs" of Chimes DC.  Mgmt. Agreement, p. 2, Pl.'s Ex. C, ECF No. 95-3. Accordingly, the First Amended Complaint adequately alleges that Chimes International was a plan fiduciary.

       B.     <u>The Secretary Has Sufficiently Alleged that Lampner and Bussone are Plan Fiduciaries</u>

"A fiduciary who breaches the duties imposed by ERISA is 'personally liable' for 'any losses to the plan resulting from [the] breach.' " *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 356 (4th Cir. 2014) (quoting 29 U.S.C. § 1109(a)).  This Court has held that "Corporate officers and directors . . . do not become fiduciaries *solely by virtue of* their corporate position, even if the corporation is a fiduciary, 'unless it can be shown that they have *individual* discretionary roles as to plan administration.' " *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d at 447 (quoting *Confer*, 952 F.2d at 37) (emphasis added).  This Court held in *In re Mut. Fund Inv. Litig.* that Richard Strong, the Chairman of the Board of a family of mutual funds in which the subject ERISA plan had invested, was not a plan fiduciary "despite his allegedly major role" in illegal trading activities by those funds where "the complaint merely assert[ed] that he 'was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets.' " *Id.* at 448.

Likewise, this Court in *Int'l Painters & Allied Trades Indus. Pension Fund v. Clayton B. Obersheimer, Inc.*, No. ELH-12-1000, 2013 WL 594691, at *9 (D. Md. Feb. 13, 2013) dismissed ERISA fiduciary breach claims against corporate officers where the Complaint alleged only "that the officers [we]re fiduciaries . . . 'by reason of [the Officers'] possession,

authority and control respecting the management or disposition of plan assets," but failed to "explain how the officers had authority or control regarding the plan assets." *Int'l Painters & Allied Trades Indus. Pension Fund v. Clayton B. Obersheimer, Inc.*, No. ELH-12-1000, 2013 WL 594691, at *9 (D. Md. Feb. 13, 2013). The Plaintiff's "assertion [was] merely a 'formulaic recitation of the [statutory] elements' of fiduciary status . . ." *Id.* "Such a statutory recitation falls short of the Fourth Circuit's standard, however, which 'requires more than the mere recitation of statutory language in an ERISA fiduciary breach case.' " *Id.* (quoting *In re Mut. Fund Inv. Litig.*, 403 F.Supp.2d at 446). The facts of this case are distinguishable from *In re Mut. Fund Inv. Litig.* and *Obersheimer*.

In this case, the First Amended Complaint does specifically allege that Lampner and Bussone "individually exercised discretionary authority or discretionary control." First Am. Compl., ¶¶ 12-13, ECF No, 102. Unlike in *In re Mut. Fund Inv. Litig* and *Obersheimer*, the Secretary does not simply restate ERISA's statutory language, but specifically alleges that "Lampner took part in the negotiation of FCE's fees and recommended to Chimes DC and Chimes International that FCE's engagement under the Adoption Agreement be renewed" and that "[i]n 2009 and 2011, Lampner and Bussone assured the Governance Committee that they had consulted with an independent broker, who was unable to find suitable alternative service providers to FCE" despite the fact that "in 2004, an independent broker had identified possible alternative providers for Bussone and Lampner." *Id.* at ¶¶ 32, 37, 38. Additionally, the Secretary alleges that "[a]fter 2004 and at the time of their recommendations to the Governance Committee in 2009 and 2011, Bussone and Lampner failed to conduct a full request for bid proposals from alternative providers, or request that

17

an independent broker obtain and compare bid proposals from alternative providers" and that "Bussone and Lampner relied on BCG and Ramsey's recommendation to continue retaining FCE, even though BCG and Ramsey were conflicted." *Id.* at ¶¶ 39, 40.

The Secretary alleges that Lampner and Bussone, as two of the "Chimes Defendants," "had responsibility for prudently and loyally monitoring the Plan's administration and expenses, including the performance and fees of service providers appointed by the Chimes Defendants" and "exercised authority and control over FCE and BCG's appointment and retention, as well as the fees paid to FCE and BCG *Id.* at ¶¶ 26-27.

The Secretary alleges that Lampner and Bussone specifically "solicited FCE and BCG to make donations to the Chimes Foundation" which the Secretary now alleges were "in connection with" the Plan's retention of FCE and BCG." *Id.* at ¶¶ 28, 82.  Furthermore, the Secretary alleges that it was Bussone himself who "directed FCE and Ward to reimburse Chimes DC" for Plan administrative work performed by an employee of Chimes DC." *Id.* at ¶ 71.

Although officers and directors of fiduciary corporations "do not become fiduciaries solely by virtue of their corporate position," *see In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d at 447, the United States Court of Appeals for the Ninth Circuit has specifically rejected the position "that an officer who acts on behalf of a named fiduciary corporation cannot be a fiduciary if he acts within his official capacity and if no fiduciary duties are delegated to him individually." *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1458–59 (9th Cir. 1995).  "There is no indication that an officer of a named fiduciary cannot be a fiduciary and the [ERISA] personal liability provision asserts that all fiduciaries will be held personally liable, without

mention of named fiduciaries." *Id.* at 1460.  (citing 29 U.S.C. § 1109).  "Agency interpretations of ERISA indicate fiduciary status depends on an individual's functional role rather than title" *Id.*  Accordingly, the First Amended Complaint adequately alleges that Lampner and Bussone were Plan fiduciaries.[4]  *See also Peters v. Aetna, Inc.*, No. 1:15-CV-00109-MR, 2016 WL 4547151, at *10 (W.D.N.C. Aug. 31, 2016) ("Because '[f]iduciary status is a fact sensitive inquiry,' at the motion to dismiss stage, 'courts generally do not dismiss claims . . . where the complaint sufficiently pleads defendants' ERISA fiduciary status.' " (quoting *In re Schering-Plough Corp. ERISA Litig.*, No. 03-1204 (KSH), 2007 WL 2374989, at *7 (D.N.J. Aug. 15, 2007))).

II.    <u>FCE and Ward's Alleged Concealment of their Illegal Actions Does Not Invalidate the Secretary's Claims Against the Chimes Defendants in Counts I, IV, and V</u>

The Chimes Defendants contend that they cannot be held liable for the wrongdoings of Defendants FCE and Ward alleged in Counts I, IV, and V of the First Amended Complaint, discussed *infra*, because it "is expressly alleged to have been fraudulently concealed from them."  Reply, p. 4, ECF No. 109 (citing, *inter alia*, First Am. Compl., ¶¶ 49, 50, 57, 62, ECF No. 102 ("FCE misrepresented to Chimes DC that it had forwarded [third-party] payments to the Plan, thus fraudulently concealing its receipt of additional, unauthorized compensation;" "[FCE] prevented the Chimes Defendants from having all of the facts necessary to make prudent decisions . . . [and from] accurately assessing the true

---

[4] The Chimes Defendants additionally object that "none of the Chimes Defendants can be responsible for any co-fiduciary liability with respect to any other party's actions [specifically FCE and BCG]" because the Secretary "has not plead any facts indicating that any party other than Chimes DC is a fiduciary and/or that there were any violations of ERISA."  Mem. Supp. Mot. to Dismiss, p. 20-21, ECF No. 86-1.  However, via prior Memorandum Opinion and Order (ECF Nos. 135 & 136), this Court has held that the Secretary sufficiently alleges that FCE is a plan fiduciary.  *See Chimes*, 2016 WL 4993293, at *7-8.  Additionally, the Secretary does not allege "that BCG or [Ramsey] acted as fiduciaries under the Plan," but that they "were parties in interest and knowing participants in fiduciary breaches."  Response, p. 27, n. 7, ECF No. 95.

cost of FCE's services;" "Ward did not disclose her arrangements with FCE to the Chimes Defendants;" "Defendant Ward failed to alert Chimes DC that FCE's computer system was unable to adequately manage fluctuations in participant counts.")).

ERISA imposes co-fiduciary liability on a fiduciary who "participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach."  29 U.S.C. § 1105(a)(1).  However, a fiduciary is also liable where "by his failure to comply with [his own ERISA fiduciary duties] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach."  *Id.* at § 1105(a)(2).  "ERISA imposes high standards of fiduciary duty on those responsible for the administration of employee benefit plans."  *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 355 (4th Cir. 2014), *cert. denie*d, 135 S. Ct. 2887 (2015).  "Pursuant to the duty of loyalty, an ERISA fiduciary must 'discharge his duties . . . solely in the interest of the participants and beneficiaries.' "  *Id.* at 356 (quoting 29 U.S.C. § 1104(a)(1)(A)).  "The duty of prudence requires ERISA fiduciaries to act 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.' "  *Id.* (quoting 29 U.S.C. § 1104(a)(1)(B)).  Whether a breach of the duty of prudence has occurred depends on "whether the fiduciary engaged in a reasoned decision-making process, consistent with that of a prudent man acting in a like capacity."  *Id.*  (internal quotations and citations omitted).

Although the Secretary alleges that FCE and Ward *concealed* certain activities from the Chimes Defendants, the Secretary is not foreclosed from also alleging that the Chimes

Defendants failed to fulfill their broader duties to prudently and loyally monitor the Plan.  As discussed *supra*, the Secretary has alleged that the Chimes Defendants were Plan fiduciaries, that Chimes International received significant donations from both FCE and BCG, that FCE hired Lampner's child, and that an entity owned by Ramsey provided discounted services to Chimes DC.  Despite this alleged conflict of interest, the Secretary claims that the Chimes Defendants failed to request bid proposals from service providers other than FCE and BCG even though an independent broker had indicated that alternatives existed, instead relying on the advice of the conflicted parties Lampner, BCG[5], and Ramsey.  *See, e.g., Leigh v. Engle*, 727 F.2d 113, 132 (7th Cir. 1984) (Concluding that fiduciary duties had been violated where "fiduciaries had divided loyalties with clear potential for conflicts of interests . . . [but] failed even to seek independent, disinterested advice.").

Furthermore, the Secretary alleges that the Chimes Defendants were responsible for monitoring FCE's fees and performance, but allowed FCE to provide inadequate services and failed to monitor, or even keep a record of, the fees FCE was receiving from third party service providers or to adjust FCE's compensation in light of those fees.  See, e.g., Mertens v. Hewitt Associates, 508 U.S. 248, 251–52 (1993) ("Fiduciaries are assigned a number of detailed duties and responsibilities, which include the proper management, administration, and investment of plan assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." (internal quotations omitted)).

---

[5] The Secretary alleges that BCG had jointly marketed FCE's products to Chimes DC and was paid pursuant to the same agreement as FCE.  First Am. Compl., ¶ 40, ECF No. 102.

III.   <u>Count I: Excessive Plan Expenses</u>

Count I of the First Amended Complaint (ECF No. 102) alleges that "the Chimes Defendants failed to prudently and loyally monitor the Plan's expenses, thereby resulting in excessive Plan expenses, including the fees of FCE, BCG, certain service providers recommended by FCE, and administrative reimbursements to Chimes DC."   First Am. Compl., ¶ 74, ECF No. 102.   Therefore, the Secretary alleges that the Chimes Defendants breached their fiduciary duties of loyalty and prudence, in violation of 29 U.S.C. §§ 1104(a)(1)(A)-(B), and engaged in prohibited transactions between a plan and a party in interest, in violation of 29 U.S.C. §§ 1106(a)(1)(C)-(D)[6].  *Id.* at ¶ 75.

The Chimes Defendants object that the First Amended Complaint "lacks any real factual support for" the claim "that the Chimes Defendants permitted the Plan to pay excessive fees."  Mem. Supp. Mot. to Dismiss, p. 27, ECF No. 86-1.  This Court rejected this argument in its Memorandum Opinion of September 13, 2016.  *See Perez v. Chimes D.C., Inc., et al.*, No. RDB-15-3315, 2016 WL 4993293, at *8 (D. Md. Sept. 19, 2016).   The First Amended Complaint alleges that "[t]he Plan paid millions of dollars in excessive expenses, most of which benefitted the Plan's third party administrator, FCE, and the Plan representative, BCG."  First Am. Compl., ¶ 22, ECF No. 102.  Additionally, the Secretary alleges that "the Plan has spent [on FCE and its selected service providers] millions of dollars more than would be reasonable for a partially self-funded plan of this size and nature" and that "[c]ontrary to [an] agreement between Chimes DC and FCE, FCE failed to

---

[6] 29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . (C) furnishing of goods, services, or facilities between the plan and a party in interest . . . [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan . . . ."

forward all payments that it received from service providers to the Plan...fraudulently concealing its receipt of additional, unauthorized compensation." Id. at ¶¶ 24, 48-49.

The Chimes Defendants cite *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x. 31, 33 (2d Cir. 2009), in which the United States Court of Appeals for the Second Circuit dismissed an excessive fee claim under ERISA because the plaintiffs "fail[ed] to allege that the fees were excessive relative to the services rendered" and also failed to allege "facts concerning other factors relevant to determining whether a fee is excessive under the circumstances." *Young*, 325 Fed.Appx. at 33 (internal quotations omitted). Unlike in *Young*, the Secretary alleges that FCE has "failed to prudently manage the Plan and its assets," including failure "to maintain accurate records" or "administer a reasonable claims procedure," indicating that the fees were excessive relative to services rendered. *Id.* at ¶ 66. In fact, the Department of Labor has indicated that " 'the essential question' " in determining the reasonableness of a fee " 'is whether the charges are reasonable in relation to what the [plan] receives.' " Defs.' Reply, p. 5, n. 4, ECF No. 110 (quoting 81 Fed. Reg. 21002, 21030 (col. 3)) (Apr. 8, 2016) (emphasis added). Accordingly, the Chimes Defendants' argument fails.

Additionally, the Chimes Defendants contend that the First Amended Complaint fails to allege that the "Chimes Defendants . . . act[ed] in a fiduciary capacity when Chimes DC set the fees with Plan vendors." Mem. Supp. Mot. to Dismiss, p. 25, ECF No. 86-1. The Chimes Defendants object that in setting fees for Plan vendors, Chimes DC acted "in a settlor or plan sponsor capacity," meaning that its actions "are not subject to ERISA

fiduciary requirements." *Id.* at 26. This Court has previously rejected this argument as well in ruling on the FCE Defendants' Motion to Dismiss. *See Chimes*, 2016 WL 4993293 at 5–6.

The United States Court of Appeals for the Fourth Circuit has observed that "a plan sponsor does not become a fiduciary by performing settlor-type functions such as establishing a plan and designing its benefits. *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996) (citing *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996)). However, "a plan sponsor does become a fiduciary under the definition if (that is, 'to the extent') it retains or exercises 'any discretionary authority' over the management or administration of a plan." *Id.* (quoting Jane Kheel Stanley, The Definition of a Fiduciary Under ERISA: Particular Persons and Entities, 27 Real Prop., Prob. & Tr. J. 711, 758-62 (1993)). Here, the Secretary alleges that "Chimes DC was the Plan Sponsor," but also the "named Plan Administrator," a named fiduciary of the Plan. First Am. Compl., p. 4, ECF No. 102. The Secretary alleges that "[a]t all relevant times," like Plaintiff Delany, "Chimes DC had and exercised discretionary authority and discretionary control respecting the appointment, retention, and payment of the Plan's service providers, insurers, and/or fiduciaries, including FCE." *Id.*

While recognizing that Chimes DC did "establish[ ]" the Plan, the Secretary has also alleged that "the Amended Restated Adoption Agreement for the Health & Welfare Plan of The Chimes, D.C., Inc....executed by FCE, BCG, and Chimes DC ...granted Chimes DC authority to appoint, retain, and/or remove the Plan's service providers, including the third party administrator, FCE." Id. at ¶ 25-26 (emphasis added). The Secretary alleges that "[a]t all relevant times, the Chimes Defendants exercised authority and control over FCE and BCG's appointment and retention, as well as the fees paid to FCE and BCG." *Id.* at 27.

Accordingly, the Secretary has alleged that Chimes DC was a Plan fiduciary with the duty to monitor FCE's fees and performance.

The Chimes Defendants further contend that "the facts alleged fail to demonstrate that the decision to continue to engage FCE and BCG in 2009 and 2011 was in any way unreasonable or inconsistent with Chimes DC's fiduciary duties."  Mem. Supp. Mot. to Dismiss, p. 27, ECF No. 86-1.  The argument was raised by the FCE Defendants, and was rejected by this Court in its prior Memorandum Opinion of September 13, 2016. *See Chimes*, 2016 WL 4993293 at 5–6.

"The power to remove carries with it 'a duty to monitor appropriately those subject to removal.' " *Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 496 (D. Md. 2010) (quoting *Coyne & Delany*, 98 F. 3d at 1465.) The First Amended Complaint alleges that "[i]n 2009 and 2011, Lampner and Bussone assured the Governance Committee that they had consulted with an independent broker, who was unable to find suitable alternative service providers to FCE." First Am. Compl., ¶ 37, ECF No. 102. However, the Secretary also alleges that "in 2004, an independent broker had identified possible alternative providers for Bussone and Lampner, but the Chimes Defendants failed to request bid proposals from these alternative providers or even set up meetings to discuss their services and fees." Id. at 38. The Secretary further alleges that "[t]he Chimes Defendants did not take other steps to ensure that FCE's fees were reasonable, such as consulting with an independent expert regarding FCE's fees or comparing FCE's fees to industry benchmarks." Id. at 41. The Secretary alleges that the Chimes Defendants' actions "caused losses to the Plan, including but not limited to FCE and BCG's excessive fees, and profited the Chimes Defendants in the form of the charitable

contributions and discounts for work performed by BCGHR LLC." Id. at 44. Accordingly, the Secretary has sufficiently pled that the Chimes Defendants failed to monitor FCE's activities and failed to investigate whether FCE's fees and performance satisfied the needs of the Plan. See Cuthie, 743 F. Supp. 2d at 496 (holding that Plaintiff had sufficiently pled a claim for breach of fiduciary duty under ERISA where he had alleged that Defendant was a fiduciary with the power to remove the Plan administrator, but failed to investigate or remove the administrator despite knowledge that the administrator's "conduct conflicted with the interests of Plan participants."). Accordingly, the Chimes Defendants' arguments for dismissal of Count I fail.

IV.  **Count II: Chimes Defendants' Receipt of Benefits in Connection with Plan's Retention of FCE**

The Secretary alleges that the Chimes Defendants breached their fiduciary duties of loyalty and prudence, in violation of 29 U.S.C. §§ 1104(a)(1)(A)-(B), and engaged in prohibited self-dealing with Plan assets, in violation of 29 U.S.C. § 1106(b)(1), by "receiv[ing] benefits, in the form of FCE's payments to the Chimes Foundation and FCE's employment of [ ] Lampner's child, in connection with the Plan's retention of FCE." First Am. Compl., ¶ 82, ECF No. 102. Count II further alleges that "Chimes International and Chimes DC . . . received consideration for their own personal accounts" from these transactions, in violation of 29 U.S.C. § 1106(b)(3). Id. at ¶ 83.

The Chimes Defendants contend that "neither the charitable donations nor the employment of [ ] Lampner's family member was unlawful." Mem. Supp. Mot. to Dismiss, p. 28, ECF No. 86-1. Again, this Court has already addressed these arguments with respect

to Count II in its Memorandum Opinion of September 13, 2016.  *See Perez*, No. 2016 WL 4993293 at 9–10.

The Secretary alleges that "Bussone and Lampner solicited FCE and BCG to make donations to the Chimes Foundation." First Am. Compl., ¶ 28, ECF No. 102. Additionally, the Secretary alleges that "Lampner individually exercised discretionary authority or discretionary control respecting appointment, retention, and payment of Plan service providers...including FCE" and that FCE and BCG did in face make donations to the Chimes Foundation as early as 2008. *Id.* at ¶ 13, 29. Although the Chimes Foundation, and not the Chimes Defendants, directly received these donations, the Secretary has alleged that "[t]he Chimes Foundation was the fundraising entity of Chimes International and its other subsidiaries, and its assets could be used by Chimes International and any subsidiary of Chimes International, including Chimes DC." Id. at ¶ 28 (emphasis added). The fact that the donations were not directly credited to one of the Chimes Defendants does not disqualify this claim. *See, e.g., Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1220 (2d Cir. 1987) ("Parties may not use shell-game-like maneuvers to shift fiduciary obligations to one legal entity while channeling profits from self-dealing to a separate legal entity under their control.")

As to the hiring of Lampner's child, the First Amended Complaint alleges that "Lampner solicited FCE to employ his child and FCE hired his child [and] Lampner took part in the negotiation of FCE's fees and recommended to Chimes DC and Chimes International that FCE's engagement under the Adoption Agreement be renewed." *Id.* at ¶ 32. Although FCE hired Lampner's child in 2010, after Chimes DC had already decided to

renew its contract with FCE in 2009, Chimes DC again decided to renew its contract with FCE in 2011. *Id.* at ¶ 32. The First Amended Complaint alleges that "[i]n connection with the[se] payments and benefits...the Chimes Defendants exercised their authority to cause the Plan to retain and pay FCE and BCG as service providers." *Id.* at ¶ 35. For these reasons, the Chimes Defendants' arguments for dismissal of Count II fail.

V.      Count III: Chimes Defendants' Receipt of Payments and Discounts from BCG and Ramsey in Connection with Plan's Retention of BCG

In Count III of the First Amended Complaint (ECF No. 102), the Secretary alleges that the Chimes Defendants breached their fiduciary duties of loyalty and prudence, in violation of 29 U.S.C. §§ 1104(a)(1)(A)-(B), engaged in prohibited self-dealing with Plan assets, in violation of 29 U.S.C. § 1106(b)(1), and "[r]eceived consideration for their own personal accounts from a party dealing with such plan in connection with transactions involving the assets of the plan," in violation of 29 U.S.C. § 1106(b)(3), by "engag[ing] BCG's services on behalf of the Plan, in connection with BCG's payments to the Chimes Foundation and discounts provided by another entity owned by Ramsey, thereby causing losses to the Plan in the form of BCG's fees."  First Am. Compl., ¶ 89, ECF No. 102.  The Secretary alleges that the Chimes Defendants "have joint and several liability for each other's breaches," pursuant to 29 U.S.C. § 1105(a) and that BCG and Ramsey are also liable because they "knowingly participated in the Plan's payment of fees to BCG."  *Id.* at ¶¶ 91-92.

The Chimes Defendants have moved to dismiss Count III on the grounds that "neither the provision of charitable donations to the Chimes Foundation, nor the provision of the services to Chimes DC at an alleged discounted price, was unlawful."  Mem. Supp. Mot. to Dismiss, p. 34, ECF No. 86-1.   However, as discussed *supra*, this Court has

previously held that the Secretary has sufficiently alleged ERISA violations in connection with FCE and BCG's donations to the Chimes Foundation, a "fundraising entity of Chimes International and its other subsidiaries" whose assets "could be used by Chimes International and any subsidiary of Chimes International, including Chimes DC." *See* First Am. Compl., ¶ 28, ECF No. 102.

As to the allegedly discounted services provided to Chimes DC by an entity owned by Ramsey, the Chimes Defendants object that the Secretary has failed to allege "that the receipt of discounted services caused the Plan to suffer a loss."   Mem. Supp. Mot. to Dismiss, p. 35, ECF No. 86-1.   However, as discussed *supra*, the Secretary has sufficiently alleged that BCG charged the Plan "excessive fees" and that the "Chimes Defendants [ ] did not take steps to ensure that BCG's fees were reasonable for the services actually provided by BCG."  First Am. Compl., ¶ 42, ECF No. 102.  The Secretary further alleges that "BCG's services amounted to participant communications and client assistance that did not justify its compensation, which ranged from $400,000 to $600,000 per year from 2008 to the present." *Id.*  No additional allegations are required at this stage.  The United States Court of Appeals for the Fourth Circuit has concluded that it is the ERISA fiduciary who ultimately "bears the burden of proof on loss causation" after the plaintiff has established a breach of fiduciary duty and loss. *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 363 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 2887 (2015).

The Chimes Defendants further object that "no legal authority" prohibits employers from "receiv[ing] non-ERISA plan services on a discounted basis (or otherwise) from a service provider to an ERISA plan sponsored by the employer (or an affiliate of that service

provider)." However, the Secretary does not simply allege that an entity owned by Ramsey provided services to Chimes DC, but that they were provided at a "discount," that BCG was retained "in connection" with these discounted services, and that the Plan suffered losses as a result. First Am. Compl., ¶ 44, ECF No. 102. Accordingly, the Secretary has sufficiently alleged that a prohibited transaction occurred within the meaning of 29 U.S.C. §§ 1106(b)(1), (3). Accordingly, the Chimes Defendants' arguments for dismissal of Count III must fail.

VI.   Count IV: FCE's Receipt of Payments from Service Providers

In Count IV of the First Amended Complaint (ECF No. 102), the Secretary alleges that FCE breached its fiduciary duties of loyalty and prudence, in violation of 29 U.S.C. §§ 1104(a)(1)(A)-(B), engaged in prohibited self-dealing with Plan assets, in violation of 29 U.S.C. § 1106(b)(1), and "[r]eceived consideration for its own personal accounts from a party dealing with such plan in connection with transactions involving the assets of the plan," in violation of 29 U.S.C. § 1106(b)(3) by "retain[ing] payments from Plan service providers and fail[ing] to forward them to the Plan as required by Chimes DC, and receiv[ing] compensation in relation to FCE's management of Plan assets that was not disclosed to Chimes DC." First Am. Compl., ¶ 94, ECF No. 102. Count IV further alleges that "[t]he Chimes Defendants failed to prudently and loyally monitor FCE and ensure that FCE had forwarded the service provider payments to the Plan or offset their fees paid directly from the Plan, thereby breaching their fiduciary duties of loyalty and prudence," in violation of 29 U.S.C. §§ 1104(a)(1)(A)-(B) and "causing Plan losses." *Id.* at ¶ 97.

The Secretary alleges that "FCE failed to disclose to Chimes DC that it was retaining [payments from third party service providers] . . . and often failed to disclose the specific

amounts being paid by Plan service providers to FCE and retained by FCE." *Id.* at ¶ 49. Additionally, the Secretary alleges that "[e]ach year, FCE *misrepresented* to Chimes DC that it had forwarded all such payments to the Plan, thus *fraudulently concealing* its receipt of additional, unauthorized compensation." *Id.* (emphasis added). The Chimes Defendants object that FCE could not have engaged in "misrepresentation" or "fraudulent concealment" with respect to its receipt of fees from service providers because the Fee Schedule "**expressly provides** that FCE may receive payments and commissions from the Plan's insurers and other service providers" and because the First Amended Complaint alleges that "Chimes DC generally was aware that payments could be made by unidentified Plan service providers to FCE." Mem. Supp. Mot. to Dismiss, p. 36, ECF No. 86-1.

However, as explained in this Court's previous Memorandum Opinion, the Secretary also alleges that "Chimes DC and FCE had agreed that, with a few specific exceptions, any commissions or rebates paid by the Plan service providers to FCE should be forwarded to the Plan," but "[c]ontrary to this agreement," "FCE failed to forward all payments that it received from service providers to the Plan," "caus[ing] losses to the Plan." *See Perez*, 2016 WL 4993293 at 10 (quoting First Am. Compl., ¶¶ 47-48, 53, ECF No. 102). Accordingly, the Chimes Defendants' arguments for dismissal fail. For these reasons, the Chimes' Defendants' arguments for dismissal of Count IV fail.

VII.    Count V: Failure to Prudently and Loyally Administer the Plan

Count V of the First Amended Complaint (ECF No. 102) alleges that FCE breached its fiduciary duties of loyalty and prudence, in violation of 29 U.S.C. §§ 1104(a)(1)(A)-(B), with respect to "the Plan's coverage and claims administration" and "failed to ensure that

claims were adjudicated in a timely manner." First Am. Compl., ¶¶ 99, 101, ECF No. 102. Count V further alleges that the Plan itself "was in violation of ERISA § 503 [29 U.S.C. § 1133] because it failed to afford a reasonable opportunity to participants whose claims for benefits had been denied for a full and fair review by the appropriately named fiduciary of the decision denying the claim . . . [and] failed to contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations were made in accordance with governing plan documents and that, where appropriate, the plan provisions were applied consistently with respect to similarly situated claimants." *Id.* at ¶ 101. Accordingly, the Secretary alleges that "[t]he Plan, through its plan administrator Chimes DC, may be enjoined from future violations," pursuant to of [S]ection 503 of ERISA, pursuant to . . . 29 U.S.C. §1132(a)(5)." *Id.*

The Chimes Defendants object that the Secretary "fails to allege what specific actions the Chimes Defendants were obligated to have taken to properly monitor FCE, or any concrete facts to show how their actions fell short of the appropriate standard." Mem. Supp. Mot. to Dismiss, p. 38, ECF No. 86-1. However, the Secretary has only named Chimes DC in Count V in connection with the Secretary's request for "a permanent injunction under 29 U.S.C. § 1132(a)(5) to prevent Chimes DC and FCE from future violations of the statutory and regulatory claims processing requirements." Pl. Opp'n, p. 47, ECF No. 95. Among other things, the regulations require plans to establish and maintain reasonable procedures governing the claims process; establish administrative processes and safeguards designed to ensure that benefits determinations are made consistently and in accordance with Plan documents; and ensure that claims are adjudicated in a reasonable time

period.  *See* 29 C.F.R. § 2560.503-1(b), (f).  The Secretary has alleged that the Plan's "claims procedures failed to contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations were made in accordance with governing plan documents and that, where appropriate, the plan provisions were applied consistently with respect to similarly situated claimants."  First Am. Compl., ¶ 101, ECF No. 102.  Chimes DC is added under Count V solely to ensure future compliance with the regulations by the Plan.  Accordingly, the Chimes Defendants' arguments for dismissal of Count V fail.

VIII.  Count VI: Plan's Reimbursements to Chimes DC for Work of Its Full-Time Employee

Count VI alleges that "by causing the Plan to pay Chimes DC for work performed by a full-time employee of Chimes DC who otherwise would have been paid by Chimes DC, Chimes DC and Bussone "[c]aused the assets of the Plan to inure to the benefit of the employer Chimes DC," in violation of 29 U.S.C. § 1103; breached their fiduciary duties of loyalty and prudence, in violation of 29 U.S.C. §§ 1104(a)(1)(A)-(B); engaged in prohibited transactions between a plan and a party in interest, in violation of 29 U.S.C. §§ 1106(a)(1)(C)-(D); engaged in prohibited self-dealing with Plan assets, in violation of 29 U.S.C. § 1106(b)(1); and "acted in a transaction involving the Plan on behalf of a party (or representing a party) whose interests are adverse to the interests of the Plan or the interests of its participants or beneficiaries," in violation of 29 U.S.C. § 1106(b)(2).  First Am. Compl., ¶ 104, ECF No. 102.  The Secretary alleges that "Chimes DC, Bussone and FCE have joint and several liability for the breaches of their co-fiduciaries alleged herein" pursuant to 29 U.S.C. § 1105(a)."  *Id.* at ¶ 106.

The Chimes Defendants object that "Count VI fails to state a valid legal claim because these types of reimbursements are not unlawful."  Mem. Supp. Mot. to Dismiss, p. 38, ECF No. 86-1.  However, the Secretary has adequately alleged that FCE used Plan assets to compensate Chimes DC for administrative services that an existing full-time employee of Chimes DC performed for the Plan without a contract covering that arrangement and, accordingly, that Chimes DC engaged in prohibited self-dealing and setting its own compensation.  "While ERISA provides that a fiduciary may defray the reasonable expenses of administering the plan, it does not allow a fiduciary to set its own administrative fees and directly collect those fees from plan assets." *Chao v. Crouse*, 346 F. Supp. 2d 975, 988 (S.D. Ind. 2004).   Narrow exemptions under 29 U.S.C. § 1108 apply for "reasonable compensation," but they does not counsel dismissal of an otherwise well-pled allegation that a fiduciary has engaged in the prohibited transaction of paying itself from Plan assets.  *See* 29 C.F.R. § 2550.408b-2; *Barboza v. California Ass'n of Professional Firefighters*, 799 F.3d 1257, 1269 (9th Cir. 2015).  Accordingly, the Chimes Defendants' arguments for dismissal of Count VI fail.

<u>CONCLUSION</u>

For the reasons stated above, the Chimes Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 86) is DENIED.

Dated:        October 5, 2016

_____/s/_____
Richard D. Bennett
United States District Judge