IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| THOMAS E. PEREZ, | * | |
| Secretary of Labor, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-15-3315 |
| CHIMES DISTRICT OF | * | |
| COLUMBIA, INC., *et al.*, | * | |
| Defendants. | * | |
|   | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

United States Secretary of Labor, Thomas E. Perez, ("the Secretary") has brought a ten-count Amended Complaint against The Chimes D.C., Inc. Health & Welfare Plan (the "Plan") and its alleged fiduciaries and service providers, including Defendants Chimes District of Columbia, Inc.; Chimes International, Ltd.; FCE Benefit Administrators, Inc.; Gary Beckman; Stephen Porter; Martin Lampner; Albert Bussone[1]; Benefits Consulting Group; Jeffrey Ramsey; and Marilyn Ward, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, *et seq.* First Am. Compl., p. 1-2, ECF No. 102. Currently pending before this Court is Defendants Benefits Consulting Group ("BCG") and Jeffrey Ramsey's ("Ramsey") (collectively, the "BCG

---

[1] This Court has previously denied the FCE Defendants' and Chimes Defendants' Motions to Dismiss the First Amended Complaint. *See Perez v. Chimes D.C., Inc., et al.*, No. RDB-15-3315, 2016 WL 4993293, at \*1 (D. Md. Sept. 19, 2016); *Perez v. Chimes D.C., Inc., et al.*, No. RDB-15-3315, 2016 WL 5815443, at \*1 (D. Md. Oct. 5, 2016).

Defendants") Motion to Dismiss (ECF No. 87) Counts I and III of the Complaint[2]. The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated herein, the BCG Defendants' Motion to Dismiss Counts I and III of the First Amended Complaint (ECF No. 87) is DENIED.

BACKGROUND

In ruling on a motion to dismiss, this Court must accept the factual allegations in the plaintiff's complaint as true and construe those facts in the light most favorable to the plaintiff. *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Harris v. Publish Am., LLLP*, No. RDB-14-3685, 2015 WL 4429510, at *1 (D. Md. July 17, 2015). The facts of this case have previously been set forth in this Court's Memorandum Opinion of October 5, 2016 (ECF No. 141). *See Perez v. Chimes D.C., Inc., et al.*, No. RDB-15-3315, 2016 WL 5815443, at *1 (D. Md. Oct. 5, 2016). The following factual allegations pertain specifically to those claims raised against the BCG Defendants in Counts I and III of the First Amended Complaint, the subject of the pending motion:

I.   The BCG Defendants

"Defendant BCG was a sole proprietorship and was engaged to provide plan representation services to the Plan." First Am. Compl., ¶ 18, ECF No. 102. "At all relevant times, Defendant Jeffrey Ramsey ("Ramsey") was the owner [of BCG,] an officer of BCG," "and 10 percent or more shareholder [of BCG]." *Id.* Accordingly, the Secretary alleges that both BCG and Ramsey were parties in interest under 29 U.S.C. §§ 1002(14)(B) and (H). *Id.*

---

[2] Pursuant to this Court's Letter Order of June 6, 2016 (ECF No. 101), the BCG Defendants' pending Motion to Dismiss Counts I and III of the Complaint shall be treated as a Motion to Dismiss Counts I and III of the First Amended Complaint.

II.    Alleged Violations of the Employee Retirement Income Security Act ("ERISA")

    A.    The Plan's Excessive Expenses, Including FCE and BCG's Fees

The Secretary alleges that the "Chimes Defendants failed to meet their obligations [to the Plan], resulting in substantial losses to the Plan," including "millions of dollars in excessive expenses, most of which benefitted the Plan's third party administrator, FCE, and the plan representative, BCG." *Id.* at ¶ 22. "Each year, the Chimes Defendants received financial and other reports summarizing the Plan's expenses and administration." *Id.* at ¶ 23. "Based on these reports, the Chimes Defendants knew or should have known that the Plan's expenses were excessive for a plan of its size and nature, but failed to take adequate steps to reduce expenses by searching for alternate providers." *Id.* "From at least 2008 through the present, the Plan has spent millions of dollars more than would be reasonable for a partially self-funded plan of this size and nature." *Id.* at ¶ 24. "Most of the Plan's expenses were used to pay FCE and BCG's fees and to pay service providers who were selected and recommended by FCE and whose fees were negotiated by FCE." *Id.*

    B.    The Chimes Defendants' Conflicted Relationships With FCE and BCG

"[T]he Plan's relationship with FCE and BCG, including the fees paid by the Plan to FCE and BCG, was governed by the Amended and Restated Adoption Agreement for the Health & Welfare Plan of The Chimes, D.C., Inc. and its accompanying exhibits, including the fee schedule and the Third Party Administrator Agreement executed by FCE, BCG, and Chimes DC (collectively, the "Adoption Agreement")." *Id.* at ¶ 25. "The Adoption Agreement granted Chimes DC authority to appoint, retain, and/or remove the Plan's service providers, including the third party administrator, FCE, and plan representative,

3

BCG." *Id.* at ¶ 26. "[T]he Adoption Agreement allowed Chimes DC, as the employer, to terminate the Plan's contract with FCE, and thus BCG, upon 60 days' notice." *Id.*

"At all relevant times, Bussone and Lampner solicited FCE and BCG to make donations to the Chimes Foundation." *Id.* at ¶ 28. "The Chimes Foundation was the fundraising entity of Chimes International and its other subsidiaries, and its assets could be used by Chimes International and any subsidiary of Chimes International, including Chimes DC." *Id.* "[A]s early as 2008, FCE and BCG made donations to the Chimes Foundation." *Id.* at ¶ 29. "In 2009 and thereafter, the Plan's third party administrator, FCE, and the Plan's representative, BCG, jointly pledged at least $330,000 to the Chimes Foundation." *Id.* at ¶ 30. "In making one such pledge, FCE and BCG expressly referenced their status as service providers to Chimes and their 'special relationship' and 'gratifying partnership with the Chimes,' and FCE and BCG specifically stated that '[a]n additional $55,000 will be paid for a one (1) year option of continuing benefit services to our Chimes partner.' " *Id.* "Between 2009 and 2014, FCE paid at least $400,000 to the Chimes Foundation in connection with its engagement as service provider to the Plan." *Id.* at 31. "Between 2009 and 2014, BCG paid at least $282,500 to the Chimes Foundation in connection with its engagement as service provider to the Plan." *Id.* at ¶ 33.

Additionally, "[i]n 2010, Lampner solicited FCE to employ his child and FCE hired his child." *Id.* at ¶ 32. "At relevant times, including during the Chimes Defendants' renewal of FCE's engagement in 2009 and 2011, Lampner took part in the negotiation of FCE's fees and recommended to Chimes DC and Chimes International that FCE's engagement under the Adoption Agreement be renewed." *Id.* Furthermore, "[i]n 2013, Jeffrey Ramsey, the

owner of BCG, provided discounts to Chimes DC on work performed by BCGHR LLC, another company owned by Ramsey." *Id.* at ¶ 34.

"In connection with" these payments and benefits, "the Chimes Defendants exercised their authority to cause the Plan to retain and pay FCE and BCG as service providers." *Id.* at ¶ 35. "In 2009 and 2011, the Governance Committee of the Board of Directors of Chimes International and Chimes DC (the "Governance Committee") reviewed Chimes DC's contract with FCE and BCG to perform services for the Plan and were informed by Bussone and Lampner of the amount of donations pledged by FCE and BCG." *Id.* at ¶ 36. "In 2009 and 2011, Lampner and Bussone assured the Governance Committee that they had consulted with an independent broker, who was unable to find suitable alternative service providers to FCE." *Id.* at ¶ 37.

However, "in 2004, an independent broker had identified possible alternative providers for Bussone and Lampner, but the Chimes Defendants failed to request bid proposals from these alternative providers or even set up meetings to discuss their services and fees." *Id.* at ¶ 38. "After 2004 and at the time of their recommendations to the Governance Committee in 2009 and 2011, Bussone and Lampner failed to conduct a full request for bid proposals from alternative providers, or request that an independent broker obtain and compare bid proposals from alternative providers." *Id.* at ¶ 39. "At most, Bussone and Lampner relied on BCG and Ramsey's recommendation to continue retaining FCE, even though BCG and Ramsey were conflicted." *Id.* at ¶ 40. "From the beginning of the Plan's relationship with FCE and BCG, FCE and BCG jointly marketed FCE's products to Chimes DC, and BCG was at all times being paid from the Plan pursuant to the same

agreement as FCE." *Id.* "BCG did not conduct a request for bid proposals from alternative providers." *Id.* "The Chimes Defendants did not take other steps to ensure that FCE's fees were reasonable, such as consulting with an independent expert regarding FCE's fees or comparing FCE's fees to industry benchmarks." *Id.* at ¶ 41.

"The Chimes Defendants also did not take steps to ensure that BCG's fees were reasonable for the services actually provided by BCG." *Id.* at ¶ 42. "BCG's services amounted to participant communications and client assistance that did not justify its compensation, which ranged from $400,000 to $600,000 per year from 2008 to the present." *Id.* "In 2009 and 2011, relying on Lampner and Bussone's recommendations, the Governance Committee approved the extensions to Chimes DC's contract with FCE and BCG to perform services for the Plan." *Id.* at ¶ 43. "To date, the Plan continues to retain and pay FCE and BCG as service providers." *Id.* The Secretary alleges that "[t]he retention of FCE and BCG in connection with the Chimes Defendants' receipt of payments and other benefits caused losses to the Plan, including but not limited to FCE and BCG's excessive fees, and profited the Chimes Defendants in the form of the charitable contributions and discounts for work performed by BCGHR LLC." *Id.* at ¶ 44.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests

surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

<u>ANALYSIS</u>

I.     <u>The Secretary Has Sufficiently Alleged That BCG's Fees Were Excessive (Count I)</u>

Count I of the First Amended Complaint alleges that the BCG Defendants "knowingly participated in the Plan's payment of excessive fees to BCG and Ramsey." First Am. Compl., ¶ 80, ECF No. 102. Accordingly, the Secretary seeks to "enjoin[ ] [BCG and Ramsey]" from these ERISA violations and subject them to "such other appropriate

equitable relief to redress the violations in which they knowingly participated, including injunctive relief or disgorgement of unjust profits," pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).  *Id.*

The BCG Defendants object that the Secretary "has not, and cannot, plead plausible facts establishing that BCG's fees were excessive."  Mem. Supp. Mot., p. 6, ECF No. 87-1. However, this Court has already rejected similar arguments in denying the FCE Defendants' and Chimes Defendants' Motions to Dismiss.  *See Chimes*, 2016 WL 4993293 at 8-9; *Chimes*, 2016 WL 5815443 at 10.  The Secretary alleges that "[t]he Plan paid millions of dollars in excessive expenses, most of which benefitted the Plan's third party administrator, FCE, and the plan representative, BCG."  First Am. Compl., ¶ 22, ECF No. 102.  Additionally, the Secretary alleges that "the Plan has spent millions of dollars more than would be reasonable for a partially self-funded plan of this size and nature."  *Id.* at ¶ 24.  More specifically, the Secretary alleges that "BCG's services amounted to participant communications and client assistance that did not justify its compensation, which ranged from $400,000 to $600,000 per year from 2008 to the present."  *Id.* at ¶ 42.  These allegations are more than sufficient to state a claim of excessive fees, especially in conjunction with the kickback scheme, discussed *supra*, that the Secretary alleges in connection with those fees.

The BCG Defendants rely on *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 631 (D.N.J. 2010) and *Lee v. Verizon Commc'ns Inc.*, 954 F. Supp. 2d 486, 494 (N.D. Tex. 2013), two cases in which United States District Courts have dismissed claims for breach of ERISA fiduciary duties in connection with excessive fees or expenses.  However, both cases are distinguishable from the present case.  In contrast to the Secretary's detailed allegations in

8

this case, discussed *supra*, the plaintiffs in *Goldenberg* and *Lee* made no claim that the fees and expenses were excessive *in relation to the services provided*, nor did their allegations arise within the context of a kickback scheme as is alleged here. *See, e.g., Goldenberg*, 41 F. Supp. 2d at 631 ("Without more, pointing to the fact that Charlotte was paid more for their services than the average of the other two entities does not state a plausible claim that their fee was excessive."); *Lee*, 954 F. Supp. 2d at 494 ("[T]he court cannot reasonably infer from the allegations of the amended complaint that it was unreasonable to pay Prudential approximately $8.4 billion in total. The Transferee Class does not specify which aspects of the extra $1 billion of expenditures were unreasonable, or how they were unreasonable."). For these reasons, the BCG Defendants' arguments for dismissal of Count I fail.

II.   <u>The Secretary Has Sufficiently Alleged that the Chimes Defendants Received Payments and Discounts from the BCG Defendants in Connection with the Plan's Retention of BCG (Count III)</u>

Count III of the First Amended Complaint alleges that the BCG Defendants "knowingly participated in the Plan's payment of fees to BCG in connection with BCG's payments to the Chimes Foundation and discounts to Chimes DC." First Am. Compl., ¶ 92, ECF No. 102.  Accordingly, the Secretary seeks to "enjoin[ ] [BCG and Ramsey]" from these ERISA violations and subject them to "such other appropriate equitable relief to redress the violations in which they knowingly participated, including injunctive relief or disgorgement of unjust profits," pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).  *Id.*

"[A]s to the alleged discounted work," the BCG Defendants object that the Secretary "provides no factual allegations supporting its legal conclusions that this work was in fact discounted, or that there was a connection between the alleged discount and the work the

BCG Defendants provided to Chimes DC."   Mem. Supp. Mot., p. 9, ECF No. 87-1. However, the Secretary has alleged that "[i]n 2013, Jeffrey Ramsey, the owner of BCG, provided discounts to Chimes DC on work performed by BCGHR LLC, another company owned by Ramsey."   First Am. Compl., ¶ 34, ECF No. 102.   Additionally, the Secretary has alleged that Bussone and Lampner, both officers of Chimes DC, advised the Chimes DC Governance Committee during their review of BCG's contract."   *Id.* at ¶ 36.   The Secretary alleges that the Governance Committee renewed BCG's contract with Chimes DC in 2009 and 2011, even though BCG's services "did not justify its compensation" and no one took "steps to ensure that BCG's fees were reasonable for the services actually provided by BCG."   *Id.* at ¶ 42.   The BCG Defendants cite no authority indicating that further allegations are required at this stage to adequately plead that BCG's services were in fact "discounted" and were provided "in connection with" BCG's retention as a Plan service provider.

Second, the BCG Defendants argue that their "alleged charitable donations to the Chimes Foundation, a non-party non-fiduciary, did not violate ERISA."   Mem. Supp. Mot., p. 9, ECF No. 87-1.   They cite Department of Labor guidance, indicating that "[a] service provider that provides services to an employee benefit plan of a non-profit charity would not violate ERISA merely by making a tax deductible contribution to the non-profit entity."   *Id.* at 9-10 (quoting Questions and Proposed Answers for the Department of Labor Staff for the 2013 Joint Committee of Employee Benefits Technical Session, May 8, 2013, Q & A 1, http://www.americanbar.org/content/dam/aba/events/employee_benefits/2013_dol_qa.a uthcheckdam.pdf.).   However, the Secretary does not allege that BCG merely made a donation to a non-profit entity.   An ERISA fiduciary who receives consideration from a

party dealing with the plan "*in connection with* a transaction involving the assets of the plan" violates 29 U.S.C. § 1106(b)(3) (emphasis added). In this case, the Secretary has alleged that "[b]etween 2009 and 2014, BCG paid at least $282,500 to the Chimes Foundation *in connection with its engagement as service provider to the Plan.*" First Am. Compl., ¶ 33, ECF No. 102 (emphasis added). Additionally, the Secretary has alleged that "[i]n making one such pledge, FCE and BCG expressly referenced their status as service providers to Chimes and their 'special relationship' and 'gratifying partnership with the Chimes,' and FCE and BCG specifically stated that '[a]n additional $55,000 will be paid for a one (1) year option of continuing benefit services to our Chimes partner.' " *Id.* at ¶ 30.

Finally, the BCG Defendants object that the Secretary offers no "factual support [for] how the Chimes DC benefitted from the charitable contributions to the Chimes Foundation." Mem. Supp. Mot., p. 10, ECF No. 87-1. This Court has previously rejected this argument in ruling on the FCE Defendants' and Chimes Defendants' Motions to Dismiss. *See Chimes*, 2016 WL 4993293 at 9; *Chimes*, 2016 WL 5815443 at 12. The Secretary has alleged that Chimes International was the parent company of The Chimes Foundation, that "The Chimes Foundation was the fundraising entity of Chimes International and its other subsidiaries," and that "its assets could be used by Chimes International and any subsidiary of Chimes International, including Chimes DC." As explained in prior opinions of this Court, the fact that FCE and BCG's donations were not directly credited to one of the Chimes Defendants does not disqualify the Secretary's claim. *See, e.g., Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1220 (2d Cir. 1987) ("Parties may not use shell-game-like maneuvers to shift fiduciary obligations to one legal entity while channeling profits from

self-dealing to a separate legal entity under their control."). Accordingly, the BCG Defendants' arguments for dismissal of Count III fail.

III.    The Secretary Has Sufficiently Set Forth A Claim for Disgorgement of Profits

Alternatively, the BCG Defendants contend that the Secretary "has failed to sufficiently plead that it has a remedy against them." Mem. Supp. Mot., p. 10-11, ECF No. 87-1. They argue that the Secretary's "claim for disgorgement of fees under ERISA Section 502(a)(3)[3] requires 'equitable tracing' " and, accordingly, that the Secretary "must at least allege that specific funds, received from the Chimes Defendants, are in the possession of the BCG Defendants." *Id.* at 10-11. The BCG Defendants object that the Secretary "has failed to do so" in the First Amended Complaint. *Id.* at 11.

The Secretary is authorized to bring a civil action "to enjoin any act or practice which violates" ERISA or "to obtain other appropriate equitable relief" to redress ERISA violations or to enforce ERISA's terms. *See* 29 U.S.C. § 1132(a)(5). "An accounting for profits 'is a restitutionary remedy based upon avoiding unjust enrichment.' " *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 364 (4th Cir. 2015) (quoting 1 D. Dobbs, Law of Remedies § 4.3(5), p. 608 (2d ed.1993)). "It requires the disgorgement of 'profits produced by property which in equity and good conscience belonged to the plaintiff.' " *Id.* An accounting for profits "is akin to a constructive trust." *Id.* However, the United States Supreme Court has specifically stated that, unlike a constructive trust, an accounting for profits "lacks the requirement that plaintiffs 'identify a particular res containing the profits sought to be recovered.' " *Id.* at 364-65. (quoting *Great–W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 n. 2 (2002) (citing

---

[3] The Secretary's claims arise under ERISA Section 502(a)(5), not Section 502(a)(3).

1 Dobbs § 4.3(1), at 588; id., § 4.3(5), at 608))).  Furthermore, "[i]n *Knudson*, the Supreme Court expressly noted that, unlike other restitutionary remedies, an accounting for profits is an equitable remedy." *Id.*  "The Court also suggested that an accounting for profits would support a claim under [ERISA] Section 502(a)(3)[4]." *Id.*

Likewise, the Restatement (Third) of Restitution and Unjust Enrichment provides that "[b]enefits derived from a fiduciary's breach of duty may [ ] be recovered from third parties, not themselves under any special duty to the claimant, who acquire such benefits with notice of the breach." Restatement (Third) of Restitution and Unjust Enrichment § 43, cmt. g (2011).  "[O]ne who actively participates in another's breach of fiduciary duty will be liable to disgorge the profits realized thereby." *Id.*  The Restatement further provides that "the claimant has the burden of producing evidence from which the court may make at least a reasonable approximation of the defendant's unjust enrichment."  Restatement (Third) of Restitution and Unjust Enrichment § 51, cmt. i (2011). "If the claimant has done this much, the defendant is then free (there is no need to speak of "burden shifting") to introduce evidence tending to show that the true extent of unjust enrichment is something less." *Id.*

Here, the Secretary has alleged that BCG received excessive compensation in connection with the kickback scheme detailed *supra*, "which ranged from $400,000 to $600,000 per year from 2008 to the present."  First Am. Compl., p. 12, ECF No. 102.  The BCG Defendants have cited no authority indicating that the Secretary must set forth his claim for a disgorgement of profits with any greater specificity at this stage of the litigation.

[4] Sections 502(a)(3) and 502(a)(5) of ERISA, 29 U.S.C. §§ 1132(a)(3), (a)(5), both provide a cause of action against any "other person" who "knowing[ly] participat[es]" in a fiduciary's violation. *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 248–49 (2000). Section 502(a)(5) provides "the Secretary" with a cause of action against knowing participants, while Section 502(a)(3) authorizes "a participant, beneficiary, or fiduciary" to file suit.

13

The BCG Defendants fail to cite a single case where a court has held an equitable accounting for profits requires equitable tracing to disgorge allegedly ill-gotten gains from a non-fiduciary, knowing participant in a prohibited transaction. Furthermore, the cases relied upon by the BCG Defendants involved enforcement of equitable liens, as opposed to an accounting for profits. *See, e.g., Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 661 (2016); *Fine v. Sun Life Assur. Co. of Canada*, 97 F. Supp. 3d 799, 802 (E.D. Va. 2015). Accordingly, the BCG Defendants' argument fails.

IV.   <u>This Court Will Not Bar the Secretary From Seeking Damages Prior to October 31, 2012 at this Time.</u>

The Secretary seeks damages with respect to BCG's excessive fees dating back to 2008. *See* First Am. Compl., ¶ 24, ECF No. 102. However, the BCG Defendants contend that the Secretary is barred from seeking damages prior to October 31, 2012. Mem. Supp. Mot., p. 12, ECF No. 87-1. The BCG Defendants posit that "to go back six years to 2008, [the Secretary] is relying on a tolling agreement it and BCG entered into in 2014, and the six-year statute of limitations provided for under Section 413 of ERISA, 29 U.S.C. 1113." 29 U.S.C. § 1113 provides as follows:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> > (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> >
> > (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

The BCG Defendants contend that no allegations of "fraud or concealment have been made against [them] and, accordingly, that "if Section 413 applies" to the Secretary's claims against the BCG Defendants," the Secretary "can reach back only three years from the date of the filing [of this] suit, or until October 30, 2012." Mem. Supp. Mot., p. 12, ECF No. 87-1.

Additionally the BCG Defendants object that "Section 413 does not apply to the claims against them" in the first place because "by its plain language" Section 413 "applies only to fiduciaries." *Id.* at 13. They contend that the phrase "under this part" in Section 413 refers to "Part 4 of ERISA," whereas the Secretary's claims against the non-fiduciary BCG Defendants arise under Section 502(a)(5), Part 5 of ERISA. *Id.* "[W]here, as here, ERISA does not provide a statute of limitations," they argue, "the limitations period must be borrowed from state law." *Id.* They posit that "[c]laims such as those alleged by the [Secretary] in this matter have been held to be analogous to conversion actions." *Id.* They contend that Maryland's three year statute of limitations for conversion controls and, therefore, "the farthest back [the Secretary] can reach in terms of damages—if any exist with respect to BCG—is three years from the date of the lawsuit, or 2012." *Id.* at 13-14.

Several courts have rejected the BCG Defendants' argument with respect to claims under ERISA Section 502(a)(3)[5]. *See, e.g.*, *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 99-100 (3d

---

[5] Sections 502(a)(3) and 502(a)(5) of ERISA, 29 U.S.C. §§ 1132(a)(3), (a)(5), both provide a cause of action against any "other person" who "knowing[ly] participat[es]" in a fiduciary's violation. *See Harris*, 530 U.S. at 248–49. Section 502(a)(5) provides "the Secretary" with a cause of action against knowing participants, while Section 502(a)(3) authorizes "a participant, beneficiary, or fiduciary" to file suit. Even though the Secretary's claims arise under ERISA Section 502(a)(5), the BCG Defendants have in fact relied heavily on authority discussing Section 502(a)(3) in their argument for equitable tolling, discussed *supra*.

Cir. 2012) (concluding that ERISA Section 413's statute of limitations *does apply* to claims

brought under Section 502(a)(3) of ERISA)[6]; *Radford v. Gen. Dynamics Corp.*, 151 F.3d 396,

399 (5th Cir. 1998) (same).   The United States Court of Appeals for the Fourth Circuit has

not decided the issue, but has held that "[f]or *any claim* that alleges a breach of a fiduciary

duty, ERISA provides a three-year statute of limitations."   *Shofer v. Hack Co.*, 970 F.2d 1316,

1318 (4th Cir. 1992) (emphasis added).   In *Cherochak v. Unum Life Ins. Co. of Am.*, 586 F.

Supp. 2d 522, 531 (D.S.C. 2008), the United States District Court for the District of South

Carolina interpreted this language as applying to *all claims* requiring reference to the ERISA

fiduciary duties outlined in Section 4 of ERISA, even claims brought under ERISA Section

502(a)(3), 29 U.S.C. § 1132(a)(3).   The Court reasoned as follows:

> [S]everal courts that have considered the issue have concluded that § 1113
> [ERISA statute of limitations] applies in the context of all claims of breach of
> fiduciary duty pursuant to ERISA, even if the plaintiff brings the cause of
> action pursuant to § 1132.   *See Trace v. Retirement Plan for the Salaried Employees of
> Merck & Co.*, 419 F. Supp. 846 (E.D. Va. 2006) (applying the statute of
> limitations in § 1113 in the case of a complaint filed pursuant to ERISA §
> 502(a)(3)); *Schultz v. Texaco Inc.*, 127 F. Supp. 2d 443, 450 (S.D.N.Y. 2001)
> ("For claims under [ERISA] § 502(a)(3), the relevant limitations period is
> [ERISA] Section 413[, 29 U.S.C. § 1113].") . . . .
>
> [W]hile Plaintiff has brought a cause of action for breach of fiduciary duty
> under ERISA § 502(a)(3), that section does not outline a fiduciary's duties. It
> thus seems that at some point, reference to § 1104, which is entitled
> "Fiduciary Duties" and is contained within Part 4, will be required in order to
> determine what duties—if any—Defendant breached. Plaintiff alleges that
> Defendant "intentionally, knowingly and fraudulently misrepresented the
> status of Defendant's coverage for 1998 by stating that [Plaintiff] had declined
> coverage." (Compl. in 9:07–3061–PMD ¶ 24.) The court thus will not find
> determinative the fact that the procedural mechanism for Plaintiff's suit is
> located in Part 5.

---

[6] The *Iola* Court applied the ERISA Section 413 statute of limitations to a claim against a non-fiduciary, like
the Secretary's claim against BCG in this case.

16

*Cherochak v. Unum Life Ins. Co. of Am.*, 586 F. Supp. 2d 529 (D.S.C. 2008).  While the Fourth Circuit in *Dameron v. Sinai Hospital of Baltimore, Inc.*, 815 F.2d 975 (4th Cir. 1987) applied a state limitations period to Plaintiff's ERISA claims because "ERISA provide[d] no explicit limitation period," the Plaintiff in that case alleged that Defendant Sinai breached its duty under a pension plan, analogous to a breach of contract action, as opposed to a breach of fiduciary duties imposed by ERISA.  *See id.* at 529-530; *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 815 F.2d 975, 981 (4th Cir. 1987).

Given that the statute of limitations under ERISA Section 413, 29 U.S.C. § 1113, governs, this Court must still determine which provision of that statute applies in this case. *See* 29 U.S.C. § 1113 (providing both six year and three year limitations periods, depending on the facts of the case).  This analysis requires factual findings.  *See, e.g., Meyer v. Berkshire Life Ins. Co.*, 250 F. Supp. 2d 544, 568 (D. Md. 2003), *aff'd*, 372 F.3d 261 (4th Cir. 2004) ("Regarding the three-year statute of limitations prescribed in 29 U.S.C. § 1113(2), the court reviewed various interpretations of the actual knowledge rule in its summary judgment opinion and concluded that there was an issue of material fact regarding the plaintiffs' knowledge."); *see also Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) ("[A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred.").  In fact, the BCG Defendants have indicated that a "tolling agreement" exists between the parties that "could impact how far back in time [the Secretary] can reach" and that there may be a question as to its validity.  *See* Mem. Supp. Mot., p. 12, ECF No. 87-1.  Accordingly, this Court will not bar the Secretary from seeking

damages prior to October 31, 2012 at this stage of the proceedings. *See Healey v. Abadie*, 143 F. Supp. 3d 397, 402–03 (E.D. Va. 2015) ("If the Court determines that there is not enough information to conclude that Plaintiff's claims are time barred by the applicable statute of limitations, Defendant's Motion to dismiss the claims on that ground must be denied.").

CONCLUSION

For the reasons stated above, the BCG Defendants' Motion to Dismiss Counts I and III of the First Amended Complaint (ECF No. 87) is DENIED.

Dated:          October 12, 2016

                                                    _____/s/_____
                                                    Richard D. Bennett
                                                    United States District Judge