IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| THOMAS E. PEREZ, Secretary of Labor, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-15-3315 |
| CHIMES DISTRICT OF COLUMBIA, INC., *et al.*, | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

## **MEMORANDUM OPINION**

United States Secretary of Labor, Thomas E. Perez, ("the Secretary") has brought a ten-count Amended Complaint against The Chimes D.C., Inc. Health & Welfare Plan (the "Plan") and its alleged fiduciaries and service providers, including Defendants Chimes District of Columbia, Inc.; Chimes International, Ltd.; FCE Benefit Administrators, Inc.; Gary Beckman; Stephen Porter; Martin Lampner; Albert Bussone; Benefits Consulting Group; Jeffrey Ramsey;[1] and Marilyn Ward, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, *et seq.* First Am. Compl., p. 1-2, ECF No. 102. Currently pending before this Court is Defendant Marilyn Ward's Motion to Dismiss Counts I, VII, VIII, IX, and X of the First Amended Complaint (ECF No. 124). The parties' submissions have been reviewed, and no hearing is necessary.

---

[1] This Court has previously denied the FCE Defendants', Chimes Defendants', and BCG Defendants' Motions to Dismiss the First Amended Complaint. *See Perez v. Chimes D.C., Inc., et al.*, No. RDB-15-3315, 2016 WL 4993293, at *1 (D. Md. Sept. 19, 2016); *Perez v. Chimes D.C., Inc., et al.*, No. RDB-15-3315, 2016 WL 5815443, at *1 (D. Md. Oct. 5, 2016); *Perez v. Chimes D.C., Inc.*, No. RDB-15-3315, 2016 WL 5938827, at *1 (D. Md. Oct. 12, 2016).

1

*See* Local Rule 105.6 (D. Md. 2016). For the reasons stated herein, Defendant Marilyn Ward's Motion to Dismiss Counts I[2], VII, VIII, IX, and X of the First Amended Complaint (ECF No. 124) is DENIED.

BACKGROUND

In ruling on a motion to dismiss, this Court must accept the factual allegations in the plaintiff's complaint as true and construe those facts in the light most favorable to the plaintiff. *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Harris v. Publish Am., LLLP*, No. RDB-14-3685, 2015 WL 4429510, at *1 (D. Md. July 17, 2015). The facts of this case have previously been set forth in this Court's Memorandum Opinion of October 5, 2016 (ECF No. 141). *See Perez v. Chimes D.C., Inc., et al.*, No. RDB-15-3315, 2016 WL 5815443, at *1 (D. Md. Oct. 5, 2016). The following factual allegations pertain specifically to those claims raised against Marilyn Ward in Counts VII, VIII, IX, and X of the First Amended Complaint, the subject of the pending motion:

I.  Defendant Marilyn Ward, Plan Trustee

"Marilyn Ward [("Defendant" or "Ward")] was a Plan trustee and named fiduciary of the Plan." First Am. Compl., ¶ 20, ECF No. 102. Ward "exercised discretionary authority and/or discretionary control respecting management of the Plan and/or exercised any authority or control respecting management or disposition of its assets, and had discretionary authority and/or discretionary responsibility in the administration of the Plan." *Id.* "Under the Amended and Restated Trust Agreement governing her appointment as

---

[2] In response to the pending Motion, the Secretary has clarified that he does not allege that Ward is liable under Count I of the First Amended Complaint. *See* Response, p. 12, ECF No. 127 ("The reference to 'all defendants' under Count I was mistakenly transcribed from the original complaint and should have been amended to read 'Against the Chimes Defendants, the FCE Defendants, and the BCG Defendants.'"). Accordingly, Ward's Motion is MOOT with respect to Count I.

2

Trustee, Ward had 'exclusive authority and discretion to manage and control funds' except to the extent delegated to the Plan Administrator (Chimes DC) or an investment manager, and '[a]ll discretions . . . conferred on her' were 'absolute' 'unless specifically limited[.]' " *Id.* "The Trust Agreement granted Ward exclusive powers over various aspects of the Plan, including but not limited to investments, obligations and litigation, deposits, insurance benefits, insurance protection, advances to the trust, distributions, and hiring agents." *Id.* "The Trust Agreement also required Ward to 'maintain full and complete records of her transactions for, and funds held for the account of, the Trust,' and she had discretionary authority and/or responsibility over such records, including payments to FCE." *Id.* "In addition to her enumerated powers and responsibilities, Ward exercised discretionary control and authority over her and FCE's fees by authorizing fees that were not made in accordance with the fee schedules agreed upon and approved by Chimes DC." *Id.* Therefore, the Secretary alleges that Ward "was a Plan fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A)" and "a party in interest under ERISA [Section] 3(14)(A) and (B), 29 U.S.C. § 1002(14)(A) and (B)." *Id.*

II. <u>Alleged Violations of the Employee Retirement Income Security Act ("ERISA")</u>

    A. <u>FCE's Receipt of Payments from Plan Service Providers</u>

"At relevant times, and consistent with the Adoption Agreement, FCE had and exercised fiduciary authority to recommend, negotiate, and execute contracts between the Plan and various service providers, thereby exercising authority and control over the management of Plan assets." *Id.* at ¶ 45. "Such service providers included the Plan's trustees as well as service providers related to the Plan's stop loss insurance, prescription

drug benefits, behavioral health and employee assistance programs, and medical benefits." *Id.* "In connection with the Plan's contracts with the service providers, the FCE Defendants caused FCE to receive rebates, commissions, and other payments from the service providers." *Id.* "This compensation, received from Plan service providers, was paid in addition to fees paid directly by the Plan." *Id.* "FCE's Third Party Administrator Agreement with Chimes DC attaches fee schedules for various service providers, including FCE, BCG, and the Plan trustee, and states that 'no change in any Service Provider to the Plan and Trust will be effective unless approved in writing by both TPA and Employer.' " *Id.* at ¶ 46. "Ward could not be removed as Trustee without FCE's consent." *Id.* at ¶ 46. "At all relevant times, FCE recommended and retained Ward as the Plan trustee and at no time did the Chimes Defendants question or independently review Ward's appointment as a Trustee." *Id.*

      B.      <u>Ward's Payments to FCE and Knowledge of FCE's Payments to Chimes</u>

"FCE's own records characterized the charitable contributions made by FCE to The Chimes Foundation as 'promotional expenses' that FCE itemized as 'Business Development and Retention Expenses.' " *Id.* at 54. "As a result, at least some of Ward's payments to FCE for business development and retention expenses were used to pay charitable donations to The Chimes Foundation." *Id.* "The FCE Defendants told Ward that the Chimes Defendants had solicited and FCE paid donations to the Chimes Foundations." *Id.* "On information and belief, Ward knew or should have known that her payments to FCE were being used to pay donations to The Chimes Foundation." *Id.* "Ward also knew that FCE

4

agreed to and did employ Martin Lampner's child in connection with the Plan's retention of FCE as a service provider for the Plan." *Id.* at 54.

"During Ward's tenure as Plan trustee, Ward paid the FCE Defendants the following payments: (1) 10.9% of total trustee fees received by Ward for 'Business Development and Retention Costs;' (2) payments for 'trustee assistants' who were employed by FCE, received W-2s from FCE, and worked in FCE's offices, for performing work, including but not limited to Plan work; (3) an additional 10% Management Fee of the total of all trustee assistant costs, as well as $250/month in 'overhead' fees; and (4) rent payments for use of property owned by JMA Investments ("JMA"), an entity owned by Porter and Beckman. *Id.* at 55. "Ward had no written agreement regarding the rent payments, and she did not compare the rental price to any alternative facilities." *Id.* at ¶ 56. "The facilities were used for Plan work, along with other work." *Id.* "Ward did not disclose her arrangements with FCE to the Chimes Defendants, despite the fact that FCE had fiduciary authority and control over Ward's continuing appointment as Plan Trustee and thus the Plan's payment of her fees, and despite the fact that Ward had fiduciary authority and control over the Plan's payment of FCE's fees and responsibility for ensuring their accuracy." *Id.* at 57.

    C.    <u>Ward's Imprudent Payment of Fees from Plan to FCE and Ward</u>

"Ward had authority and control over the Plan's payment of fees to service providers, and responsibility for verifying that fees—including her own fees—were being calculated in accordance with the fee schedules agreed upon by Chimes DC." *Id.* at 58. However, "Ward failed to prudently verify whether the fees paid by the Plan matched the fee schedules agreed upon by Chimes DC." *Id.* at ¶ 59. "She imprudently failed to request or review supporting

documentation and invoices for fees, including insurance premiums." *Id.* "

"The Chimes Defendants had negotiated a tiered fee structure with FCE and Ward, with the fee rates based on the number of participants." *Id.* at 60. "At relevant times, FCE informed Ward that their computer system could not handle the fluctuations in participant counts, and thus FCE provided Ward with a blended fee rate and average participant count, which Ward used to authorize fee payments from the Plan to FCE and herself." *Id.* at 61. "These rates differed from the fee schedule agreed upon by Chimes DC." *Id.*

"Ward failed to alert Chimes DC that FCE's computer system was unable to adequately manage fluctuations in participant counts." *Id.* at 62. "The inadequate computer system contributed to many of FCE's administrative problems . . . including FCE's inability to accurately maintain accurate expense and claims records, timely update participant coverage information, and administer a reasonable claims process." *Id.* "Ward caused the Plan to pay administrative fees for non-Service Contract Act employees which differed from the fee schedule agreed upon by Chimes DC." *Id.* at 63. "Ward also paid administrative fee rates for the unemployment insurance fund, also known as the DUB, that differed from the written fee schedule." *Id.* "Ward failed to disclose to Chimes DC that she was applying different fee rates calculated by FCE, maintain any documentation to explain the differences in rates, or allow a proper accounting of fee payments to FCE or Ward." *Id.* at 64.

D.  <u>Payments by the Plan to Chimes DC</u>

"Chimes DC provided administrative services to the Plan relating to participant communications." *Id.* at ¶ 70. "The services were performed by a full-time employee of Chimes DC who otherwise would have been employed by Chimes DC." *Id.* "From at least

2008, Chimes DC and Bussone directed FCE and Ward to reimburse Chimes DC for this work using Plan assets." *Id.* at ¶ 71. "Chimes DC set its own fees, without a contract for the arrangement, and in so doing caused losses to the Plan and received profits." *Id.* "Ward executed the payments to Chimes DC without determining whether the payments were direct expenses of Chimes DC, or otherwise allowable under ERISA." *Id.* at 72. "She did not require documentation of the expenses or inquire whether the Chimes DC employee would have otherwise been employed by Chimes DC, despite the fact that Chimes DC only requested reimbursement for about fifty percent of the employee's hours." *Id.*

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual

allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

## ANALYSIS[3]

I.  Ward's Status as a Directed Trustee Does Not Immunize her from Liability

As an initial matter, Ward contends that her status as a "directed trustee under the Plan significantly limits and restricts her obligations under ERISA." Mem. Supp. Mot., p. 14, ECF No. 124-1. She cites the Plan documents, which designate "Chimes DC as the Plan Administrator" and "Named Fiduciary," limit the "responsibilities and obligations" of the Trustee to those set forth in the Agreement, and provide that Ward "is subject to the direction of the Plan Administrator." *Id.* at 16 (citing Trust Agreement, ECF No. 110-1). Ward contends that a trustee's fiduciary duties are "extremely limited." *Id.* at 17 (quoting *McCarty v. Holt*, No. 12-3279 CCC, 2013 WL 775531, at *5 (D.N.J. Feb. 27, 2013)).

---

[3] Preliminarily, Ward contends that any and all claims raised against her for "derivative liability" "based on alleged misconduct by other Plan fiduciaries" should be dismissed. Mem. Supp. Mot., p. 7-8, ECF No. 124-1. She argues that those claims depend "on primary violations of ERISA not alleged to have been committed by Ward" and adopts the FCE and Chimes Defendants' arguments for dismissal of those underlying claims. *Id.* at 8. However, as stated *supra*, this Court has already denied the FCE and Chimes Defendants' Motions to Dismiss the First Amended Complaint. *See Perez*, 2016 WL 4993293 at 1; *Perez*, 2016 WL 5815443 at 1. Accordingly, Ward's motion for dismissal of the derivative claims fails to the extent she relies on the arguments previously raised by the FCE and Chimes Defendants.

While a "directed trustee should not be expected to second-guess every direction of a plan administrator, it should disobey instructions that are plainly imprudent [and] cannot simply close its eyes and ignore what was there to be seen." *Gedek v. Perez*, 66 F. Supp. 3d 368, 384 (W.D.N.Y. 2014). Ward admits that a directed trustee is liable where she "fails to follow . . . proper directions or [] complies with directions that are improper, or contrary to the Plan or ERISA." *Id.* at 18 (quoting, *e.g.*, *DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 735, 746 (E.D. Va. 2005)). In this case, the Trust Agreement authorized Ward to pay "reasonable compensation for all services" of third party service providers. Pl. Response, p. 15, ECF No. 127 (quoting Trust Agreement, ECF No. 110-1). However, the Secretary alleges that Ward paid Plan service providers excessive fees that "differed from the fee schedule agreed upon by Chimes DC," despite knowing that FCE was not providing adequate services to the Plan and its participants. *See* First Am. Compl., ¶ 60, ECF No. 102. Accordingly, Ward is not immunized from liability by virtue of her position as a directed trustee, and the Secretary has adequately alleged several claims for her liability under ERISA. The Secretary's specific claims are addressed further herein.

II.   Count VII: Ward's Liability for FCE's Payments to the Chimes Foundation and FCE's Employing Lampner's Child

Count VII of the First Amended Complaint alleges that "Ward has joint and several liability for the breaches of her co-fiduciaries [co-fiduciary liability] relating to FCE's payments to the Chimes Foundation and FCE's employment of Martin Lampner's child, in connection with the Plan's retention of FCE, pursuant to ERISA §405(a), 29 U.S.C. § 1105(a), because Ward had knowledge of the breaches by her co-fiduciaries . . . and failed to make reasonable efforts under the circumstances to remedy the breaches." First Am.

Compl., ¶ 108, ECF No. 102. Additionally, the Secretary alleges that Ward "knowingly participated in the Plan's retention of FCE in connection with FCE's payments to the Chimes Foundation" and is therefore liable as a non-fiduciary, pursuant to ERISA Section 502(a)(5), 29 U.S.C. § 1132(a)(5).[4] *Id.* at ¶ 109.

Ward objects that the First Amended Complaint "fails to offer any explanation as to why Ward should have known that FCE was using certain payments to make charitable donations" and "fails to explain why or how Ward should have known that those charitable donations were being used to allegedly cause 'the Plan to retain and pay FCE . . . as [a] service provider[.]' " Mem. Supp. Mot., p. 11, ECF No. 124-1 (quoting First Am. Compl., ¶ 35, ECF No. 102). Ward cites *Leber v. Citigroup, Inc.*, No. 07-cv-9329, 2010 U.S. Dist. LEXIS 25097, *41–42 (S.D.N.Y. March 16, 2010), a case in which the United States District Court for the Southern District of New York dismissed a "co-fiduciary claim against [an] ERISA plan sponsor" because the plaintiffs had failed to plead how or why the sponsor should have known of the alleged breaches. *Id.*

However, the *Leber* case relied upon by Ward did not involve a claim for co-fiduciary liability against Citigroup, the plan sponsor, but rather a claim of "non-fiduciar[y]" liability

---

[4] Ward objects that the Secretary "does not adequately allege non-fiduciary ["knowing participation"] liability against Ward" in Count VII because the Secretary's "own allegations of Ward's *fiduciary status* contradict this claim." Mem. Supp. Mot., p. 14, ECF No. 124-1 (emphasis added). The FCE Defendants raised a similar argument in their Motion to Dismiss, which this Court rejected via Memorandum Opinion dated September 19, 2016. *See Perez*, 2016 WL 4993293 at 5. Under Rule 8(d)(2) of the Federal Rules of Civil Procedure "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8. Ward objects that the Secretary "has not pled its nonfiduciary claim in the alternative." Mem. Supp. Mot., p. 13, n. 6, ECF No. 124-1. However, "it is not clear that Plaintiff must specifically use 'either-or' language or the word 'alternatively' when setting forth alternative claims." *Noble v. Chambers*, No. 3:13-CV-130, 2013 WL 3338659, at *4 (E.D. Va. July 2, 2013) (quoting *TSC Research, LLC v. Bayer Chem. Corp.*, 552 F. Supp. 2d 534, 540 (M.D.N.C. 2007)(noting that the Fourth Circuit has yet to adopt the level of specificity required of alternative pleadings in the Seventh Circuit)). Furthermore, the Secretary has in fact alleged facts establishing Ward's knowing participation, as discussed herein.

due to Citigroup's "knowing participation" in a fiduciary breach. *See Leber*, 2010 U.S. Dist. LEXIS 25097 at 41-42. The Court dismissed that claim because the "complaint contain[ed] nothing beyond a bare assertion that Citigroup 'knew or should have known' that the committee defendants 'were breaching their duties.' " *Id.* at 41 (quoting Am. Compl. p. 56). In contrast, the Secretary has alleged in this case that the "FCE Defendants told Ward that the Chimes Defendants had solicited and FCE paid donations to the Chimes Foundations," that "at least some of Ward's payments to FCE for business development and retention expenses were used to pay charitable donations to The Chimes Foundation," and that Ward was aware that the services provided by FCE were lacking, particularly that "FCE's computer system was unable to adequately manage fluctuations in participant counts." First Am. Compl., ¶¶ 54, 61.

Additionally, Ward contends that she cannot be held liable as a co-fiduciary because "FCE's alleged hiring of Lampner's adult child and Ward's payments to FCE (that were then allegedly used to make charitable donations to a non-fiduciary) do not implicate any fiduciary activity or responsibility on Ward's part." Mem. Supp. Mot., p. 18, ECF No. 124-1. Under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, an individual or entity may become a Plan fiduciary in one of two ways: first, "by being expressly identified in the plan documents, either by name or according to a procedure specified in the plan, as having the authority to control and manage the operation and administration of the plan;" and second, "by performing specified discretionary functions with respect to the plan's management, assets, or administration of a plan in a de facto

capacity." *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d 434, 445 (D. Md. 2005) (citing *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996)). Specifically, ERISA provides as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. 29 U.S.C. § 1002(21)(A).

In this case, as discussed supra, the Plan documents specifically grant Ward control over making payments with Plan assets, and the Secretary has alleged that Ward did in fact make payments with Plan assets. The Secretary has alleged that Ward performed more than ministerial functions. *See, e.g.*, *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997) ("The right to write checks on plan funds is authority or control respecting management or disposition of its assets . . . [t]he words of the ERISA statute, and its purpose of assuring that people who have practical control over an ERISA plan's money have fiduciary responsibility to the plan's beneficiaries, require that a person with authority to direct payment of a plan's money be deemed a fiduciary.") (internal quotations omitted).

Ward further objects that the Secretary has failed to allege that she had "actual knowledge" of FCE's breach of fiduciary duty, as required to state a claim under ERISA Section 405(a). Mem. Supp. Mot., p. 19, ECF No. 124-1 (citing *Donovan v. Cunningham*, 716 F.2d 1455, 1475 (5th Cir. 1983) ("[Under] Section 405 . . . the fiduciary must know the other person is a fiduciary with respect to the plan, must know that he participated in the act that constituted a breach, and must know that it was a breach.")). However, the allegations in the First Amended Complaint do suggest that Ward had notice of enough facts in her position

as Plan trustee to know that FCE, the Plan's third party administrator, had committed a fiduciary breach. As stated *supra*, the First Amended Complaint alleges that "some of Ward's payments to FCE for business development and retention expenses were used to pay charitable donations to The Chimes Foundation" and that "The FCE Defendants told Ward that the Chimes Defendants had solicited and FCE paid donations to the Chimes Foundations." First Am. Compl., ¶ 54, ECF No. 102. The Secretary further alleges that "Ward also knew that FCE agreed to and did employ Martin Lampner's child in connection with the Plan's retention of FCE as a service provider for the Plan," despite the inadequate services FCE was providing. *Id.* at ¶ 54, 61. Accordingly, Ward's arguments for dismissal of Count VII fail. *See, e.g., Heritage Equity Grp. 401(k) Sav. Plan v. Crosslin Supply Co.*, 638 F. Supp. 2d 869, 877 (M.D. Tenn. 2009) (Denying Motion to Dismiss ERISA claim where "Plaintiffs ha[d] alleged facts that give rise to possible constructive knowledge.").

III.   Count VIII: Ward's Conflicted Arrangements with FCE

In Count VIII of the First Amended Complaint, the Secretary alleges that "Ward failed to prudently and loyally disclose to Chimes DC or the Plan participants that she was making payments to the FCE Defendants and receiving services, benefits, and facilities from the FCE Defendants related to her Plan work and FCE's recommendation and retention of Ward as a trustee." First Am. Compl., ¶ 111, ECF No. 102. Therefore, the Secretary alleges that Ward "breached her fiduciary duty of loyalty and prudence" under ERISA Sections 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A), (B). *Id.* Additionally, the Secretary alleges that "Ward has joint and several liability pursuant to ERISA [Section] 405(a), 29 U.S.C. § 1105(a) for the breaches of her co-fiduciaries, the FCE Defendants, . . . relating to their

receipt of those payments from Ward to FCE, because (1) she knowingly participated in the FCE Defendants' misconduct, (2) as a result of her failure to comply with her own fiduciary duty to disclose the arrangements, she enabled the FCE Defendants' breaches and violations . . . , and (3) she had knowledge of the FCE Defendants' breaches . . . and failed to make reasonable efforts under the circumstances to remedy the breaches." *Id.* at ¶ 112.

With respect to Ward's alleged co-fiduciary liability under Count VIII, Ward objects that the Secretary has done "nothing more than recite the statutory elements for co-fiduciary liability, and thus this claim should be dismissed." Mem. Supp. Mot., p. 12, ECF No. 124-1. However, the Secretary has alleged a series of specific payments that Ward made to the FCE Defendants including "Business Development and Retention Costs" and "payments for 'trustee assistants.' " First Am. Compl., ¶ 55, ECF No. 102. Additionally, the Secretary has alleged that "Ward had no written agreement regarding the rent payments," that Ward "did not compare the rental price to any alternative facilities," and that "[t]he facilities were used for Plan work, along with other work." *Id.* at ¶ 56. The Secretary further alleges that Ward failed to disclose this alleged conflict of interest, "despite the fact that FCE had fiduciary authority and control over Ward's continuing appointment as Plan Trustee and thus the Plan's payment of her fees, and despite the fact that Ward had fiduciary authority and control over the Plan's payment of FCE's fees and responsibility for ensuring their accuracy." *Id.* at ¶ 57.

Ward further objects that "[s]ince [the Secretary] does not allege a failure to comply with ERISA's express disclosure requirements, and the Fourth Circuit does not recognize a supplemental duty to disclose additional information, DOL has failed to allege a violation of

ERISA." Mem. Supp. Mot., p. 21, ECF No. 124-1. Ward relies on *Faircloth v. Lundy Packing Co.,* 91 F.3d 648, 657 (4th Cir. 1996), a case in which the United States Court of Appeals for the Fourth Circuit declined to hold that "ERISA's general fiduciary duty provision, § 404(a)(1)(A), requires plan fiduciaries to furnish documents *to participants and beneficiaries* in addition to the documents that ERISA's specific disclosure provision." *Faircloth*, 91 F.3d at 657. However, the ERISA disclosure requirements discussed in *Faircloth* involve the information and documents that plan administrators must provide to beneficiaries about the Plan, its operation, and their rights under the Plan[5], but does not foreclose a Plan trustee's obligations to report its alleged conflict of interest with a Plan service provider. *See, e.g.,* Restatement (Third) of Trusts § 78, cmt. h (2007) ("[U]nless the conflict was disclosed or known at the time of the appointment, and thus at least impliedly approved, it may provide a ground for the trustee's removal."). The additional duty that the Fourth Circuit declined to recognize in the Faircloth case was the disclosure of "documents related to [an] ESOP." *Id.* at 657. Ward has cited no case indicating that ERISA's disclosure requirements nullify Ward's fundamental trust law duty to disclose a conflict of interest. Accordingly, Ward's arguments for dismissal of Count VIII fail.

IV. Count IX: Ward's Liability for Payment of Fees that Differ from Approved Fee Schedules and for FCE's Administrative Failures

Count IX alleges that "[b]y causing the Plan to pay fees that differed from the fee schedules approved by Chimes DC, and by failing to disclose such disparities to Chimes DC

---

[5] This Court has observed that "ERISA does impose a comprehensive set of reporting and disclosure requirements, which is part of an elaborate scheme . . . for enabling beneficiaries to learn their rights and obligations at any time." *Cecil v. AAA Mid-Atl., Inc.*, 118 F. Supp. 2d 659, 663 (D. Md. 2000) (internal citations and quotations omitted).

or maintain adequate records documenting the changes," Ward breached her fiduciary duties of loyalty and prudence, in violation of ERISA Sections 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), and engaged in prohibited transactions in violations of ERISA Sections 406(b)(1) and (2), 29 U.S.C. § 1106(b)(1) and (2). First Am. Compl., ¶ 114, ECF No. 102. The Secretary further alleges that Ward has "joint and several liability" for the "FCE Defendants' misconduct alleged in Count V by authorizing fee payments that were not in accordance with the fee schedule and not properly recorded, knowing that FCE's computer systems were inadequate." *Id.* at ¶ 115.

With respect to the alleged co-fiduciary liability, Ward objects that "[a]t no point throughout the Amended Complaint does [the Secretary] allege that Ward knew she was authorizing payments that were not in accordance with the fee schedule." Mem. Supp. Mot., p. 12, ECF No. 124-1. However, the Secretary has alleged that Ward "had authority and control" over the Plan's payment of fees and "responsibility for verifying" that fees were calculated "in accordance with the fee schedules agreed upon by Chimes DC," but that Ward "failed to prudently verify whether the fees paid by the Plan matched the fee schedules agreed upon by Chimes DC" and "failed to request or review supporting documentation and invoices for fees, including insurance premiums." First Am. Compl., ¶¶ 58-59. The Secretary alleges that "FCE informed Ward that their computer system could not handle the fluctuations in participant counts, and thus FCE provided Ward with a blended fee rate and average participant count, which Ward used to authorize fee payments from the Plan to FCE and herself," despite the fact that "[t]hese rates differed from the fee schedule agreed upon by Chimes DC." *Id.* at ¶ 60.

Ward further objects that she cannot be held liable with respect to the conduct alleged in Count IX because she performed only "ministerial duties" for the Plan and acted, at all times, as a directed trustee under the instruction of the Plan administrator. Mem. Supp. Mot., p. 23, ECF No. 124-1. For reasons already discussed *supra*, this argument must also fail. Specifically, the Secretary has alleged that Ward made payments with Plan assets, which is more than a "ministerial function." *See IT Corp.*, 107 F.3d at 1421 ("The right to write checks on plan funds is authority or control respecting management or disposition of its assets.") While Ward acted under the direction of FCE, she is still liable for allegedly "compl[ying] with directions that are improper, or contrary to the Plan or ERISA." *DiFelice*, 397 F. Supp. 2d at 746.

V.  Count X: Ward's Liability for Plan's Reimbursements to Chimes DC for Work of Its Full-Time Employee

In Count X of the First Amended Complaint, the Secretary alleges that "[b]y causing the Plan to pay Chimes DC for work performed by a full-time employee of Chimes DC who otherwise would have been paid by Chimes DC," Ward "[c]aused the assets of the Plan to inure to the benefit of the employer Chimes DC," in violation of ERISA Section 403, 29 U.S.C. § 1103, breached her fiduciary duties of prudence and loyalty, in violation of ERISA Sections 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), and engaged in prohibited transactions in violation of ERISA Sections 406(a)(1)(C), (D) and (b)(2), 29 U.S.C. §§ 1106(a)(1)(C), (D), and (b)(2). First Am. Compl., ¶ 117, ECF No. 102. Additionally, the Secretary alleges that Ward is "joint and several liability for the breaches of her co-fiduciaries," pursuant to ERISA Section 405(a), 29 U.S.C. § 1105(a).

With respect to Ward's alleged co-fiduciary liability in connection with the Plan's payment to Chimes DC for the work of its full-time employee, Ward objects that the Secretary "fails to allege how or when Ward obtained the knowledge necessary to impute co-fiduciary liability, to what extent her involvement enabled any co-fiduciary to allegedly breach their duties, how she failed to make reasonable efforts to remedy the alleged breaches, or how she participated in or enabled the alleged breaches of a co-fiduciary." Mem. Supp. Mot., p. 13, ECF No. 124-1. Ward cites *Fuller v. Suntrust Banks, Inc.*, No. 1:11-CV-784-ODE, 2012 U.S. Dist. LEXIS 56602, at *45 (N.D. Ga. 2012), a case in which the United States District Court for the Northern District of Georgia granted a motion to dismiss where the "plaintiff d[id] not explain how any Defendants came to know of the alleged breaches of their co-fiduciaries." *Id.*

In denying the Chimes Defendants' motion to dismiss, this Court observed that ERISA " 'does not allow a fiduciary to set its own administrative fees and directly collect those fees from plan assets.' " *Perez*, 2016 WL 5815443 at 15 (quoting *Chao v. Crouse*, 346 F. Supp. 2d 975, 988 (S.D. Ind. 2004)). Here, the Secretary has adequately alleged that FCE used Plan assets to compensate Chimes DC for administrative services that an existing full-time employee of Chimes DC performed for the Plan without a contract covering that arrangement and, accordingly, that Chimes DC engaged in prohibited self-dealing and setting its own compensation. The Secretary has also sufficiently alleged co-fiduciary liability on the part of Ward because the Secretary has alleged that Ward reimbursed Chimes DC for "this work" at the direction of Chimes DC, that Chimes DC "set its own fees," that "Ward executed the payments to Chimes DC without determining whether the payments were

18

direct expenses of Chimes DC, or otherwise allowable under ERISA," and that Ward "did not require documentation of the expenses or inquire whether the Chimes DC employee would have otherwise been employed by Chimes DC." First Am Compl., ¶¶ 71-72, ECF No. 102. In contrast, the plaintiff in the *Fuller* case cited by Ward raised only "[b]are allegations that SunTrust or the Committee Defendants 'should have known' of and remedied their co-fiduciaries' breaches." *Fuller*, 2012 U.S. Dist. LEXIS 56602 at 45.

Furthermore, Ward renews her argument that she was a directed trustee and, accordingly, can only be held liable if following the direction of Chimes DC and Bussone was not "proper" or violated the terms of the Plan, an element that she claims the Secretary has failed to allege. Mem. Supp. Mot., p. 28, ECF No. 124-1. However, as discussed *supra*, the Trust Agreement directed Ward to pay "*reasonable* compensation for all services" of third party service providers. Pl. Response, p. 15, ECF No. 127 (quoting Trust Agreement, ECF No. 110-1). The Secretary has alleged that, in violation of this provision, "Chimes DC set its own fees, without a contract for the arrangement, and in so doing caused losses to the Plan and received profits" and that "Ward executed the payments to Chimes DC without determining whether the payments were direct expenses of Chimes DC, or otherwise allowable under ERISA." For these reasons, the Secretary has sufficiently stated a claim for relief in Count X.

CONCLUSION

For the reasons stated above, Defendant Marilyn Ward's Motion to Dismiss Counts I, VII, VIII, IX, and X of the First Amended Complaint (ECF No. 124) is DENIED.

Dated:	October 20, 2016

                                                     /s/
                                        Richard D. Bennett
                                        United States District Judge