IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| EDWARD C. HUGLER, | * | |
| Acting Secretary of Labor, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-15-3315 |
| CHIMES DISTRICT OF | * | |
| COLUMBIA, INC., *et al.*, | * | |
| Defendants. | * | |
|  | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Acting United States Secretary of Labor Edward C. Hugler[1], ("the Secretary") has brought a ten-count Amended Complaint against The Chimes D.C., Inc. Health & Welfare Plan (the "Plan") and its alleged fiduciaries and service providers, including Defendants Chimes District of Columbia, Inc.; Chimes International, Ltd.; FCE Benefit Administrators, Inc.; Gary Beckman; Stephen Porter; Martin Lampner; Albert Bussone; Benefits Consulting Group; Jeffrey Ramsey; and Marilyn Ward, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.* First Am. Compl., p. 1-2, ECF No. 102. Defendant Benefits Consulting Group ("BCG") is a sole proprietorship owned by Defendant Jeffrey Ramsey ("Ramsey") (collectively the "BCG Defendants") and was engaged to provide plan representation services to the Plan. *Id.* ¶ 18.

---

[1] This action was initially filed on October 30, 2015 by then-Secretary of Labor Thomas E. Perez. Edward C. Hugler, Deputy Assistant Secretary for Operations of the United States Department of Labor's Office of the Assistant Secretary for Administration and Management, has subsequently been designated to serve as the Acting Secretary of the United States Department of Labor, effective January 20, 2017, pending confirmation of a new Secretary of Labor by the United States Senate. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Secretary Edward C. Hugler is now substituted as the Plaintiff in this action.

Via Memorandum Opinion and Order dated October 12, 2016 (ECF Nos. 145 & 146), this Court denied the BCG Defendants' Motion to Dismiss the Secretary's ERISA claims against them as set forth in Counts I and III of the Amended Complaint. *Perez v. Chimes D.C., Inc., et al.*, No. RDB-15-3315, 2016 WL 5938827, at *1 (D. Md. Oct. 12, 2016). Subsequently, the BCG Defendants have brought a three-count Counterclaim against the Secretary alleging violations of the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401, *et seq.*, in connection with a subpoena issued on February 4, 2014 by the Secretary to First Security Bank, N.A. (and its successor, Cierra Bank) (collectively "First Bank") for "all documents in the name of Benefits Consulting Group or any predecessors, successors, affiliates or subsidiaries." BCG Countercl., ¶ 10, ECF No. 158 (internal quotation omitted).

Currently pending before this Court is the Secretary's Partial Motion to Dismiss the BCG Defendants' Counterclaim (ECF No. 172). As discussed herein, the Secretary has moved to dismiss Count III of the Counterclaim in its entirety. Mem. Supp. Mot., p. 4, ECF No. 172-1. Additionally, the Secretary contends that any civil penalty assessed against the Secretary and awarded to the BCG Defendants under the Right to Financial Privacy Act should be limited to $100 and that the BCG Defendants have failed to state a claim for any actual or punitive damages. *Id.* at 5-8. Finally, the Secretary requests that attorneys' fees not be awarded with respect to the Counterclaim as the BCG Defendants should not prevail on any of the claims raised. *Id.* at 8. The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated herein, the Secretary's Partial Motion to Dismiss the BCG Defendants' Counterclaim (ECF No. 172) is GRANTED IN PART and DENIED IN PART. Specifically, the Motion is GRANTED

with respect to Count III of the Counterclaim, alleging a violation of 12 U.S.C. § 3403. Accordingly, Count III of the Counterclaim is DISMISSED.  Additionally, the Motion is GRANTED with respect to civil penalties, actual damages, and punitive damages.  Any civil penalty assessed in this action shall be limited to $100, and the BCG Defendants' claims for actual and punitive damages in Counts I and II are DISMISSED.  The Motion is DENIED with respect to attorneys' fees and costs.  Counts I and II of the BCG Defendants' Counterclaim remain pending, although limited to recovery in the amount of a $100 civil penalty, declaratory relief, and "such other and further relief" as requested in the Counterclaim, and this Court will defer ruling on the matter of reasonable attorneys' fees and costs until the conclusion of litigation on the merits.

## BACKGROUND

In ruling on a motion to dismiss, this Court must accept the claimant's factual allegations as true and construe those facts in the light most favorable to the claimant.  *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Harris v. Publish Am., LLLP*, No. RDB-14-3685, 2015 WL 4429510, at *1 (D. Md. July 17, 2015).  Although the facts of this case have previously been set forth in this Court's Memorandum Opinion of October 12, 2016 (ECF No. 145), *see Perez v. Chimes D.C., Inc., et al.*, No. RDB-15-3315, 2016 WL 5938827, at *1 (D. Md. Oct. 12, 2016), the BCG Defendants have subsequently raised the following additional factual allegations in their Counterclaim:

On April 19, 2013, more than two years prior to the filing of this ERISA action, Defendant Jeffrey Ramsey ("Ramsey"), owner of the sole proprietorship Defendant Benefits Consulting Group ("BCG") (collectively the "BCG Defendants"), "voluntarily participated

in an interview" with Investigator Gharanfoli, a United States Department of Labor ("DOL") Investigator, concerning the Chimes D.C., Inc. Health & Welfare Plan (the "Plan"). Countercl., ¶ 7, ECF No. 158.  Investigator Siamack Gharanfoli ("Gharanfoli") interviewed Ramsey for approximately seven hours, during which time Ramsey informed him that BCG was a sole proprietorship and not a separate legal entity.  *Id.*, ¶¶ 3, 8-9.

Subsequently, on February 4, 2014, the DOL and Investigator Gharanfoli issued a subpoena to First Security Bank, N.A. (and its successor, Cierra Bank) (collectively "First Bank") for "all documents in the name of Benefits Consulting Group or any predecessors, successors, affiliates or subsidiaries."  *Id.*, ¶ 10 (internal quotation omitted).  "The DOL did not provide notice to Mr. Ramsey concerning the subpoena."  *Id.*, ¶ 11.  "On or around February 14, 2014, First Bank sent, and the DOL received, bank records for 'Jeff Ramsey d/b/a Benefits Consulting Group' as well as records for BCGHR, LLC."  *Id.*, ¶ 12.  The BCG Defendants allege, "[u]pon information and belief," that "DOL used the financial records of 'Jeff Ramsey d/b/a Benefits Consulting Group' to further its investigation of the Plan and to harass [ ] Ramsey by investigating matters unrelated to the Plan."  *Id.*, ¶ 13.

The BCG Defendants allege in their Counterclaim that "[t]he subpoena and receipt of [ ] Ramsey's personal bank records without providing notice to him violated DOL policy and procedure."  *Id.*, ¶ 14.  The DOL's Employee Benefits Security Administration's ("EBSA") Enforcement Manual provides as follows:

> Documents Covered by the Right to Financial Privacy Act. The Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq. (RFPA), preserves the confidentiality of  financial records while at the same time allowing access for legitimate law enforcement activities.  The RFPA prohibits any agency or department of the United States from obtaining financial records of a customer from a financial institution, such as a bank, savings and loan, credit

union, consumer finance institution, or credit card company, unless the records are reasonably described and 1) either the customer authorizes such disclosure or 2) the records are disclosed in response to an administrative subpoena which meets specific requirements as set forth in the RFPA.

a. Coverage.  The RFPA applies only to financial records of individuals or partnerships of five or fewer individuals.  The RFPA does not protect corporations, associations, larger partnerships, employee benefit plans, or other legal entities.  When requesting documents which are not protected by the RFPA it is good practice to enclose a cover letter to the financial institution explaining why the RFPA does not apply (See Figure 8).

b. Certification of Compliance Requirement.  Before records may be obtained, the RD must submit to the financial institution a certificate stating that the RD has complied with all applicable provisions of the RFPA (See Figure 9). Good faith reliance by the employees and agents of the financial institution upon this certification of compliance absolves the institution of civil liability for any improper disclosure of records.

c. Customer Authorization.  Customers may authorize access to identified records by giving approval in writing for a period of no more than three months; such authorization is revocable at any time before the records are disclosed (See Figure 10).

d. Customer Notice Requirements.  Notice must be sent to a customer before the records can be obtained from the financial institution.  The notice must include a description of the records sought, a statement of the purpose of the inquiry, and an explanation of the procedure by which the customer may challenge the government request in court.   Along with the notice, the customer is to be provided a copy of the subpoena and blank motion and affidavit forms suitable for filing in court if properly completed (See Figures 11a-e).  The customer may then move to quash the subpoena.  If notice to the customer will seriously jeopardize the investigation, the required notice to the customer may be delayed up to 90 days by court order.

e. Costs.  The RFPA provides that the government must pay the financial institution any reasonable costs which are directly incurred in searching for, reproducing, or transporting the records requested to be produced.

f. Civil Penalties.  Violations of the RFPA may result in a penalty of $100, plus actual damages, plus punitive damages, plus court costs, plus attorneys fees, plus investigation by OPM, plus disciplinary action against the responsible government official.

g. Custody of Documents.  Keep documents obtained pursuant to the RFPA
segregated, since there are certain prohibitions against giving the documents to
others, including other government agencies. (See Chapter 20, paragraph 5
and Chapter 32, paragraph 1.e.2).

*Id.*, ¶ 15.

The BCG Defendants allege, "[u]pon information and belief," that the DOL "in

violation of the DOL's Employee Benefits Security Administration's Enforcement Manual, .

. . failed to enclose a cover letter to the financial institution explaining why the RFPA does

not apply."  *Id.*, ¶ 16.  Also "[i]n violation of the DOL's Employee Benefits Security

Administration's Enforcement Manual, the DOL failed to send notice to [ ] Ramsey before

obtaining his personal financial records from First Bank."  *Id.*, ¶ 17.  "Upon information and

belief," the BCG Defendants contend that "after receiving the records in violation of DOL

policy, the DOL used the financial records of 'Jeff Ramsey d/b/a Benefits Consulting

Group' to identify [ ] Ramsey's professional business associates and customers."  *Id.*, ¶ 18.

Subsequently, "[o]n November 6, 2014, [ ] Ramsey participated in a deposition conducted by

the DOL," in which "the DOL used records and information derived from the financial

records of 'Jeff Ramsey d/b/a Benefits Consulting Group.' "  *Id.*, ¶ 19.[2]

On October 30, 2015, the United States Secretary of Labor ("the Secretary")[3] initiated

the present action against The Chimes D.C., Inc. Health & Welfare Plan (the "Plan") and its

---

[2] Additionally, as discussed herein, this Court takes judicial notice of a decision of the United States District
Court for the Northern District of Texas, issued on March 28, 2016, concerning a second subpoena, also
issued by the Secretary and identical to the Secretary's February 4, 2014 subpoena.  *See Ramsey v. United States
Dep't of Labor*, No. 3:15-MC-14-P (N.D. Tex., Mar. 28, 2016).  Ramsey received notice of that subpoena and
filed a Motion to Quash.  The Texas Court denied that Motion as well as Ramsey's request for fees and
injunctive relief.
[3] As explained *supra*, then-Secretary of Labor Thomas E. Perez filed this action on October 30, 2015.  Edward
C. Hugler has subsequently been designated to serve as the Acting Secretary of the United States Department

alleged fiduciaries and service providers, including Defendants Chimes District of Columbia, Inc.; Chimes International, Ltd.; FCE Benefit Administrators, Inc.; Gary Beckman; Stephen Porter; Martin Lampner; Albert Bussone; BCG; Ramsey; and Marilyn Ward, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.* First Am. Compl., p. 1-2, ECF No. 102. Subsequently, the BCG Defendants filed a Motion to Dismiss the Secretary's ERISA claims against them, which this Court denied via Memorandum Opinion and Order dated October 12, 2016 (ECF Nos. 145 & 146). *See Perez v. Chimes D.C., Inc., et al.*, No. RDB-15-3315, 2016 WL 5938827, at *1 (D. Md. Oct. 12, 2016).

The BCG Defendants have now brought a three-count Counterclaim against the Secretary alleging violations of the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401, *et seq.*, in connection with the February 4, 2014 subpoena. BCG Countercl., ¶¶ 20-35, ECF No. 158. Specifically, the BCG Defendants allege that the Secretary failed to provide notice of the February 4, 2014 subpoena, in violation of 12 U.S.C. § 3405 (Count I); disclosed financial records or information, in violation of 12 U.S.C. § 3402 (Count II); and failed to provide a certificate of compliance, in violation of 12 U.S.C. § 3403 (Count III). *Id.* The BCG Defendants seek civil penalties in the amount of $300 ($100 for each Count); actual damages, punitive damages, a declaration that the Secretary violated the RFPA, attorneys' fees and costs, and "such other and further relief" as outlined in the Counterclaim. The Secretary has now filed a Partial Motion to Dismiss the BCG Defendants' Counterclaim (ECF No. 172), specifically seeking to dismiss Count III of the Counterclaim in its entirety,

---

of Labor, effective January 20, 2017, and is now substituted as the Plaintiff in this action, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

and seeking to limit any claim to a maximum penalty of $100, and further contending that there are no plausible claims for actual damages or punitive damages.  The Secretary further contends that there is no basis for an award of attorneys' fees in this case.

STANDARD OF REVIEW

In ruling on a motion to dismiss a counterclaim, this Court applies the same standard of review that would be applied to a Rule 12(b)(6) motion to dismiss a complaint.  *See Kansas City Live Block 124 Retail, LLC v. Kobe Kansas, LLC*, No. GLR-14-3236, 2015 WL 6151266, at *2 (D. Md. Oct. 16, 2015); *First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*, No. RDB–12– 2568, 2013 WL 6234598, at *3 (D. Md. Nov. 13, 2013).  Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual

8

allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

<u>ANALYSIS</u>

I.  <u>Count III of the Counterclaim, Alleging Failure to Provide Certification of Compliance in Violation of 12 U.S.C. § 3403, Is Dismissed</u>

In Count III of the Counterclaim, the BCG Defendants allege that the Secretary "[f]ail[ed] to [p]rovide [c]ertification of [c]ompliance in [v]iolation of 12 U.S.C. § 3403. Countercl., p. 28, ECF No. 158. Specifically, the BCG Defendants claim that the Secretary "knowingly and willfully caused administrative subpoenas to be issued for bank and financial records of the [BCG Defendants] without the certification required by 12 U.S.C. § 3403(b)." *Id.*, ¶ 31. The Secretary now moves for dismissal of Count III on the grounds that "[S]ection 3403 on its face does not apply to the [G]overnment, only to financial institutions." Mem. Supp. Mot., p. 4, ECF No. 172-1.[4]

Section 3403(b) prohibits "financial institution[s]" from "releas[ing] the financial records of a customer until the Government authority seeking such records certifies in

---

[4] As discussed herein, the BCG Defendants have also alleged violations of 12 U.S.C. §§ 3402 & 3405 (Counts I & II), which the parties agree apply to the Government.

writing to the financial institution that it has complied with the applicable provisions of this chapter." 12 U.S.C. § 3403(b).  On its face, Section 3403(b) places a condition on the release of financial records *by financial institutions*, but does not prohibit *Government action*.  In contrast, Section 3402 provides that "*no Government authority may have access* to [financial records]" until the requirements of that Section are met.  12 U.S.C. § 3402 (emphasis added).  The United States Court of Appeals for the Fourth Circuit has specifically observed in *Tucker v. Waddell*, 83 F.3d 688, 692 (4th Cir. 1996) that "[t]he Right to Financial Privacy Act . . . contains [both] a section limiting the circumstances under which customer records *may be disclosed to governmental authorities* . . . by financial institutions [citing 12 U.S.C. § 3403]" and "a 'companion' section limiting the circumstances under which *governmental authorities may obtain access* to customer records from the financial institutions [citing 12 U.S.C. § 3402]." *Tucker v. Waddell*, 83 F.3d 688, 692 (4th Cir. 1996) (emphasis added).  "Civil actions against governmental authorities for improperly obtaining information allege violations of § 3402, while actions against financial institutions for improper disclosure allege violations of § 3403." *Id.* (citations omitted).

The Fourth Circuit has further explained that "in enacting the Right to Financial Privacy Act, Congress limited both the disclosure of customer records by financial institutions and the acquisition of such information by governmental entities . . . by enacting two 'companion' sections, *one directed at the actions of governmental entities*, and *the other directed at the actions of financial institutions*." *Id.*; *see also Anderson v. La Junta State Bank*, 115 F.3d 756, 758 (10th Cir. 1997) ("Under the RFPA, *the [G]overnment* may have access to [financial information] . . . *only if* . . . [citing 12 U.S.C. § 3402] . . . . [f]urther, the *financial institution may*

*not release the requested financial records until* . . . [citing 12 U.S.C. § 3403(b)]") (emphasis added). This Court has located no authority holding that a claim may be brought *against the Government* for violation of Section 3403.  The BCG Defendants have alleged violations of 12 U.S.C. §§ 3402 & 3405 in Counts I & II of the Counterclaim.  However, for the reasons discussed *supra*, they may not also bring an action against the Secretary under Section 3403. Accordingly, the Secretary's Partial Motion to Dismiss (ECF No. 172) is GRANTED as to Count III.  Count III of the Counterclaim is DISMISSED.

II.    <u>The Secretary's Motion is GRANTED With Respect to Civil Penalties, Actual Damages, and Punitive Damages On the Remaining Counts I and II of the Counterclaim</u>

In Counts I and II of the Counterclaim, the BCG Defendants allege that the Secretary has "[f]ail[ed] to [p]rovide [n]otice of [s]ubpoena of [f]inancial [r]ecords or [i]nformation in violation of 12 U.S.C. § 3405" (Count I) and has "[d]isclos[ed] [ ] [f]inancial [r]ecords or [i]nformation in violation of 12 U.S.C. § 3402" (Count II).  Countercl., p. 27, ECF No. 158.  With respect to Count I, the BCG Defendants specifically allege that the Secretary's "administrative subpoenas were issued in violation of the provisions of . . . 12 U.S.C. § 3405, which requires that a copy of the subpoena or summons 'be served upon the customer or mailed to his last known address on or before the date on which the subpoena or summons was served on the financial institution.' " *Id.*, ¶ 22 (quoting 12 U.S.C. § 3405). With respect to Count II, the BCG Defendants allege that the Secretary "disclosed information contained in [the BCG Defendants'] customer financial records without reasonable description as required by 12 U.S.C. § 1302." *Id.*, ¶ 28.

Section 3417(a) of the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401, *et seq.*, provides as follows:

> Any agency or department of the United States or financial institution obtaining or disclosing financial records or information contained therein in violation of this chapter is liable to the customer to whom such records relate in an amount equal to the sum of—
>
> (1) $100 without regard to the volume of records involved;
> (2) any actual damages sustained by the customer as a result of the disclosure;
> (3) such punitive damages as the court may allow, where the violation is found to be willful or intentional; and
> (4) in the case of any successful action to enforce liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

12 U.S.C. § 3417(a).  The Secretary has not moved to dismiss either Count I or Count II of the Counterclaim in its entirety, but contends (1) that Counts I and II "[s]hould [b]e [l]imited [t]o [a] [m]aximum [o]f $100 [i]n [c]ivil [p]enalties [u]nder 12 U.S.C. § 3417 [b]ecause BCG [a]lleges [o]nly [o]ne [t]ransaction;" (2) that "[t]he BCG Defendants [h]ave [n]o [a]ctual [d]amages;" and (3) that "[t]he BCG Defendants [h]ave [f]ailed [t]o [s]tate [a] [c]laim [f]or [p]unitive [d]amages."  Mem. Supp. Mot., p. 4-8, ECF No. 172-1.

A.      Any Civil Penalty Assessed in this Action Shall Be Limited to $100

With respect to civil penalties, the Secretary argues that the BCG Defendants' allegations, although raised in three separate Counts, concern "only one transaction, related to the service of a single subpoena, in which the [Secretary] obtained financial records from First Bank without providing the customer with prior notice."  *Id.* at 4.  Accordingly, the Secretary contends that the BCG Defendants are entitled to, at most, a single award of $100 in civil penalties under 12 U.S.C. § 3417(a)(1).  *Id.*  The BCG Defendants respond that they are entitled to $100 in civil penalties "for each of the [Secretary's] [alleged] violations," which

include "fail[ure] to seek customer authorization with a reasonable description of the requested records; (2) fail[ure] to deliver a copy of an administrative subpoena to [the] BCG Defendants; and (3) fail[ure] to certify its compliance with the RFPA to First Bank." BCG Opp'n, p. 5, ECF No. 177.

The RFPA's Civil Penalties section specifically provides that a Government agency or department "*in violation of* this chapter" is liable in the amount of $100. 12 U.S.C. § 3417(a)(1) (emphasis). The statute does not specify whether a Government agency that has issued a single subpoena in technical violation of multiple sections of the RFPA is liable for a single $100 civil penalty, or multiple penalties. The United States Court of Appeals for the Fourth Circuit has held that "[i]f the [G]overnment *is found liable under the Act*, plaintiffs are entitled to $100 statutory damages regardless of whether they prove actual damages." *Duncan v. Belcher*, 813 F.2d 1335, 1339 (4th Cir. 1987). No Court has specifically held that the RFPA's $100 civil penalty may be *compounded* where multiple technical violations have occurred in connection with a single subpoena for financial records. This Court has previously suggested in *Bond v. U.S. Postal Serv. Fed. Credit Union*, 164 F. Supp. 3d 740, 750 (D. Md. 2015), *appeal dismissed* (Apr. 6, 2016) that civil penalties under the RFPA should be assessed "$100 per alleged violation," but the alleged violations in that case were two separate disclosures of financial records by a financial institution to a Government investigator on *two separate occasions. Bond v. U.S. Postal Serv. Fed. Credit Union*, 164 F. Supp. 3d 740, 750 (D. Md. 2015), *appeal dismissed* (Apr. 6, 2016); *see also Flowers v. First Hawaiian Bank*, 289 F. Supp. 2d 1213, 1218 (D. Haw. 2003), aff'd sub nom. *Flowers v. U.S. Army, 25th Infantry Div.*, 179 F. App'x 986 (9th Cir. 2006) ("The [RFPA] statute allows damages of $100 *per*

13

*disclosure* plus actual damages and punitive damages")(emphasis added)).   In contrast, the BCG Defendants' Counterclaim concerns one single subpoena, issued February 4, 2014, and one disclosure in response to that subpoena.

Additionally, although the Truth in Lending Act ("TILA") [5], 15 U.S.C. § 1601 *et seq.*, is distinguishable from the Right to Financial Privacy Act, the United States Court of Appeals for the Fourth Circuit has held in the TILA context that even where a creditor has failed to provide a required to notice to *both husband and wife* as joint obligors on a single debt, "only *one penalty may be recovered . . . on a single credit transaction*." *Mason v. Gen. Fin. Corp. of Virginia*, 542 F.2d 1226, 1235 (4th Cir. 1976) (citing *Powers v. Sims & Levin*, 542 F.2d 1216 (4th Cir. 1976)).   The United States Court of Appeals for the Third Circuit has likewise held in *Smith v. Fid. Consumer Disc. Co.*, 898 F.2d 896, 898 (3d Cir. 1990) that "[m]ultiple violations . . . in the course of a single [ ] transaction do not yield multiple civil penalties [under the TILA] but result in only a single penalty."  *Smith v. Fid. Consumer Disc. Co.*, 898 F.2d 896, 898 (3d Cir. 1990) (citing 15 U.S.C. § 1640(g)).

Furthermore, although the BCG Defendants have styled their Counterclaim in terms of two separate violations of 12 U.S.C. § 3405 (Count I) and 12 U.S.C. § 3402 (Count II), they allege a single violation of Section 3402.   Section 3402 *includes a requirement that an administrative subpoena comply with Section 3405*.   *See* 12 U.S.C. § 3402(2) ("[N]o Government authority may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution unless the financial records are reasonably described and . . . such financial records are disclosed in response to an

---

[5] The Truth in Lending Act requires creditors to make specific disclosures before extending credit to consumers.  15 U.S.C. § 1638(a), (b).

administrative subpena or summons *which meets the requirements of section 3405 of this title.*")
(emphasis added).   No authority supports interpreting the BCG Defendants' factual
allegations as stating a claim for *two separate civil penalties* under the RFPA.   For these reasons,
the Secretary's Partial Motion to Dismiss (ECF No. 172) is GRANTED with respect to civil
penalties.   For the reasons stated herein, based on the allegations in their Counterclaim, the
BCG Defendants are limited to recovering a maximum of $100 in civil penalties.

B.      The BCG Defendants Have Failed to State a Claim for Actual Damages

The Secretary further objects that "the BCG Defendants have not alleged facts that
would establish that the lack of prior notice regarding the subpoena caused harm to
professional reputation, ability to earn a living, loss of business, loss of business
opportunities, loss of income, or other financial harm . . . [nor have they] alleged that the
DOL disclosed any information from the financial records to any third party."   Mem. Supp.
Mot., p. 5, ECF No. 172-1.   This Court has held that "[i]n order to demonstrate that [a
claimant] suffered actual damages under the [Right to Financial Privacy Act], [he] *must causally
connect* the disclosures at issue to the losses [he] suffered.   *Bond*, 164 F. Supp. 3d at 748 (citing
*Flowers*, 295 F. Supp. 2d at 1140; *Suburban Trust Co. v. Waller*, 408 A.2d 758, 765–66 (1979))
(emphasis added).   "If, for example, as a result of unauthorized disclosures, [the claimant]
had sustained identity theft or other *tangible adverse financial consequences*, actual damages might
be cognizable under the RFPA."   *Id.* (emphasis added).

The BCG Defendants have alleged that the Secretary has "used [their] financial
records . . . to further its investigation of the Plan and to harass [ ] Ramsey by investigating
matters unrelated to the Plan."   Countercl., ¶ 13, ECF No. 158.   Neither allegation amounts

to "tangible adverse financial consequences." *See Bond*, 164 F. Supp. 3d at 748.  With respect to "harass[ment]" specifically, this Court has held that "[i]t is doubtful that 'actual damages' under the RFPA would include non-pecuniary damages for emotional harms such as humiliation and mental anguish" and that "emotional damages cannot be recovered under the RFPA in the absence of demonstrable pecuniary losses."  *Id.* at 749 (citing *Neece v. I.R.S. of U.S.*, 41 F.3d 1396, 1399 (10th Cir. 1994) (affirming district court denial of award for emotional damages under the RFPA when plaintiffs failed to prove any "compensable nonpecuniary losses")).

The BCG Defendants further allege that the Secretary used their financial records "to identify [ ] Ramsey's professional business associates and customers" and that the Secretary "used records and information derived from the financial records" at Ramsey's deposition.  Countercl., ¶¶ 18-19, ECF No. 158.  Again, neither of these allegations "causally connect" the disclosure to any "tangible adverse financial consequence[ ]" sustained by the BCG Defendants.  *See Bond*, 164 F. Supp. 3d at 748.  Although the BCG Defendants have subsequently argued in their Opposition Brief that the Secretary "used financial records to *pollute their customer base* and to *bring this lawsuit*," they have still failed to allege any specific business loss or harm.  *See* BCG Def. Opp'n, p. 8, ECF No. 177.  The BCG Defendants' claims that they have suffered "irreparable damage to [their] reputation, ability to earn a living, loss of business, loss of business opportunities, loss of income, and other financial consequences" are equally insufficient to state a claim for actual damages.  *See* Countercl., ¶¶ 25, 29, ECF No. 158.  In assessing the sufficiency of a claim, this Court "need not accept

legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Wag More Dogs, LLC*, 680 F.3d at 365.

Additionally, although the BCG Defendants have subsequently argued that the Secretary's alleged violation of the Right to Financial Privacy Act denied them the "opportunity to challenge the relevancy" of the requested financial records, *see* BCG Opp'n, p. 7, ECF No. 177, the BCG Defendants have in fact had an opportunity to challenge the Secretary's requests, including their relevancy, and their arguments have been rejected by the United States District Court for the Northern District of Texas.  In *Ramsey v. United States Dep't of Labor*, No. 3:15-MC-14-P (N.D. Tex., Mar. 28, 2016) [6], the BCG Defendants filed a Motion to Quash a second subpoena issued by the Secretary, a subpoena identical to the February 4, 2014 subpoena, and the District of Texas denied their Motion and request for fees and injunctive relief.  For these reasons, the Secretary's Partial Motion to Dismiss (ECF No. 172) is GRANTED with respect to actual damages.  The BCG Defendants' claims for actual damages as to Counts I and II are DISMISSED.

C.    The BCG Defendants Have Failed to State a Claim for Punitive Damages

With respect to punitive damages, the Secretary objects that the "BCG Defendants have not alleged facts that, if true, would establish that the [Secretary] intentionally and willfully violated the RFPA."  Mot., p. 7, ECF No. 172-1.  The Secretary contends that they

---

[6] This Court takes judicial notice of the decision of the United States District Court for the Northern District of Texas in *Ramsey v. United States Dep't of Labor*, No. 3:15-MC-14-P (N.D. Tex., Mar. 28, 2016).  Although a court ruling on a Rule 12(b)(6) Motion to Dismiss may not take judicial notice of another court's opinion "for the truth of the facts recited therein," it may do so "for the existence of the opinion which is not subject to reasonable dispute over its authenticity." *First Data*, 2013 WL 6234598 at *5 (quoting *Lee v. City of Los Angeles*, 250 F3d 668, 690 (9th Cir. 2001)).  Additionally, a court may take judicial notice of the existence of complaints and pleadings in other courts. *See, e.g., In re NC & VA Warranty Co., Inc.*, No. 15-80016, 2016 WL 6658968, at *7 (Bankr. M.D.N.C. Sept. 28, 2016).

"allege only that Investigator Gharanfoli was told that BCG was a sole proprietorship, but have not alleged that Investigator Gharanfoli was aware that BCG was a customer covered by the RFPA, and intentionally or willfully violated the RFPA." *Id.*

With respect to punitive damages under the Right to Financial Privacy Act, this Court has held that "an award of punitive damages requires a showing that the defendant *intentionally* and *willfully* violated the RFPA." *Bond*, 164 F. Supp. 3d at 750. "This means more than gross negligence . . . [o]ne court has described the required showing as actions 'so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful.'" *Id.* (citing *Taylor v. Dep't of Air Force*, 18 F. Supp. 2d 1184, 1192 (D. Colo. 1998) *aff'd sub nom. Taylor v. U.S. Air Force*, 176 F.3d 489 (10th Cir. 1999) (internal quotation and citation omitted)).

Although the BCG Defendants have alleged that Ramsey informed Investigator Gharanfoli on April 19, 2013 that BCG was a sole proprietorship, with Ramsey as the sole owner, they have not adequately stated a claim that the Secretary's alleged failure to notify Ramsey of the February 4, 2014 subpoena on BCG's financial records was an "intentional[ ] and willful[ ]" violation of the RFPA. The Counterclaim alleges that Investigator Gharanfoli "did not provide notice to Ramsey," but includes no further allegations in support of punitive damages. While the BCG Defendants now contend that knowledge of BCG being a sole proprietorship is sufficient to state a claim for punitive damages in light of the clear language of the RFPA statute, the RFPA statute does not specifically state that the sole owner of a sole proprietorship is to be notified pursuant to the RFPA's terms.

The Right to Financial Privacy Act defines a "customer" requiring notification under the Act as "any person or authorized representative of that person who utilized or is utilizing any service of a financial institution, or for whom a financial institution is acting or has acted as a fiduciary, in relation to an account maintained in the person's name."  12 U.S.C. § 3401(5).  The RFPA defines "person" as "an individual or a partnership of five or fewer individuals."  The RFPA does not specifically include sole proprietorships in this definition. While the BCG Defendants further contend that Investigator Gharanfoli willfully and intentionally failed to follow sections of EBSA's Enforcement Manual that discuss compliance with the RFPA, they have not cited anything in the manual that states that sole proprietorships are covered.  For these reasons, the Secretary's Partial Motion to Dismiss (ECF No. 172) is GRANTED with respect to punitive damages.  The BCG Defendants have failed to state a claim for punitive damages.  Accordingly, the BCG Defendants' claims for punitive damages as to Counts I and II are DISMISSED.

III.    This Court Will Defer Ruling on the Matter of Reasonable Attorneys' Fees and Costs Until the Conclusion of Litigation on the Merits

Finally, the Secretary contends that "[b]ecause the BCG Defendants should not prevail on any of the issues . . . , they should not be entitled to costs of the action."  Mem. Supp. Mot., p. 8, ECF No. 172-1.  As discussed *supra*, the Right to Financial Privacy Act specifically authorizes "in the case of any successful action to enforce liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court."  12 U.S.C. § 3417(a)(4).  As discussed herein, Counts I and II of the BCG Defendants' Counterclaim remain pending, although limited to recovery in the amount of a $100 civil penalty, declaratory relief, and "such other and further relief" as requested in the

Counterclaim, and this Court will defer ruling on the matter of reasonable attorneys' fees and costs until the conclusion of litigation on the merits. Accordingly, the Secretary's Partial Motion to Dismiss (ECF No. 172) is DENIED with respect to attorneys' fees.

CONCLUSION

For the reasons stated above, the Secretary's Partial Motion to Dismiss the BCG Defendants' Counterclaim (ECF No. 172) is GRANTED IN PART and DENIED IN PART. Specifically, the Motion is GRANTED with respect to Count III of the Counterclaim, alleging a violation of 12 U.S.C. § 3403. Accordingly, Count III of the Counterclaim is DISMISSED. Additionally, the Motion is GRANTED with respect to civil penalties, actual damages, and punitive damages. Any civil penalty assessed in this action shall be limited to $100, and the BCG Defendants' claims for actual and punitive damages in Counts I and II are DISMISSED. The Motion is DENIED with respect to attorneys' fees and costs. Counts I and II of the BCG Defendants' Counterclaim remain pending, although limited to recovery in the amount of a $100 civil penalty, declaratory relief, and "such other and further relief" as requested in the Counterclaim, and this Court will defer ruling on the matter of reasonable attorneys' fees and costs until the conclusion of litigation on the merits.

A separate Order shall follow.

Dated:         March 30, 2017

                                        ____/s/_____
                                        Richard D. Bennett
                                        United States District Judge