IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

R. ALEXANDER ACOSTA,
Secretary of Labor,

    Plaintiff,

v.                      Civil Action No.: RDB-15-3315

CHIMES DISTRICT OF
COLUMBIA, INC., *et al.*,

    Defendants.

## **MEMORANDUM OPINION**

The United States Secretary of Labor ("the Secretary")[1] brought a ten-count Amended Complaint against Chimes D.C., Inc. Health & Welfare Plan (the "Plan") and its alleged fiduciaries and service providers, including Defendants Chimes District of Columbia, Inc.; Chimes International, Ltd.; FCE Benefit Administrators, Inc.; Gary Beckman; Stephen Porter; Martin Lampner; Albert Bussone; Benefits Consulting Group; Jeffrey Ramsey; and Marilyn Ward, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, *et seq.* (First Am. Compl., p. 1-2, ECF No. 102.) The Secretary alleges that the Defendants charged the Plan excessive fees for services and engaged in prohibited transactions by receiving commissions, kickbacks, and inappropriate reimbursements.

---

[1] The Complaint was initially brought by former Secretary of Labor, Thomas E. Perez, who was then replaced with former Acting Secretary Edward C. Hugler. The docket has now been updated to name the current Secretary of Labor, R. Alexander Acosta as Plaintiff. The substitution was approved on June 6, 2018 (ECF No. 361).

Currently pending before this Court are nine motions, including the instant Moving Defendants' Joint Cross-Motion for Partial Summary Judgment (ECF No. 372).[2] By the instant motion, Defendants seek to time-bar certain claims pursuant to ERISA's statute of limitations. This Court has reviewed the parties' submissions and heard arguments of counsel at a motions hearing held November 13, 2018. For the reasons stated herein, the Moving Defendants' Joint Cross-Motion for Partial Summary Judgment (ECF No. 372) shall be GRANTED. Specifically, the Secretary is precluded from pursuing claims against the Defendants that relate to a time period more than three years prior to each of the Defendants' respective tolling agreements.

**BACKGROUND**

**I.    The Defendants**

Chimes D.C., Inc. ("Chimes DC") is a Washington, D.C. corporation established under Section 501(c)(3) of the Internal Revenue Code. (ECF No. 102 at ¶ 10.), and "is a federal government contractor who employs disabled workers for janitorial and custodial service." (*Id.*) Chimes DC established its Health & Welfare Plan "to provide a package of medical, prescription, life insurance, accidental death and dismemberment, disability, and

---

[2] The following eight Motions remain pending before this Court: Secretary's Motion for Partial Summary Judgment Against Defendants FCE Benefit Administrators, Inc., Stephen Porter and Gary Beckman (ECF No. 339); Secretary of Labor's Motion for Partial Summary Judgment Against Defendants Chimes District of Columbia, Inc., Chimes International, Ltd., Martin Lampner, and Albert Bussone (ECF No. 341); Secretary of Labor's Motion for Partial Summary Judgment Against Defendant Marilyn Ward (ECF No. 342); FCE Benefit Administrators, Inc., Gary Beckman, and Stephen Porter's Cross-Motion for Partial Summary Judgment Against Plaintiff, R. Alexander Acosta, Secretary of Labor (ECF No. 362); Motion for Summary Judgment on Behalf of Non-Fiduciary Defendants/Counter-Claimants, Benefits Consulting Group and Jeffrey Ramsey (ECF No. 365); Defendant Marilyn Ward's Motion for Partial Summary Judgment (ECF No. 369); Cross-Motion for Summary Judgment of Defendants Martin Lampner and Albert Bussone (ECF No. 371), and Chimes Defendants' Cross-Motion for Summary Judgment (ECF No. 375). This Court's rulings on these motions shall be forthcoming in due course.

unemployment benefits" to its employees.  (*Id.* at ¶ 2.)  "The Plan is a partially self-insured health and welfare plan and is mostly funded by contributions required to be paid under Chimes DC's federal government contracts and federal prevailing wage laws."  (*Id.* at ¶ 21.)  The Plan is an employee benefit plan as defined by ERISA, and Chimes DC, as Plan Administrator, is a named fiduciary.  (*Id.* at ¶¶ 10, 21.)

Defendant Chimes International Limited ("Chimes International") is the parent company of Chimes DC and The Chimes Foundation, Inc. (the "Chimes Foundation"), "a fundraising arm of Chimes International and its subsidiaries."  (*Id.* at ¶ 11.)  Chimes International is alleged to be a Plan fiduciary, as defined by ERISA.  (*Id.* citing 29 U.S.C. §1002(21)(A).)

Defendant Albert Bussone ("Bussone") was Vice President of Chimes DC and Chief Operating Officer and Executive Vice President of Chimes International from at least 2008 until his retirement in December 2014.  (*Id.* at ¶ 12.)  He was also Chief Development Officer and Vice President of Chimes DC and Chimes International from February 2012 until December 2014.  (*Id.*)

Defendant Martin Lampner ("Lampner") was Executive Vice President of Chimes DC and Chimes International from at least 2008 until July 2010, and from July 2010 to the present, he has been President of Chimes DC and Chimes International.  (*Id.* at ¶ 13.)  Lampner was also the Chief Financial Officer of Chimes DC and Chimes International from at least 2008 until January 2011, and from January 2011 to the present, he has been Chief Executive Officer of Chimes DC and Chimes International.  (*Id.*)  Defendants Chimes DC,

Chimes International, Bussone, and Lampner are collectively referred to herein as the "Chimes Defendants."

Defendant FCE Benefit Administrators, Inc. ("FCE") was the Plan's third party administrator during the relevant time period. (*Id.* at ¶ 14.) Defendant Gary Beckman ("Beckman") and Defendant Stephen Porter ("Porter") were each 50% owners and officers of FCE. (*Id.* at ¶¶ 15-16.) Collectively, FCE, Beckman, and Porter are referred to as the "FCE Defendants."

Defendant Benefits Consulting Group, ("BCG") is a sole proprietorship, owned by Defendant Jeffrey Ramsey ("Ramsey"), engaged to provide plan representation services to the Plan. (*Id.* at ¶ 18.) Collectively, BCG and Ramsey are referred to as the "BCG Defendants."

Defendant Marilyn Ward ("Ward") was an appointed Plan trustee and named fiduciary of the Plan. (*Id.* at ¶ 20.)

## II. Procedural History

The Secretary filed a Complaint (ECF No. 1) against all Defendants but Ward on October 20, 2015. The Complaint was amended on June 7, 2016, adding Ward as a Defendant. (ECF No. 102.) The First Amended Complaint (ECF No. 102) alleged ten counts:

- Count I – Excessive Plan Expenses (alleged against the Chimes Defendants, the FCE Defendants, and the BCG Defendants)[3]

---

[3] The First Amended Complaint stated it was alleged against ALL Defendants, but the Secretary clarified that Ward was mistakenly included under Count I (ECF No. 127 at 12).

4

- Count II – Chimes Defendants' Receipt of Benefits in Connection with Plan's Retention of FCE (alleged against the Chimes Defendants and the FCE Defendants)

- Count III – Chimes Defendants' Receipt of Payments and Discounts from BCG and Ramsey in Connection with Plan's Retention of BCG (alleged against the Chimes Defendants and the BCG Defendants)

- Count IV – FCE's Receipt of Payments from Service Providers (alleged against the FCE Defendants and the Chimes Defendants)

- Count V – Failure to Prudently and Loyally Administer the Plan (alleged against the FCE Defendants and Chimes DC as Plan Administrator)

- Count VI – Plan's Reimbursements to Chimes DC for Work of Its Full-Time Employee (alleged against Chimes DC, Bussone, and FCE)

- Count VII – Ward's Liability for FCE's Payments to the Chimes Foundation and FCE's Employing Lampner's Child (alleged against Defendant Ward)

- Count VIII – Ward's Conflicted Arrangements with FCE (alleged against Defendant Ward)

- Count IX – Ward's Liability for Payment of Fees that Differ from Approved Fee Schedules and for FCE's Administrative Failures (alleged against Defendant Ward)

- Count X – Ward's Liability for Plan's Reimbursements to Chimes DC for Work of Its Full-Time Employee (alleged against Defendant Ward)

The BCG Defendants filed a Counterclaim (ECF No. 158) against the Secretary with three Counts:

- Count I – Failure to Provide Notice of Subpoena of Financial Records or Information in Violation of 12 USC § 3405

- Count II – Disclosure of Financial Records or Information in Violation of 12 USC § 3402

- Count III – Failure to Provide Certification of Compliance in Violation of 12 USC § 3403

The Secretary moved for dismissal (ECF No. 172), which was partly GRANTED (ECF No. 184). Count III was DISMISSED. (*Id.*) Counts I and II claims for actual and punitive damages were DISMISSED, and civil penalties were limited to $100. (*Id.*) A ruling on attorneys' fees was deferred to the end of this case. (*Id.*)

All Defendants moved for dismissal and were DENIED in the following Opinions:

- FCE Defendants – September 19, 2016 (ECF No. 135).
- Chimes Defendants – October 5, 2016 (ECF No. 141).
- BCG Defendants – October 12, 2016 (ECF No. 145).
- Ward – October 20, 2016 (ECF No. 151).

Nine motions have been filed by Defendants for summary judgment, including partial summary judgment and cross-motions, which are currently pending before this Court. A hearing on all open motions was held on November 13, 2018, and a bench trial is scheduled to commence on January 7, 2019.

All Defendants join in the instant cross-motion for partial summary judgment, seeking judgment as a matter of law on the following:

- Chimes DC filed its Form 5500 annually, specifically for the years 2007-2010.
- All Defendants entered into tolling agreements with the Secretary.

6

- Based on Form 5500 filings, the Secretary had actual knowledge of the essential facts of the allegations in the First Amended Complaint prior to three years before the Defendants entered into the tolling agreements.

- Based on actual knowledge, the Secretary is time-barred under ERISA's three-year statute of limitations from bringing any claims that arise more than three years from the date the Defendants entered into the tolling agreements.

- The operative date for the BCG Defendants is March 24, 2014, so the Secretary is precluded from any relief that arises out of claims prior to March 24, 2011, and includes claims based on facts disclosed in the Form 5500s for 2007, 2008, and 2009.

- The operative date for the Chimes Defendants is May 23, 2014, so the Secretary is precluded from any relief that arises out of claims prior to May 23, 2011, and includes claims based on facts disclosed in the Form 5500s for 2007, 2008, 2009.

- The operative date for FCE and Beckman is May 6, 2014, and for Porter is May 12, 2014, so the Secretary is precluded from any relief that arises out of claims prior to May 6, 2011 (FCE, Beckman) and May 12, 2011 (Porter), and includes claims based on facts disclosed in the Form 5500s for 2007, 2008, 2009.

- The operative date for Ward is March 13, 2015, so the Secretary is precluded from any relief that arises out of claims prior to March 13, 2012, and includes claims based on facts disclosed in the Form 5500s for 2007, 2008, 2009, 2010.

- Regardless of actual knowledge, the Secretary is time-barred from bringing any claims arising more than six years prior to the respective dates that the Defendants entered into the tolling agreements.

(ECF No. 372 at ¶¶ 1-8.)

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law."

*Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656-59 (2014).

When there are cross-motions for summary judgment, as here, this Court considers "'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Defenders of Wildlife v. North Carolina Dept. of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)). "[B]y the filing of a motion [for summary judgment,] a party concedes that

no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (citation omitted); *see also Sherwood v. Washington Post, 871 F.2d 1144, 1148 n.4* (D.C. Cir. 1989) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). "However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they '"may be probative of the non-existence of a factual dispute." *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620 (D. Md. 2013) (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)); *Georgia State Conference of NAACP v. Fayette County Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015).

## DISCUSSION

Before the original Complaint was filed, the Defendants each entered into an Agreement and Stipulation ("Tolling Agreement") with the Secretary that provided, among other things, that the "statute of limitations contained in Section 413 of ERISA, 29 U.S.C. § 1113, shall be tolled" as to the party as of the date of execution. (*See, e.g.*, ECF No. 372-3 at ¶ 2.) The Secretary did not dispute the operative dates for the Tolling Agreements that are cited in Defendants' Motion (ECF No. 372 at ¶¶ 4-7).

The Secretary's allegations concerning excessive fees for services and a failure to monitor by the Chimes Defendants indicate actions "[s]ince as early as 2008." (ECF No. 102 at ¶ 3.) Otherwise, the Secretary generally alleges that the claims go back to "at least 2008." (*Id.* at ¶¶ 12-13, 22, 24, 71.) However, Defendants contend that since that time, the Secretary had actual knowledge of the essential facts necessary to make the allegations that

9

were made in the Complaint filed on October 20, 2015. (ECF No. 372-1 at 12.) Defendants aver that the Plan's Annual Return Form 5500s,[4] which were filed annually as required, disclosed all the data and financial information needed to form the basis of the claims made for conduct relating to those years. (*Id.* at 11-12.)

There is no dispute that Chimes DC filed its Form 5500 annually, specifically for the years 2007-2010, but the parties disagree on whether the content of the filings was sufficient to provide the Secretary with the essential facts or if further investigation was required beyond what could be gleaned from the filed Forms. The Secretary also argues that the false statement on the Forms indicating that all of the disclosed transactions and payments were exempt from the prohibited transaction restrictions prevented the Secretary from knowing the way in which the exemptions did or did not apply to the multitude of transactions listed on the Forms.

ERISA's statute of limitations provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

---

[4] This Court takes judicial notice of the Form 5500s, which were attached to the Secretary's Motion for Summary Judgment, specifically, ECF Nos. 343-26, 343-27, 343-28. *See e.g.*, *United States v. Garcia*, 855 F.3d 615, 621-22 (4th Cir. 2017); *United States v. Chester*, 628 F.3d 673, 692 (4th Cir. 2010). This Court notes that the Secretary relies on the forms and has lodged no objection to Defendants' request that this Court take judicial notice (ECF No. 372-1 at 5 n.5.).

> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

Accordingly, ERISA's statute of limitations is generally six years, but it is "shortened to three years in cases where the plaintiff has actual knowledge, and potentially extended to six years from the date of discovery in cases involving fraud or concealment." *Browning v. Tiger's Eye Benefits Consulting*, 313 F. App'x 656, 660 (4th Cir. 2009) (quoting *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1551 (3d Cir. 1996)). Therefore, if this Court holds that the Secretary had actual knowledge of the claimed breach or violation, from the information contained in the Form 5500s received, the claims that arise more than three years prior to the operative dates that the Defendants entered into the Tolling Agreements are time-barred.[5]

The United States Court of Appeals for the Fourth Circuit has noted that since the 1987 amendment removing the constructive knowledge provision from the ERISA statute of limitations, the circuits have not been in full alignment on what constitutes actual knowledge. *Id.* The Third and Fifth Circuits require a showing that the plaintiff must have known not only the events that occurred, but also that those events support a claim under ERISA. *Id.* (citing *Int'l Union v. Murata Erie N. Am., Inc.*, 980 F.2d 889, 900 (3d Cir.1992); *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992); *Maher v. Strachan Shipping Co.*, 68

---

[5] The relevant dates are: BCG Defendants—March 24, 2011; Chimes Defendants—May 23, 2011; FCE, Beckman—May 6, 2011; Porter—May 12, 2011; Ward—March 13, 2012. (ECF No. 372.)

F.3d 951, 954 (5th Cir. 1995)). The majority,[6] however, "require only that the plaintiff have 'knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute.'" *Id.* at 660-61 (citing cases in the Sixth, Seventh, Ninth, and Eleventh Circuits).

The Fourth Circuit declined to provide a "hard and fast definition" of "actual knowledge," but emphasized that it must be distinguished from constructive knowledge and noted that "there cannot be actual knowledge of a violation for purposes of the limitation period unless a plaintiff knows 'the essential facts of the transaction or conduct constituting the violation.'" *Id.* at 661 (quoting *Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005)). The Fourth Circuit also emphasized that the "appropriate inquiry is fact-intensive,"[7] but in the summary judgment context, the *Browning* court concluded that the plaintiff "undoubtedly had actual knowledge of enough sufficient facts relied upon in their legal claims to trigger the three-year limitations period." *Id.* at 662.

To determine whether a Form 5500 contains the essential facts sufficient to support the Secretary's claims, this Court must review the information contained in the filing and how the Department of Labor uses such filings. A report from the United States Government Accountability Office describes the Form 5500 and how it is used by various agencies, including the Department of Labor:

---

[6] The Fourth Circuit also noted that other circuits "that have settled on a definition fall somewhere between these two views." *Browning*, 313 F. App'x at 661.
[7] The *Browning* court added that actual knowledge "depends largely on the 'complexity of the underlying factual transaction, the complexity of the legal claim[,] and the egregiousness of the alleged violation.'" 313 F. App'x at 661 (quoting *Martin v. Consultants & Admins., Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992)).

12

> Detailed information on private pension plans is reported on the Form 5500 and is used by Labor, IRS, and PBGC for compliance, research, and public disclosure purposes. Each agency uses data from Form 5500 Reports primarily as a means to identify actual and potential violations of ERISA and the IRC, as well as for research and policy formulation. . . .
>
> The Form 5500 is used to collect important information about the financial health and operation of private pension plans. [T]he Form 5500 has multiple parts. . . . 12 schedules. The main part of the form provides basic information to identify the plan and type of plan. The form's schedules provide more specific information about the plan, such as financial information, actuarial information, and insurance information. . . .
>
> Labor, IRS, and PBGC use Form 5500 Reports as a compliance tool to identify actual and potential violations of ERISA and the IRC. Each agency has a unique statutory responsibility and uses the information on the form for monitoring and enforcement purposes. Agency officials said that each agency has developed computerized systems that analyze the reported information to help them ensure that plans are in compliance with applicable laws.

(ECF No. 372-11 at 11-15.) The Department of Labor's Fact Sheet regarding the Form 5500 e-filing requirement states, in pertinent part:

> The Form 5500 Series annual reports are the primary source of employee benefit plan financial information and data available to the Department of Labor . . . .
>
> . . . .
>
> The electronic system also increases the timeliness of the data for public disclosure and enforcement, thereby enhancing the protections for participants and beneficiaries; and lowers processing costs, benefiting taxpayers generally. The resulting improvement in the timeliness and accuracy of the information from electronic filing will assist EBSA in its enforcement, oversight, and disclosure roles and ultimately enhance the security of plan benefits.

(ECF No. 372-13.) The Department of Labor also referred to the Form 5500 Annual Return/Report as "an essential compliance and research tool." (ECF No. 372-12.)

The Secretary has admitted that it received the Forms and that they contained, *inter alia*, the amount of direct and indirect fees and the actual fees for services paid to FCE and BCG each year. (ECF No. 372-10.) The Forms also include the number of Plan participants, such that with basic analysis, the Secretary had the essential facts sufficient for the allegations of excessive plan expenses, which forms the underlying basis for the claims filed. Additionally, this Court notes that the Secretary's expert relied upon the Form 5500s in arriving at his conclusions and calculations regarding the claims and did not attempt to reach back earlier in time than 2011. (*See* ECF No. 372-1 at 19-20.) The Secretary does not explain what additional facts were learned beyond the Form 5500s prior to entering into the Tolling Agreements and filing the original Complaint.

If, as the Secretary alleges, the Form 5500s contained inconsistencies and an alleged false statement regarding exempt transactions, the basic analysis performed by the Department of Labor in its enforcement role would reasonably be expected to bring these inconsistencies to light, which would lead to more in-depth analysis that would highlight the essential facts needed to bring a timely claim. The Secretary argues that the essential facts were not available "from the face of the Forms." (ECF No. 392 at 24.) However, the Department of Labor does not simply review these Forms on their face, but assembles the electronically submitted data into a database so it can be processed and analyzed for compliance and enforcement. *See* 72 Fed. Reg. 64710, 64719 (2007).

Accordingly, this Court holds that the Secretary had actual knowledge of sufficient facts relied upon in the claims that were pleaded to trigger the three-year limitations period. The claims arising more than three years prior to the operative dates that the Defendants entered into the Tolling Agreements are time-barred.

## CONCLUSION

For the foregoing reasons, the Moving Defendants' Joint Cross-Motion for Partial Summary Judgment (ECF No. 372) is GRANTED.

A separate order follows.

Dated: November 21, 2018.

    /s/    
Richard D. Bennett
United States District Judge
