IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

R. ALEXANDER ACOSTA,
Secretary of Labor,

Plaintiff,

v.

Civil Action No.: RDB-15-3315

CHIMES DISTRICT OF
COLUMBIA, INC., *et al.*,

Defendants.

## MEMORANDUM OPINION

The United States Secretary of Labor ("the Secretary")[1] brought a ten-count Amended Complaint against Chimes D.C., Inc. Health & Welfare Plan (the "Plan") and its alleged fiduciaries and service providers, including Defendants Chimes District of Columbia, Inc.; Chimes International, Ltd.; FCE Benefit Administrators, Inc.; Gary Beckman; Stephen Porter; Martin Lampner; Albert Bussone; Benefits Consulting Group; Jeffrey Ramsey; and Marilyn Ward, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, *et seq.* (First Am. Compl., p. 1-2, ECF No. 102.) The Secretary alleges that the

---

[1] The Complaint was initially brought by former Secretary of Labor, Thomas E. Perez, who was then replaced with former Acting Secretary Edward C. Hugler. The docket has now been updated to name the current Secretary of Labor, R. Alexander Acosta as Plaintiff. The substitution was approved on June 6, 2018 (ECF No. 361).



Defendants charged the Plan excessive fees for services and engaged in prohibited transactions by receiving commissions, kickbacks, and inappropriate reimbursements.

Currently pending before this Court are eight motions, including the instant Motion for Summary Judgment on Behalf of Non-Fiduciary Defendants/Counter-Claimants, Benefits Consulting Group and Jeffrey Ramsey ("BCG Defendants") (ECF No. 365).[2] By the instant motion, the BCG Defendants seek summary judgment of the claims set forth against them in Counts I and III of the First Amended Complaint (ECF No. 102), as well as judgment in their favor on their Counterclaim (ECF No. 158) against the Secretary. This Court has reviewed the parties' submissions and heard arguments of counsel at a motions hearing held November 13, 2018. For the reasons stated herein, the Motion for Summary Judgment on Behalf of Non-Fiduciary Defendants/Counter-Claimants, Benefits Consulting Group and Jeffrey Ramsey (ECF No. 365) shall be GRANTED. Accordingly, summary judgment shall be entered in favor of the BCG Defendants on Counts I and III of the First Amended Complaint.

---

[2] The following seven Motions remain pending before this Court: Secretary's Motion for Partial Summary Judgment Against Defendants FCE Benefit Administrators, Inc., Stephen Porter and Gary Beckman (ECF No. 339); Secretary of Labor's Motion for Partial Summary Judgment Against Defendants Chimes District of Columbia, Inc., Chimes International, Ltd., Martin Lampner, and Albert Bussone (ECF No. 341); Secretary of Labor's Motion for Partial Summary Judgment Against Defendant Marilyn Ward (ECF No. 342); FCE Benefit Administrators, Inc., Gary Beckman, and Stephen Porter's Cross-Motion for Partial Summary Judgment Against Plaintiff, R. Alexander Acosta, Secretary of Labor (ECF No. 362); Defendant Marilyn Ward's Motion for Partial Summary Judgment (ECF No. 369); Cross-Motion for Summary Judgment of Defendants Martin Lampner and Albert Bussone (ECF No. 371), and Chimes Defendants' Cross-Motion for Summary Judgment (ECF No. 375). This Court's rulings on these motions shall be forthcoming in due course. The Moving Defendants' Joint Cross-Motion for Partial Summary Judgment (ECF No. 372) was GRANTED on November 21, 2018 (ECF No. 452).

Furthermore, judgment shall be entered in their favor on their Counterclaim, together with an award of $100 as a civil penalty and reasonable attorneys' fees and costs to be determined in due course.

## BACKGROUND

### I. The Defendants

Chimes D.C., Inc. ("Chimes DC") is a Washington, D.C. corporation established under Section 501(c)(3) of the Internal Revenue Code and "is a federal government contractor who employs disabled workers for janitorial and custodial service." (ECF No. 102 at ¶ 10.) Chimes DC established its Health & Welfare Plan "to provide a package of medical, prescription, life insurance, accidental death and dismemberment, disability, and unemployment benefits" to its employees. (*Id.* at ¶ 2.) "The Plan is a partially self-insured health and welfare plan and is mostly funded by contributions required to be paid under Chimes DC's federal government contracts and federal prevailing wage laws." (*Id.* at ¶ 21.) The Plan is an employee benefit plan as defined by ERISA, and Chimes DC, as Plan Administrator, is a named fiduciary. (*Id.* at ¶¶ 10, 21.)

Defendant Chimes International Limited ("Chimes International") is the parent company of Chimes DC and The Chimes Foundation, Inc. (the "Chimes Foundation"), "a fundraising arm of Chimes International and its subsidiaries." (*Id.* at

3

¶ 11.) Chimes International is alleged to be a Plan fiduciary, as defined by ERISA. (*Id.* citing 29 U.S.C. §1002(21)(A).)

Defendant Albert Bussone ("Bussone") was Vice President of Chimes DC and Chief Operating Officer and Executive Vice President of Chimes International from at least 2008 until his retirement in December 2014. (*Id.* at ¶ 12.) He was also Chief Development Officer and Vice President of Chimes DC and Chimes International from February 2012 until December 2014. (*Id.*)

Defendant Martin Lampner ("Lampner") was Executive Vice President of Chimes DC and Chimes International from at least 2008 until July 2010, and from July 2010 to the present, he has been President of Chimes DC and Chimes International. (*Id.* at ¶ 13.) Lampner was also the Chief Financial Officer of Chimes DC and Chimes International from at least 2008 until January 2011, and from January 2011 to the present, he has been Chief Executive Officer of Chimes DC and Chimes International. (*Id.*) Defendants Chimes DC, Chimes International, Bussone, and Lampner are collectively referred to herein as the "Chimes Defendants."

Defendant FCE Benefit Administrators, Inc. ("FCE") was the Plan's third party administrator during the relevant time period. (*Id.* at ¶ 14.) Defendant Gary Beckman ("Beckman") and Defendant Stephen Porter ("Porter") were each 50% owners and officers of FCE. (*Id.* at ¶¶ 15-16.) Collectively, FCE, Beckman, and Porter are referred to as the "FCE Defendants."

Defendant Benefits Consulting Group, ("BCG") is a sole proprietorship, owned by Defendant Jeffrey Ramsey ("Ramsey"), engaged to provide plan representation services to the Plan. (*Id.* at ¶ 18.) Collectively, BCG and Ramsey are referred to as the "BCG Defendants."

Defendant Marilyn Ward ("Ward") was an appointed Plan trustee and named fiduciary of the Plan. (*Id.* at ¶ 20.)

## II. Factual Background Relevant to BCG Defendants

Since the inception of the Plan in 1995, BCG was retained to provide plan representation services and acted as a liaison between participants, the Plan, and Chimes DC. (ECF No. 389 at 7.) The relationship was governed by the 2004 Amended and Restated Adoption Agreement for the Plan and its exhibits and fee schedule, which was negotiated with Chimes DC by Chimes Defendants Bussone and Lampner. (ECF No. 367 at 5.) Chimes DC retained the authority to appoint, retain, and/or remove BCG upon 60 days' notice. (*Id.* at 5.)

As liaison, BCG conducted site visits, educated Chimes DC on relevant topics, assisted with the annual open enrollment process, and facilitated communications between Chimes DC and participants to resolve issues. (ECF No. 389 at 7.) BCG also performed market comparisons of FCE's fees. (*Id.*) BCG received 7.5% of the Plan contributions as a commission, which totaled annual payments of approximately $445,000 to $650,000. (*Id.*) In 2005, BCG agreed to reduce its fees by 20% from its

earnings in 2005 and "hold its fees through the year end 2007." (ECF No. 345-14.) In 2009, BCG also agreed to hold its fees for a five-year period. (ECF No. 343-8 at 2.)

Between 2007 and 2014, BCG contributed $292,500 to the Chimes Foundation. (ECF No. 389 at 8.) In 2009, BCG joined with FCE in pledging a total of $330,000 to the Chimes Foundation over a five-year period beginning in December 2010. (*Id.*)

During the relevant time period, Ramsey also had an ownership interest in BCGHR, LLC, which developed affirmative action plans for government contractors needing such plans for their government contracts. (*Id.* at 9.) Typically such plans cost between $2,500 to $3,500 per plan, but BCGHR provided discounts to Chimes DC for the plans it provided to Chimes DC, paying as little as $6,500 for 14 or 15 plans. (*Id.*)

Prior to the filing of this action, on April 19, 2013, in connection with an investigation into the Plan, an investigator with the Employee Benefits Security Administration ("EBSA"), a section of the Department of Labor, interviewed Ramsey, who stated that he owned BCG as a sole proprietorship. (ECF No. 389 at 29.) As part of the continuing investigation, the EBSA investigator issued an administrative subpoena to First Security Bank, N.A. (and its successor, Ciera Bank) (collectively "First Bank") seeking documents relating to the Plan and BCG.[3] (*Id.*) A copy of the subpoena was not sent to Ramsey, who, on December 11, 2014, filed a complaint

---

[3] The BCG Defendants are Texas residents and First Bank is located in Texas.

regarding the disclosure of documents. (*Id.*) The Department of Labor then destroyed the documents, provided notice to Ramsey, and sent a new subpoena to First Bank on January 29, 2015. (*Id.*)

After Ramsey moved to quash the subpoena,[4] the motion was denied by the United States District Court for the Northern District of Texas,[5] finding that the second subpoena complied with the notice requirements of the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. § 3401, *et seq.* (*Id.* at 29-30.) First Bank then provided substantially the same documents as it had originally produced. (*Id.*) Because of the lack of notice to Ramsey related to the first subpoena, the BCG Defendants filed a Counterclaim against the Department of Labor in the instant case alleging three counts against the Department of Labor for violations of the RFPA. (ECF No. 158)

### III. Procedural History

The Secretary filed a Complaint (ECF No. 1) against all Defendants but Ward on October 20, 2015. The Complaint was amended on June 7, 2016, adding Ward as a Defendant. (ECF No. 102.) The First Amended Complaint (ECF No. 102) alleged ten counts:

---

[4] Ramsey moved to quash the Second Subpoena in the United States District Court for the Northern District of Texas. *See U.S. Dep't of Labor v. Ramsey*, No. 3:15-mc-14-P (N.D. Tex. filed Feb. 12, 2015).

[5] *See U.S. Dep't of Labor v. Ramsey*, No. 3:15-mc-14-P, slip op. at 5 (N.D. Tex. Mar. 28, 2016).

7

- Count I – Excessive Plan Expenses (alleged against the Chimes Defendants, the FCE Defendants, and the **BCG Defendants**)[6]

- Count II – Chimes Defendants' Receipt of Benefits in Connection with Plan's Retention of FCE (alleged against the Chimes Defendants and the FCE Defendants)

- Count III – Chimes Defendants' Receipt of Payments and Discounts from BCG and Ramsey in Connection with Plan's Retention of BCG (alleged against the Chimes Defendants and the **BCG Defendants**)

- Count IV – FCE's Receipt of Payments from Service Providers (alleged against the FCE Defendants and the Chimes Defendants)

- Count V – Failure to Prudently and Loyally Administer the Plan (alleged against the FCE Defendants and Chimes DC as Plan Administrator)

- Count VI – Plan's Reimbursements to Chimes DC for Work of Its Full-Time Employee (alleged against Chimes DC, Bussone, and FCE)

- Count VII – Ward's Liability for FCE's Payments to the Chimes Foundation and FCE's Employing Lampner's Child (alleged against Defendant Ward)

- Count VIII – Ward's Conflicted Arrangements with FCE (alleged against Defendant Ward)

- Count IX – Ward's Liability for Payment of Fees that Differ from Approved Fee Schedules and for FCE's Administrative Failures (alleged against Defendant Ward)

- Count X – Ward's Liability for Plan's Reimbursements to Chimes DC for Work of Its Full-Time Employee (alleged against Defendant Ward)

The BCG Defendants filed a Counterclaim (ECF No. 158) against the Secretary with three Counts:

---

[6] The First Amended Complaint stated that Count I was alleged against ALL Defendants, but the Secretary clarified that Ward was mistakenly included under Count I (ECF No. 127 at 12).

- Count I – Failure to Provide Notice of Subpoena of Financial Records or Information in Violation of 12 USC § 3405

- Count II – Disclosure of Financial Records or Information in Violation of 12 USC § 3402

- Count III – Failure to Provide Certification of Compliance in Violation of 12 USC § 3403

The Secretary moved for dismissal (ECF No. 172), which was partly GRANTED (ECF No. 184). Count III of the Counterclaim was DISMISSED. (*Id.*) Counts I and II of the Counterclaim for actual and punitive damages were DISMISSED, and civil penalties were limited to $100. (*Id.*) A ruling on attorneys' fees was deferred to the end of this case. (*Id.*)

All Defendants moved for dismissal and were DENIED in the following Opinions:

- FCE Defendants – September 19, 2016 (ECF No. 135).
- Chimes Defendants – October 5, 2016 (ECF No. 141).
- BCG Defendants – October 12, 2016 (ECF No. 145).
- Ward – October 20, 2016 (ECF No. 151).

Nine motions were filed by Defendants for summary judgment, including partial summary judgment and cross-motions, eight of which remain pending before this Court. The Moving Defendants' Joint Cross-Motion for Partial Summary Judgment (ECF No. 372) was GRANTED on November 21, 2018 (ECF No. 452), precluding the Secretary from pursuing claims against the Defendants that relate to a

time period more than three years prior to each of the Defendants' respective tolling agreements. A bench trial is scheduled to commence on January 7, 2019.

The BCG Defendants are named in only Counts I and III of the First Amended Complaint (ECF No. 102). The instant motion was filed by the BCG Defendants seeking summary judgment in their favor on the Secretary's claims against them and seeking judgment in their favor on the Counterclaim against the Secretary (ECF No. 158).

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from

proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656-59 (2014).

To survive summary judgment, a party responding to a motion for summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). It must submit evidence that is "significantly probative" to survive summary judgment. *Anderson*, 477 U.S. at 249-50.

## DISCUSSION

### I. Excessive Fees and Kickbacks

The only Counts pleaded against BCG and Ramsey are Counts I and III. (ECF No. 102.) Under Count I, the Secretary alleges that they "knowingly participated in the Plan's payment of excessive fees to BCG and Ramsey." (ECF No. 102 at ¶ 80.)

Under Count III, the Secretary alleges that they "knowingly participated in the Plan's payment of fees to BCG in connection with BCG's payments to the Chimes Foundation and discounts to Chimes DC." (*Id.* at ¶ 92.) The essence of the claims against BCG and Ramsey are that they, as parties in interest, knowingly participated in prohibited transactions, namely excessive fees and kickbacks.

The claims against BCG and Ramsey are based on a provision of ERISA that prohibits certain transactions involving non-fiduciaries, which states in pertinent part:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . furnishing of goods, services, or facilities between the plan and a party in interest; transfer to, or use by or for the benefit of a party in interest, of any assets of the plan . . . .

29 U.S.C. § 1106(a)(1)(C),(D).

The United States Supreme Court held in *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, that the party in interest on the receiving end of such a transaction may be liable under ERISA if it "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." 530 U.S. 238, 251 (2000) (referring to ERISA's remedial provision 29 U.S.C. § 1132(a)(3)). Therefore, the Secretary must prove that a prohibited transaction occurred, and that the BCG Defendants knew that the transaction was unlawful. *See id.* at 248-49.

The Secretary contends that there are two prohibited transactions: (1) Chimes DC, as a fiduciary, accepted donations and reduced fees in return for continuing to

retain BCG as the Plan representative; and (2) Chimes DC, as a fiduciary, paid BCG excessive fees. The Secretary does not suggest that Chimes DC's acceptance of donations to the Chimes Foundation is, in itself, unlawful. It can only become a prohibited transaction if the donations represented a kickback in return for Chimes DC's payment of excessive fees to BCG as a service provider, which would harm the Plan.[7] Therefore, both alleged prohibited transactions are based on the payment of excessive fees by Chimes DC to BCG. Importantly, the Secretary must establish that the BCG Defendants knew that the fees were excessive when they accepted them from Chimes DC. *See id.* at 251 (requiring "actual or constructive knowledge of the circumstances that rendered the transaction unlawful.").

The BCG Defendants argue that the Secretary has failed to put forth evidence that the BCG fees were excessive. The agreement and fee schedule were the result of an arms-length negotiation in 2004 with Chimes DC, which agreed to pay 7.5% of Plan contributions for Plan representation services. (ECF No. 339-17 at 24.) Further, Chimes DC could terminate the Plan's contract with BCG upon 60 days' notice (ECF No. 102 at ¶ 26.) As might be expected, the parties' respective experts' findings and conclusions differ regarding the reasonableness of the amounts paid. The Secretary

---

[7] Note that ERISA's prohibited transaction section provides that a fiduciary who enters into a contract with a party in interest for "services necessary for the establishment or operation of the plan" is exempt from the prohibited transaction rule "if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2).

13

argues that this represents a material question of fact that precludes summary judgment. (ECF No. 389 at 20-25.)

The Secretary's expert was tasked with providing "estimates of the differences between reasonable administrative fees and those charged to the Plan, to quantify the losses that resulted to the Plan." (ECF No. 367-3 at 2.) The expert evaluated the actual amounts paid to BCG from 2011 to 2015 (as opposed to whether a rate of 7.5% was a reasonable commission rate) and concluded that the amounts paid were excessive in comparison to the amount of actual time spent by BCG in providing contractual services. (ECF No. 345-24.) The BCG Defendants argue that the Secretary's expert fails to identify what a reasonable fee would be, the hourly analysis is inappropriate in this context, and their own expert demonstrates that the 7.5% fee is a reasonable commission. (ECF No. 367 at 28.) The BCG Defendants add that BCG twice agreed to reduce its fees at Chimes DC's request. (ECF No. 367 at 6.)

The important point here is that the Secretary has failed to put forth evidence to demonstrate that the BCG Defendants had actual or constructive knowledge that the bargained-for fees that they were receiving from the Plan were excessive at that time such that Chimes DC was committing a prohibited transaction by paying the fees to BCG. Such a showing is essential to making their case. The Secretary argues, for example, that the evidence of discounts for services and charitable contributions shows that the BCG Defendants were knowing participants in Chimes DC's prohibited

transactions. (ECF No. 389 at 14.) Such evidence, however, only demonstrates that the BCG Defendants provided Chimes DC with discounts for services and that the BCG Defendants made charitable contributions to the Chimes Foundation—it does not demonstrate knowledge of a prohibited transaction. The Secretary also references the acceptance of regular, excessive payments from the Plan based "on a comparison of the compensation paid to the minimal services rendered." (ECF No. 389 at 15.) This Court accepts that such a comparison demonstrates that a calculation of payments received between 2011 and 2015, divided by estimated hours worked, resulted in an excessive hourly rate, but it does not show that the BCG Defendants' negotiation of a 7.5% commission from Chimes DC was a knowingly excessive commission. BCG provided evidence to show that the actual commissions received were within the range commonly paid to brokers, and the Secretary does not rebut that evidence. Further, the Secretary also fails to provide evidence that Chimes DC was aware that it was causing the Plan to engage in a prohibited transaction. *See* 29 U.S.C. § 1106(a)(1) (imposing liability only if the fiduciary "knows or should know" the transaction is prohibited).

Accordingly, this Court shall enter summary judgment in favor of the BCG Defendants on Counts I and III of the First Amended Complaint (ECF No. 102).

## II. Counterclaim

Only Counts I and II remain, limited to a single civil penalty of $100. (ECF No. 184 at 15.) The BCG Defendants aver that there are no material disputes of fact that would prevent this Court from now granting summary judgment in their favor. In the Answer to the Counterclaim, the Secretary conceded that the Department of Labor did not provide notice to Ramsey prior to serving the first subpoena to First Bank but denied that the failure was a knowing and intentional violation of the RFPA. (ECF No. 191 ¶¶ 11, 21; *see also* ECF No. 389 at 32.)

The RFPA provides for the provision of proper notice to customers before bank records can be obtained from a financial institution. Section 3402 provides that:

> no Government authority may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution unless the financial records are reasonably described and— . . . such financial records are disclosed in response to an administrative subpena or summons which meets the requirements of section 3405 of this title.

12 U.S.C. § 3402.

Section 3401(5) defines "customer" as "any person or authorized representative of that person who utilized or is utilizing any service of a financial institution, or for whom a financial institution is acting or has acted as a fiduciary, in relation to an account maintained in the person's name." 12 U.S.C. §3401(5). The statute further defines "person" as "an individual or a partnership of five or fewer individuals." *Id.* §

3401(4). Courts have considered a sole proprietorship as a "partnership of one" that is covered by the RFPA. *Exchange Point LLC v. United States Securities and Exchange Comm'n*, 100 F. Supp. 2d 172, 174-75 (S.D.N.Y. 1999) (citing *Hunt v. United States Securities and Exchange Comm'n*, 520 F. Supp. 580, 604 (N.D. Tex. 1981); *United States v. Whitty*, 688 F. Supp. 48, 58 (D. Me. 1988). Therefore, this Court considers BCG entitled to notice under the RFPA.

The Secretary does not deny that the first subpoena was sent without notice and makes no claim that the RFPA does not apply to the Department of Labor as a Government authority. This Court has already dismissed any claims for punitive and actual damages. Therefore, this Court holds that the Secretary violated 12 U.S.C. § 3402.[8] This Court shall GRANT summary judgment in favor of the BCG Defendants on Counts I and II and award them $100 as the statutory civil penalty.

The RFPA specifically authorizes "in the case of any successful action to enforce liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." 12 U.S.C. § 3417(a)(4). This Court previously deferred ruling on the matter of reasonable attorneys' fees and costs until the conclusion of litigation on the merits. (ECF No. 184 at 20.) This Court shall now GRANT the request for reasonable attorneys' fees and costs, with the amount to be

---

[8] As previously held, although the BCG Defendants styled their Counterclaim in terms of two separate violations of 12 U.S.C. § 3405 (Count I) and 12 U.S.C. § 3402 (Count II), they allege a single violation of Section 3402. (ECF No. 184 at 14.) Section 3402 includes a requirement that an administrative subpoena comply with Section 3405. (*Id.* at 14-15 (citing 12 U.S.C. § 3402(2)).)

determined in due course. The BCG Defendants may file a request for attorneys' fees and costs, but this Court cautions them that the fees must relate only to fees pertinent to the Counterclaim.

## CONCLUSION

For the foregoing reasons:

1. The Motion for Summary Judgment on Behalf of Non-Fiduciary Defendants/Counter-Claimants, Benefits Consulting Group and Jeffrey Ramsey (ECF No. 365) is GRANTED.

2. Judgment shall be entered in favor of Benefits Consulting Group and Jeffrey Ramsey on Counts I and III of the First Amended Complaint (ECF No. 102), and against R. Alexander Acosta, Secretary of Labor, with costs.

3. Judgment shall be entered in favor of Benefits Consulting Group and Jeffrey Ramsey on Counts I and II of the Counterclaim (ECF No. 158), and against R. Alexander Acosta, Secretary of Labor, with an award of the statutory civil penalty of $100, with costs and attorneys' fees.

A separate Order follows.

Dated: November 29, 2018.

_/s/ Richard D. Bennett_
Richard D. Bennett
United States District Judge