IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

R. ALEXANDER ACOSTA,
Secretary of Labor,

     Plaintiff,

     v.                              Civil Action No.: RDB-15-3315

CHIMES DISTRICT OF
COLUMBIA, INC., *et al.*,

     Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

The United States Secretary of Labor ("the Secretary")[1] brought a ten-count Amended Complaint against Chimes D.C., Inc. Health & Welfare Plan (the "Plan") and its alleged fiduciaries and service providers, including Defendants Chimes District of Columbia, Inc.; Chimes International, Ltd.; FCE Benefit Administrators, Inc.; Gary Beckman; Stephen Porter; Martin Lampner; Albert Bussone; Benefits Consulting Group; Jeffrey Ramsey; and Marilyn Ward, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, *et seq.* (First Am. Compl., p. 1-2, ECF No. 102.) The Secretary alleges that the Defendants charged the Plan excessive fees for services and engaged in prohibited transactions by receiving commissions, kickbacks, and inappropriate reimbursements.

---

[1] The Complaint was initially brought by former Secretary of Labor, Thomas E. Perez, who was then replaced with former Acting Secretary Edward C. Hugler. The docket has now been updated to name the current Secretary of Labor, R. Alexander Acosta as Plaintiff. The substitution was approved on June 6, 2018 (ECF No. 361).

Currently pending before this Court are seven motions, including the instant Secretary of Labor's Motion for Partial Summary Judgment Against Defendant Marilyn Ward (ECF No. 342) and Defendant Marilyn Ward's Motion for Partial Summary Judgment (ECF No. 369).[2] By the instant motions, both parties seek judgment as a matter of law related to the effective date of Marilyn Ward's resignation as Trustee as well as several findings regarding specific violations, and a declaration regarding the appropriateness of disgorgement as a remedy. This Court has reviewed the parties' submissions and heard arguments of counsel at a motions hearing held November 13, 2018. For the reasons stated herein, the Secretary of Labor's Motion for Partial Summary Judgment Against Defendant Marilyn Ward (ECF No. 342) shall be GRANTED IN PART and DENIED IN PART, and Defendant Marilyn Ward's Motion for Partial Summary Judgment (ECF No. 369) shall be GRANTED IN PART and DENIED IN PART. In summary, this Court holds that Marilyn Ward's resignation was effective as of December 13, 2013, which means that her potential liability in the instant case is limited to the period from March 13, 2012 to December 13, 2013.[3] All remaining requests for judgment as

---

[2]     The following five Motions remain pending before this Court: Secretary's Motion for Partial Summary Judgment Against Defendants FCE Benefit Administrators, Inc., Stephen Porter and Gary Beckman (ECF No. 339); Secretary of Labor's Motion for Partial Summary Judgment Against Defendants Chimes District of Columbia, Inc., Chimes International, Ltd., Martin Lampner, and Albert Bussone (ECF No. 341); FCE Benefit Administrators, Inc., Gary Beckman, and Stephen Porter's Cross-Motion for Partial Summary Judgment Against Plaintiff, R. Alexander Acosta, Secretary of Labor (ECF No. 362); Cross-Motion for Summary Judgment of Defendants Martin Lampner and Albert Bussone (ECF No. 371), and Chimes Defendants' Cross-Motion for Summary Judgment (ECF No. 375). This Court's rulings on these motions shall be forthcoming in due course. The Moving Defendants' Joint Cross-Motion for Partial Summary Judgment (ECF No. 372) was GRANTED on November 21, 2018 (ECF No. 453), and the Motion for Summary Judgment on Behalf of Non-Fiduciary Defendants/Counter-Claimants, Benefits Consulting Group and Jeffrey Ramsey (ECF No. 365) was GRANTED on November 29, 2018 (ECF No. 457).

[3]     ERISA's statute of limitations precludes the Secretary from any relief that arises out of claims concerning information prior to March 13, 2012 (*See* ECF No. 452), and as explained herein, Marilyn Ward effectively resigned as Trustee on December 13, 2013, thereby ending her fiduciary obligations to the Plan.

a matter of law are premature, requiring findings of fact, and will proceed to trial commencing on January 7, 2019.

**BACKGROUND**

The factual background and procedural history of this case has previously been set forth in this Court's Memorandum Opinion of November 21, 2018 (ECF Nos. 452). The following pertains specifically to the instant motions related to Defendant Marilyn Ward.

**I.      Factual Background Relevant to Marilyn Ward**

Chimes D.C., Inc. ("Chimes DC") established its Health & Welfare Plan ("the Plan") **"**to provide a package of medical, prescription, life insurance, accidental death and dismemberment, disability, and unemployment benefits" to its employees. (ECF No. 102 at ¶ 2.) The Plan is an employee benefit plan as defined by ERISA, and Chimes DC, as Plan Administrator, is a named fiduciary. (*Id.* at ¶¶ 10, 21.)

Since the inception of the Plan in 1995, Chimes DC appointed FCE Benefits Administrator, Inc. ("FCE") to serve as the Plan's third-party administrator ("TPA"), responsible for claims, eligibility, membership, premium, and pharmacy administration for the Plan. (ECF No. 342-1 at 7.) In 2002 and 2004, an Amended Adoption Agreement provided a fee schedule setting out a tiered fee rate that FCE was authorized to collect from the Plan for its services. (*Id.* at 8.) Under the tiered fee schedule, FCE's fees fluctuated depending on the level of Plan contributions from Chimes DC and the number of participants in the Plan. (*Id.* at 9.)

For a few months in 1991, Defendant, Marilyn Ward ("Ward") worked for FCE as its Chief Financial Officer. (*Id.* at 11; ECF No. 368 at 3.)   She resigned from that position in

1992 and became a trustee for several FCE-administered ERISA plans. (*Id.*) Ward and her employees shared office space, facilities, and computer systems with FCE, for which she paid fees to FCE. (ECF No. 342-1 at 12-13; ECF No. 368 at 3-4.) When FCE was retained as Chimes DC's TPA, Ward was appointed as the Plan's trustee. (ECF No. 342-1 at 13; ECF No. 368 at 4.) As trustee, Ward was authorized to hold title to and manage the employer contributions to the Plan and was vested with all the powers and discretions appropriate to the trustee. (ECF No. 342-1 at 14.) Ward describes her role as a "directed trustee" or "co-trustee" of the Plan. (ECF No. 368 at 4-7.)

FCE developed a proprietary software—the Trust Accounting System ("TAS")—to coordinate its claims and eligibility administration functions, but the software was not capable of calculating FCE's administrative expenses under the tiered fee schedule. (ECF No. 342-1 at 16; ECF No. 368 at 8.) Consequently, Ward performed a manual calculation to determine a blended fee rate. (*Id.*)

Because the Plan served a disabled workforce, additional support was required by human resources.[4] (ECF No. 368 at 19-20.) Chimes DC's employee, Karen Holcomb, worked with the disabled employees and provided human resources services to them in relation to the Plan. (ECF No. 342-1 at 11.) Although no written contract governed reimbursement from the Plan for her services, Ward paid reimbursements to Chimes DC for Karen Holcomb's time spent on Plan services. (ECF No. 342 at 11; ECF No. 368 at 19-20.)

---

[4]      Chimes DC is a federal government contractor that employs disabled workers for janitorial and custodial service. (ECF No. 102 at ¶ 10.) The majority of the workforce is disabled, and includes persons with autism and other intellectual disabilities. (ECF No. 342 at 3.) The Plan was established to provide all their employees with a medical, insurance, disability, and unemployment benefits. (ECF No. 102 at ¶ 2.)

On October 23, 2013, Ward sent a letter to Chimes DC advising them of her intention to retire as of December 13, 2013. (ECF No. 342-1 at 17; ECF No. 368 at 9-10.) FCE located Trust Management Services ("TMS"), which was selected to serve as a replacement trustee. (ECF No. 342-1 at 17-18; ECF No. 368 at 10.) A Trustee Assignment Agreement was provided to Chimes DC, although it appears it may never have been signed. (ECF No. 342-1 at 18.) Ward entered into a consulting agreement with TMS to "make herself available" in case there were questions about the Plan. (ECF No. 368 at 10.) TMS began providing trustee services for the Plan in January 2014 and served in that role until their termination in December 2017. (ECF No. 342-1 at 19.)

## II.  Procedural History

The Secretary filed a Complaint (ECF No. 1) against all Defendants but Ward on October 20, 2015. The Complaint was amended on June 7, 2016, adding Ward as a Defendant. (ECF No. 102.) The First Amended Complaint (ECF No. 102) alleged the following four[5] counts against Ward:

- Count VII – Ward's Liability for FCE's Payments to the Chimes Foundation and FCE's Employing Lampner's Child (alleged against Defendant Ward)

- Count VIII – Ward's Conflicted Arrangements with FCE (alleged against Defendant Ward)

- Count IX – Ward's Liability for Payment of Fees that Differ from Approved Fee Schedules and for FCE's Administrative Failures (alleged against Defendant Ward)

- Count X – Ward's Liability for Plan's Reimbursements to Chimes DC for Work of Its Full-Time Employee (alleged against Defendant Ward)

---

[5]      The First Amended Complaint stated that Count I was alleged against ALL Defendants, but the Secretary later clarified that Ward was mistakenly included under Count I (ECF No. 127 at 12).

Ward moved for dismissal, which was DENIED on October 20, 2016. (ECF No. 151.)

Nine motions were filed by Defendants for summary judgment, including partial summary judgment and cross-motions, seven of which remain pending before this Court. The Moving Defendants' Joint Cross-Motion for Partial Summary Judgment (ECF No. 372) was GRANTED on November 21, 2018 (ECF No. 453), precluding the Secretary from pursuing claims against the Defendants that relate to a time period more than three years prior to each of the Defendants' respective tolling agreements. For Marilyn Ward, the Secretary is precluded from any relief that arises out of claims concerning information prior to March 13, 2012,[6] specifically including claims concerning essential facts disclosed in the Form 5500s for the years 2007, 2008, 2009, and 2010. On November 29, 2018, the Motion for Summary Judgment on Behalf of Non-Fiduciary Defendants/Counter-Claimants, Benefits Consulting Group and Jeffrey Ramsey (ECF No. 365) was GRANTED (ECF No. 457), resulting in Judgment being entered in favor of the Benefits Consulting Group and Jeffrey Ramsey. A bench trial is scheduled to commence on January 7, 2019.

By his instant motion, the Secretary seeks partial summary judgment establishing the following: (1) Ward did not effectively resign in December 2013 and remained a fiduciary until January 2018; (2) Ward engaged in prohibited transactions and violated 29 U.S.C. § 1103(c) by causing the Plan to pay Chimes DC $467,956 as reimbursement for Karen Holcomb's salary

---

[6]     Based on the contents of Defendants' Form 5500s that were filed annually during the relevant years at issue, this Court held that the Secretary had actual knowledge of the essential facts of the allegations in the First Amended Complaint. (ECF No. 452 at 15.)   On March 13, 2012, Ward entered into an Agreement and Stipulation with the Secretary that tolled ERISA's statute of limitations as of that date.   (ECF No. 452 at 11 n.5.)   Therefore, the Secretary is precluded from relief arising out of claims prior to three years before that date.

and benefits, and she is jointly and severally liable to compensate the Plan for that amount; (3) Ward breached her fiduciary duty and engaged in prohibited transactions by causing the Plan to pay fees to FCE that varied from the fee schedule, failing to maintain accurate records about the calculation of fees, and by engaging in financial dealings with FCE; and (4) Ward must disgorge all the fees she received from the Plan for her work as trustee.

By her instant motion, Ward seeks partial summary judgment establishing the following: (1) Ward is not liable for any alleged transactions after her effective resignation date of December 13, 2013; (2) Ward is not liable under Count VIII for any transactions in which she did not act as a fiduciary; (3) Ward is not liable under Counts VIII or IX to the extent that the alleged violations did not result in a loss to the Plan; (4) Ward is not liable as a co-fiduciary; and (5) disgorgement is not a proper remedy.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial. *Id.* at 249. Trial courts in

the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656-59 (2014).

When both parties file motions for summary judgment, as here, this Court applies the same standard of review to both motions, considering "'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Defenders of Wildlife v. North Carolina Dept. of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)). "[B]y the filing of a motion [for summary judgment,] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (citation omitted); *see also Sherwood v. Washington Post, 871 F.2d 1144, 1148 n.4* (D.C. Cir. 1989) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). "However, when cross-motions for summary judgment demonstrate a basic agreement

concerning what legal theories and material facts are dispositive, they "'may be probative of the non-existence of a factual dispute." *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620 (D. Md. 2013) (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)); *Georgia State Conference of NAACP v. Fayette County Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015).

## DISCUSSION

### I.    Ward's Resignation

Ward contends that she retired as trustee as of December 13, 2013, and consequently, her fiduciary obligations ended as of that date. (ECF No. 368 at 15.) The Secretary does not dispute that Ward sent a letter of resignation but contends that her resignation was not formally accepted as required under the Amended Trust Agreement, nor was the Trustee Assignment Agreement to TMS ever signed by Chimes DC. (ECF No. 342 at 26.) Therefore, according to the Secretary, Ward's resignation was not valid, and a successor was never appointed, so Ward remains liable as trustee until January 1, 2018 when Chimes DC properly appointed a replacement. (*Id.* at 26-27.)

Section 5.7 of the Amended and Restated Trust Agreement[7] covers "Resignation or Removal." (ECF No. 340-11 at 12.) It states, in pertinent part:

> (a) <u>Resignation</u>. Trustee may resign by mailing to Plan Administrator and Employer, at its last known address, written notice of resignation, which will become effective on the expiration of 60 days following the date of mailing or on written acceptance of the resignation by Employer prior to that time.
>
> . . . .

---

[7]    Dated March 15, 2004.

(c) <u>Accounting to Successor</u>.  On the appointment of a successor Trustee, the . . . resigning Trustee . . . will transfer and deliver the Trust Fund to the successor or continuing Trustee(s) . . . .  On acceptance of the Trust, the successor Trustee, without further assignment or transfer, will become vested with all the title, estate, rights and powers (including discretionary powers), and be subject to all the duties and obligations of Trustee originally appointed, and the resigned . . . Trustee will have no further responsibility to act hereunder except as to the rendering of a final accounting.

(d) <u>Successor Trustee</u>.  On the . . . resignation . . . of a Trustee, Employer, by written direction, will immediately appoint a successor Trustee . . . .  On the failure or refusal of Employer to appoint a successor trustee within 60 days after notice of Trustee's resignation . . . the . . . resigning Trustee may have a successor trustee appointed by a court of competent jurisdiction . . . .  If on any resignation . . . , there are no remaining Trustee(s), that resignation . . . will not take effect until a successor Trustee has been appointed.  Any successor Trustee which delivers to Employer an instrument accepting an appointment, will on that delivery become vested with all the right, title and interest, and discretion and duties of the predecessor Trustee.

(*Id.* at 12-13.)

Ward's October 23, 2013 resignation letter references Article 5.7 of the Trust Agreement, provides 60 days notice, and advises that TMS is being recommended as the replacement trustee.  (ECF No. 340-12)  Also on October 23, 2013, Derrick Quan, the owner of TMS, sent a letter to Chimes DC, introduced the company as the successor trustee, and assured a successful transition.  (ECF No. 340-13.)  On November 21, 2013, FCE sent a letter to Chimes DC referencing the Trustee Assignment Agreement that had been sent via email on October 23, 2013, which stated that Ward was resigning and TMS had been appointed as the successor Trustee, but noted that no response had been received.  (ECF No. 340-14.)  The letter stated: "Unless you provide written correspondence stating otherwise, we will assume

that you are in agreement with the change in Trustee effective December 13, 2013. Please contact us immediately if you disagree with this transition or would like to discuss this matter further." (*Id.*) No one remembers whether Chimes DC ever signed the Trustee Assignment Agreement. (ECF No. 391 at 7.) There are no disputes about these facts, nor is there any dispute that TMS acted as trustee of the Plan after Ward's retirement.

The Secretary argues that there was a failure to properly appoint TMS as the successor trustee, so Ward's only option was to have a successor trustee appointed by a court. (ECF No. 391 at 7 (citing § 5.7(d) of the Trust Agreement).) The Secretary further argues that because Ward did not do that, her resignation did not take effect and she continued to be a fiduciary of the Plan. (*Id.*) In support of his argument, the Secretary cites *Chambers v. Kaleidoscope, Inc.*, 650 F. Supp. 359, 369 (N.D. Ga. 1986); *Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc.*, 93 F.3d 1171, 1182 (3d Cir. 1996); and *Freund v. Marshall & Ilsley Bank*, 485 F. Supp. 629, 635 (W.D. Wis. 1979). (*Id.* at 6.) All three cases provide that a trustee cannot simply resign, abandon, or walk away from their duty without providing for a functional replacement that ensures continued management of the plan. *See Chambers*, 650 F. Supp. at 369 (finding that the trustee remained obligated because he gave no notice of his intent to resign, made no arrangements for further performance of his fiduciary duties, and complied with none of the prerequisites for resignation); *Glaziers*, 93 F.3d at 1184 ("An ERISA fiduciary is defined 'not in terms of formal trusteeship, but in functional terms of control and authority'." (quoting *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 260–62 (1993)); *Freund*, 485 F. Supp. at 635 ("[H]is resignation is valid only when he has made adequate provision for the continued prudent management of plan affairs.").

Under the agreed facts presented here, Ward effectively resigned as trustee on December 13, 2013, having not only ensured that a replacement trustee had taken over the fiduciary duties but remaining available to assist as necessary during the transition. Ward was replaced, the duty was effectively transferred, even if there may have been a technical formality missing, TMS performed its duties for four years thereafter, and there is no reason to hold Ward accountable after December 13, 2013. In light of this Court's decision of November 21, 2018 (ECF No. 453), in which the Secretary was precluded from any relief against Ward that arises out of claims concerning information prior to March 13, 2012, Ward's potential liability in the instant case is limited to the period from March 13, 2012 to December 13, 2013.

## II. Fiduciary Breaches and Prohibited Transactions

The Secretary contends that Ward breached her fiduciary duties as trustee and committed prohibited transactions by her payments from the Plan to (1) Chimes DC for reimbursement of Karen Holcomb's salary and benefits; (2) FCE for fees that varied from the fee schedule in the Plan documents; and (3) FCE and herself for other services. (ECF No. 342 at 2-3.) The Secretary also contends that Ward breached her duties of prudence and loyalty by failing to maintain complete and accurate records regarding the calculation of fees paid to FCE and by engaging in financial dealings with FCE. (*Id.* at 3.)

There are undoubtedly material disputed facts related to these transactions. For example, Ward maintains that there was a formal arrangement governing the reimbursement, the reimbursements were reasonable, and Karen Holcomb's services were necessary for the Plan. (ECF No. 368 at 19-20.) As such, she asserts that the payments qualify for the prohibited transaction exemption under 29 U.S.C § 1108. (*Id.* at 19.) The Secretary responds

that the payments do not meet the exemption because they were not made pursuant to a contract or reasonable arrangement. (ECF No. 391 at 13.)

Similarly, there are issues concerning the payment of fees to FCE and the records related thereto, that require expert testimony, evaluation of the records, the determination of whether there was a loss to the Plan, and a re-focus of these issues for the time period within which Ward may be held liable. The resolution of these issues requires factual findings and credibility determinations that are inappropriate in the summary judgment context. Accordingly, the requests for judgment as a matter of law related to these issues shall be DENIED and shall be resolved at the bench trial commencing January 7, 2019.

## III.     Disgorgement

The Secretary contends that Ward must disgorge the fees that the Plan paid to her as an appropriate remedy for her fiduciary breaches. (ECF No. 342-1 ta 34 (citing 29 U.S.C. § 1109(a)).) Ward maintains that this is a drastic remedy that is unsupported by ERISA or the facts and circumstances of this case. (ECF No. 370 at 12-13.) It is certainly premature to determine if disgorgement is an appropriate remedy specifically with regard to Ward, which is subject to findings of fact to be made at trial.

Importantly, 29 U.S.C. § 1109(a) does impose liability on a breaching fiduciary to (1) make restitution to the plan of losses resulting from the breach, (2) disgorge profits obtained by the fiduciary through breach of duty, and (3) be subject to other equitable or remedial relief deemed appropriate by the court.

Accordingly, Ward's request that this Court grant judgment as a matter of law that disgorgement of fees is not a proper remedy shall be DENIED, and the Secretary's request

that this Court grant judgment as a matter of law that Ward must disgorge all fees that she received from the Plan for work as trustee is also DENIED.

## CONCLUSION

For the foregoing reasons:

1. The Secretary of Labor's Motion for Partial Summary Judgment Against Defendant Marilyn Ward (ECF No. 342) is GRANTED IN PART and DENIED IN PART.

   a. Judgment as a matter of law that the Chimes District of Columbia, Inc. Health and Welfare Plan (the Plan) is an employee welfare benefit plan, as defined under 29 U.S.C. § 1002(1), and governed by the Employee Retirement Income Security Act of 1974 (ERISA) is GRANTED.

   b. The remaining requests for judgment as a matter of law are DENIED, specifically:

      i. Until January 1, 2018, Marilyn Ward was the trustee of the Plan, a named fiduciary of the Plan, and a de facto fiduciary of the Plan;

      ii. Marilyn Ward engaged in prohibited transactions in violation of 29 U.S.C. § 1106(a)(1)(C) and (D) by causing the Plan pay Chimes District of Columbia, Inc. $467,956 as reimbursement for the salary and benefits of Karen Holcomb;

      iii. Marilyn Ward engaged in prohibited transactions in violation of 29 U.S.C. § 1106(b)(2) by causing the Plan pay Chimes District of Columbia, Inc. $467,956 as reimbursement for the salary and benefits of Karen Holcomb;

      iv. Marilyn Ward violated 29 U.S.C. § 1103(c) and 29 C.F.R. §§ 4.171(a)(4), 4.172 by causing the Plan to pay Chimes District of Columbia, Inc. $467,956 as reimbursement for the salary and benefits of Karen Holcomb;

      v. Marilyn Ward is jointly and severally liable for compensating the Plan in the amount of $467,956;

vi.     Marilyn Ward violated 29 U.S.C. 1104(a)(1)(D) by causing the Plan to pay fees to FCE Benefits Administrator, Inc. (FCE) that varied from the fee schedule in the Plan documents.

vii.     Marilyn Ward violated her duties of prudence and loyalty under 29 U.S.C. § 1104(a) to the Plan and its participants by failing to obtain and maintain full, complete, and accurate records showing the calculation of fees that the Plan paid to FCE;

viii.     Marilyn Ward violated her duties of prudence and loyalty under 29 U.S.C. § 1104(a) to the Plan and its participants by engaging in and maintaining financial dealings with FCE;

ix.     Marilyn Ward engaged in prohibited transactions in violation of 29 U.S.C. § 1106(b)(3) by receiving consideration from, or paying consideration to, FCE in connection with their respective services to the Plan and the Plan's paying related fees to FCE and Marilyn Ward; and,

x.     Marilyn Ward must disgorge all fees that she received from the Plan for her work as trustee for the Plan.

2.     Defendant Marilyn Ward's Motion for Partial Summary Judgment (ECF No. 369) is GRANTED IN PART and DENIED IN PART.

a.     Judgment as a matter of law that Ward is not liable for any alleged transaction that occurred after her effective resignation date of December 13, 2013 is GRANTED.

b.     The remaining requests for judgment as a matter of law are DENIED, specifically:

i.     Ward is not liable under Count VIII in the Amended Complaint for alleged violations of 29 U.S.C. §§ 1104(a)(1)(A), 1104(a)(1)(B), or 1105(a) related to any transactions in which she did not act in a fiduciary capacity;

ii.     Ward is not liable under Count VIII or Count IX in the Amended Complaint for alleged violations of 29 U.S.C. §§ 29 U.S.C. §§ 1104(a)(1)(A), 1104(a)(1)(B), or 1105(a) to

the extent the alleged violations did not result in a loss to the plan;

iii.     Ward is not liable as a co-fiduciary under Count VII, Count VIII, Count IX, and Count X for alleged violations of 29 U.S.C. § 1105(a);

iv.     Disgorgement of Ward's fees pursuant to 29 U.S.C. § 1132(a) and 29 U.S.C. § 1109 is not a proper remedy.

A separate Order follows.

Dated:  December 3, 2018.

_____/s/_____
Richard D. Bennett
United States District Judge