IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

DEC 2 0 2018

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

R. ALEXANDER ACOSTA,
Secretary of Labor,

      Plaintiff,

      v.

CHIMES DISTRICT OF
COLUMBIA, INC., *et al.*,

      Defendants.

\*

\*

\*

\*

\*

\*

\*

Civil Action No.: RDB-15-3315

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The United States Secretary of Labor ("the Secretary")[1] brought a ten-count

Amended Complaint against Chimes D.C., Inc. Health & Welfare Plan (the "Plan") and

its alleged fiduciaries and service providers, including Defendants Chimes District of

Columbia, Inc. ("Chimes DC"); Chimes International, Ltd. ("Chimes International");

FCE Benefit Administrators, Inc. ("FCE"); Gary Beckman ("Beckman"); Stephen Porter

("Porter"); Martin Lampner ("Lampner"); Albert Bussone ("Bussone"); Benefits

Consulting Group ("BCG"); Jeffrey Ramsey ("Ramsey"); and Marilyn Ward ("Ward"),

alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"),

---

[1]     The Complaint was initially brought by former Secretary of Labor, Thomas E. Perez, who was
then replaced with former Acting Secretary Edward C. Hugler. The docket has now been updated to
name the current Secretary of Labor, R. Alexander Acosta as Plaintiff. The substitution was approved
on June 6, 2018 (ECF No. 361).

as amended, 29 U.S.C. §§ 1001, *et seq.* (First Am. Compl., p. 1-2, ECF No. 102.) The Secretary alleges that the Defendants charged the Plan excessive fees for services and engaged in prohibited transactions by receiving commissions, kickbacks, and inappropriate reimbursements.

Currently pending before this Court are five motions, including the instant Secretary of Labor's Motion for Partial Summary Judgment Against Defendants Chimes District of Columbia, Inc., Chimes International, Ltd., Martin Lampner, and Albert Bussone (ECF No. 341), Cross-Motion for Summary Judgment of Defendants Martin Lampner and Albert Bussone (ECF No. 371), and Chimes Defendants'[2] Cross-Motion for Summary Judgment (ECF No. 375).[3] By his motion, the Secretary seeks partial summary judgment establishing that the Chimes Defendants were fiduciaries, and they are jointly and severally liable for breaching certain fiduciary duties and committing

---

[2]     Herein, references to the "Chimes Defendants" refers to Chimes DC, Chimes International, Lampner, Bussone, and the Plan, collectively. Note that in some of the memorandums filed related to the instant motions, there are references to the Chimes Defendants that do not include Lampner and Bussone but only the Chimes entities. (*See, e.g.*, ECF No. 375-1 at 1.)

[3]     The following two Motions remain pending before this Court: Secretary's Motion for Partial Summary Judgment Against Defendants FCE Benefit Administrators, Inc., Stephen Porter and Gary Beckman (ECF No. 339); and FCE Benefit Administrators, Inc., Gary Beckman, and Stephen Porter's Cross-Motion for Partial Summary Judgment Against Plaintiff, R. Alexander Acosta, Secretary of Labor (ECF No. 362). This Court's rulings on these motions shall be forthcoming in due course. The Moving Defendants' Joint Cross-Motion for Partial Summary Judgment (ECF No. 372) was GRANTED on November 21, 2018 (ECF No. 453); the Motion for Summary Judgment on Behalf of Non-Fiduciary Defendants/Counter-Claimants, Benefits Consulting Group and Jeffrey Ramsey (ECF No. 365) was GRANTED on November 29, 2018 (ECF No. 457); and on December 3, 2018, Secretary of Labor's Motion for Partial Summary Judgment Against Defendant Marilyn Ward (ECF No. 342) was GRANTED IN PART and DENIED IN PART (ECF No. 463), and Defendant Marilyn Ward's Motion for Partial Summary Judgment (ECF No. 369) was GRANTED IN PART and DENIED IN PART (ECF No. 463).

prohibited transactions. By their cross-motions, the Chimes Defendants seek summary judgment in their favor on all Counts asserted against them. This Court has reviewed the parties' submissions and heard arguments of counsel at a motions hearing held November 13, 2018. For the reasons stated herein, the Secretary of Labor's Motion for Partial Summary Judgment Against Defendants Chimes District of Columbia, Inc., Chimes International, Ltd., Martin Lampner, and Albert Bussone (ECF No. 341) is GRANTED IN PART and DENIED IN PART; Cross-Motion for Summary Judgment of Defendants Martin Lampner and Albert Bussone (ECF No. 371) is GRANTED; and Chimes Defendants' Cross-Motion for Summary Judgment (ECF No. 375) is DENIED.

Accordingly, this Court holds that although Chimes DC is a Plan Administrator and named fiduciary, and Chimes International is a Plan Administrator, there are material factual disputes that prevent judgment as a matter of law that they are *de facto* fiduciaries. This Court holds that Martin Lampner and Albert Bussone are not *de facto* fiduciaries, and they cannot be found liable as non-fiduciaries, so judgment shall be granted in their favor on all Counts asserted against them. The remaining issues related to fiduciary breaches and prohibited transactions shall proceed to trial for resolution.

## BACKGROUND

The factual background and procedural history of this case has previously been set forth in this Court's Memorandum Opinion of November 21, 2018 (ECF No. 452).

The following pertains specifically to the instant motions related to Chimes DC, Chimes International, Lampner, and Bussone ("the Chimes Defendants").

## I. Factual Background Relevant to Chimes Defendants

Chimes DC is a non-profit corporation that employs individuals with disabilities to perform janitorial and custodial work on government contracts awarded to Chimes DC. (ECF No. 102 at ¶ 10.) Chimes DC established the Plan "to provide a package of medical, prescription, life insurance, accidental death and dismemberment, disability, and unemployment benefits" to its employees. (*Id.* at ¶ 2.) The Plan is an employee benefit plan as defined by ERISA, and Chimes DC, as Plan Administrator, is a named fiduciary. (*Id.* at ¶¶ 10, 21.) Defendant Chimes International is the parent company of Chimes DC and the Chimes Foundation, "a fundraising arm of Chimes International and its subsidiaries." (*Id.* at ¶ 11.)

Defendant Bussone was Vice President of Chimes DC and Chief Operating Officer and Executive Vice President of Chimes International from at least 2008 until his retirement in December 2014. (*Id.* at ¶ 12.) He was also Chief Development Officer and Vice President of Chimes DC and Chimes International from February 2012 until December 2014. (*Id.*)

Defendant Lampner was Executive Vice President of Chimes DC and Chimes International from at least 2008 until July 2010, and from July 2010 to the present,[4] he

---

[4]    Apparently, now retired as of June 11, 2018. (ECF No. 371-1 at 1.)

has been President of Chimes DC and Chimes International. (*Id.* at ¶ 13.) Lampner was also the Chief Financial Officer of Chimes DC and Chimes International from at least 2008 until January 2011, and from January 2011 to the present, he has been Chief Executive Officer of Chimes DC and Chimes International. (*Id.*)

Since the inception of the Plan in 1995, Chimes DC appointed FCE Benefits Administrator, Inc. ("FCE") to serve as the Plan's third-party administrator ("TPA"),[5] responsible for claims, eligibility, membership, premium, and pharmacy administration for the Plan. (ECF No. 341-1 at 7.) In 2002 and 2004, an Amended Adoption Agreement provided a fee schedule setting out a tiered fee rate that FCE was authorized to collect from the Plan for its services. (*Id.* at 8-9.) Under the tiered fee schedule, FCE's fees fluctuated depending on the level of Plan contributions from Chimes DC and the number of participants in the Plan. (*Id.*) The 2004 amendment included an additional disclosure allowing for FCE to collect commissions and/or administrative fees from third party insurance companies and benefit providers for services provided by FCE to the Plan. (*Id.* at 10.)

When FCE was retained as Chimes DC's TPA, Ward was appointed as the Plan's trustee. (*Id.* at 13.) Ward had worked for FCE as its Chief Financial Officer for a few

---

[5]     Prior to the creation of the Plan, Chimes DC had a predecessor health and welfare plan that was administered by a TPA called The Boon Group. (ECF No. 375-1 at 11.) The Boon Group was not selected as TPA for the Plan for multiple reasons, including that it did not offer stop loss insurance. (*Id.* at 11-14.)

months in 1991. (*Id.* at 11.) In 1992, she became a trustee for several FCE-administered ERISA plans. (*Id.*) Ward and her employees shared office space, facilities, and computer systems with FCE, for which she paid fees to FCE. (*Id.* at 12-13.) FCE developed a proprietary software—the Trust Accounting System ("TAS")—to coordinate its claims and eligibility administration functions, but the software was not capable of calculating FCE's administrative expenses under the tiered fee schedule. (ECF No. 341-1 at 16.) Consequently, Ward performed a manual calculation to determine a blended fee rate. (*Id.*)

Shortly after the 2004 agreement went into effect, Bussone arranged through FCE and Ward to have the Plan reimburse Chimes DC for a portion of Karen Holcomb's ("Holcomb") salary and benefits. (*Id.* at 11.)[6] Holcomb was a Chimes DC employee whose primary role was to work with the disabled employees[7] and provide human resources services as well as explaining the Plan to participants and helping with the annual open enrollment process. (*Id.*)

Chimes DC's board and executives conducted an annual review of the Plan with FCE and BCG that included the reasonableness of the costs and fees charged to the Plan as well as making a determination whether changes in benefits and/or rates should be

---

[6] Chimes Defendants state that Chimes DC was reimbursed for Holcomb's time spent on Plan-related work from January 1, 2008 through April 1, 2013. (ECF No. 375-1 at 19.)

[7] The majority of the workforce is disabled and includes persons with autism and other intellectual disabilities. (ECF No. 341-1 at 3.)

made for the upcoming year. (ECF No. 375-1 at 20-22.) As part of Chimes DC's ongoing efforts to control the Plan's costs, Bussone negotiated with FCE to reduce its fee by one-third for each of the next two years (January 2006 through December 2007), and with BCG to reduce its annual fees by 20% each year for the same two-year period. (*Id.* at 25.) Chimes DC also secured a promise from FCE and BCG to freeze their fees at the 2005 level through 2014. (*Id.* at 26-28.)

As a non-profit engaged in fund-raising, Chimes DC and other Chimes entities amended their bylaws in 2005 to adopt a Conflict of Interest Policy, which required that Chimes DC have at least four independent directors who had no conflicts and were not affiliated with any vendors or clients. (*Id.* at 31-32.) These independent directors formed a Governance Committee that was responsible for approving all contractual arrangements between Chimes companies and vendors identified as having possible conflicts of interest. (*Id.*) Some vendors make contributions to the Chimes Foundation, and some do not; FCE and BGE were among the vendors who made contributions to the Chimes Foundation. (*Id.* at 34, 36.) Between 2007 and 2014, FCE contributed $476,750 to the Chimes Foundation, and BCG contributed $292,500. (ECF No. 341-1 at 19.) Bussone and Lampner were actively involved in soliciting these contributions for the Chimes Foundation. (*Id.*)

## II.    Procedural History

The Secretary filed a Complaint (ECF No. 1) against all Defendants but Ward on October 20, 2015. The Complaint was amended on June 7, 2016, adding Ward as a Defendant. (ECF No. 102.) The First Amended Complaint (ECF No. 102) alleged the following counts against the Chimes Defendants:

- Count I – Excessive Plan Expenses (alleged against **the Chimes Defendants**, the FCE Defendants, and the BCG Defendants)[8]

- Count II – Chimes Defendants' Receipt of Benefits in Connection with Plan's Retention of FCE (alleged against **the Chimes Defendants** and the FCE Defendants)

- Count III – Chimes Defendants' Receipt of Payments and Discounts from BCG and Ramsey in Connection with Plan's Retention of BCG (alleged against **the Chimes Defendants** and the BCG Defendants)

- Count IV – FCE's Receipt of Payments from Service Providers (alleged against the FCE Defendants **and the Chimes Defendants**)

- Count V – Failure to Prudently and Loyally Administer the Plan (alleged against the FCE Defendants and **Chimes DC as Plan Administrator**)

- Count VI – Plan's Reimbursements to Chimes DC for Work of Its Full-Time Employee (alleged against **Chimes DC, Bussone,** and FCE)

Nine motions were filed by Defendants for summary judgment, including partial summary judgment and cross-motions, five of which remain pending before this Court. The Moving Defendants' Joint Cross-Motion for Partial Summary Judgment (ECF No. 372) was GRANTED on November 21, 2018 (ECF No. 453), precluding the Secretary

---

[8]    The First Amended Complaint stated it was alleged against ALL Defendants, but the Secretary clarified that Ward was mistakenly included under Count I (ECF No. 127 at 12).

from pursuing claims against the Defendants that relate to a time period more than three years prior to each of the Defendants' respective tolling agreements. For Chimes District of Columbia, Inc., Chimes International Ltd., The Chimes DC Health and Welfare Plan, Martin Lampner, and Albert Bussone, the Secretary is precluded from any relief that arises out of claims concerning information prior to May 23, 2011,[9] specifically including claims concerning essential facts disclosed in the Form 5500s for the years 2007, 2008, and 2009.

On November 29, 2018, the Motion for Summary Judgment on Behalf of Non-Fiduciary Defendants/Counter-Claimants, Benefits Consulting Group and Jeffrey Ramsey (ECF No. 365) was GRANTED (ECF No. 457), resulting in Judgment being entered in favor of the Benefits Consulting Group and Jeffrey Ramsey. On December 3, 2018, this Court GRANTED IN PART and DENIED IN PART (ECF No. 462) the Secretary of Labor's Motion for Partial Summary Judgment Against Defendant Marilyn Ward (ECF No. 342) and Defendant Marilyn Ward's Motion for Partial Summary Judgment (ECF No. 369). This Court held that the Chimes District of Columbia, Inc. Health and Welfare Plan (the Plan) is an employee welfare benefit plan, as defined under 29 U.S.C. § 1002(1), and governed by the Employee Retirement Income Security Act of

---

[9]     Based on the contents of Defendants' Form 5500s that were filed annually during the relevant years at issue, this Court held that the Secretary had actual knowledge of the essential facts of the allegations in the Complaint. (ECF No. 452 at 15.) On May 23, 2011, the Chimes Defendants entered into an Agreement and Stipulation with the Secretary that tolled ERISA's statute of limitations as of that date. (ECF No. 452 at 11 n.5.) Therefore, the Secretary is precluded from relief arising out of claims prior to three years before that date.

1974 (ERISA), and that Ward is not liable for any alleged transaction that occurred after her effective resignation date of December 13, 2013. (ECF No. 462.) A bench trial is scheduled to commence on January 7, 2019.

By his instant motion, the Secretary seeks partial summary judgment establishing as a matter of law that Chimes DC is the Plan Administrator and a fiduciary; Chimes International, Lampner, and Bussone are *de facto* fiduciaries; the Chimes Defendants engaged in prohibited transactions by hiring and retaining FCE and BCG, by causing the Plan to reimburse Chimes DC for Karen Holcomb's salary and benefits, and by accepting monetary gifts from FCE and BCG; the Chimes Defendants breached their duties of loyalty and prudence by allowing FCE to engage in prohibited transactions through the collection of commissions from third parties, and by failing to properly monitor the service providers' conduct and fees; Lampner and Bussone were knowing participants in the fiduciary breaches and prohibited transactions; and the Chimes Defendants are jointly and severally liable for compensating the Plan in stated amounts.

By their instant cross-motions, the Chimes Defendants seek judgment as a matter of law in their favor on all Counts asserted against them.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656-59 (2014).

When both parties file motions for summary judgment, as here, this Court applies the same standard of review to both motions, considering "'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Defenders of Wildlife v. North Carolina Dept. of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)). "[B]y the filing of a motion [for summary judgment,] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (citation omitted); *see also Sherwood v. Washington Post, 871 F.2d 1144, 1148 n.4* (D.C. Cir. 1989) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). "However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "'may be probative of the non-existence of a factual dispute." *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620 (D. Md. 2013) (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)); *Georgia State Conference of NAACP v. Fayette County Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015).

# DISCUSSION

## I. Fiduciary Status

A plan must be established by written instrument, which provides for "one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102. A "fiduciary" is defined in ERISA with reference to the functions performed:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). An ERISA fiduciary differs from a traditional trustee, because a fiduciary may take actions to the disadvantage of the beneficiaries when acting in another capacity—referred to by the United States Supreme Court as wearing a different hat. *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000). Fiduciary status is determined in functional terms, so administrators or managers or advisers are only fiduciaries to the extent that they were performing a fiduciary function when taking an action adversely affecting the plan, i.e., they were wearing their fiduciary hat at the time. *Id.*

"[A]n individual or entity can still be found liable as a 'de facto' fiduciary if it lacks formal power to control or manage a plan yet exercises informally the requisite

'discretionary control' over plan management and administration." *Moon v. BWX Techs., Inc.*, 577 F. App'x 224, 229 (4th Cir. 2014) (quoting *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101–02 (9th Cir. 2004)). Whether a defendant is a fiduciary under ERISA is a mixed question of law and fact. *See Reich v. Lancaster*, 55 F.3d 1034, 1044 (5th Cir. 1995).

In this case, the Secretary contends that Chimes DC is the Plan Administrator, the named fiduciary of the Plan, and a *de facto* fiduciary of the Plan; Chimes International is the Plan Administrator and a *de facto* fiduciary of the Plan; and Lampner and Bussone are *de facto* fiduciaries of the Plan. (ECF No. 341 at 2.) Lampner and Bussone assert that they exercised no authority or control with respect to any matter that concerned the Plan and, therefore, were not fiduciaries. (ECF No. 371-1 at 3.) Chimes DC concedes that it is a named fiduciary (Answer, ECF No. 162 at ¶ 10), but contends that it delegated its fiduciary duties to FCE (ECF No. 375-1 at 39). Chimes International denies that it is a fiduciary (Answer, ECF No. 159 at ¶¶ 1, 9), and contends that the Chimes entities delegated all fiduciary duties to FCE (ECF no. 375-1 at 39). Each shall be addressed in turn.

## A.   Lampner & Bussone

"Corporate officers and directors . . . do not become fiduciaries solely by virtue of their corporate position, even if the corporation is a fiduciary, 'unless it can be shown that they have individual discretionary roles as to plan administration.'" *In re Mutual*

*Fund Inv. Litig.*, 403 F. Supp. 2d 434, 447 (D. Md. 2005) (quoting *Confer v. Custom Eng'g Co.*, 952 F.2d 34, 37 (3d Cir. 1991)). Lampner and Bussone assert that from February 2005 through to their respective retirements, Chimes' Governance Committee made all the decisions related to contracts with potentially conflicted vendors, such as FCE and BCG, so the Secretary cannot establish that they had the requisite discretionary control. (ECF no. 371-1 at 5.)

The Secretary contends that Bussone and Lampner had decision-making authority in the management and administration of the Plan, specifically in their roles related to the selection and retention of FCE and BCG, as demonstrated by their exercise of *de facto* control over the Governance Committee's decision-making process. (ECF No. 388 at 8-9.) According to the Secretary, meeting minutes demonstrate that the Governance Committee did not conduct its own investigation or retain its own experts to research Plan-related matters but relied on recommendations of Bussone and Lampner. (*Id.* at 9 (referencing ECF No. 343-12 and 343-17).) The Secretary does not dispute that the Governance Committee had responsibility for reviewing and approving transactions involving conflicts of interest but contends that it operated only within the narrow compass of "tax purposes." (ECF No. 388 at 2, 6, 10.) The Secretary also points to Bussone's negotiation of terms and signing the Amended Adoption Agreement as a Chimes DC board member in 2004 (ECF No. 388 at 4-5), but that is outside the relevant time period of this case.

The parties do not dispute the relevant facts, but they characterize those facts differently. As such, this issue is ripe for decision in the summary judgment context. *See McDougall v. Pioneer Ranch Ltd. P'ship*, 494 F.3d 571, 575–76 (7th Cir. 2007). In this instance, the plain language of the Chimes DC Bylaws required that Chimes DC have a least four "independent directors" (ECF No. 339-2 at Art. 2 § 2(b)), establish a Governance Committee comprised of at least four independent directors (*id.* at Art. 4 § 1), require the Governance Committee to approve all contractual arrangements where there were potential conflicts of interest (*id.*), and adopt a Conflicts of Interest Policy (*id.* at Art. VII § 4). There is no dispute that the Governance Committee was established, or that neither Bussone nor Lampner served on the Committee, or that FCE and BCG were conflicted vendors because of their monetary contributions to the Chimes Foundation. Therefore, the Governance Committee had sole authority over approval of contracts with FCE and BCG.[10] While the evidence of record shows that Bussone and Lampner were considered experts with regard to the Plan, and they made recommendations to the Governance Committee to appoint and retain FCE and BCG, nothing in the record indicates that their influence was so great that they had actual

---

[10] The District of Columbia Code permits non-profit companies, such as Chimes DC, to establish and grant power to board committees, the effect of which is to relieve the individual board members of those duties. D.C. Code §§ 29-406.01(b), 29.406.12(a).

decision-making power or exercised discretionary authority in making the appointments.[11]

Accordingly, this Court holds that Bussone and Lampner were not *de facto* fiduciaries with regard to the appointments of FCE and BCG. In addition, for reasons specified *infra*, there is no evidence on the record that would allow this Court to hold Bussone and Lampner liable as non-fiduciaries. Therefore, they are entitled to judgment as a matter of law in their favor.

## B.    Chimes DC & Chimes International

ERISA allows a fiduciary to delegate a fiduciary duty.[12]  29 U.S.C. § 1105(c)(1). Chimes DC and Chimes International contend that they properly delegated their duties to the Plan's service providers.  (ECF No. 375-1 at 39 (citing 29 C.F.R. § 2550.408b-2(a)(1)-(3)).)  A delegation of services comply with ERISA if:

> (1) Such . . . service is necessary for the establishment or operation of the plan;
>
> (2) Such . . . service is furnished under a contract or arrangement which is reasonable; and

---

[11]    The Secretary also briefly notes, in his opposition to Lampner and Bussone's motion, that Bussone assumed fiduciary status by taking discretionary responsibility and authority over the Plan when he directed Ward to reimburse Chimes DC for Holcomb's salary and benefits. (ECF No. 388 at 12.)  However, when Bussone took these actions, he was acting on behalf of Chimes DC in a financial management capacity; he was not wearing a "fiduciary hat" when he requested the reimbursement for Holcomb's time.

[12]    Noting, however, that the delegation does not remove the fiduciary's obligations, because a fiduciary who attempts to delegate a duty to another person or entity may nevertheless be liable for the breach of that duty if "the named fiduciary would otherwise be liable [for such breach] in accordance with subsection (a) of this section." 29 U.S.C. § 1105(c)(2)(B).

(3) No more than reasonable compensation is paid for such . . . service.

29 C.F.R. § 2550.408b–2(a). What is reasonable "depends on the particular facts and circumstances of each case." 29 C.F.R § 2550.408c-2(b)(1).

Whether Chimes DC paid reasonable compensation to FCE and BCG is a core factual dispute of this case. Accordingly, it is unnecessary for this Court to perform further analysis on this issue. Chimes DC is the Plan Administrator and a named fiduciary. Whether Chimes DC and Chimes International successfully delegated any of their fiduciary duties shall be determined at trial. Likewise, any claims related to failure to monitor must proceed to trial.

## II. Prohibited Transactions

ERISA section 1106 lists prohibited transactions, including in pertinent part:

(a) Transactions between plan and party in interest . . . .

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--

(A) sale or exchange, or leasing, of any property between the plan and a party in interest;

(B) lending of money or other extension of credit between the plan and a party in interest;

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or

(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

. . . .

(b) Transactions between plan and fiduciary

A fiduciary with respect to a plan shall not–

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106. The definition of a "party in interest" includes "any fiduciary" and "a person providing services to such plan." 29 U.S.C. § 1002(14)(A), (B). The term "person" includes an "individual" "corporation" and "association." 29 U.S.C. § 1002(9).

Section 1108 grants certain exemptions from § 1106's list of prohibited transactions. There is no exception to the prohibition on fiduciary self-dealing. *See* 29 C.F.R. §§ 2550.408b-2(a), 2550.408c-2(a); *Nat'l Sec. Systems v. Iola*, 700 F.3d 65, 94-95 (3d Cir. 2012).

In this case the Secretary contends that Chimes DC, Chimes International, Lampner, and Bussone engaged in prohibited transactions by: (1) hiring and retaining

the FCE and BCG Defendants as service providers; (2) causing Ward to pay Chimes DC $467,956 as reimbursement for Karen Holcomb's salary and benefits; and (3) taking monetary gifts from the FCE and BCG Defendants in the amount of $769,450. (ECF No. 341 at 2-3.) The Secretary argues that because FCE and BCG were already service providers to the Plan, they were parties in interest (*see* 29 U.S.C. § 1002(14)(B)) when Chimes DC agreed to continue retaining them. (ECF No. 341-1 at 31-32.) Such transactions constitute a direct or indirect transfer of plan assets unless Defendants can prove that they were "reasonable arrangements" involving "services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." (*Id.* (quoting 29 U.S.C. § 1108(b)(2)).) As identified above, there are material factual disputes to be resolved regarding whether reasonable compensation was paid to the service providers. As such, summary judgment is not appropriate.

The Secretary also contends that arranging to have Ward reimburse Chimes DC for a portion of a Chimes DC employee's (Holcomb's) salary and benefits resulted in an improper transfer of $467,956 from the Plan to Chimes DC. (ECF No. 341 at 11, 32.) The Secretary contends that the reimbursement was self-dealing, a *per se* prohibited transaction. (ECF No. 386 at 31-32.) The Chimes Defendants respond that the payments related to Holcomb were reasonable administrative expenses for work that she performed specifically for the Plan. (ECF No. 375-1 at 57-58.) The Secretary, however, argues that Chimes DC was already paying BCG for those same administrative

20

duties. (ECF No. 386 at 32.) As this Court has already held, there are material disputed facts related to these transactions, such as whether there was a formal arrangement governing the reimbursement, whether the amounts paid were reasonable, and whether Holcomb's services were necessary for the Plan. (ECF No. 462 at 12-13.)

The parties agree that the FCE and BCG Defendants made monetary contributions to the Chimes Foundation. (ECF No. 341 at 19-20; ECF No. 375-1 at 36.) Bussone and Lampner were actively involved in soliciting these contributions. (ECF No. 341 at 20; ECF No. 375-1 at 36.) The disagreement arises in the characterization of the contributions: the Secretary contends that they were "kickbacks," and the Defendants contend that they were charitable contributions unrelated to the renewal of any service provider contracts. There are factual and credibility findings required related to the relationship between the contributions and the renewals that preclude the resolution of this issue by summary judgment.

Accordingly, all the prohibited transaction claims shall proceed to trial.

III.     **Knowing Participants**

The Secretary contends that even as non-fiduciaries, Lampner and Bussone can be found liable as knowing participants in the failure to monitor and prohibited transaction claims. (ECF No. 388 at 14-17.) Lampner and Bussone argue that the Secretary is precluded from asserting this "new" theory of liability at this stage of the proceedings. (ECF No. 371-1 at 31-32.) They also argue that the Court of Appeals for the Fourth

Circuit does not recognize a cause of action for non-fiduciary liability for knowingly participating in a fiduciary's breach of a fiduciary duty that is not also a prohibited transaction. (*Id.* at 32 (citing *Gordon v. CIGNA Corp.*, 890 F.3d 463, 476 (4th Cir. 2018).) This Court need not reach that argument. Each of the four counts brought against both Lampner and Bussone includes a prohibited transaction claim, and this Court has ruled in this case that there is a cause of action to be brought against a non-fiduciary for knowing participation in a prohibited transaction. (*See* ECF No. 459 at 12 (holding that the BCG Defendants, as parties in interest on the receiving end of the transaction, could potentially be liable (citing *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000)).)

Importantly, however, unlike the BCG Defendants, the record does not show that Lampner and Bussone received any value from the alleged prohibited transactions (excessive fees charged by service providers, contributions from service providers to Chimes Foundation in connection with retention, FCE's receipt of commissions (ECF No. 388 at 16)).[13] The *Harris* Court extended ERISA liability limited to "appropriate equitable relief" by analogy to the common law of trusts. 530 U.S. at 250. The Court explained:

> It also bears emphasis that the common law of trusts sets
> limits on restitution actions against defendants other than the

---

[13]     This Court notes that Count VI, which was brought against Bussone but not Lampner, also alleges no personal benefit to Bussone, but rather relates to Chimes DC receiving reimbursement from the Plan for Holcomb's salary and benefits. (ECF No. 102 at 27-28.)

principal "wrongdoer." Only a transferee of ill-gotten trust assets may be held liable, and then only when the transferee (assuming he has purchased for value) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust.

*Id.* at 251. Therefore, based on the record before this Court, there is no remedy to be obtained from Lampner and Bussone, and regardless of the Secretary's timing in raising these claims, this Court will not recognize them in the instant case.

## IV. Joint & Several Liability

In his motion, the Secretary also seeks judgment as a matter of law that the Defendants are jointly and severally liable for compensating the Plan in specified amounts for the violations. (ECF No. 341 at 3.) Under ERISA, breaching fiduciaries are jointly and severally liable. *See* 29 U.S.C. § 1105(a)(2) ("In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances . . . ."). The issues related to liability and the amounts requested will be proceeding to trial, so it is premature to grant this request at this time.

## CONCLUSION

For the foregoing reasons:

1. The Secretary of Labor's Motion for Partial Summary Judgment Against Defendants Chimes District of Columbia, Inc., Chimes

International, Ltd., Martin Lampner, and Albert Bussone (ECF No. 341) is GRANTED IN PART and DENIED IN PART.[14]

a. Judgment as a matter of law that Chimes District of Columbia, Inc. is the Plan Administrator and the named fiduciary of the Plan is GRANTED.

b. Judgment as a matter of law that Chimes International, Ltd. is the Plan Administrator is GRANTED.

c. The remaining requests for judgment as a matter of law are DENIED, specifically:

  i. Chimes District of Columbia, Inc. is a *de facto* fiduciary of the Plan;

  ii. Chimes International is a *de facto* fiduciary of the Plan;

  iii. Martin Lampner is a *de facto* fiduciary of the Plan;

  iv. Albert Bussone is a *de facto* fiduciary of the Plan;

  v. Chimes District of Columbia, Inc., Chimes International, Ltd., Martin Lampner, and Albert Bussone engaged in prohibited transactions in violation of 29 U.S.C. § 1106(a)(1)(C) and (D) by hiring and retaining FCE Benefits Administrator, Inc. (FCE), Benefits Consulting Group (BCG), and Jeffrey Ramsey (Ramsey) as service providers of the Plan;

  vi. Chimes District of Columbia, Inc., Chimes International, Ltd., Martin Lampner,[15] and Albert Bussone engaged in prohibited transactions in violation of 29 U.S.C. § 1106(b)(1) by causing Marilyn Ward to have the Plan pay Chimes District of

---

[14] The Secretary's duplicate request that the Court grant judgment as a matter of law that the Chimes District of Columbia, Inc. Health and Welfare Plan (the Plan) is an employee welfare benefit plan, as defined under 29 U.S.C. § 1002(1), and is governed by the Employee Retirement Income Security Act of 1974 (ERISA) was previously GRANTED on December 3, 2018. (ECF No. 463 at ¶ 1.)

[15] This Court notes that Martin Lampner was not named in Count VI, which related to the Holcomb reimbursements.

Columbia, Inc. $467,956 as a reimbursement for the salary and benefits of Karen Holcomb;

vii. Chimes District of Columbia, Inc., Chimes International, Ltd., Martin Lampner, and Albert Bussone are jointly and severally liable for compensating the Plan in the amount of $467,956;

viii. Chimes District of Columbia, Inc., Chimes International, Ltd., Martin Lampner, and Albert Bussone engaged in prohibited transactions in violation of 29 U.S.C. § 1106(b)(3) by taking monetary gifts from FCE and BCG in the amount of $769,450;

ix. Chimes District of Columbia, Inc., Chimes International, Ltd., Martin Lampner, and Albert Bussone are jointly and severally liable to disgorge profits in the amount $769,450, and for paying that amount to the Plan;

x. Chimes District of Columbia, Inc., Chimes International, Ltd., Martin Lampner, and Albert Bussone violated their duty of loyalty and prudence under 29 U.S.C. 1104(a) to the Plan and its participants by allowing FCE to engage in prohibited transactions in violation of 29 U.S.C. 1106(b)(3) through FCE's collecting fees and commissions from third parties in connection with FCE and the third parties providing services to the Plan;

xi. Chimes District of Columbia, Inc., Chimes International, Ltd., Martin Lampner, and Albert Bussone are jointly and severally liable for paying to the Plan all fees and commissions that FCE received in violation of 29 U.S.C. § 1106(b)(3);

xii. Chimes District of Columbia, Inc., Chimes International, Ltd., Martin Lampner, and Albert Bussone violated their duties of prudence and loyalty under 29 U.S.C. § 1104(a) to the Plan and its participants by continuing to retain FCE, Ramsey,

and BCG as service providers of the Plan and by failing to monitor properly the conduct and fees of FCE, Ramsey, and BCG; and

xiii. Martin Lampner and Albert Bussone acted as knowing participants in the fiduciary breaches and prohibited transactions of Chimes District of Columbia, Inc. and Chimes International, Ltd. through their participation in the hiring and retaining of FCE, Jeffrey Ramsey, and BCG, and the related prohibited transactions of FCE, Jeffrey Ramsey, and BCG.

2. Cross-Motion for Summary Judgment of Defendants Martin Lampner and Albert Bussone (ECF No. 371) is GRANTED.

a. Judgment shall be entered in favor of Martin Lampner on Counts I, II, III, and IV of the First Amended Complaint (ECF No. 102), and against R. Alexander Acosta, Secretary of Labor, with costs.

b. Judgment shall be entered in favor of Albert Bussone on Counts I, II, III, IV, and VI of the First Amended Complaint (ECF No. 102), and against R. Alexander Acosta, Secretary of Labor, with costs.

3. Chimes Defendants' Cross-Motion for Summary Judgment (ECF No. 375) is DENIED.

a. Counts I, II, III, IV, V, and VI shall proceed to trial against Chimes District of Columbia, Inc., Chimes International, Ltd., and the Chimes District of Columbia, Inc. Health and Welfare Plan and other remaining Defendants, but not against Martin Lampner or Albert Bussone.

A separate Order follows.

Dated: December 10, 2018.

_Bill D. Bennett_
Richard D. Bennett
United States District Judge