## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL NO. 1:15-3315-RDB |
| v. | ) | |
| | ) | |
| CHIMES DISTRICT OF COLUMBIA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

### SECRETARY OF LABOR'S REPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO PRECLUDE THE SECRETARY FROM OFFERING EVIDENCE, INCLUDING EXPERT TESTIMONY, IN SUPPORT OF ANY CLAIM THAT ALLEGED EXCESSIVE FEES PAID TO FCE BY THE CHIMES D.C., INC. HEALTH AND WELFARE PLAN EXCEEDS $2,931,465.48

---

KATE S. O'SCANNLAIN
Solicitor of Labor

OSCAR L. HAMPTON III
Regional Solicitor of Labor

JODEEN M. HOBBS
Regional Counsel for ERISA

PATRICK M. DALIN
Trial Attorney
United States Department of Labor
Office of the Solicitor
170 S. Independence Mall West
Curtis Center, Ste. 630E
Philadelphia, PA 19106
215-861-5165/ dalin.patrick@dol.gov

Dated:  December 10, 2018                Attorneys for the Plaintiff

The Secretary alleged in Count I of the Amended Complaint that the Chimes Defendants failed to prudently and loyally monitor the Chimes Plan's expenses, resulting in the plan paying excessive expenses <u>including</u>, but not limited to "the fees of FCE, BCG, certain service providers recommended by FCE, and administrative reimbursements to Chimes DC."[1]   (ECF No. 102 ¶ 74.)  In support of this claim, the Secretary's expert witness, Andrew Naugle, MBA, conducted a detailed and rigorous benchmarking analysis of the Chimes Plan's "fees and costs in the aggregate."  Naugle Report, ECF No. 480-3 at 2, 5-18.  Naugle also conducted similar analyses of the subset of total fees and expenses paid, directly or indirectly[2], to certain service providers—specifically, FCE and Benefits Consulting Group.  *Id.* at 2, 18-19.

To develop his benchmarks, Naugle used a thorough multi-step methodology.  First, he downloaded the Form 5500 filings for the years 2011-2015.  *Id.* at 5.  Second, he filtered out all Forms 5500 for plans with incomplete information.  *Id.* at 6.  Third, for each year in the period of 2011-2015, he applied a filter to identify a sample of plans with similar funding and benefit features to the Chimes Plan.  *Id.* at 6-8.  Fourth, Naugle calculated average administrative expenses, in per-employee per-month ("PEPM") units, for the remaining sample of plans.  *Id.* at 8-10.  Fifth, Naugle made adjustments to these administrative expense benchmarks to account for the Chimes Plan's Service Contract Act requirements and the potential health needs of the Chimes Plan's participants.  *Id.* at 11-12.

---

[1] Count I alleged that Chimes Defendants and FCE are jointly liable as fiduciaries for the excessive plan expenses.  (ECF No. 102 at ¶ 78.)  Further, Count I alleged that FCE Defendants knowingly participated in the subset of excessive plan expenses paid to FCE.  *Id.* at 79.

[2] Direct compensation is comprised of the amounts that the Chimes Plan paid directly to a service provider.  Indirect compensation is comprised of the amounts that service providers to the Chimes Plan paid to FCE in connection with the Chimes Plan.

Naugle then used the administrative expense benchmarks to assess the reasonableness of the Plan's expenses from various perspectives. He compared the Plan's administrative fees based on the rates set forth in the Adoption Agreement's Fee Schedule (both with and without the discounts given by FCE) to the fees in a sample of plans with equivalent services. *Id.* at 13-16. He assessed the plan's aggregate expenses (both direct and indirect) reported in its Form 5500s in comparison to the benchmarks. *Id.* at 17. He also assessed the plan's aggregate actual expenses paid as compiled by the Employee Benefit Security Administration ("EBSA") from the Chimes Plan's bank records and records subpoenaed from plan service providers.[3] *Id.* at 17-18. Naugle's analyses found that the Chimes Plan's aggregate expenses were excessive in all years given the scope and level of services provided to the Plan. *Id.* at 15-18.

In order to calculate what they contend is the amount of excessive compensation paid to FCE, defendants relied upon the fee rates listed in the Fee Schedule, which Naugle evaluated in Tables 10-12 of his report. ECF No. 483 at 2. Defendants' motion misrepresents Naugle's projection of compensation paid based on the Fee Schedule rates as the "actual fees paid by" the Chimes Plan to FCE. *Id.* Naugle evaluated the actual "Compensation Paid to FCE Administrators" using EBSA's report of direct and indirect compensation paid by the Plan. ECF No. 480-3 at 18-19, Sec. B.1 and Attachment I.

---

[3] In preparation for trial, the parties have stipulated to amounts for direct compensation paid to all service providers and FCE's indirect compensation for years 2010 through 2016. The stipulated amounts differ slightly from the amounts listed in Attachment I to Naugle's Report and therefore will slightly alter the damages. However, the stipulated amounts do not alter Naugle's opinion that the Plan paid excessive fees in the aggregate and to FCE individually. Because the stipulations are not yet finalized, the parties are relying on the amounts in Attachment I to the Naugle Report in connection with this motion.

Using the values in Naugle's comparison of actual compensation paid to FCE versus the median TPA fees paid by the sample of plans, the Chimes Plan paid $5,876,537 in excessive compensation to FCE in the period from 2011 through 2015, as shown in calculation below:

| Year | Actual Comp Paid to FCE (Direct and Indirect) - in PEPM units[4] | Median TPA Fees paid by Benchmarking Sample of Plans - in PEPM units[5] | Difference between FCE fees and Benchmark Median | Average Number of employees for the year[6] | Number of Months | Excessive Comp paid to FCE when compared to Benchmark Sample's median TPA fees |
|---|---|---|---|---|---|---|
| 2011 | $81.41 | $34.37 | $47.04 | 1,548 | 12 | $873,815.04 |
| 2012 | $89.39 | $30.46 | $58.93 | 1,516 | 12 | $1,072,054.56 |
| 2013 | $97.41 | $30.68 | $66.73 | 1,418 | 12 | $1,135,477.68 |
| 2014 | $106.41 | $24.90 | $81.51 | 1,336 | 12 | $1,306,768.32 |
| 2015 | $133.77 | $37.99 | $95.78 | 1,295 | 12 | $1,488,421.20 |
| **Total** | | | | | | **$5,876,536.80** |

For the period of 2011 through 2015,[7] the Chimes Plan's service providers paid $2,204,217 in indirect compensation to FCE. *Id.* at Attachment I: EBSA Compensation Summary. When the indirect compensation amount of $2,204,217 for 2011-2015 is deducted from the total excessive compensation paid to FCE for the same period, excessive direct compensation actually paid to FCE in that period amounts to $3,672,320.

FCE takes objection with Naugle's calculation of $8,356,999 total excess expenses paid in 2011-2015, feigning ignorance of the gap between this figure and the amount of compensation

[4] From Tables 16 and 17 of the Naugle Report.

[5] From Tables 11 and 17 of the Naugle Report.

[6] From Table 1 of the Naugle Report.

[7] In addition, the Secretary seeks disgorgement of indirect compensation paid to FCE in 2010, 2016, and 2017 as well as an accounting for profits for those fees not included in the EBSA Compensation Summary for the period of 2010 through 2017.

paid to FCE specifically. But the difference between the two damage figures is plainly set forth in Naugle's report. Quite simply, $8,356,999 is the amount of excessive expenses paid by the Chimes Plan to all service providers, including but not limited to FCE. [8] The lower number (which is $5,876,537, not $2,931,465.48 as calculated by FCE) is the subset of the excess expenses paid to FCE.

Defendants cite two cases in support of their motion, both of which are inapplicable to the Naugle Report. *Mathias v. Shoemaker*, No. CV RDB-15-2261, 2017 WL 3592457 (D. Md. Aug. 21, 2017) concerned expert opinions that were mere "possibilities" rather than conclusions derived from a discernible methodology. Here, the Secretary's expert engaged in a thorough multi-step methodology resulting in the firm conclusions that the Chimes Plan's paid excess expenses both in the aggregate and to FCE specifically. Similarly, *Baltimore Aircoil Co., Inc. v. SPX Cooling Techs. Inc.,* No. CV CCB-13-2053, 2016 WL 4426681 at *28 (D. Md. Aug. 22, 2016), held that an expert need not provide a per-transaction analysis of losses where he is offering a "broader lost profits opinion." Here, the Naugle Report provides a broad analysis of the Chimes Plan's excessive expenses in the aggregate, and therefore does not need to offer a per-transaction or per-vendor analysis of the plan's total excess expense damages. Moreover, Naugle's vendor-specific analysis of FCE's compensation is supported in his report by a FCE-specific benchmarking analysis that follows a similar methodology to what he used for his aggregate expense analysis.

For the reasons set forth herein, defendants' motion should be denied.

---

[8] Attachment I to Naugle's Report lists 49 vendors to whom the Chimes Plan paid fees and expenses. The plan's payments to all of these entities, in addition to the indirect compensation received by FCE, are included in Naugle's calculation of $8,356,999 in aggregate excessive expenses paid by the plan.

December 10, 2018                                     Respectfully submitted,


                                                     KATE S. O'SCANNLAIN
                                                     Solicitor of Labor

                                                     OSCAR L. HAMPTON III
                                                     Regional Solicitor of Labor

                                                     s/Patrick M. Dalin
                                                     PATRICK M. DALIN
                                                     Trial Attorney
                                                     United States Department of Labor
                                                     170 S. Independence Mall West, 630E
                                                     Philadelphia, PA 19106
                                                     215-861-5165/ dalin.patrick@dol.gov

<u>CERTIFICATE OF SERVICE</u>

I certify that on December 10, 2018, I electronically filed the foregoing RESPONSE IN

OPPOSITION TO DEFENDANTS' JOINT MOTION TO PRECLUDE THE SECRETARY

FROM OFFERING EVIDENCE, INCLUDING EXPERT TESTIMONY, IN SUPPORT OF

ANY CLAIM THAT ALLEGED EXCESSIVE FEES PAID TO FCE BY THE CHIMES D.C.,

INC. HEALTH AND WELFARE PLAN EXCEEDS $2,931,465.48 with the Clerk of Court by

using the CM/ECF system, which will provide notice and an electronic link to this document to

the attorneys of record in this case.


<u>s/Patrick M. Dalin</u>
PATRICK M. DALIN
Trial Attorney
United States Department of Labor