```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND
 2                      NORTHERN DIVISION

 3   _____
                                   )
     R. ALEXANDER ACOSTA,          )
 4   Secretary of Labor,           )
              Plaintiff            )
 5        v.                       ) Civil Docket No. RDB-15-3315
     CHIMES DISTRICT OF COLUMBIA,  )
 6   et al.,                       )
              Defendants           )
 7   _____)

                                         Baltimore, Maryland
 8                                       December 17, 2018
                                         4:10 PM to 6:31 PM
 9
              THE ABOVE-ENTITLED MATTER CAME ON FOR
10                TELEPHONIC MOTIONS HEARING
           BEFORE THE HONORABLE RICHARD D. BENNETT
11
                    A P P E A R A N C E S
12
     On behalf of the Plaintiff:
13          Patrick M. Dalin, Esquire
            Katrina Liu, Esquire
14
     On behalf of the Defendants:
15          Richard I. Scharlat, Esquire
            Mark D. Meredith, Esquire
16          Brian Cousin, Esquire
            Christina S. Dumitrescu, Esquire
17          Marc A. Koonin, Esquire
            Joseph S. Ferretti, Esquire
18          Robert D. Eassa, Esquire
            Scott Weatherford, Esquire
19          Rebecca Newman Strandberg, Esquire
            Donald J. Kravet, Esquire
20

21       Proceedings recorded by mechanical stenography,
     transcript produced by computer.
22   _____

23              MARTIN J. GIORDANO, RMR, CRR, FOCR
                 U.S. Courthouse, Fourth Floor
24                 101 West Lombard Street
                   Baltimore, Maryland 21201
25                      410-962-4504
```

<u>**PROCEEDINGS OF DECEMBER 17, 2018**</u>

1

2          **THE COURT:**  Good afternoon.  I'll be with you in one

3      second.

4          (Pause.)

5          **THE COURT:**  Good afternoon to everyone.  I'm sorry to

6      keep you all waiting for a few minutes.  This is a telephone

7      conference on the record --

8          **MR. KOONIN:**  Good afternoon, Your Honor.

9          **THE COURT:**  This is a telephone conference on the

10     record here on *Acosta versus Chimes, et al.*, Civil

11     Number RDB-15-3315.  Based upon my conference call with counsel

12     on Friday and my letter order, which is Paper 522 that was

13     filed today, at the request of counsel for FCE, I have delayed

14     this trial for about a week, so the bench trial will start

15     Monday, January the 14th, with a pretrial conference Friday,

16     January the 11th, and, with that, we have a series of motions

17     *in limine* which have been filed, pretty exhaustive amount of

18     material here, and I've gone through a lot of it and spent a

19     lot of time with this, but we're just going to go step by step

20     with respect to these motions.

21              If counsel will just identify themselves for the

22     record, please.

23          (Pause.)

24          **THE COURT:**  Counsel, just identify themselves for the

25     record, please.  First of all, on the line for the Plaintiff,

```
1    for the Government, Secretary of Labor?
2              MR. DALIN:  Your Honor, this is Patrick Dalin for the
3    Secretary of Labor.
4              THE COURT:  All right.
5              MS. LIU:  And Katrina Liu for the Secretary.
6              THE COURT:  All right.  Good afternoon to the both of
7    you.  And then for the Defendant --
8              MS. LIU:  Good afternoon, Your Honor.
9              MR. DALIN:  Good afternoon, Your Honor.
10             THE COURT:  And then for the Defendant Chimes,
11   District of Columbia, Inc.?
12             MR. SCHARLAT:  Good afternoon, Your Honor.
13             Richard Scharlat and Mark Meredith are here.
14             Brian Cousin and Christina Dumitrescu should be on
15   the phone from the car.
16             MR. COUSIN:  Hello, Your Honor.  We're here.
17             THE COURT:  All right.  Then, for the Defendant
18   Chimes International, same set of lawyers, correct?
19             MR. SCHARLAT:  Yes, Your Honor.
20             THE COURT:  All right.  And then --
21             MR. COUSIN:  Yes, Your Honor.
22             THE COURT:  -- FCE Benefit Administrators, who is on
23   the line?
24             MR. KOONIN:  Yes, Your Honor.  This is Marc Koonin.
25   I'm present, as is our local counsel, Joe Ferretti.
```

```
 1              THE COURT:  Okay.

 2              MR. EASSA:  And also Rob Eassa, Your Honor.

 3              THE COURT:  All right.  Good afternoon to all of you.

 4     And then, Mr. Eassa, I hope you're feeling better.

 5              MR. EASSA:  Thank you, Your Honor.

 6              THE COURT:  Then we have, for the -- I think we have

 7     the same group of lawyers there, and then we have, going

 8     through here -- just hold on one second here.

 9        (Pause.)

10              THE COURT:  For the Defendant, Marilyn Ward?

11              MR. WEATHERFORD:  Good afternoon, Your Honor.

12              Scott Weatherford for Marilyn Ward, and I think

13     Rebecca Strandberg, local counsel, is also present.

14              THE COURT:  Okay.  Good afternoon.

15              MS. STRANDBERG:  Yes, Your Honor, I am.

16              THE COURT:  All right.  Have I missed anybody?

17        (No response.)

18              THE COURT:  Okay.  Good.  Thank you all very much.

19              MR. COUSIN:  Your Honor?

20              THE COURT:  Yes.

21              MR. COUSIN:  Your Honor, this is Mr. Cousin.  I

22     believe that Kravet & Vogel, Don Kravet, is also on the line.

23     He's another counsel for Chimes.  These are special counsel on

24     the experts.

25              THE COURT:  All right.  That's fine.
```

 1          Have I missed anybody else?  One, two, three.

 2   Hearing none, okay, we're ready to proceed.

 3          First of all, we have four motions filed by the

 4   Secretary, and I'll use the phrase Secretary and the Government

 5   interchangeably.  The first is the Secretary of Labor's motion

 6   *in limine* and memorandum in support of his motion to exclude

 7   the testimony of the Employee Benefit Security Administration's

 8   investigator, Siamack Gharanfoli, and to exclude evidence of

 9   the Employee Benefit Security Administration.

10          I'm going to give each side about a minute to

11   summarize their positions.  I have read all this material

12   exhaustively.  I've gone through it.  I don't need to have you

13   just restate everything you've written, because there has been

14   quite a bit of written material, but I'll give each side an

15   opportunity.  This is the Secretary's motion, and then you all

16   can decide who is going to speak for the Defendants.  The

17   Defendants have filed a joint opposition.

18          This is Paper Number 477 that was filed on December

19   the 5th with quite a few -- let's say we've had an exhaustive

20   amount of material filed in the last -- just literally within

21   the last two weeks.

22          So, with that, I'll be glad to hear from counsel for

23   the Secretary for about a minute or two, and then I'd be glad

24   to hear from whoever wants to take the lead for the Defense

25   response on that, and I believe that, at least initially -- I'm

```
 1    not sure who is taking the lead on it.  It would appear that
 2    the response on that -- well, I can't tell.  It was filed by
 3    everyone.  I can't tell if it was Mr. Cousin from Denton's or
 4    whoever is going to take the lead, or Michael Schrier for Duane
 5    Morris, but I'd be glad to hear from the Secretary --
 6              MR. KOONIN:  Your Honor?
 7              THE COURT:  I'll be glad to hear from the Secretary
 8    on this, first of all.
 9              MS. LIU:  Sure, Your Honor.  Katrina Liu here.
10              So Siamack Gharanfoli is an investigator for us, so
11    his only role in this was to gather information during the
12    administrative investigation, so he has no personal knowledge
13    to which he'd be able to testify in court to.  He'd only be
14    reporting what others have told him, which, in this case, would
15    be inadmissible hearsay.
16              And then any other testimony that may be solicited as
17    to his opinions, his impressions, or conclusions during that
18    administrative investigation would be protected by the
19    deliberative process privilege.
20              At one point, I do want to sort of respond a little
21    bit to at least the written response from Defendants.  It
22    sounds like they're challenging essentially the sufficiency of
23    the investigation.  That is not relevant here.  We are now
24    litigating, and so the evidence is being presented anew to the
25    Court, and what happened at the administrative stage is not
```

1    really something that the Court is to review.  It's really to

2    review the evidence itself to determine whether the violations

3    have occurred.

4         **THE COURT**:  All right.  Well, thank you very much.

5    Thank you very much on that, and I'll be glad to hear from

6    Defense side on this now.

7         What one lawyer is going to speak for the Defendants

8    on this?

9         **MR. SCHARLAT**:  Your Honor, this is Richard Scharlat.

10        **THE COURT**:  Okay.

11        **MR. SCHARLAT**:  Unless somebody stops me, I'll speak

12   for the Defendant.

13        **THE COURT**:  All right.  Go ahead.

14        **MR. SCHARLAT**:  Thank you, Your Honor.

15        First of all, the Secretary himself, in his brief,

16   said -- lists -- and in the Draft Pretrial Order, lists

17   Mr. Gharanfoli as a witness and indicates the need arises.

18   There is no way to anticipate exactly what's going to happen at

19   trial, and to categorically bar him is very premature.

20        We've given the Court a couple of examples in our

21   papers about where his testimony or evidence that he created

22   would be relevant.  We've also got -- I'm sorry?

23        **THE COURT**:  I didn't say anything.

24        **MR. SCHARLAT**:  I'm sorry, Your Honor?

25        **THE COURT**:  No.  I didn't say anything.

```
 1              MR. SCHARLAT:  Okay.  I thought somebody said
 2     something.
 3              THE COURT:  No.
 4              MR. SCHARLAT:  We gave a couple of examples with
 5     regard to Mr. Huber where Mr. Huber's testimony contradicts the
 6     report created by Mr. Gharanfoli.  The late-submitted
 7     declaration from Diane Lapin, certainly we should be able to
 8     talk to Mr. Gharanfoli and question him about that report.  We
 9     didn't have an opportunity to depose him about it.
10              Obviously, also relevant to attorneys' fees, Your
11     Honor, this record is replete with misconduct here, and the
12     bottom line is that there are inconsistencies between what the
13     Secretary is relying on and what he's offering as a fact and
14     what's true.
15              THE COURT:  All right.  Well, thank you very much.
16              MR. SCHARLAT:  And, to that extent, we should --
17              THE COURT:  All right.  Well, thank you very much.
18     I'm on top of this one, and I'm aware of the implications here,
19     and the Secretary's motion in limine in support of this motion
20     to exclude Siamack Gharanfoli, Paper Number 477, will be
21     denied.  Both the Secretary and the Defendants have listed the
22     investigator as a trial witness if the need arises, and
23     essentially it's premature at this point in time for me to
24     determine if that testimony is relevant.
25              I will note that essentially the matter of this
```

1    motion *in limine* to exclude Gharanfoli's testimony and the

2    evidence of essentially the Employee Benefit Security

3    Administration's investigation *per se* would be premature at

4    this point in time, and I do note the interview notes and

5    testimony that have been raised by Mr. Huber with respect to

6    the summaries that have been made and specifically Gharanfoli's

7    notes of his witness interviews and the contradiction that

8    exists apparently between Mr. Huber's view and that as to what

9    Mr. Gharanfoli's notes reflect.

10           And, in light of that, the trial testimony may be

11   relevant to also the matter of attorneys' fees, and, indeed, it

12   is the position that's been taken by the Defense, as I

13   understand it, that there is a pattern of selective notes and

14   reports, and, indeed, some allegation of misrepresenting

15   certain statements made.

16           So this clearly is a question of fact that I will

17   have to address during the bench trial of this case, and, for

18   those reasons, the Secretary's motion *in limine*, Paper

19   Number 477, to exclude that testimony will be denied for the

20   reasons set forth on the record.

21           Hold on one second here, please.  Wait a minute.

22       (Pause.)

23           **THE COURT:**  477 will be denied for the reasons set

24   forth on the record.

25           The next of the four motions filed by the Secretary

1    is the motion in support of his motion to exclude the testimony

2    of Defendants' putative expert, Aaron Raddock, and I'll be glad

3    to hear from the Secretary on this next.  And this is Paper

4    Number 478.

5         **MR. DALIN:**  Yes, Your Honor.  This is Patrick Dalin

6    addressing this motion.

7         So the Secretary alleges that the Plan paid excessive

8    fees and submits an expert report to establish that claim.

9    Defendants submit the expert report of Aaron Raddock, and he

10   said the Plan's fees aren't excessive on the basis that the

11   Plan had additional costs arising from the Service Contract Act

12   compliance.  The Service Contract Act compliance, however, is a

13   requirement imposed on the employer, and regulations

14   specifically state that the employer's carrying out of those

15   administrative obligations cannot be charged to the fringe

16   benefit rate or the assets of the trust.

17        Raddock testified as to a number of activities that

18   he says should be considered when assessing the costs to the

19   Plan.  Among them are completing certified payrolls, which is a

20   payroll activity pursuant to the Service Contract Act; response

21   to DOL inquiries regarding Service Contract Act compliance;

22   calculating the fringe benefit dollars to be contributed to the

23   Plan, which is a requirement under the Service Contract Act.

24        **THE COURT:**  What I understand, by the way, is that --

25   I understand that the Secretary's argument essentially on this

1    is that these are settlor expenses, which the Secretary

2    contends may not be paid by the Chimes Plan, correct?  That's

3    basically the thrust of the Secretary's position, correct?

4            **MR. DALIN:**  That's part of it.  Some of them are

5    settlor functions, and some of them are purely payroll

6    functions that have nothing to do with the trust.  Yes,

7    eventually the funds paid get put into the trust, but what the

8    employer has to do to make sure that he's paying -- that the

9    employer is paying the correct fringe rate, to make sure that

10   they're keeping certified payrolls, that's wage and hour stuff.

11   That is the employer's obligation.

12           Now, the employer is free to hire someone to do that

13   work.  They can hire FCE to do the work if they want, but the

14   employer has to pay for that work themselves.  They can't have

15   it paid out of the trust.

16           **THE COURT:**  Well, are these or are these not expenses

17   relating to legal compliance and eligibility determinations?

18       (Pause.)

19           **THE COURT:**  I guess my -- I'm asking the Secretary.

20   Are they not expenses relating to legal compliance?

21           **MR. DALIN:**  Well, keeping certified payrolls are

22   legal compliance for the Service Contract Act, which is a wage

23   and hour requirement for the employer, for instance.  So it's

24   legal compliance, but it's legal compliance that has nothing to

25   do with ERISA or the trust, and that's what we're saying here.

1    There are numerous examples of what Raddock says --

2          **THE COURT:**  All right.  Okay.  Well, I understand.

3    It's my understanding that essentially, if I'm not mistaken

4    here -- hold on one second.

5          (Pause.)

6          **THE COURT:**  Then what would be the basis of the

7    Government's expert, Andrew Naugle, with respect to his

8    testimony based upon your position as to Raddock's testimony?

9          **MR. DALIN:**  So we asked Mr. Naugle to give the Plan

10   as much credit as possible, to be as conservative as possible

11   in his analysis, so he gave credit for numerous things.  That

12   doesn't mean, as a matter of law, they can take credit for a

13   number of the specific charges that Aaron Raddock gives them

14   credit for.

15         And, if you look at even the supporting documents

16   that Defendants attach to their motion, they refer to their

17   Exhibit 3, the EBSA's *Guidance on Settlor versus Claim*

18   *Expenses*, includes the example where a Plan paid $60,000 for

19   consulting fees for USERRA and SBGA compliance, and said that

20   the Plan cannot pay those expenses.  Even if it's connected to

21   benefits concerning the Plan, it's only -- you know, the other

22   side of the 50 yard line, so to speak, before the money comes

23   into the Plan, those are compliance obligations of the

24   employer, which are settlor functions, which the Plan cannot

25   pay.

1          **THE COURT:**  All right.  Well, I understand what your

2    argument is on this, and I must tell you I'm hard pressed to

3    understand that, if your argument is correct, then there would

4    be the basis of Mr. Naugle's testimony, but I understand what

5    your position is.

6          All right.  On behalf of the Defendants, who is going

7    to respond on this?

8          **MR. KOONIN:**  This is Marc Koonin, Your Honor.  I will

9    respond on behalf of the Defendants.

10          First of all, this is yet another example of the

11    Secretary trying to introduce a new theory at the eleventh hour

12    that's never been raised in the Complaint or in any discovery

13    responses prior to this point.  So that's a problem right

14    there.

15          But --

16          **THE COURT:**  You're saying that that's because --

17          **MR. KOONIN:**  Your Honor --

18          **THE COURT:**  You're saying -- wait a minute.  Just

19    give me a minute here.

20          You're saying that because your contention is the

21    Secretary is now arguing for the first time that these expenses

22    are settlor expenses?

23          **MR. KOONIN:**  Yes, Your Honor.

24          **THE COURT:**  All right.

25          **MR. KOONIN:**  They've never raised that theory in this

1    case at all about settlor expenses or that being excluded,

2    which, as a general principle of law, is correct, or that these

3    are settlor expenses which they are not as a matter of law, but

4    neither of those issues were raised in the Complaint, and

5    neither were raised in the discovery.  And, now that we're

6    going into trial in a couple weeks, they're raised for the

7    first time.  That's not proper.

8         **THE COURT:**  All right.

9         **MR. KOONIN:**  But --

10        **THE COURT:**  I understand.

11        **MR. KOONIN:**  Based upon the --

12        **THE COURT:**  I understand.  I'm on this one.  I

13   understand.  The simple fact of the matter is --

14        **MR. KOONIN:**  Okay.  Both --

15        **THE COURT:**  I think you're ahead, so, when you're

16   ahead, let me cut you off, because I've got a lot of territory

17   to cover here.

18      (Laughter.)

19        **MR. DALIN:**  Your Honor, may I address that?

20        **THE COURT:**  No, you may not.  We're not having

21   rebuttal on each one.  I've read these.  I mean, I've spent

22   hours and hours reading this stuff, so I hope you realize I'm

23   on top of it.  No, you're not.  Each side goes one time, and

24   that's it, okay?  And this motion --

25        **MR. DALIN:**  Okay.  Thank you.

1          **THE COURT:**  This motion -- so don't even try.  No one

2     is going to get two bites at the apple on all these motions.

3     We'll be here until 8 o'clock at night.

4          The Secretary's motion on this is denied for the

5     simple fact of the matter that essentially there is an issue

6     that the Secretary is raising as to settlor expenses.  I

7     understand what it is.  I'm not necessarily precluding that.

8          But, in terms of trying to determine the costs and

9     computing benefits with respect to these expenses, the expenses

10    may or may not relate to legal compliance and eligibility

11    determinations in terms of that being a proper Plan expense,

12    and I would furthermore note that, to the extent that we have

13    the testimony of the Government's expert, the Secretary's

14    expert, as to Andrew Naugle, from what I can see, I don't know

15    that he's actually addressed the matter of settlor function

16    expenses, but that's okay in terms of what will be presented at

17    trial, but we're not going to grant a motion *in limine* as to

18    Raddock's report and, at the same time, have Andrew Naugle

19    opine as well.

20         To put it bluntly, if the Secretary's argument was

21    correct, then Naugle would be precluded as well.  So I'm going

22    to permit both sides to testify on that, and that's fine, but,

23    for those reasons set forth on the record, the Secretary's

24    motion *in limine* in support of his motion to exclude the

25    testimony of Aaron Raddock will be denied.  Paper Number 478

1    will be denied for the reasons set forth on the record here.

2            **MR. KOONIN:**  Thank you, Your Honor.

3            **THE COURT:**  All right.  There you go.  There you are.

4            Now, hold on just one second.

5        (Pause.)

6            **THE COURT:**  Okay.  The next motion, the third of the

7    Secretary's motions *in limine*, this filed on December the 5th,

8    essentially the Secretary is moving, motion *in limine*, to

9    exclude the declaration of Grace Dong, who was employed by FCE

10   as a financial reporting analyst since May of 2016, and I'd be

11   glad to hear from the Secretary on this.

12           **MR. DALIN:**  Yes, Your Honor.  It's Patrick Dalin

13   again.

14           So FCE is trying to admit two analyses performed by

15   Ms. Grace Dong.  They call the analysis pertaining to the

16   charges resulting from the 2% compliance fee a Rule 1006

17   summary, and they're trying to admit the summary with the

18   declaration without live testimony.  A Rule 1006 summary,

19   however, is not a record of regularly-conducted business

20   activity; it's a document prepared specifically for trial, and

21   it cannot be admitted simply with a declaration.  Under the

22   rule --

23           **THE COURT:**  Well, under Rule 1006, that's not quite a

24   correct summary of Rule 1006.  Rule 1006 is a summary of

25   evidence that may be based upon admissible evidence.  That is

1    the principle of Rule 1006.  It doesn't mean that it

2    automatically dovetails --

3              **MR. DALIN:**  Right.

4              **THE COURT:**  It doesn't necessarily dovetail with

5    business record under Rule 803(6) with respect to business

6    records.  It doesn't mean that all the documents --

7              **MR. DALIN:**  Correct.

8              **THE COURT:**  -- themselves have to have been admitted.

9    It means it has to be a reasonable summary --

10             **MR. DALIN:**  Yes.

11             **THE COURT:**  -- of evidence which would be admissible.

12   So that's a more precise definition of that --

13             **MR. DALIN:**  Yes.

14             **THE COURT:**  -- but go ahead.

15             **MR. DALIN:**  And the foundation for the summary is

16   laden with live testimony.  An example of that is a Fifth

17   Circuit case, *U.S. v. Jennings*, 724 F.2d 436.  The underlying

18   documents, as you mentioned, Your Honor, have to be admissible.

19             In this case, FCE, Grace Dong hasn't provided the

20   underlying documents.  The day after the Secretary filed this

21   motion, FCE e-mailed us a second spreadsheet which it contends

22   is the underlying documents, but it's just another summary.

23   They're saying one summary is the underlying evidence for

24   another summary.  It's not the actual invoices that were used

25   to calculate the fees at the time.  We've been trying to get a

1    hold of the contemporaneous records calculating these monies

2    for two years and haven't received any.

3         In this case, Your Honor, you're very familiar with

4    the facts, but a quick summary.  David Crutcher, one of FCE's

5    attorneys, submitted a declaration in summary judgment stating

6    that he could calculate the fees that FCE charged.  He

7    purported to show that they undercharged $1.5 million.  He then

8    filed a second declaration completely walking back that

9    calculation.

10        Gary Beckman testified that FCE didn't add a 2%

11   compliance, or -- I'm sorry -- he testified that they did add a

12   2% compliance fee charge.  Then he submitted a declaration

13   saying that they didn't.

14        Now we have Grace Dong submitting a declaration

15   saying that they did, and she can calculate with specificity

16   the amount charged under that fee when we have an earlier

17   letter from David Crutcher stating that FCE doesn't have the

18   records necessary to recalculate fees, and he tried to pin it

19   on Ward and say that Ward has the records, and Ward denies that

20   she has the records.  So FCE can't keep its story straight

21   about whether it added a 2% compliance fee or not, about

22   whether it can calculate the fees or not.

23        **THE COURT:**  Doesn't that go to the weight, not the

24   admissibility?  In other words, I have already -- as I

25   recall --

1          **MR. DALIN:**  Yeah, but we have to be able to cross-

2     examine someone, Your Honor.

3          **THE COURT:**  Well, you certainly are free to cross-

4     examine on it.  As I think I've already addressed this in my

5     Order about a month ago, where I granted FCE's motion to

6     correct the record due to a mathematical calculation error, and

7     I don't see anything that you've submitted that seems to

8     indicate that there is some error in the arithmetic calculation

9     here --

10          **MR. DALIN:**  Well, we point out, Your Honor -- we

11     point out, Your Honor, that there is missing variables.  You

12     can't do the math.  You can't follow the math at all.  You can

13     have an accountant, a mathematician, and a rocket scientist try

14     to do the math based on Ms. Dong's analysis.  They can't do it.

15     It's missing necessary variables.

16          **THE COURT:**  All right.  Well, that may be a problem

17     for the Government as well, but this goes to the weight, not

18     the admissibility.  They may have a problem with it, and the

19     Secretary may have a problem with it, and, if it's too

20     speculative, neither side is going to prevail on it --

21          **MR. DALIN:**  Well, Your Honor --

22          **THE COURT:**  -- because I'm going to be the one that's

23     going to judge.  That is a bench trial, and I'll make that

24     determination.  I'll make that determination as to the

25     Defendant, and I'll make that determination as to the

1    Government, on either side.

2         MR. DALIN:  One additional very important point, Your

3    Honor, is the David Crutcher declaration was submitted in

4    connection with the summary judgment motion.  The Court can

5    accept testimony by declaration in summary judgment, but not at

6    trial.  This is substantive testimony.

7         THE COURT:  Well, I'll judge what I can take in terms

8    of testimony.  This is exactly an example -- this is a bench

9    trial.  I can hear the evidence, and you're free to cross-

10   examine on this.

11        Who is speaking --

12        MR. DALIN:  We can't cross-examine Ms. Dong if she

13   doesn't come to court.  She's the person who did the analysis,

14   Your Honor, and how are we to cross-examine her if she doesn't

15   come to trial?

16        THE COURT:  Well, quite frankly, I'm not going to

17   waste time with you trying to do a math class for a day, so

18   that's -- you're probably right on that.

19        MR. DALIN:  We need Ms. Dong to do the math class,

20   because we don't understand the calculation.

21        THE COURT:  All right.  Well, it's very simple.  It's

22   very simple.  Your motion is going to be denied on this as

23   well.  Three of these four motions by the Secretary, I would

24   note, had very little merit at all, and I've taken a lot of

25   time going through this.

1        I don't need to hear from the Defendants on this with

2   respect to this motion.  This is nothing more than nitpicking

3   over arithmetic calculations, and, so the Government

4   understands, it may not have any weight with me.  The key

5   distinction on these things in a courtroom is the matter of

6   weight as opposed to admissibility, and when one finds one's

7   self arguing a great deal over the weight, they should realize

8   that they're talking about weight, not admissibility.

9        Without question, under Rule 1006, the Dong

10   declaration is an appropriate summary under Rule 1006 with

11   respect to the underlying documents upon which it is based.  It

12   doesn't mean it's going to be binding upon me, but it certainly

13   is admissible as far as I'm concerned, and it clearly would be

14   covered under a residual exception under Rule 807 with respect

15   to having indicia of reliability even if there would be a

16   hearsay problem.  I don't consider this to be a major problem

17   on this, and, again --

18        **MR. DALIN:**  Can I ask for a clarification of the

19   ruling?  So, under Rule 1006, the proponent needs to provide

20   the underlying records, so that hasn't happened in this case.

21   What's the Court's holding with regard to the underlying

22   records?

23        **MR. KOONIN:**  May I address that, Your Honor?

24        **THE COURT:**  Sure.  Sure.  Go right ahead.

25        **MR. KOONIN:**  Okay.  We -- this is Marc Koonin.  We

1    did attach the underlying records to our opposition.  The

2    Secretary keeps pulling a sleight of hand.  The Secretary keeps

3    saying, "Well, you haven't given a specific --" what the

4    Secretary likes to call an invoice.

5         Well, for most of these bills, they were based on

6    contributions, and they were run as a computer program through

7    the TAS software, and so what we've produced and what we

8    attached to the opposition were records of the contributions

9    that were produced out of TAS.  If you multiply those by 11.62

10   and by 13.62, you get the differential.  So the fact that we

11   don't have a report that says, "Here is the differential

12   report," is not the important issue.  We've shown the

13   contributions.  You can run the 11.62 and the 13.62, and you

14   can calculate the difference.  It's absolutely untrue that we

15   did not provide the supporting documents.

16        **THE COURT:**  I'm satisfied that this qualifies as a

17   summary document, Rule 1006.  I'm satisfied there is sufficient

18   documentation of it.  And I'm also satisfied that it would fall

19   under 807 in terms of residual exception.  And there is

20   actually no merit -- no merit whatsoever to the Secretary's

21   motion *in limine* on the matter of the summary by Grace Dong.

22   It will be denied for the reasons set forth here on the record,

23   and that is Paper Number 479 will be denied for the reasons set

24   forth on the record.

25        So I think we're at the fourth now.  We're on number

1    four of the four motions of the Secretary.  The fourth motion

2    of the Secretary is one that definitely has had more merit in

3    my eyes, and that is the motion *in limine* to exclude the

4    deposition testimony of Kathy -- actually, it's T-H-A-M-E-S,

5    Thames, but, consistent with how we pronounce the river, I'll

6    pronounce her Thames unless someone tells me otherwise, because

7    it must be after the river in England, so --

8            **MR. SCHARLAT:**  You're correct, Your Honor.  We

9    understand it Thames, yes.

10           **THE COURT:**  Well, the true English pronunciation

11   would be Thames, so I'll allow it to be Americanized.  It's

12   Thames.  And the matter of the opinion of Mark Abernathy.

13           As I understand it, the Secretary is moving to

14   exclude deposition designations of Kathy Thames with respect to

15   an arbitration as to which the Government, the Secretary, was

16   not a party, and no notice was provided, and there was no

17   ability to examine.

18           So I'll be glad to hear from the Government on that,

19   and then I'll hear from the Defense.

20           **MR. DALIN:**  That's correct, Your Honor, and we're

21   also moving to exclude the supplemental expert report --

22           **THE COURT:**  Yes, I understand.

23           **MR. DALIN:**  -- of Mark Abernathy, which was produced

24   last month.

25           **THE COURT:**  Yes.  I understand.

1       **MR. DALIN:**  So these Trilogy audit reports have been

2   at issue for the entire time of litigation.  We've subpoenaed

3   Trilogy in this case in discovery.  We served their responses

4   and these audit reports to all Defendants in March and April of

5   2017.

6       The Secretary identified Trilogy Consulting as an

7   entity with knowledge of FCE's administrative issues in

8   discovery responses that we've provided in February 2017.

9       Fact discovery closed in January of this year,

10  January 2018.  FCE had almost a full year to take a deposition

11  of someone from Trilogy Consulting with regards to these audit

12  reports.  They didn't do so.

13      Instead, they waited until discovery closed in this

14  case, and then took the deposition of the auditor who did these

15  audits in another case to which we're not a party.  The entire

16  deposition pertained to these audit reports that are at issue

17  in this case.  And they also brought along to that deposition

18  Mark Abernathy, their expert in this case.  Under

19  Rule 804(b)(1), prior testimony of an unavailable witness isn't

20  admissible if the party who they're using it against didn't

21  have the opportunity to cross-examine the witness.

22      With regards to Abernathy's supplemental report, FCE

23  argues that, you know, experts can rely on hearsay if it's the

24  type that the expert would typically rely upon in correcting a

25  report, but, first, you know, the hearsay that experts usually

1    rely upon, for instance, in this case, would be Mark Abernathy

2    going and interviewing people in the Claims Processing

3    Department of FCE and relying upon that, and everyone would

4    agree you don't have to drag all those people into court to

5    have them testifying for the underlying statements.

6         But experts don't typically go take a deposition in a

7    case while cutting out one of the parties in the case and then

8    putting that deposition testimony into an expert report.  It's

9    an unfair ambush.  The Secretary is deprived of the opportunity

10   of cross-examining this witness, and it's completely unfair

11   to -- it's a complete end run around the rules and the spirit

12   of the rules in discovery.  FCE shouldn't be rewarded at all

13   for engaging in such conduct.

14        **THE COURT:**  All right.  Thank you very much,

15   Mr. Dalin.

16        With that, Michael Schrier, are you responding on

17   that on behalf of the Defendants?

18        **MR. KOONIN:**  No.  Mr. Koonin will respond, Your

19   Honor.

20        **THE COURT:**  All right.  Okay.

21        **MR. KOONIN:**  All right.  So, Your Honor, there is two

22   parts to this.  There is the deposition, and then there is the

23   expert report, but I would like to address these in two parts.

24        **THE COURT:**  Okay.

25        **MR. KOONIN:**  I mean, on the first part, nobody cut

1    the Secretary out.  FCE has multiple litigation going on, and,

2    in fact, the Secretary is well aware of the other litigation,

3    because the Secretary has been -- interviewed people at the

4    corporate entities for M&L and SSL, who are opponents in this

5    other arbitration, and, in fact, one of the issues in dispute

6    in the arbitration is having to recompense them for the fees of

7    complying with the Secretary's investigation and audits.

8         So there is no intent to cut the Secretary out.  We

9    didn't know what we didn't know.  There were over 30

10   depositions taken in the Chimes litigation, and, then, when we

11   were in this other litigation, there were other depositions

12   taken.  Some overlapped, and some didn't.

13        We had no idea that -- you know, we assumed that --

14   even though we didn't agree with the Trilogy report, we assumed

15   that their auditor had a background in statistical analysis and

16   training in auditing.  That would be a normal assumption.  We

17   found out that wasn't the case.

18        It's not like we decided to surprise the Secretary

19   with this, because we were surprised with this, okay?  We had

20   no idea, and, when we found out, we disclosed it to the

21   Secretary.

22        Now, as to point two, I think it is pretty

23   uncontested that Mr. Abernathy, as the Secretary concedes,

24   could have interviewed employees who conducted audits and

25   relied on that.  Why can't he rely on the sworn testimony of

1    the person who did the audits?  So he could rely on an

2    interview of somebody at the company with regard to the audit

3    according to the Secretary.  The one person that he cannot rely

4    on, apparently, is the sworn testimony given by the person who

5    actually conducted the audit about what her language in the

6    audit reports mean.

7         So, you know, there is two parts to this, but,

8    particularly with regard to the report itself, I don't think

9    it's contested that experts can and regularly do rely on

10   deposition testimony and on interviews.  He was present for

11   this.  There is no reason to exclude that report.

12        As to the testimony itself, there were parties who

13   were acting to defend Ms. Thames or Ms. Thames, as the case

14   may -- as we've decided on in this hearing, because she was

15   defended by counsel at hearing who was seeking to bolster her

16   and her reports.

17        So the Secretary wasn't there, but certainly there

18   was somebody present who was working to bolster her and to

19   defend her work on the reports.  And Your Honor has read the

20   paper.

21        **THE COURT:**  All right.  Well, thank you.  Thank you

22   very much.  Thank you very much, and I have read the papers,

23   and there is merit to this motion *in limine* filed by the

24   Secretary.  It's very simple.

25        In terms of the principles, clearly as has been noted

1    as to 804(b)(1), in terms of prior testimony, it's pretty

2    axiomatic that, unless a party is given an opportunity to

3    cross-examine, this type of former testimony of a witness is

4    not admissible, and the Supreme Court -- I think it's the

5    *Salerno* case, if I recall -- I've dealt with this before -- so

6    rules.  It's very abundantly clear.

7         This deposition designation of Kathy Thames was taken

8    in connection with an arbitration to which the Secretary of

9    Labor was not a party, was not directly noticed, and did not

10   attend, and you could argue all you want of whether they should

11   have known about it or whatever.  That's not the test under

12   Rule 801 or under Rule 804 with respect to this out-of-court

13   statement clearly being offered for the truth of the matter

14   asserted therein.  And it does not meet the exceptions under

15   804(b)(1), because the party against whom it's being offered

16   did not have the exact same motive to cross-examine Thames, and

17   it's inadmissible.

18        And, accordingly, because it's inadmissible, any

19   supplemental opinion by Mr. Abernathy shall be excluded with

20   respect to his supplemental report that's dated just four weeks

21   ago, which is some nine months, as I recall, looking at the

22   deadlines here -- he's not going to be permitted to take that

23   deposition and then amend his report.

24        So, for those reasons as set forth on the record, the

25   Secretary of Labor's motion *in limine* to exclude the deposition

 1     testimony of Kathy Thames and the supplemental expert report

 2     and opinion of Mark Abernathy, Paper Number 480, will be

 3     granted for the reasons indicated on the record.

 4              Now, I believe that that deals with all of the

 5     motions *in limine* filed by the Secretary of Labor.  Am I

 6     correct, Mr. Dalin?

 7              **MR. DALIN:**  That's correct.

 8              **THE COURT:**  Okay.  All right.  So then we have now --

 9     I'm trying to get through some of these as we go, and we may

10     have to take a break here in a minute, a brief break, but let

11     me just keep moving here for a minute here.

12              The next motion that I have in terms of joint Defense

13     motions is -- and I want to address the joint Defense motions,

14     and then we may have to take a brief break for something I also

15     have to tend to in a minute with respect to the FCE

16     Defendants' motions, but we'll continue on.

17              With respect to the joint Defendants motions, the

18     first one here that I have reviewed essentially is the

19     Defendants' joint motion, 471, the joint Defendants' motion *in*

20     *limine* to exclude evidence of claims processing errors on plans

21     other than the Chimes Plan, and essentially the Defendants are

22     moving to exclude all testimony and evidence relating to the

23     quality of FCE's claims processing for plans other than the

24     Chimes Plan, and the Defendants argue that it's not relevant.

25              The Secretary has argued that it is relevant under

1     Rule 401 because it essentially makes the fact of a negligent

2     operation more probable.

3              So, with that, I'd be glad to hear from counsel for

4     the Defendants, and just, again, so we're clear for the court

5     reporter, if you'll just identify who is speaking, whoever next

6     starts for the Defendants.

7              **MR. KOONIN:**  Yes, Your Honor.  This is Marc Koonin

8     again.  I'll be taking this one.

9              **THE COURT:**  Okay.

10             **MR. KOONIN:**  The bottom line, Your Honor, is that

11    this evidence is not supportive of whether or not it's more

12    probable that there were problems with Chimes.  It's

13    uncontested that Chimes had a dedicated team, that that team

14    was the best team, and that that team was separate.  Also,

15    there is evidence in the record, separate and apart from the

16    now-excluded Kathy Thames testimony, that some of the

17    measurements that were made with regard to other clients were

18    targeted as opposed to general audits.  In other words, they

19    can't be extrapolated.

20             So, when you put those two things together, it's not

21    relevant.  If there were problems with a different plan that

22    were being supported by a different team on a targeted audit

23    that can't be extrapolated, then it shouldn't be attributed to

24    Chimes.

25             **THE COURT:**  Well, as I understand it, if I can

1   interrupt you for a minute, don't I understand that FCE -- from

2   what I reviewed of the documents and the facts here, it's

3   contended that FCE used the same trust accounting system and

4   the same technology and even the same procedures for all of its

5   clients; did it not?  Isn't that what's in the record here so

6   far?

7            **MR. KOONIN:**  Well, hold on, Your Honor.  The trust

8   administrative system is not used at the claims processing

9   level.  There are claims for releasing the -- there are

10  portions of that software that are used to release payments or

11  to process the payments of the claim, but the actual initial

12  processing, that's not done with TAS, and it's handled by a

13  team, and Chimes had a dedicated team.  So it is correct to say

14  that, once the team processes a claim, that that claim is then

15  later -- the payment is processed, in part, through TAS, or was

16  at that time.  That is correct.

17           But the actual issue of how long it takes to process

18  the claims and what the application is of the exclusion rules

19  to the claim, whether there are mistakes made in the paperwork

20  or the input that goes into TAS, all that's different because

21  they have their own dedicated team doing that work.

22           **THE COURT:**  Well, what is the distinction between the

23  team and the matter specifically with respect to, as I

24  understand it, the same trust accounting system and the same

25  technology and the same procedures?  I know you emphasized the

1    difference in terms of the team that was involved, the actual

2    people on it, but what is the difference here in terms of the

3    matter of the computerization and the processing errors that

4    are alleged here?

5         **MR. KOONIN:**  Okay.  That's a good question, Your

6    Honor.  One of the Secretary's complaints, if you will, in this

7    case is that FCE did not use what's called auto adjudication,

8    so Your Honor might be working under the misimpression that TAS

9    is an auto-adjudication program.  It's not.

10         So the team members put the data -- they pull out

11    maybe paper, and they put data into the computer.  So, when you

12    have a different team that has different people doing the work

13    with different levels of quality perhaps, then, with the

14    computer, it's garbage in, garbage out.

15         We're not conceding that there was garbage, but the

16    point is, if there were entry errors on the paperwork or the

17    computer with a totally different team, that doesn't affect the

18    quality of this particular dedicated team.

19         **THE COURT:**  All right.  I understand what your

20    argument is.  I understand what your argument is.  I'm not sure

21    if you satisfactorily answered my question, but I understand

22    what the argument is.

23         I'd be glad to hear from the Government -- from the

24    Secretary on this.

25         **MR. DALIN:**  Yes, Your Honor.  It's Mr. Dalin.

1        So it is contested that the Chimes claims were

2   processed by a dedicated team.  Some people mentioned that in

3   deposition testimony, but you can see, in FCE's own claims

4   auditing records, that there are other persons besides those

5   mentioned who processed claims on team -- who processed claims

6   on the Chimes Plan.

7        The fact of the matter is FCE had one claims

8   processing department.  They all received the same training.

9   They worked according to the same protocols.

10       **THE COURT:**  Okay.  I understand.

11       **MR. DALIN:**  They had two outside auditors --

12       **THE COURT:**  I understand.  Quit while you're ahead.

13   I understand.  I understand.  I understand.

14       The joint Defendants' motion *in limine* to exclude

15   evidence of claims processing errors on plans other than the

16   Chimes is going to be denied.  This is Paper Number 471.  And

17   essentially, while the Defendants have argued that reports

18   relating to FCE's work for other plans is not relevant, the

19   simple fact of the matter is that it's relevant under Rule 401.

20   It goes to the weight, not admissibility, because the matter of

21   it addressing the alleged -- FCE's alleged negligent

22   operations.  And, to the extent that there is evidence of

23   third-party audits showing FCE had any systematic claims

24   processing errors or problems in terms of the same trust

25   accounting system and the same technology is relevant for this

```
 1    Court's review.

 2           I'm not making a finding one way or the other in

 3    terms of the weight that's accorded to it, but it certainly is

 4    relevant, and, for those reasons, Paper Number 471 filed by the

 5    Defendants -- the Defendants' joint motion to exclude evidence

 6    of claim processing errors, Paper Number 471, will be denied

 7    for the reasons set forth on the record.

 8           The next joint Defense motion that was filed on

 9    December the 5th as well is the joint Defendants' motion to

10    preclude the Secretary from offering evidence relating to

11    subsequent remedial procedures, Paper Number 4 -- I'm sorry.

12    Hold one second here.  Wait a minute.

13        (Pause.)

14           THE COURT:  Paper Number 473 is the next one I want

15    to address here.  And I'll be glad to hear -- essentially, I

16    don't need to hear from the Defendants on it.  I'm very clear

17    on what their view is, and essentially it's seeking to have the

18    Secretary be precluded from subsequent remedial measures that

19    Chimes took after the lawsuit was filed, and the Defendants

20    have argued that should be excluded under Rule 407 if it's

21    being used to show negligence or culpable conduct.  The

22    Secretary has responded that it does not intend to introduce

23    that evidence for showing negligence, but to impeach

24    Defendants' putative expert and to rebut the lack of

25    feasibility defense.
```

1    This is very simple.  This motion will be granted,

2    and it's granted, quite simply, for the fact that, when it

3    comes to Rule 407 and remedial procedures, I do not entertain

4    any dance around it, what could have been done, whatever.

5    Rule 407 is very clear to me.  It comes up in a lot

6    of cases, and I don't allow a lot of wiggle room around

7    Rule 407 when it comes to remedial measures, and I'm not going

8    to entertain any argument with respect to trying to rebut a

9    lack of feasibility defense with respect to trying to show that

10    there were feasible replacements, and, as far as I'm concerned,

11    those kind of efforts to get around Rule 407 don't go well with

12    me in any context in terms of any cases I have.

13    So it's very simple.  I've read the papers on it.

14    The joint Defendants' motion *in limine* to preclude the

15    Secretary from offering evidence relating to subsequent

16    remedial measures, Paper Number 473, will be granted for the

17    reasons clearly stated in the joint Defendants' motion, and it

18    will not be permitted.  So that will be granted for the reasons

19    set forth.

20    All right.  The next motion I have here to address is

21    the Defendants' joint motion *in limine* to preclude evidence of

22    extraneous lawsuits or investigations.  Give me one second.

23    (Pause.)

24    **THE COURT:**  Yes.  The next one I have here is the

25    Defendants' joint motion to preclude evidence of extraneous

 1    lawsuits or investigations, which is Paper Number 475, and

 2    essentially the Defendants have moved to preclude the Secretary

 3    from presenting any evidence with respect to other

 4    investigations or lawsuits relating to any other plan apart

 5    from Chimes.

 6         The Government, as far as I understand it, has agreed

 7    that it will not admit evidence as to Ward, but it contends

 8    that he may have evidence admitted for impeachment purposes or

 9    statements by a party opponent.

10         What is the Secretary's position on this?  I'm not

11    sure if I understand what the Secretary's position is on this.

12         **MR. DALIN:**  So, Your Honor, they're asking for a very

13    broad order excluding any evidence of other lawsuits or

14    investigations.  The Secretary agrees that this one example

15    that they provide with regards to Ward accepting an injunction

16    in another case is not something that's part of our affirmative

17    case.

18         You know, potentially, it could be relevant on

19    rebuttal, but it's not something that we're -- you know, we

20    stipulate we'll not be putting it into our affirmative case,

21    but there can be evidence that's, you know, connected to

22    another case; for instance, Raddock's testimony in another case

23    could be used for impeachment.

24         The Secretary subpoenaed documents in this case from

25    service providers.  FCE services a lot of plans, and they use a

1   lot of the same service providers for those plans, so we get

2   documents that may pertain to other plans besides Chimes just

3   because that's how those service providers keep those

4   documents.

5           Whether they're relevant or not is a case-by-case

6   decision.  As a blunderbuss order saying that no documents that

7   are related to any other investigation or lawsuit would

8   preclude such things as the Raddock transcript or financial

9   statements from service providers that mention the Chimes

10  Plan --

11          **THE COURT:**  Well, I don't know that that's the

12  breadth -- I don't interpret that to be the breadth of the

13  Defendants' joint motion.  The motion is to preclude evidence

14  of extraneous lawsuits or investigations.

15          I really don't care about other lawsuits or

16  investigations.  To the extent that there is a document that

17  somehow was in another case and you wanted to challenge the

18  testimony of a witness, I don't care what context the testimony

19  is.  If it's the testimony of a person, you're free to present

20  that if that testimony was under oath.  I don't care if it's a

21  deposition in a divorce case.  The person is under oath and

22  answers certain questions, you're free to challenge someone in

23  that regard, but, in terms of evidence of extraneous lawsuits

24  or investigations, I'm not really interested in challenging and

25  trying to attack Ward or anyone else as a fiduciary with

1       respect to those other investigations or lawsuits.

2              So essentially the motion will be granted, but it

3       doesn't mean that, if you have deposition testimony of someone

4       in another case and you want to challenge their testimony, if

5       it's impeaching, you're free to use it, but you're not free to

6       use it in the context of, well, there is another lawsuit or

7       another investigation.  Quite frankly, I'm not going to be

8       tainted by that in terms of acting, you know, as the finder of

9       fact in this case and making findings of fact and rulings of

10      law.  So, to that extent, Paper Number 475, the joint motion to

11      *in limine* to preclude evidence of extraneous lawsuits or

12      investigations, will be granted with that explanation for the

13      reasons set forth on the record.

14             Any questions about that from the point of view of

15      the Secretary?

16         (Pause.)

17             **THE COURT:**  Hearing none, okay.

18             Any questions from the point of view of the Defense

19      on that?  Hearing none, that motion --

20             **MR. KOONIN:**  No, Your Honor.

21             **THE COURT:**  That motion will be granted.

22             And so the next motion is the joint motion *in limine*,

23      Paper Number 476.  This is the motion -- at least the way I've

24      analyzed these with my notes and what have you, this is the

25      joint motion *in limine* to exclude evidence concerning

1    reasonableness of BCG's fees and contributions, and essentially

2    the Defendants have moved for exclusion of evidence regarding

3    the reasonableness of BCG's fees and charitable contributions

4    because it is not relevant after the dismissal of the BCG

5    Defendants from this case based upon my previous ruling.

6              And, as I understand it, the Secretary has responded

7    that the reasonableness of BCG's fees is still an open question

8    and is relevant with respect to the case against Chimes D.C.,

9    essentially arguing that my opinion was focused on BCG's

10   knowledge, not on the reasonableness of the fees.  I think

11   that's really the thrust of what all these motions are about.

12             So, with that, I'd be glad to hear from Defense

13   counsel on this, and then I'll give the Secretary an

14   opportunity to respond.

15             Who wants to argue this for the Defense?

16             **MR. SCHARLAT:**  This is Richard Scharlat.

17             **THE COURT:**  Okay.

18             **MR. SCHARLAT:**  If nobody stops me, I'll do it.

19             **THE COURT:**  Okay.  Go ahead.

20             **MR. SCHARLAT:**  And Your Honor basically summed it up

21   that any evidence about the reasonableness of BCG's fees is

22   out.  It's not relevant to any remaining issue in this case.

23   And I don't have much to add to what you already --

24             **THE COURT:**  Okay.  That's fine.  That's fine.  I

25   understand what your argument is.

1          All right.  Go ahead.  Let me hear from the Secretary

2     on this.

3          **MS. LIU:**  Your Honor, I believe the Court already

4     understands our argument.  Just because BCG is no longer a

5     party here doesn't mean that its payments are irrelevant to the

6     claims that are still live.

7          **THE COURT:**  Yes.  That's enough from the Government,

8     because I think the Government is absolutely correct on that.

9     My ruling on BCG has to do with the BCG's knowledge, and did

10    not in any way relate to the reasonableness of the fees, and so

11    I think the Secretary is correct on this point.  BCG's fees and

12    contributions are still relevant to the case to be presented

13    against the Chimes Defendants.

14         So, for that reason, the Defendants' joint motion *in*

15    *limine* to exclude evidence concerning reasonableness of BCG's

16    fees and contributions, Paper Number 476, will be denied for

17    the reasons set forth on the record.

18         So that the next motion here we have is, I think --

19    we have two more here, joint motions, and this would be Paper

20    Number 483 -- hold on one second here.  Wait a minute.

21    (Pause.)

22         **THE COURT:**  Wait one second here.

23    (Pause.)

24         **THE COURT:**  Hold on one second here.  Wait a minute.

25         No.  I think we missed one here.  Let's do 472.

1    Haven't done 472 yet.  I had my notes here on that.

2          We have two motions left here on joint Defense

3    motions, and there is the joint Defendants' motion to preclude

4    the Secretary from offering expert opinion testimony in support

5    of claimed damages for the years 2010, 2016, and 2017.  And

6    that is Paper Number 472.

7          And I'll be glad to hear from the Defendants on that,

8    and then I'll hear from the Secretary on his response.

9          **MR. MEREDITH:**  Good afternoon, Your Honor.  This is

10   Mark Meredith on behalf of the joint Defendants for this motion

11   *in limine*.

12         **THE COURT:**  All right.

13         **MR. MEREDITH:**  As the papers set forth, the motion is

14   really a very limited motion to exclude the expert testimony

15   for years 2010, '16, and '17 based on the theory that the

16   Secretary had those 5500s well before the time the expert's

17   opinion was served.

18         The Secretary appears to concede this argument in

19   their paper.  They say that, to the extent that the Defendants

20   seek to exclude the Secretary's expert opinion to demonstrate

21   damages in 2010, '16, and '17, that no such exclusion is

22   necessary because the expert report only analyzes 2011 through

23   '15, which we take to be an admission and a concession that, in

24   fact, they do not dispute the relief we request.

25         However, I did want to just briefly address the

1   Secretary's additional arguments, which appear to be that, in

2   fact, even if there is not expert testimony regarding 2010,

3   '16, and '17, that they should not be excluded from introducing

4   evidence of damages of those years, and, to that, we would only

5   say we don't know how they'll get that evidence in if they're

6   not relying upon expert testimony.  The cases they cite in

7   their motion *in limine* -- *Pender*, for example -- relies on an

8   expert opinion regarding profit.  So our position would be that

9   their distinction between profit and damages seems to be

10  dancing on the head of a pin.

11          And then, secondarily, we would just point out that,

12  to the extent they're seeking an accounting or equitable relief

13  under 502(a)(5) with respect to BCG, that relief requires

14  knowingly participating in that violation, and the Court has

15  already ruled that BCG, based on your previous opinion, did not

16  knowingly participate in that violation.  And so, to that

17  extent, the DOL's relief regarding evidence should be

18  precluded.

19          **THE COURT:**  All right.  Well, thank you very much,

20  Mr. Meredith.

21          And, with that, I'd be glad to hear from you,

22  Mr. Dalin, on the Government's response on that.

23          **MS. LIU:**  Your Honor --

24          **THE COURT:**  Oh.  I'm sorry, Ms. Liu.

25          **MS. LIU:**  Katrina Liu.  I'm going to take that one.

1          **THE COURT:**  Okay.  Go ahead, Ms. Liu.  I'm sorry.

2          **MS. LIU:**  Sure.  So, to the extent of -- Defense

3     counsel is correct.  The expert -- our expert -- excuse me --

4     does not submit an opinion for 2010, 2016, 2017, but the way I

5     understood the motion was that they seek to preclude all

6     evidence of damages entirely if it is not in the form of an

7     expert opinion for which they cite no authority.

8          And so the Secretary seeks to admit what evidence he

9     has regarding damages for those years, and I think, to the

10    Court's earlier point, that is a question of weight, not

11    admissibility.  And, to respond also to what I understand to be

12    the argument that, because BCG was able to defeat the

13    Secretary's claim of knowing participation, that somehow that

14    means that damages that the Plan incurred in relation of

15    payment of fees to BCG cannot -- that we cannot pursue those

16    damages.  I don't quite understand the foundation for that.

17         **THE COURT:**  Well, I think I understand what the basis

18    is on that, Ms. Liu, is that essentially the Defendants are

19    moving to preclude expert testimony on damages for any years

20    other than 2011 through 2015.  And the Amended Complaint -- the

21    operative Amended Complaint as to which we're proceeding next

22    month at trial -- hold on one second.  I'm about to sneeze.

23    Excuse me.

24         (Pause.)

25         **THE COURT:**  Excuse me.  I'm sorry.  I had to sneeze.

1    I didn't want to have the court reporter have to put that on

2    the record.  He's good, but he's not that good.

3        (Laughter.)

4        **THE COURT:**  The Amended Complaint that was filed in

5    2015 alleges that 2008 through the present -- and I've already

6    made a decision on limitations precluding evidence from 2008 to

7    2009, and the Secretary's own expert report only includes

8    damages for 2011 and 2015, so that there was no basis for the

9    Secretary offering expert testimony in support of any damages

10   for any other years -- specifically, 2010, 2016, and 2017 --

11   because it's not considered by Mr. Naugle in his report, if I'm

12   pronouncing his name correctly.

13       The response that the Secretary is not required to

14   use an expert to present damages evidence, I'm afraid, without

15   getting in too deep into the legal analysis here, that's what

16   I'm going to expect with respect to supporting damages and a

17   demonstration of loss to the Plan, and that's really the

18   essential matter I have to address.

19       So this motion filed by the Defendants will be

20   granted.  There is no basis for me to consider anything other

21   than the damages for the years 2011, '12, '13, '14, and '15,

22   and there will be no basis for offering expert testimony in

23   support of any claimed damages for the years 2010, 2016, and

24   2017.  So, for those reasons, Paper Number 472, the joint

25   Defendants' motion, will be granted.

1          So, with that, we have one more joint motion, I

2     believe, joint Defense motion here, and that is the Defendants'

3     joint motion to preclude the Secretary from offering evidence

4     relating -- I'm sorry.  Wait a minute.

5          It's Defendants' joint motion to preclude the

6     Secretary from offering evidence, including expert testimony,

7     in support of any claim that alleged excessive fees paid to FCE

8     by the Chimes Health & Welfare Plan exceeds $2,931,000,

9     et cetera, and that, I think, is the last joint motion here if

10    I'm not mistaken.  And, as to that, I think that that would

11    appear -- and you all can correct me if I'm wrong on this, and

12    I'll certainly give the Defendants the opportunity on this to

13    distinguish it, but I think this relates in many ways to my

14    previous denial of the joint motion to exclude evidence

15    concerning reasonableness of BCG's fees and contributions.

16         That was Paper Number 476, in which I denied that

17    motion, noting that the fees and contributions may be still

18    relevant as to the case against Chimes and the matter of

19    precluding evidence, including expert testimony, in support of

20    any claim of alleged excess fees because essentially the

21    Defendants have argued that the claims against BCG are now out

22    of the case, but I think the position of the Government is that

23    those claims include failing to prudently and loyally monitor

24    the Plan expenses.

25         So it seems to me that the same analysis would be

 1    attendant to this particular motion, but I'll be glad to hear

 2    from Defense counsel on this, and then I'll give Government

 3    counsel an opportunity to respond, but it would certainly

 4    appear that it relates to the same issue, that, even though BCG

 5    is out of the case, it doesn't mean that expenses and/or fees

 6    and contributions, et cetera, and claims and fees paid still is

 7    not relevant as to the claims against Chimes, but I'll be glad

 8    to hear from Defense counsel on this.

 9         **MR. SCHARLAT:**  Thank you, Your Honor.  This is

10    Richard Scharlat.

11         I think this is actually a little different, and I

12    think, at the end of the analysis, the Secretary and Defendants

13    don't really fundamentally disagree.  What we've presented --

14    what we've presented -- hello?  What we've presented to the

15    Court -- and maybe somebody should mute the phone.

16         What we've presented to the Court on Page 2 of our

17    motion, in the chart, is a calculation which is taken directly

18    from Table 12 of Mr. Naugle's report.  That is a very targeted

19    number.  That number is the direct excessive fees that the

20    Secretary claims were paid to FCE.  We calculate that number

21    based on Mr. Naugle at 2.931 million.

22         **THE COURT:**  Yes.  I've got that in front of me right

23    here.  It's right here, and it's for the years I've mentioned,

24    2011, '12, '13, '14, and '15.

25         **MR. SCHARLAT:**  Correct.

1          THE COURT:  Okay.

2          MR. SCHARLAT:  And I actually think it's more akin to

3     the last motion Your Honor ruled on, you'll see in a minute --

4          THE COURT:  All right.

5          MR. SCHARLAT:  -- and that's why we've stuck to those

6     numbers, because that's what Mr. Naugle said.

7          The Secretary, however, provides a chart in its

8     opposition, which puts apples and oranges together, which is

9     fine, except that it's sort of -- it confuses the issue.

10          If Your Honor looks at that chart that the Secretary

11     did, in the first little box next to the one that says "Year,"

12     you see the Secretary combined direct and indirect fees.

13     That's how their number got higher.  They included the 2.204

14     indirect fees to get to the 5.8.

15          THE COURT:  All right.

16          MR. SCHARLAT:  I have not been able to figure out,

17     Your Honor, why there is a difference between 3.6, which the

18     Secretary admits is the excessive direct compensation actually

19     paid to FCE, and our 2.9, which we say is that same number.

20          THE COURT:  All right.

21          MR. SCHARLAT:  The point of this, Your Honor, is that

22     this is the only -- besides BCG -- and I understand Your Honor

23     saying that's still in the case.  Besides BCG, this is the only

24     number for which Mr. Naugle does an expert analysis.

25          To get up to the 8.3 -- putting aside the indirect,

1    to get up to the 8.3 number that Mr. Naugle mentions on Page 24

2    of his report, in a little line under his chart, the Secretary

3    wants this Court to add up all -- and the parties to add up all

4    the vendor charges and fees in Attachment I to Mr. Naugle's

5    report without presenting any reasonableness analysis at all

6    with regard to those fees.

7         The Secretary wants this Court to hear and consider

8    evidence that a lump sum of unanalyzed payments should be held

9    against us and should be considered to potentially be

10   unreasonable.  There is nothing in Mr. Naugle's report or

11   otherwise in the record to show any payments to Wachovia, to

12   Trucker & Huss, to The Arc of San Diego, whatever the amounts,

13   were unreasonable.

14        That's why we focused on FCE, Judge, because that's

15   the only -- besides BCG, that's the only analysis Mr. Naugle

16   does with regard to excessive direct fees, and our point is the

17   Secretary should be limited to that 2.9 number.  We can figure

18   out the difference between the 2.9 and 3.6, but that should be

19   limited, and that's all he does analysis on.

20             **THE COURT:**  All right.  Thank you very much.

21        And I'll be glad to hear from the Government.

22             **MR. DALIN:**  Yes, Your Honor.  Chimes Defendants are

23   misrepresenting Naugle's report.  So, first of all, the 8.3

24   number is Mr. Naugle's analysis of excess fees in aggregate, so

25   he looked at all Plan expenses, benchmarked it against a sample

1    of plans that he developed, and determined that the Plan paid,

2    in total, to all service providers, which includes FCE and BCG,

3    but also many other service providers, 8.3 million in excess

4    fees in the years at issue.

5         We've pleaded in Count 1 of the Complaint that the

6    Plan paid excess expenses for all service providers.  That's

7    where that number comes from.  His methodology for coming to

8    that number is set forth in the report.  He does not need to do

9    a vendor-by-vendor analysis.

10        One of the cases that Defendants cite in their own

11   motion, the *Baltimore Aircoil Company, Inc.* case says that,

12   where an expert is providing a broad lost profits analysis, the

13   expert doesn't need to do a vendor-by-vendor analysis under --

14        **THE COURT:**  That was Judge Blake's -- that was

15   Judge Blake's opinion about two years ago.  Go ahead.

16        **MR. DALIN:**  Yes.

17        **THE COURT:**  Yes.  I'm familiar with it.

18        **MR. DALIN:**  It stands for the opposite of what Chimes

19   is arguing now.

20        The FCE number that they cite is -- they rely on

21   Table 12, which is the wrong table.  We asked Naugle to just

22   provide an opinion of whether the stated rate in the adoption

23   agreements are reasonable based on the stated rate.  That's

24   Table 12.

25        He calculated his damages, though, off of actual

1    expenses paid, which is Table 17.  So the problem is we keep

2    coming back to this problem.  There is stated expense rates in

3    the agreement, but we don't have any contemporaneous invoices

4    or records showing how they actually calculated the fees that

5    they actually charged.  But we know the actual aggregate

6    amounts charged from the bank records that we subpoenaed and

7    records that we subpoenaed from third-party providers.

8         So Naugle used those numbers, the actual amounts

9    paid, to calculate his damages.  That's Table 17.  That's how

10   the Secretary gets to his number of 3.6 million of direct

11   compensation paid to FCE.  That's the amount based on the

12   actual expense paid.  That's the right table.

13   **THE COURT:**  All right.  Well, I think that this is

14   the kind of thing that will have to await the trial of the case

15   in terms of this analysis, but I'm going to essentially deny

16   the Defendants' motion at this point in time for the following

17   reason:  That, with respect to the overall calculation of 8.3

18   million and the gap between that figure and the amount of

19   compensation paid to FCE specifically, I think that it

20   appropriately lists any excessive expenses paid by all service

21   providers, but not limited to FCE.

22        And I think that, as I recall, there is another case

23   that I had -- I'm drawing a blank on the name of it -- that I

24   think you all cited somewhere as well, where I was consistent,

25   a year later from Judge Blake's opinion.  I think it was

1    *Mathias* -- the *Mathias* case, if I recall.

2          And so, for those reasons, essentially the

3    Defendants' joint motion to preclude the Secretary from

4    offering evidence of any claim in excess of 2.9 will be denied.

5    Paper Number 483 will be denied.

6          All right.  Now, where we are now is that we still

7    have FCE Defendants' motions, and there are three or four of

8    those, as I recall, and then we have -- actually, it's more

9    than four, I think.  Then we have the Chimes

10   Defendants' motions.

11         I don't want anyone to get off the line here, but I

12   would like, just out of courtesy for the court reporter for a

13   minute, we can just take a little bit of a break.  We're going

14   to take about five minutes.  You'll have a live mic open over

15   there, and we'll just take no more than a five-minute break

16   here, so we'll get started.  I'll be back on the line here in

17   about five minutes.  Everybody stand by.  Don't hang up the

18   telephone.  Everybody stay on the line, and no more than five

19   minutes.  We'll take a five-minute break.

20         Everybody good with that?

21         **MR. KOONIN:**  Thank you, Your Honor.

22         **THE COURT:**  Okay.  We'll take a five-minute break,

23   but --

24         **MR. KOONIN:**  Yes, Your Honor.

25         **THE COURT:**  -- everyone keep the lines hooked up

1    here.  Okay.  Thank you.

2        (Recess taken, 5:23 p.m. - 5:29 p.m.)

3            THE COURT:  Okay.  We're back on the line here where

4    the court reporter is back.  Mr. Giordano needed to take a

5    break, and we're ready to roll here.

6            I did hear on the phone that one of the counsel for

7    Ms. Ward had left the call.  Rebecca Strandberg is no longer on

8    the line.  Is there somebody still on the line for

9    Marilyn Ward, because I know I have a motion to deal with for

10    her in a few minutes here.  Who is still on the line for --

11            MR. WEATHERFORD:  Yes, Your Honor.  Scott Weatherford

12    is still on the line.  I'm not sure why Rebecca dropped.  Maybe

13    she had another meeting, but I'll be on the line.

14            THE COURT:  That's fine.  You're still on Texas time,

15    so you're still --

16        (Whereupon, Ms. Strandberg entered the call.)

17            THE COURT:  All right.  Now she's back again.

18    Ms. Strandberg, I wasn't sure if you were still here or not.

19            MS. STRANDBERG:  I'm sorry.

20            THE COURT:  That's all right.

21            MS. STRANDBERG:  I'm sorry.  I accidentally hit the

22    button, so I had to call back in.

23            THE COURT:  That's quite all right.  That's quite all

24    right.  Better to hit the button and go off than hit a live

25    button and not know you're on it, so that's fine.

1          (Laughter.)

2              **THE COURT:**  It's been fatal to many people on more

3    than one occasion.

4          Okay.  Here we go.  Let me just go over, if we can,

5    in terms of the FCE Defendants' motion, plowing through these,

6    the few others that I've got to get to, just give me a second

7    here, but the FCE Defendants' motion *in limine* number one,

8    which is Paper Number 464, essentially the motion is to exclude

9    evidence and argument in support of what the Defendants

10    consider to be a new fiduciary theory that the Defendants

11    contend was not in the operative Complaint.

12          The Secretary has responded that it's within the

13    ambit of Rule 8 and was appropriately pled.

14          I'd be glad to hear from the Defense counsel on this

15    first.

16              **MR. KOONIN:**  Yes, Your Honor.  This is Marc Koonin.

17          So, first of all, this theory was not pleaded in the

18    Complaint or the Amended Complaint, and it was introduced for

19    the first time at oral argument on the motion for summary

20    judgment, and Your Honor may recall that I objected to it at

21    that time.

22          Now, Rule 8, the liberal pleading rule under Rule 8,

23    assuming it applies, which we don't think it does here, but

24    let's assume that it did.

25              **THE COURT:**  Why would it not -- excuse me.  Why would

1   it not apply?

2       **MR. KOONIN:**  Well, Rule 8 applies, but, when you

3   specifically plead theories on specific fiduciary theory and

4   you leave out the one theory that you tried to introduce a

5   month and a half before trial, and you say, oh, it was hidden

6   in the Complaint all the time, I don't think that that is what

7   the case law supports.  But, even more to the point, the

8   liberal pleading standard of Rule 8 is predicated on getting

9   information in discovery.

10       The Secretary never disclosed this theory in

11   discovery.  We served discovery asking for a description of the

12   facts and the theories behind alleged fiduciary breaches, and

13   alleged prohibited transactions, and I went back and I looked

14   at the responses.  The words "investment" and "investment

15   advisor" are not in those responses, Your Honor.  This is pure

16   sandbagging, and it's unfair to do this now at this point in

17   the litigation.

18       It's a gotcha moment.  It was expressly left out of

19   the theory of fiduciary responsibility by its absence in the

20   allegations about why FCE is allegedly a fiduciary, and it was

21   not identified in discovery.

22       And, in all fairness, Your Honor, Your Honor has

23   ruled that Ms. Thames' deposition can't come in and the expert

24   can't rely on it because that would be unfair to the Secretary

25   because of the timing.  How is this fair?  How is it right that

1    something that's not identified in the pleadings, not

2    identified in the motions, and not identified in discovery can

3    now be introduced now?  That's not fair.

4         **THE COURT:**  All right.  I'd be glad to hear from the

5    Secretary on this.

6         **MR. DALIN:**  Yes, Your Honor.

7         The Secretary pleaded in the Complaint and also

8    stated in discovery responses that FCE was a fiduciary by way

9    of recommending, negotiating, and executing the Plan's

10   agreements with service providers.  Under the definition of

11   "fiduciary," that satisfies all three subparagraphs.  The

12   Secretary doesn't need to say the word "investment advisor" in

13   its discovery responses.  We provided the facts by which our

14   theory rests that FCE is a fiduciary.

15        We raised this argument in summary judgment in

16   connection with the prohibited transaction exemption contained

17   in the regulation 29 CFR § 2550.408, which cites an illustrated

18   example wherein an investment advisor recommends purchase of an

19   insurance policy, and it's a prohibited transaction because the

20   investment advisor collects a commission in connection with

21   that transaction.

22        That's directly applicable to what FCE did here.  The

23   important part of that example isn't that the party is

24   necessarily an investment advisor; it's that they're a

25   fiduciary.  In that example, they're a fiduciary by way of

1  being an investment advisor.  FCE is a fiduciary with regards

2  to these transactions under all three subparagraphs of the

3  definition of a "fiduciary."  They exercised discretionary

4  control of Plan assets.  They recommended to the Plan what

5  contracts to enter into, which is recommending to the Plan how

6  to spend its money.  And they also had discretionary control

7  over administration of the Plan.

8         Those facts were set forth in the Complaint, had been

9  set forth throughout discovery.  The Secretary isn't required

10  under the notice pleading standard to say magic words or

11  reference every subparagraph of every provision that may be

12  implicated in connection with the facts pleaded in the

13  Complaint.

14         **THE COURT:**  All right.  Well, the simple fact of the

15  matter is I'm going to deny this motion at this point in time,

16  and the Secretary may present evidence which it feels relates

17  essentially to the matter of investment advice, but I will tell

18  you that, while I'm denying the motion, I don't intend to give

19  that a whole lot of weight, and, at the trial of this case,

20  this is really not what the trial of this case is about in

21  terms of investment advice.

22         So I'll permit the Secretary to introduce it, and I

23  will deny the motion, but, at the bench trial, I don't view

24  this case -- in terms of the breach of fiduciary duties and my

25  knowledge of the facts of this case, I don't see this as being

1    an investment advice case, just to let you know that that's my

2    view of the evidence, and it remains to be seen, but that's my

3    view of it.

4         But I'll deny the motion, and I'll permit the

5    Secretary to introduce evidence with respect to a fiduciary

6    theory.  I think that it is sufficiently within the ambit of

7    Rule 8 and *Twombly* and *Iqbal* and all the other cases, but I

8    don't anticipate it being granted -- I mean, I don't anticipate

9    there being a great deal of weight accorded to that, quite

10   frankly, as long as the Secretary understands that.

11        So, with that, the next motion of the Defendants',

12   motion *in limine* of the FCE Defendants, is to exclude testimony

13   of Diane Lapin and what it contends is an inadmissible e-mail

14   chain, and this has to do with essentially Ms. Lapin being an

15   informant whose name was initially withheld by the Government

16   under the Government informants privilege, and the FCE contends

17   it has been prejudiced and deprived of deposing her to provide

18   a defense.

19        And, with that, I'll be glad to hear from Defense

20   counsel, and then I'll hear from the Secretary.

21        **MR. KOONIN:**  Thank you, Your Honor.  This is

22   Marc Koonin again.

23        There is two parts to this, and I'd like to address

24   them separately.  So one part has to do with the e-mails that

25   contains an e-mail chain from a third party that alleges that

1    FCE says something that -- that FCE allegedly did, is allegedly

2    unethical, and we objected to this when the Secretary produced

3    its declaration for the first time.  I flagged for the

4    Secretary that Ms. Lapin cannot authenticate a communication

5    from somebody else and that a version of that e-mail has been

6    produced three times in the record that did not have that

7    surplusage, and we gave them an opportunity to switch it out,

8    and they didn't do that, okay?

9         Whatever else Your Honor rules about Ms. Lapin and

10   whatever else she can authenticate, she cannot authenticate an

11   e-mail chain on which she was not copied, okay?  And it's clear

12   that that chain is in there solely to cast aspersion on our

13   client, particularly when we've already pointed out to the

14   Secretary that versions in the communication that Ms. Lapin

15   alone was copied on exists and that they could switch that out,

16   but they declined to do that.  So that's the first issue.

17        The second issue is:  One of the Secretary's key

18   arguments for why it was okay not to disclose Ms. Lapin

19   previously and not to give us an opportunity to explore issues

20   related to Ms. Lapin is that she was supposedly -- there was a

21   concern that she could be retaliated against because FCE sent

22   letters to its employees reminding them that they had to honor

23   their nondisclosure agreements with regard to HIPAA and trade

24   secrets.

25        Your Honor may recall -- it's been some time, but

1    this argument was already rejected by this Court back when the

2    Secretary sought to have a protective order regarding the

3    Donna Zapata issue.  They specifically cited this as a theory

4    that employees were being intimidated in their motion, which

5    was ECF 165, and Your Honor allowed me to participate by phone,

6    and I very much remember that Your Honor told them that that

7    letter was a standard business letter, there was nothing out of

8    the ordinary about it, and Your Honor denied their motion at

9    ECF 187.

10           So the whole basis of this supposedly keeping

11   Diane Lapin as a secret witness is the theory that she got a

12   vanilla, bland business letter telling her not to disclose

13   HIPAA information and trade secrets that Your Honor has already

14   told the Secretary was okay back -- I want to say -- I think

15   that was in early 2017.

16           So they had Your Honor's ruling on that for over a

17   year, but they apparently nevertheless use that as an excuse to

18   hide her until now.

19                   **THE COURT:**  All right.  Well, thank you very much.

20           I'd be glad to hear from the Secretary on this.

21                   **MR. DALIN:**  Yes, Your Honor.

22           Former employees get retaliated against.  We enforce

23   20-something retaliation statutes here at the Department of

24   Labor.  We get these cases all the time where former employees

25   get blackballed in the industry or in the local market by the

1    former employer because they spoke or the employer believed

2    that they spoke to the Government, so we take that very

3    seriously.  We assert the privilege.

4        Here, it doesn't matter.  We produced these e-mails

5    to Defendants in February of 2017.  The e-mails aren't

6    redacted.  Diane Lapin's name is on them.  We didn't withhold

7    her name from the evidence itself.  We stated in our initial

8    discovery responses in, I believe, February of 2017 that there

9    is an informant who can testify that FCE solicited donations

10   from other service providers on behalf of the Chimes Plan.

11       The only thing that wasn't disclosed to FCE pursuant

12   to the Government's now informants privilege is that it was

13   Diane Lapin who could tell us that, and we have the right to

14   assert that privilege out of, you know, fear of retaliation,

15   and, you know, FCE's argument here is really a motion to compel

16   argument.  They had that motion to compel.  You know, they

17   didn't pursue it any further.

18       She can't be excluded when the Secretary has properly

19   raised the privilege, having the Secretary signing a

20   declaration asserting the privilege, and we disclosed all the

21   underlying information to Defendants two years ago.

22       **THE COURT:**  As I understand it, the discovery in this

23   case did close in January of 2018, and the identity of

24   Ms. Lapin was not disclosed specifically until October 30th of

25   this year, 2018.  Is that correct?

1    **MR. DALIN:**  We asserted the informants privilege as

2    to her identity.  We produced the e-mails, though, that have

3    her name on them.

4         **THE COURT:**  That have --

5         **MR. KOONIN:**  Your Honor?

6         **THE COURT:**  My question to the Government:  Is it

7    correct that the discovery closed at the end of January of this

8    year, say ten months ago, almost eleven months ago, and that

9    the identity of Ms. Lapin in terms of being the informant was

10   withheld until October 30th, 2018, when a declaration from her

11   was produced authenticating the e-mails which had been

12   previously referenced?  Is that correct, or not?

13        **MR. DALIN:**  Yes.  We disclosed her as a trial witness

14   in October.  We disclosed, in response to discovery, persons

15   who have knowledge of the facts except to the extent that we

16   had asserted the informants privilege over certain employees or

17   former employees.

18        **THE COURT:**  All right.  Well, with respect to that,

19   the basic principle of fairness has to apply here, and there is

20   absolutely no public interest in holding that until six weeks

21   ago.  This is December the 17th.

22        **MR. DALIN:**  Your Honor, there is ample case law that

23   says we can withhold names until ordered by the Court.

24        **THE COURT:**  I've read the case law.  Mr. Dalin --

25   Mr. Dalin, I'm well aware of your expertise in this area, and,

1  believe me, I've tried more than a few cases, and, with all due

2  respect to you, this is not just a narrow area of labor law,

3  okay?  So you don't need to cite the cases to me with respect

4  to -- there is literally -- there is a Fourth Circuit case in

5  2018 that absolutely rejects your argument, so I don't want to

6  hear a lecture from you on labor law.  This has nothing to do

7  with labor law.  This has to do with trial lawyers trying

8  cases, and it's way too cute to come up on October 30th and say

9  on December 17th, "We notified them."  You notified them six

10  weeks ago.

11         That does not cut it with this trial judge, period.

12  And there is loads of authority in that regard.  So this motion

13  is granted.  And, if I had any idea you were going to -- you do

14  that at your own peril, sir.  You do it at your own peril.

15         And it has nothing to do -- this is basic trial law

16  in the federal court of the United States, and it's true in

17  criminal cases.  It's true in civil cases.  It's across the

18  board.  It's well stated in a case that you may or may not be

19  familiar with under criminal law known as *Roviaro*.  It's true

20  across the board, and so we're not going to get caught in the

21  weeds over what you think how it's defined under labor law.

22         I don't mean to be quip with you, but I don't think

23  that's fair, okay, and I've spent enough time in a courtroom.

24  When I see something that's fundamentally unfair on either

25  side, I'm going to call either side out on it, and that is way

1    too cute.  So whoever made the decision for the Secretary to

2    disclose them on October 30, 2018, and then placed you in a

3    position of trying to defend it six weeks later, you cut it way

4    too close.  So this motion is granted, and the testimony of

5    Diane Lapin will be excluded, and the e-mail chain will be

6    excluded for the reasons indicated on the record.  So Paper

7    Number 465 is granted for the reasons set forth on the record.

8         All right.  And we'll move along.  I don't of any

9    grudge against the Secretary on this, Mr. Dalin.  I'll keep my

10   mind open on each motion, but that one was way too cute, and

11   the Secretary's position is untenable as to that, and that

12   motion will be granted for those reasons.

13        All right.  The third motion to address now is the

14   FCE Defendants' motion *in limine* number three to exclude

15   evidence relating to benefit plans other than the Chimes, and

16   that is Paper Number 3, and I'll be glad to hear from Defense

17   counsel on that.

18        **MR. KOONIN:**  Yes, Your Honor.  Marc Koonin again, and

19   I'm going to be addressing all of these for FCE.

20        I know that Your Honor has ruled that general

21   evidence of claims processing may be permitted, and so I'm not

22   going to reargue that motion, but that is not the only kind of

23   evidence relating to other plans that the Secretary has

24   indicated he may offer.

25        In particular, the Secretary has referenced several

1      documents having to do with a former FCE client, TRDI.  That's

2      the initials of Training Rehabilitation Disability, Inc., I

3      believe, or, in any event, as the Secretary well knows, there

4      was a lot of very, very contested litigation in both state and

5      federal court simultaneously involving TRDI, and I was involved

6      in that litigation, and, in discovery, the Secretary attempted

7      to help our opponents by providing them with documents, and it

8      also came out in discovery that they had obtained documents

9      from the TRDI counsel.

10            And so they've listed, for example, a Plan document

11     for TRDI as one of their trial exhibits, and I know we haven't

12     gotten to it yet, but they list this privileged communication

13     relating to TRDI's in the trial exhibits -- as a trial exhibit,

14     and I don't know what else they have out there that's not

15     related to claims, but the bottom line is FCE administers at

16     any given time over a hundred plans, and, over the years, there

17     is turnover.  So, for all I know, going back eight years, you

18     know, it could be 150, it could be 200.

19            But bringing in -- Your Honor has already ruled that

20     evidence related to other litigation is excluded.  Evidence

21     that relates to totally different plans that have this

22     different benefits packages, different sizes, some are private

23     sector, some are public sector, or non-profit, I should say --

24     not public sector, but non-profit -- that's not relevant.  It

25     will require a lot of time if we have to dig up what the

1    dispute was and address that at trial.

2        And the only reason that the Secretary says that this

3    is relevant is they say:  Well, see, the documents here are

4    different.  You've produced more express language about whether

5    FCE is a fiduciary.  Well, unsurprisingly, FCE, like most

6    businesses, updates its records and forms from time to time.

7    The fact that it makes something more express or more clear as

8    it develops forms over time doesn't really have anything to do

9    with whether the prior form is sufficient to set forth its

10   status as a non-fiduciary.

11       **THE COURT:**  I understand.  I understand your

12   argument.  I understand.  I understand.  And the documents

13   you're relating to, I think, is another motion.  Is that the

14   Trial Exhibit 164, the attorney-client and work product

15   privilege e-mail chain?  Is that to which you're referring to

16   as well?

17       **MR. KOONIN:**  Yes.

18       **THE COURT:**  All right.  Then I understand.  I got it.

19   I understand.  I understand.  All right.  That's fine.

20       I'd be glad to hear from the Government.

21       **MR. KOONIN:**  Wait.  I don't want to beat a dead

22   horse, but it's not relevant.  It's going to require a mini

23   trial, and I think the Secretary is, frankly, being a little

24   cute, because the Secretary has already gotten all of this, you

25   know, evidentiary discovery in other litigation from other

1    counsel.

2         **THE COURT:**  I understand.  I understand.  We're

3    trying to -- it's getting late here.  I'm trying -- I

4    understand.  I'm trying to let you all --

5         **MR. KOONIN:**  Okay.  I'm sorry, Your Honor.  I'm done.

6         **THE COURT:**  We're not going to argue at length every

7    one, as I told you all before almost two hours ago.  We're

8    trying to get through these.

9         All right.  I'd be glad to hear from the Government

10   on this.

11        **MR. KOONIN:**  All right.  I'm finished, Your Honor.

12        **THE COURT:**  It seems to me that this relates also to

13   the matter of, as I understand it, the work product issue with

14   respect to the e-mail chain and Mr. Crutcher with respect to a

15   dispute between FCE and Training and Rehabilitation, as I

16   recall as well, and this is woven together.  The two of them

17   are woven together; is that not correct, Mr. Koonin?

18        **MR. KOONIN:**  It's correct to a point, but there is a

19   couple of minor additional points with that one.

20        **THE COURT:**  Don't worry about it.  I don't need the

21   additional points.  I've read it.  I've read it.

22        **MR. SCHARLAT:**  Yes, Your Honor.

23        **THE COURT:**  Go ahead.  The Government will respond

24   now on, first of all, the matter to exclude evidence relating

25   to benefit plans other than the Chimes Plan, and I think that

```
1    what is tied in with that is also this matter with respect to a

2    discovery issue with respect to disclosure of what the Defense

3    contends is attorney-client and work product privilege as to

4    another matter, but just go ahead, Mr. Dalin -- I'd be glad to

5    hear from you -- or Ms. Liu, whoever is going to address this.

6              MR. DALIN:  It's Mr. Dalin, Your Honor.  Just to be

7    clear, do you want me to address the e-mail issue in this

8    argument, or --

9              THE COURT:  No, no.  Just quickly address this in

10   terms of the matter of essentially the Defendants' motion in

11   limine to exclude evidence relating to benefit plans other than

12   the Chimes Plan.  I've essentially already addressed this

13   issue; have I not?  We're not going to have mini trials here.

14             MR. KOONIN:  I think you have, Your Honor.

15             MR. DALIN:  There is a little bit of difference from

16   the earlier motion, but, first, we need to address FCE's

17   allegations that the Secretary was sharing information with

18   TRDI in their case.  That didn't happen.  There is a provision

19   of the Act where a plan can request records from the Department

20   of Labor with regards to its plan -- the plan's representative

21   can request.  So they may have filed a request for information

22   that the Government is required by law to respond to, so maybe

23   that's how they got some documents.

24             The document that Mr. Koonin references, which is the

25   adoption agreement for the TRDI plan, is in the public record
```

1    in that lawsuit, and I believe FCE even filed it. We just got

2    it from public records. And we're not going to be putting into

3    evidence any allegations from that case, any results of that

4    case.

5         **THE COURT:** Well, let's go to the parent one. Let's

6    go to the big picture. Before we get to the document issue,

7    which may be moot dependent on how I rule on this issue,

8    address the matter of evidence being presented with respect to

9    benefit plans other than the Chimes Plan.

10        **MR. DALIN:** So, to interpret a contract, a party can

11   put in evidence of another contract that the party has in order

12   to glean the meaning of the terms when comparing the two, so

13   the adoption agreement in the TRDI case is an FCE adoption

14   agreement. It looks very much the same as the Chimes adoption

15   agreement, but some terms are different.

16        So FCE is arguing in this case that certain

17   provisions remove discretion from it in this case; it wasn't

18   acting with discretion per the terms of the Plan. But you can

19   see in the TRDI adoption agreement, which they drafted, that

20   they use different language when trying to remove itself from

21   having discretionary authority, more direct language in TRDI,

22   which Courts can look at in reaching a conclusion about the

23   meaning of the terms --

24        **THE COURT:** I understand. I understand your

25   argument. The bottom line on this is -- the bottom line on

1   this is in terms of a presiding judge in a bench trial here,

2   Mr. Dalin, it may or may not have any relevance under Rules 401

3   or 402, but, as far as I'm concerned, it goes afield of

4   Rule 403 with respect to essentially, one, if it's prejudicial;

5   two, if it's confusing.  I don't intend to have mini trials on

6   other plans in this case.  So Defendants' motion *in limine* to

7   exclude evidence relating to benefit plans other than the

8   Chimes Plan will be granted for the reasons set forth on the

9   record here.  Paper Number 466 will be granted.

10           So, with that, it seems to me that the matter of the

11  Trial Exhibit 164 and the matter of the Training,

12  Rehabilitation & Development Institute contract is moot in that

13  there is no basis to introduce that exhibit in the first place

14  based upon my other ruling, it would seem to me, and, if you

15  want to take one more bite at the apple on this one, Mr. Dalin,

16  you go right ahead.

17           **MR. DALIN:**  Yeah.

18           **THE COURT:**  What would be the purpose of my having

19  this exhibit coming in?

20           **MR. DALIN:**  So David Crutcher, one of the attorneys

21  for FCE, has put into the record two declarations purporting to

22  recalculate the fees that FCE charged to the Chimes Plan.  TRDI

23  is another plan serviced by FCE.  They have the same trustee.

24  They both -- TMS is the trustee for both.  The e-mail discusses

25  that TMS couldn't recalculate the fees for the Plan.  This

1    works in conjunction with the earlier letter from Crutcher,

2    where he says:  We can't recalculate the fees charged to the

3    Plan.

4        This is rebuttal evidence for Crutcher's latest

5    declarations where he says he can calculate the charges, and

6    Grace Dong's declaration, which we discussed earlier, where she

7    says she can calculate the charges, when, earlier on, the same

8    trustee, under the same system with FCE, said that they

9    couldn't recalculate the charges.

10        **THE COURT:**  I understand your argument, and it's

11    going to be denied for the same reason.  I'll be capable of

12    interpreting that, and I'll make rulings in terms of

13    credibility, in terms of your cross-examination of

14    Mr. Crutcher, but we're not going to go afield.  I'm not going

15    to have mini trials here in terms of other disputes in other

16    matters with the Secretary.  It's going to be tough enough to

17    try to get this case tried in a reasonable period of time

18    without going afield and having mini trials.

19        So this is probably the third time now I've ruled in

20    the same fashion on the same essential issue.  We're not going

21    to go far afield on this case.  So that will be granted as well

22    for the reasons set forth on the record.

23        So I think the next motion that we have here -- the

24    next motion that we have is essentially -- I think we've got a

25    total of -- according to my notes, I've got a total of five

1    more motions to get through here according to my notes, and

2    this is the motion *in limine* of the FCE Defendants to exclude

3    testimony of David Levin for lack of personal knowledge, and

4    essentially the FCE Defendants have moved to exclude his

5    deposition designations because they're not based on personal

6    knowledge.  He's a former FCE employee, and the Secretary has

7    responded that the designations from his deposition are related

8    to matters that he participated in and observed.

9         And, from that, I'll be glad to hear from the FCE

10   Defendants briefly, because, to put it bluntly, I'm hard

11   pressed to understand how a former employee of the FCE would

12   not have certain knowledge about certain matters; that he's

13   certainly free, as far as I'm concerned, to testify as to those

14   matters in which he participated or as to which he observed in

15   terms of just basic evidentiary principles.  It doesn't mean

16   he's binding FCE in any way in terms of areas outside of his

17   prior employment, but whether he's employed for a year and a

18   half or three months, it's relevant in terms of what he

19   observed as far as I'm concerned.

20        So I'd be glad to hear from FCE Defense counsel on

21   this.

22        **MR. KOONIN:**  Yeah.  Your Honor is correct that what

23   Mr. Levin actually observed would be relevant to the extent

24   that he had a foundation.  The problem is, if you look at the

25   cited testimony, he testifies as to the meaning of things.  So,

1    for instance, he sees an e-mail, and the e-mail says, "Adjust

2    the employee count," and then he goes ahead and testifies that

3    he thinks that that's improper and someone made it up, but he

4    also testified he doesn't work with the sales team and interact

5    with the clients, so he doesn't know whether the client told

6    them to do that or not.

7         He testifies that he thinks that the, quote/unquote,

8    make commissions high button means certain things, but when

9    he's asked about who designed it, no.  Do you know how it was

10   used?  No.

11        You know, so that's the problem.  He observes certain

12   things, but he's not testifying strictly that I observed this

13   spreadsheet, or I got this e-mail.  He is moving it out on

14   speculation two levels beyond saying here is what it means and

15   here is what this other person was thinking, even though he has

16   no foundation on any of that.

17        **THE COURT:**  Well, that's going to go to the weight,

18   not the admissibility.  As I understand it, he worked in the

19   actuary department; is that right?

20        **MR. KOONIN:**  Yes, that's correct, Your Honor.

21        **THE COURT:**  All right.  And he was an underwriter; is

22   that correct?

23        **MR. KOONIN:**  That's not quite correct.  He was in

24   training in that department, but he wasn't -- I don't think you

25   could say that he was a fully-qualified --

1        **THE COURT:**  Well, that depends -- you can challenge

2    his credibility on that.  Mr. Koonin, you can challenge his

3    credibility on that, but, to the extent that he's an

4    underwriter and those duties include budgeting and plans and

5    what have you, and plan designs, he's certainly free to testify

6    as to that.  He worked there for a period of time.

7        You can attack him in terms of exactly what he did or

8    did not work on and what his expertise was or his area.  I'm

9    not going to qualify him as an expert, but there is no merit to

10   this motion *in limine* to exclude the testimony of Daniel Levin

11   for lack of personal knowledge.  So the secretary doesn't even

12   need to respond on this.  This motion, Paper Number 468, will

13   be denied for the reasons indicated here on the record.

14       So where we are now is we are at the motion *in*

15   *limine* -- FCE's motion *in limine* number six, I believe, of the

16   seven motions *in limine* by the FCE Defendants, and this motion

17   number six essentially is that the FCE Defendants have moved to

18   exclude any admissions by Co-Defendants against them because

19   Co-Defendants are obviously not bound by another Defendant's

20   admission.

21       The Secretary contends that this blanket exclusion is

22   somewhat overbroad and that it may or may not be admissible.

23   With respect to that, I'll hear from the Secretary first.  What

24   is the theory here?  Is there a conspiracy count in this case?

25   I don't believe there is, is there?

1          **MS. LIU:**  Katrina Liu here.

2          No, Your Honor.  We are not seeking to -- well, we

3     don't expect to use evidence of Chimes D.C.'s out-of-court

4     statements for the truth of the matter asserted under the

5     conspiracy non-hearsay definition.  Our only argument is that

6     we understand we cannot use it as party opponent statements

7     against FCE, but we can use it for impeachment for -- I'm

8     sorry -- excuse me -- for impeachment purposes, not as to the

9     truth of the matter asserted.

10          And so, in that sense, we just want to ensure that --

11     we can still admit this evidence, the statements by Chimes

12     D.C., at least against Chimes D.C.

13          **THE COURT:**  All right.  I understand, Ms. Liu.

14     Ms. Liu, that is a noble effort worthy of a great law school

15     performance in a classroom.  Trying to get around a clear rule

16     of evidence is not permitted, and I'm teasing you here a little

17     bit, but the skill with which you tried to dance around it is

18     illustrative of the point that the Defendants' motion number

19     six shall be granted, so any evidence of Co-Defendants'

20     admissions shall not be admissible in any way, in any context

21     against the FCE Defendants, and so that will be granted.

22          Okay.  So I think that we have one more motion of the

23     FCE Defendants, and that is number seven here, and Paper

24     Number 7 of the FCE Defendants' motion *in limine* is to exclude

25     evidence and argument relating to Significa Benefit Services,

1      Inc.  Essentially, there is a great deal of information

2      provided about Significa, which became essentially a

3      relationship later, as I understand it, with Chimes D.C.

4              Essentially, as I understand it, the FCE Defendants

5      argue that this kind of information was revealed late and not

6      until the Pretrial Order, that it will be prejudice -- the

7      Secretary's essentially said that Significa did not replace FCE

8      until January of 2018, so that the Secretary was only aware of

9      it then, and there is a question as to the admissibility of

10     evidence relating to Significa Benefit Services.

11             Let me save you all some time here from billable time

12     against your clients.  I'm really not interested in Significa

13     Benefit Services, Inc.  I'm trying to keep my focus upon the

14     allegations in this case, consistent with my other rulings,

15     and, in terms of solicitation for RFPs or what have you and

16     another third-party administrator, it's of limited utility to

17     me on either side, quite frankly, but it is the FCE Defendants'

18     motion *in limine* to exclude that evidence.  I'll be glad to

19     hear from you, but I really think you can be very brief.  I

20     need to hear from the Secretary on this, because I'm not

21     anxious to go afield on this.  It's very important.

22             **MR. KOONIN:**  Well, Your Honor, I'll --

23             **THE COURT:**  This case is detailed enough.  This case

24     is detailed enough.  You don't need to be going afield on this.

25     Go ahead.

1          **MR. KOONIN:** No, Your Honor. Your Honor has already

2    granted ECF 473, which overlaps for different purposes, because

3    the alleged remedial measures --

4          **THE COURT:** Right.

5          **MR. KOONIN:** -- were to bring in Significa, and so

6    granting this motion is consistent.

7          I will say one other thing and only one other thing

8    on this motion. Part of the Secretary's newly-disclosed theory

9    is that Significa should have been considered as some sort of a

10   comparator back in 2009.

11         We asked an interrogatory that was specifically and

12   expressly exactly on point, and the Secretary did not identify

13   Significa -- never did. And they raised this theory. They've

14   submitted these Internet page printouts just within the last, I

15   think, month and a half. I want to say it was in late October.

16         But the point is: For the same reason that Your

17   Honor did not allow remedial measures after 2017, Your Honor

18   should also not allow them to say: Oh, and they can come in

19   back in 2009. We asked the specific interrogatory on that.

20   They didn't provide it, and now, after the fact, they want to

21   bring in evidence, and Your Honor has already excluded the

22   evidence of the replacement process.

23         So I think Your Honor should grant this motion as

24   well.

25         **THE COURT:** All right. Government counsel, do you

1    want to respond on this?

2         **MR. DALIN:**  Yes.  This isn't a subsequent remedial

3    measure issue, nor does the Government want to put in evidence

4    from the request for proposal process.  FCE's and

5    Defendants' expert, Aaron Raddock, argues -- and the parties

6    argues this as well -- that there are only two competitors to

7    FCE in the market to whom they could have looked for -- to

8    replace FCE's services.  Well, here is another service provider

9    who can come into court and tell you that they could provide

10   the services as well to rebut the arguments from these -- from

11   Defendants and from the expert.

12        As to the discovery issue, at the time that FCE

13   issued the interrogatory asking us to identify other providers,

14   I mean, first, it should be noted that it's not our duty to

15   identify the providers; it's the fiduciary's duty.  But, at

16   that time, we didn't know about Significa.

17        When we learned about Significa, we sent them a

18   subpoena.  We noticed FCE of the subpoena.  They got a copy of

19   the subpoena.  And, when we got the documents, we turned them

20   over to FCE and other Defendants, so, once we learned about it,

21   we supplemented our discovery with the subpoena and provided

22   all documents that we received.

23        We're not looking to get into subsequent remedial

24   measures here.  It's rebuttal of Defendants' contention that

25   there were no other players in the market who they could have

1    looked to besides the two that they identified, Boon and Fringe

2    Benefit Group.

3              **THE COURT:**  All right.

4              **MR. KOONIN:**  Your Honor, that's a switch of bait.

5    That's a switch of bait.  The question here is:  Who was

6    available in 2009?  And there is no -- if Your Honor does not

7    grant this motion *in limine*, then we will have to put on

8    evidence of what Significa could or could not have done in

9    2009, which is not something we were allowed to do discovery on

10    before, and it's unfair to do it now, and they never amended

11    their interrogatory.  It's true they've made a subpoena, but

12    that's different saying, well, Significa could do something in

13    2018.  It's different than saying it could have done it nine

14    years before.  That is a total switch of bait.

15              **THE COURT:**  Well, the bottom line on it is this:

16    This scenario, somewhere in your materials here, if I recall,

17    there is a citation to a case that I had called *First Data*,

18    which was affirmed by the Fourth Circuit on many, many issues,

19    and this came up, I think, in discovery before the trial of the

20    *First Data* case, et cetera, et cetera, and I forget what -- you

21    could just try to find the *First Data* case somewhere.  And I

22    was affirmed by the Fourth Circuit in that case.

23              First of all, there is a delay here in providing this

24    information, and it's prejudice to the other side.  And, to the

25    extent that they could have found out about Significa and also

1    in terms of the time reference, I'm going to grant this motion.

2    I think it is akin to the remedial motion matter, but,

3    furthermore, apart from that, that there is improper delay with

4    respect to the length of time before this was necessarily

5    disclosed in a Pretrial Order.

6          So I've dealt with this before.  I've been affirmed

7    by it before by the Fourth Circuit, and the Defendants' motion

8    is granted, excluding that evidence and argument related to

9    Significa Benefit Services.  Paper Number 470 is granted for

10   the reasons set forth on the record.

11         So I think I just have two motions left.

12   Essentially, I have the motion of the Chimes Defendants.  A

13   motion *in limine* to prevent the Secretary from offering

14   evidence of payments made by the Plan to reimburse Chimes D.C.,

15   Inc., for work performed by Chimes D.C., Inc. employee

16   Karen Holcomb is before me.  And then I have the Defendant

17   Marilyn Ward's motion *in limine* to preclude certain evidence,

18   and so the Chimes Defendants counsel is up on deck here

19   finally, so I'd be glad to hear from you.

20         **MR. SCHARLAT:**  Thank you, Your Honor.

21   Richard Scharlat.

22         Our point is very simple.  The Secretary chose to

23   seek certain relief with regard to these payments, and that was

24   disgorgement under 502(a)(5).  These payments are -- this

25   transfer of money was not of profit.  It was a reimbursement

1    for services rendered.  There was no overage.  There was no

2    profit.  There was simply a return of money from the Plan for

3    benefits it received to Chimes D.C.

4              The case that the Secretary cites, the *Leckey* case,

5    not comparable at all.  That's where a trustee took $500,000,

6    cleared out a trust, and put it in a different trust, and that

7    money was gone.  That is not what happened here.  It's not a

8    semantic argument.  It's a very real argument under ERISA,

9    because there is no way for this to be a profit.  It can't be

10   disgorged.

11             **THE COURT:**  Does it not also weave into my matter of

12   a limitations issue, as I recall, on Holcomb as well?

13             **MR. SCHARLAT:**  This is -- yes, Your Honor.  This has

14   been reduced.  It's been almost cut in half -- actually, I

15   think cut in half.

16             **THE COURT:**  Right.

17             **MR. SCHARLAT:**  It's down to about $233,000.  That's

18   correct.

19             **THE COURT:**  All right.  I'd be glad to hear from the

20   Secretary on this.

21             **MS. LIU:**  Yes, Your Honor.  Katrina Liu.

22             How to characterize whether it's a reimbursement or

23   profit or a payment, it is a transaction that Chimes D.C.

24   caused the Plan to make that the Secretary alleges is self

25   dealing.  And so, whether it was for direct expenses, that's

1    something for the Defendants to carry the burden on, and so the

2    characterization of simply reimbursement doesn't negate the

3    substance of the transaction, which is a prohibited transaction

4    under ERISA 406.

5          And so, for that reason, we oppose the motion to

6    exclude.

7          **THE COURT:**  All right.  This motion will be granted.

8    I've looked at this at some length before, but I'm reviewing it

9    here now in terms of the matter of reimbursement -- the issue

10   here as to the employee Karen Holcomb.  Essentially, the

11   Secretary of Labor has limited its remedy to disgorgement and

12   essentially is seeking to compel a payment of a sum of money

13   here, which should be barred, because the matter of trying to

14   include this as reimbursement, I think, is not consistent with

15   the other rulings I've already made.

16         First of all, I know that I cut this thing in half in

17   terms of the matter of anything having to do with payments

18   before January 1 of 2010, as I recall, and this, I think,

19   relates to the matter of Holcomb payments.

20         The Order that I issued back in November, just a few

21   weeks ago, granting the Defendants' joint motion for summary

22   judgment, I noted, as I recall there, that the Secretary had

23   actual knowledge of these facts well before the Chimes signed

24   the tolling agreement here.  And so, as a result of that,

25   essentially the defense here essentially were reimbursements

1    and not just unjust profits, consistent with my earlier ruling,

2    so, to sort of dance around and trying to say that that

3    characterization is not important, there is not going to be an

4    issue before me that it was a prohibited transaction resulting

5    in losses to the Plan, and, quite frankly, in light of the

6    amount of money involved compared to what's being sought in

7    this case, it's of very little moment to me.

8              So, with that, the Defendants' motion *in limine*,

9    Paper Number 482, shall be granted for the reasons indicated on

10   the record.  So that will be granted.

11             So then I think we have one more motion here, to my

12   knowledge, and that is coming on past a little two hours now.

13   We're getting a lot of work done.  I certainly appreciate the

14   people who are on the East Coast time here, particularly the

15   court reporter.

16             The last remaining motion that I have here is the

17   motion of the Defendant Marilyn Ward, motion *in limine* to

18   preclude evidence relating to Ward's recordkeeping after her

19   retirement, and, essentially, as I understand it, looking at

20   these arguments and the submissions of the parties of the Paper

21   Number 474 and the response of the Secretary, which is Paper

22   Number 509, essentially Ms. Ward has requested that this Court

23   exclude all documents and testimony and other evidence relating

24   to her recordkeeping after her retirement, and contends that it

25   is not relevant in that I've already ruled that she is not

1    liable for anything after December 13, 2013, her effective

2    retirement date, and it is essentially not relevant whether she

3    currently possesses any records related to the Plan, and she

4    essentially has argued that it's inappropriate for the

5    Secretary to argue that her failure to keep records should

6    result in a presumption against her that she failed to maintain

7    records.

8           The Secretary's response has been that anything that

9    happened to the records after she retired is relevant, and

10   apparently there is some contention that she felt the records

11   were in FCE's possession, and essentially the Secretary wants

12   to elicit testimony about whether the documents existed and who

13   retained them.

14          I guess the real question here is the matter of her

15   recordkeeping after her retirement.  I've already ruled that

16   she is not liable for anything after December 13, 2013, and to

17   the extent that there is some suggestion that she had an

18   obligation to review records is really what's at issue here.

19          So I'll be glad to hear from counsel for Ms. Ward,

20   and then I'll hear from the Secretary, counsel.

21          **MR. WEATHERFORD:**  Thank you, Your Honor.  This is

22   Scott Weatherford, and I'll be short.  I think you summarized

23   it pretty well.

24          The only thing I'll add is that that's exactly the

25   point of this *limine*, is the fact that, in light of Your

1    Honor's ruling limiting her fiduciary responsibility post

2    December 13, 2013, any intent by the Secretary to use

3    Ms. Ward's recordkeeping practices after that date to somehow

4    imply that she didn't keep proper or adequate records during

5    the time that she did serve as trustee is simply not probative

6    of any fact that's at issue in the remaining claims against

7    Ms. Ward.

8         **THE COURT:**  All right.  Counsel for the Secretary,

9    Ms. Liu or Mr. Dalin?

10        **MS. LIU:**  Yes.

11        **THE COURT:**  Ms. Liu?

12        **MS. LIU:**  Yes.  Katrina Liu here.

13        The Secretary's concern is Ms. Ward's recordkeeping

14    during the time -- before she retired, the period of time

15    during which she could be held liable.  What the Secretary is

16    seeking, though, is what happened to those documents in order

17    to, I guess, see or to present evidence on what Ms. Ward's

18    recordkeeping practices were during her trusteeship.

19        The Secretary hasn't been able to get those records,

20    and there has been some back and forth between FCE and Ward

21    about what happened to those records or whether those records

22    even exist.  And so, to the extent that the documents still

23    exist beyond Ms. Ward's retirement, the Secretary would like to

24    be able to at least question witnesses about what happened to

25    those documents in order to flesh out the Secretary's

1     allegation that Ms. Ward wasn't keeping track of FCE's fees

2     while she was trustee.

3          **THE COURT:**  Well, I don't think that what -- in terms

4     of trying to hold her responsible, Ms. Liu, for records,

5     wherever the records are now in terms of her level of conduct,

6     I in no way would make a finding of fact that would in any way

7     advance the Secretary's position with respect to, if someone

8     doesn't know where records are now some five years after the

9     fact, that that would in any way reflect upon how she kept

10    records up to December 13, 2013.

11          You are certainly free to pursue from FCE in terms of

12    what records they do and don't have.  I don't know that there

13    is a spoliation issue here or not.  I don't know.  But I see

14    nothing that requires, you know, inquiry of Ms. Ward with

15    respect to what she did after her retirement.

16          I mean, if someone from FCE says, "We gave all the

17    records to Ms. Ward," and, Ms. Ward can say, "No, you didn't.

18    I don't have the records."  That may or may not be the evidence

19    and how it breaks at trial, but the matter of her recordkeeping

20    after her retirement is simply not in the case, and nor can it

21    be judged in terms of what she did or didn't do prior to

22    December 13th of 2013.

23          It doesn't mean you can't pursue or argue that FCE

24    did not keep appropriate records.  In any kind of case like

25    this, you're free to do so.  But it doesn't relate to trying to

present evidence against Ms. Ward with respect to that.

So, with respect to this motion, Paper Number 474, the Defendant Marilyn Ward's motion *in limine* to preclude evidence relating to her recordkeeping, that motion will be granted for the reasons set forth on the record.

So I think that we have dealt with all the open motions *in limine*. I have the schedule. The Order that I issued last Friday has noted -- it was filed as a Letter Order, but it was deemed to be a direct Order of Court, and the Clerk has docketed it as such. We granted the request -- in light of Mr. Eassa's health issue, we've delayed the case for about a week so that the bench trial in this case will begin on Monday, January the 14th. The pretrial conference will be Friday, January the 11th. Parties are to exchange electronic copies of trial exhibits by Friday, January the 4th. And the Pretrial Order shall be to me by Thursday, January the 3rd. And we, consistent with that Order, have held a on-the-record telephone conference to address the current pending motions *in limine*, so I think we're ready to roll here on this.

It will remain to be seen. We'll go over how starting the case a week later will impact the overall schedule. I know that, for religious reasons, we've previously noted -- hold on just one second.

(Pause.)

**THE COURT:** We have previously noted that we'll make

```
 1    sure we stop at the appropriate time on a Friday during the
 2    trial, and we haven't really had time to go through the days
 3    that we're sitting in light of the fact that the case is
 4    starting a week later.  Obviously the case is not going to end
 5    on the date we anticipated.  I thought we were going to finish
 6    by January 28th.  We may not.  We'll have to wait and see on
 7    this.
 8              Is there anything else from the point of view of the
 9    attorneys for the Secretary of Labor, from the Government
10    counsel?
11              MS. LIU:  No.
12              MR. DALIN:  No, Your Honor.
13              THE COURT:  Okay.  Is there anything --
14              MS. LIU:  No, Your Honor.
15              THE COURT:  Is there anything else from the point of
16    view of the Chimes Defendants here?
17              MR. SCHARLAT:  No, Your Honor.
18              THE COURT:  All right.  Is there anything else from
19    the FCE Defendants here?
20              MR. KOONIN:  One minor point, Your Honor.  Your
21    Honor --
22              THE COURT:  Yes.
23              MR. KOONIN:  -- since you granted motion *in limine*
24    number four about the privileged exhibit --
25              THE COURT:  Yes.
```

 1          **MR. KOONIN:**  -- we'd like the Secretary to destroy

 2     it.

 3          **THE COURT:**  That's fine.  That was going to be Trial

 4     Exhibit Number 164; is that correct?

 5          **MR. KOONIN:**  Yes.  That's what it -- the numbers are

 6     changing since we're meeting and conferring, but, regardless,

 7     it's a privileged document, and Your Honor has excluded it.

 8     They should destroy the document.

 9          **THE COURT:**  I agree.  Any problem with that?

10          Government counsel, any problem?

11          **MR. DALIN:**  Well, I think you ruled that it's

12     excluded for relevance reasons, but not that it was privileged.

13          **THE COURT:**  Well, it is privileged.  Destroy it.

14     That make it easier for you?

15          **MR. DALIN:**  Sure, Your Honor.  Thank you.

16          **THE COURT:**  All right.  Just destroy it.  And, as an

17     Officer of the Court, I'll assume you've done that, and it will

18     be destroyed.

19          Anything else from the point of view of the FCE

20     Defendants?

21          **MR. EASSA:**  Your Honor, this is Rob Eassa.  I am

22     going to make an attempt to participate in the trial, and I

23     would like to take the Court up on its offer of accommodations

24     with respect to possible parking and use of a back-door

25     elevator to get in and out.

1          **THE COURT:**  That's fine.  We'll do whatever you want

2     to do in that regard.  Just remind me.  We'll make sure that

3     we -- I think the best way on this, there is handicapped

4     parking right at the front door of the courthouse, right on the

5     horseshoe driveway, and there is a ramp, disability accessible,

6     for court staff off to the right of the main door, and you can

7     roll in there, and you can roll right around to the elevator

8     and come right up to the fifth floor, my courtroom.  And we'll

9     make sure that we can accommodate you with respect to bathroom

10    facilities.

11          I'm just thinking that, as to that, Mr. Eassa, the

12    men's room on the fifth floor is disabled accessible with a

13    larger toilet facility, for example, and a rail, but you still

14    could just roll out of the courtroom and go around the bend to

15    the bathroom, and that's all on one floor, and there are large

16    handrails there that would assist you.  So I think that all

17    that can be done, and, as far as I'm concerned, yes, we'll make

18    sure you get a parking spot, and we'll have it for you there.

19    I'd be glad to do it.

20          **MR. EASSA:**  Thank you, Your Honor.

21          **MR. KOONIN:**  Your Honor, one last --

22          **THE COURT:**  Yes.  Go ahead.

23          **MR. KOONIN:**  Your Honor, one last thing.  This is

24    Marc Koonin.  We have understood that Your Honor was going to

25    use the ceremonial courtroom on Floor 1.

```
 1                    THE COURT:  No.  We're not.

 2                    MR. KOONIN:  I think Your Honor mentioned the fifth.

 3                    THE COURT:  Yes.

 4                    MR. KOONIN:  Okay.  I just wanted to clarify that.

 5                    THE COURT:  We're going to order -- yes.  In light of

 6       some of the parties who are no longer in the case, as far as

 7       I'm concerned, you all have been in my courtroom, I think.  You

 8       all have been there.  And I have a large Defense table with six

 9       chairs, and then I have chairs behind it.  And the Plaintiffs'

10       counsel's table has three chairs, so that we have space for

11       Government counsel, and we have space for Defense counsel for

12       essentially the three parties that we have here, so we have

13       room for two lawyers for each party, and we have chairs behind

14       that where people can sit.

15                    We have a witness room where we can store exhibits,

16       so you all can keep exhibits in a certain room right there and

17       just keep lugging things back and forth.  And the fifth floor

18       is much more accommodating than the ceremonial courtroom, and,

19       despite the grandeur of the ceremonial courtroom, most lawyers

20       agree that the acoustics in there are terrible, and so we're

21       not going to be -- we don't have any need now to use the

22       ceremonial courtroom, and my staff will follow up on that to

23       verify that we'll be trying this case in Courtroom 5D, my

24       courtroom.  And, as I say, it's very easily accessible for you,

25       Mr. Eassa.  It will be fine.  It will be fine.  Okay.
```

```
1              MR. EASSA:  Thank you, Your Honor.  I appreciate

2       that.  On security, getting into the building, Your Honor,

3       security, I have a problem.  I have an inability to take my

4       shoes off or really do that.  I can't bend down.

5              THE COURT:  I know.  I understand.

6              MR. EASSA:  Is that an issue?

7              THE COURT:  We have started a security check on you

8       already, Mr. Eassa, and your colleagues of yours were not quite

9       as raucous as your high school years, and so I've made sure

10      that they delete some of those things, you know --

11             MR. EASSA:  Thank you, Your Honor.  I appreciate

12      that.

13             THE COURT:  And certainly, consistent with everyone,

14      once people get to law school, they really start to behave, so

15      I have no bad reports from the FBI or the CIA on any of you all

16      in terms of your law school years, and some of you were a

17      little raucous in your college years, but that's another

18      matter.

19             MR. EASSA:  Great.  Great.

20             THE COURT:  We don't need to worry about that.  We'll

21      square that away.  I'll talk to the security -- court security

22      personnel and the court security officers and the Marshals, and

23      that will be fine.  We'll be able to roll you in and out pretty

24      easily, and it will be okay.  It will be fine.  Okay?

25             MR. EASSA:  Great.  Thank you, Your Honor.
```

```
 1              THE COURT:  All right.  Good enough.

 2              MS. STRANDBERG:  Your Honor?

 3              THE COURT:  Yes?  Yes?

 4              MS. STRANDBERG:  Your Honor?

 5              THE COURT:  Yes?

 6              MS. STRANDBERG:  I would like to thank you.  This was

 7    a massive amount of material.  You've worked very hard, and, on

 8    behalf of all of us, I'd like to say that we appreciate it.

 9              THE COURT:  Well, that's quite all right.  That's my

10    job, and I'm glad to do it.  And, if I was quip with any of the

11    lawyers, I apologize, and I'm very sorry I couldn't accommodate

12    Mr. Eassa.  I actually have enjoyed it.  I like cases, and I

13    like being in the courtroom, and these are very interesting

14    issues.  And I'm sorry.  Who was just speaking?  Who was the

15    very intelligent person who just spoke?

16              MS. STRANDBERG:  Rebecca Strandberg.

17              THE COURT:  All right.  Rebecca Strandberg.

18              MS. STRANDBERG:  Rebecca Strandberg.

19              THE COURT:  Rebecca Strandberg.  Obviously that's the

20    most intelligent thing that's been said thus far by all the

21    lawyers in the case.

22        (Laughter.)

23              THE COURT:  We're all laughing here.  That's the most

24    cogent, and I appreciate your great perception, Ms. Strandberg,

25    on that.
```

```
 1            No.  That's fine.  I'm looking forward to the case,
 2   and we're going to get this case tried, and it's been at issue
 3   a long time, and the Government's entitled to get this case
 4   tried, and so are the Defendants, so that's my goal, and we'll
 5   work through this.
 6            And I will tell you that I have -- I guess because of
 7   the fact that I was fortunate enough to be able to try a lot of
 8   cases, both civil and criminal, when I was at the bar before I
 9   went on the bench, I really -- I can't guarantee it's going to
10   be two weeks, but it will definitely be three.  I have never,
11   ever had a bench trial -- and I've had some complicated bench
12   trials over the years.  I have never had a bench trial where I
13   didn't get an opinion out within 15 days.
14            So what I do is that I'm going to ask for proposed
15   findings of fact and conclusions of law from everyone at the
16   conclusion of the case.  I'll warn you ahead of time that, as
17   we try the case, you start betting those ready.  So, when we
18   complete the case, within a -- along with your closing
19   arguments, within a matter of two or three days, I will want
20   proposed findings of fact and conclusions of law.  I take those
21   into account along with closing argument, and then I get to
22   work on it right away, and you'll notice that the law clerk
23   working on the case will be with me in the courtroom the entire
24   time.
25            So we keep our nose to the grindstone on a bench
```

1    trial.  We don't let it drift.  So I can promise you that.  So

2    you'll have an opinion in this case and resolution from which

3    the parties can take -- either side can take an appeal

4    certainly by the second week in February.  So that's where we

5    are.  So good enough.

6            Well, anyway, you all have a wonderful holiday, and

7    try to enjoy the holiday in light of this pace we have here.

8            And, Mr. Eassa, I certainly hope that you continue to

9    heal, and I'm very sorry that you have to be going through this

10   right now, particularly during this time of year, so all the

11   best to all of you.

12           **MR. EASSA:**  Thank you, Your Honor.

13           **THE COURT:**  If anyone needs me for any reason, just

14   let me know.  I'll be around next week as well, but just sort

15   of in and out a little bit, so I'll see you all in January.

16   Thank you very much.  Take care.  Bye-bye.

17           **MR. KOONIN:**  Thank you, Your Honor.

18           **MR. SCHARLAT:**  Thank you, Your Honor.

19           **MS. LIU:**  Thank you, Your Honor.

20           **THE COURT:**  Bye-bye.

21       (Proceedings adjourned.)

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER

           I, Martin J. Giordano, Registered Merit Reporter and

Certified Realtime Reporter, in and for the United States

District Court for the District of Maryland, do hereby certify,

pursuant to 28 U.S.C. § 753, that the foregoing is a true and

correct transcript of the stenographically-reported proceedings

held in the above-entitled matter and that the transcript page

format is in conformance with the regulations of the Judicial

Conference of the United States.


                       Dated this 27th day of December 2018.



                       _Martin J. Giordano_____

                       MARTIN J. GIORDANO, RMR, CRR

                       FEDERAL OFFICIAL COURT REPORTER

## $

**$2,931,000** [1] - 45:8
**$233,000** [1] - 80:17
**$500,000** [1] - 80:5
**$60,000** [1] - 12:18

## '

**'12** [2] - 44:21, 46:24
**'13** [2] - 44:21, 46:24
**'14** [2] - 44:21, 46:24
**'15** [3] - 41:23, 44:21, 46:24
**'16** [3] - 41:15, 41:21, 42:3
**'17** [3] - 41:15, 41:21, 42:3

## 1

**1** [3] - 49:5, 81:18, 89:25
**1.5** [1] - 18:7
**1006** [10] - 16:16, 16:18, 16:23, 16:24,
   17:1, 21:9, 21:10, 21:19, 22:17
**101** [1] - 1:24
**11.62** [2] - 22:9, 22:13
**11th** [2] - 2:16, 86:14
**12** [3] - 46:18, 49:21, 49:24
**13** [4] - 83:1, 83:16, 84:2, 85:10
**13.62** [2] - 22:10, 22:13
**13th** [1] - 85:22
**14th** [2] - 2:15, 86:13
**15** [1] - 93:13
**150** [1] - 64:18
**164** [3] - 65:14, 69:11, 88:4
**165** [1] - 59:5
**17** [4] - 1:8, 2:1, 50:1, 50:9
**17th** [2] - 61:21, 62:9
**187** [1] - 59:9

## 2

**2** [1] - 46:16
**2%** [4] - 16:16, 18:10, 18:12, 18:21
**2.204** [1] - 47:13
**2.9** [4] - 47:19, 48:17, 48:18, 51:4
**2.931** [1] - 46:21
**20-something** [1] - 59:23
**200** [1] - 64:18
**2008** [2] - 44:5, 44:6
**2009** [5] - 44:7, 76:10, 76:19, 78:6, 78:9
**2010** [8] - 41:5, 41:15, 41:21, 42:2, 43:4,
   44:10, 44:23, 81:18
**2011** [5] - 41:22, 43:20, 44:8, 44:21,
   46:24
**2013** [5] - 83:1, 83:16, 84:2, 85:10,
   85:22
**2015** [3] - 43:20, 44:5, 44:8
**2016** [5] - 16:10, 41:5, 43:4, 44:10,

44:23
**2017** [10] - 24:5, 24:8, 41:5, 43:4, 44:10,
   44:24, 59:15, 60:5, 60:8, 76:17
**2018** [11] - 1:8, 2:1, 24:10, 60:23, 60:25,
   61:10, 62:5, 63:2, 75:8, 78:13, 95:14
**21201** [1] - 1:24
**24** [1] - 48:1
**2550.408** [1] - 55:17
**27th** [1] - 95:14
**28** [1] - 95:8
**28th** [1] - 87:6
**29** [1] - 55:17

## 3

**3** [2] - 12:17, 63:16
**3.6** [3] - 47:17, 48:18, 50:10
**30** [2] - 26:9, 63:2
**30th** [3] - 60:24, 61:10, 62:8
**3rd** [1] - 86:16

## 4

**4** [1] - 34:11
**401** [3] - 30:1, 33:19, 69:2
**402** [1] - 69:3
**403** [1] - 69:4
**406** [1] - 81:4
**407** [5] - 34:20, 35:3, 35:5, 35:7, 35:11
**410-962-4504** [1] - 1:25
**436** [1] - 17:17
**464** [1] - 53:8
**465** [1] - 63:7
**466** [1] - 69:9
**468** [1] - 73:12
**470** [1] - 79:6
**471** [4] - 29:19, 33:16, 34:4, 34:6
**472** [4] - 40:25, 41:1, 41:6, 44:24
**473** [3] - 34:14, 35:16, 76:2
**474** [2] - 82:21, 86:2
**475** [2] - 36:1, 38:10
**476** [3] - 38:23, 40:16, 45:16
**477** [4] - 5:18, 8:20, 9:19, 9:23
**478** [2] - 10:4, 15:25
**479** [1] - 22:23
**480** [1] - 29:2
**482** [1] - 82:9
**483** [2] - 40:20, 51:5
**4:10** [1] - 1:8
**4th** [1] - 86:15

## 5

**5.8** [1] - 47:14
**50** [1] - 12:22
**502(a)(5** [1] - 42:13
**502(a)(5)** [1] - 79:24

**509** [1] - 82:22
**522** [1] - 2:12
**5500s** [1] - 41:16
**5:23** [1] - 52:2
**5:29** [1] - 52:2
**5D** [1] - 90:23
**5th** [3] - 5:19, 16:7, 34:9

## 6

**6:31** [1] - 1:8

## 7

**7** [1] - 74:24
**724** [1] - 17:17
**753** [1] - 95:8

## 8

**8** [7] - 15:3, 53:13, 53:22, 54:2, 54:8,
   57:7
**8.3** [5] - 47:25, 48:1, 48:23, 49:3, 50:17
**801** [1] - 28:12
**803(6** [1] - 17:5
**804** [1] - 28:12
**804(b)(1** [3] - 24:19, 28:1, 28:15
**807** [2] - 21:14, 22:19

## A

**Aaron** [5] - 10:2, 10:9, 12:13, 15:25,
   77:5
**Abernathy** [7] - 23:12, 23:23, 24:18,
   25:1, 26:23, 28:19, 29:2
**Abernathy's** [1] - 24:22
**ability** [1] - 23:17
**able** [9] - 6:13, 8:7, 19:1, 43:12, 47:16,
   84:19, 84:24, 91:23, 93:7
**ABOVE** [1] - 1:9
**above-entitled** [1] - 95:10
**ABOVE-ENTITLED** [1] - 1:9
**absence** [1] - 54:19
**absolutely** [4] - 22:14, 40:8, 61:20, 62:5
**abundantly** [1] - 28:6
**accept** [1] - 20:5
**accepting** [1] - 36:15
**accessible** [3] - 89:5, 89:12, 90:24
**accidentally** [1] - 52:21
**accommodate** [2] - 89:9, 92:11
**accommodating** [1] - 90:18
**accommodations** [1] - 88:23
**accorded** [2] - 34:3, 57:9
**according** [4] - 27:3, 33:9, 70:25, 71:1
**accordingly** [1] - 28:18
**account** [1] - 93:21
**accountant** [1] - 19:13

**accounting** [4] - 31:3, 31:24, 33:25, 42:12
**Acosta** [2] - 2:10
**ACOSTA** [1] - 1:3
**acoustics** [1] - 90:20
**Act** [7] - 10:11, 10:12, 10:20, 10:21, 10:23, 11:22, 67:19
**acting** [3] - 27:13, 38:8, 68:18
**activities** [1] - 10:17
**activity** [2] - 10:20, 16:20
**actual** [9] - 17:24, 31:11, 31:17, 32:1, 49:25, 50:5, 50:8, 50:12, 81:23
**actuary** [1] - 72:19
**add** [6] - 18:10, 18:11, 39:23, 48:3, 83:24
**added** [1] - 18:21
**additional** [5] - 10:11, 20:2, 42:1, 66:19, 66:21
**address** [18] - 9:17, 14:19, 21:23, 25:23, 29:13, 34:15, 35:20, 41:25, 44:18, 57:23, 63:13, 65:1, 67:5, 67:7, 67:9, 67:16, 68:8, 86:18
**addressed** [3] - 15:15, 19:4, 67:12
**addressing** [3] - 10:6, 33:21, 63:19
**adequate** [1] - 84:4
**adjourned** [1] - 94:21
**adjudication** [2] - 32:7, 32:9
**Adjust** [1] - 72:1
**administers** [1] - 64:15
**administration** [1] - 56:7
**Administration** [1] - 5:9
**Administration's** [2] - 5:7, 9:3
**administrative** [6] - 6:12, 6:18, 6:25, 10:15, 24:7, 31:8
**administrator** [1] - 75:16
**Administrators** [1] - 3:22
**admissibility** [8] - 18:24, 19:18, 21:6, 21:8, 33:20, 43:11, 72:18, 75:9
**admissible** [8] - 16:25, 17:11, 17:18, 21:13, 24:20, 28:4, 73:22, 74:20
**admission** [2] - 41:23, 73:20
**admissions** [2] - 73:18, 74:20
**admit** [5] - 16:14, 16:17, 36:7, 43:8, 74:11
**admits** [1] - 47:18
**admitted** [3] - 16:21, 17:8, 36:8
**adoption** [6] - 49:22, 67:25, 68:13, 68:14, 68:19
**advance** [1] - 85:7
**advice** [3] - 56:17, 56:21, 57:1
**advisor** [5] - 54:15, 55:12, 55:18, 55:20, 55:24, 56:1
**affect** [1] - 32:17
**affirmed** [3] - 78:18, 78:22, 79:6
**afield** [6] - 69:3, 70:14, 70:18, 70:21, 75:21, 75:24
**afraid** [1] - 44:14
**afternoon** [11] - 2:2, 2:5, 2:8, 3:6, 3:8, 3:9, 3:12, 4:3, 4:11, 4:14, 41:9

**aggregate** [2] - 48:24, 50:5
**ago** [10] - 19:5, 28:21, 49:15, 60:21, 61:8, 61:21, 62:10, 66:7, 81:21
**agree** [4] - 25:4, 26:14, 88:9, 90:20
**agreed** [1] - 36:6
**agreement** [7] - 50:3, 67:25, 68:13, 68:14, 68:15, 68:19, 81:24
**agreements** [3] - 49:23, 55:10, 58:23
**agrees** [1] - 36:14
**ahead** [17] - 7:13, 14:15, 14:16, 17:14, 21:24, 33:12, 39:19, 40:1, 43:1, 49:15, 66:23, 67:4, 69:16, 72:2, 75:25, 89:22, 93:16
**Aircoil** [1] - 49:11
**akin** [2] - 47:2, 79:2
**al** [2] - 1:6, 2:10
**ALEXANDER** [1] - 1:3
**allegation** [2] - 9:14, 85:1
**allegations** [4] - 54:20, 67:17, 68:3, 75:14
**alleged** [8] - 32:4, 33:21, 45:7, 45:20, 54:12, 54:13, 76:3
**allegedly** [3] - 54:20, 58:1
**alleges** [4] - 10:7, 44:5, 57:25, 80:24
**allow** [4] - 23:11, 35:6, 76:17, 76:18
**allowed** [2] - 59:5, 78:9
**almost** [4] - 24:10, 61:8, 66:7, 80:14
**alone** [1] - 58:15
**ambit** [2] - 53:13, 57:6
**ambush** [1] - 25:9
**amend** [1] - 28:23
**Amended** [4] - 43:20, 43:21, 44:4, 53:18
**amended** [1] - 78:10
**Americanized** [1] - 23:11
**amount** [7] - 2:17, 5:20, 18:16, 50:11, 50:18, 82:6, 92:7
**amounts** [3] - 48:12, 50:6, 50:8
**ample** [1] - 61:22
**analyses** [1] - 16:14
**analysis** [17] - 12:11, 16:15, 19:14, 20:13, 26:15, 44:15, 45:25, 46:12, 47:24, 48:5, 48:15, 48:19, 48:24, 49:9, 49:12, 49:13, 50:15
**analyst** [1] - 16:10
**analyzed** [1] - 38:24
**analyzes** [1] - 41:22
**Andrew** [3] - 12:7, 15:14, 15:18
**anew** [1] - 6:24
**answered** [1] - 32:21
**answers** [1] - 37:22
**anticipate** [3] - 7:18, 57:8
**anticipated** [1] - 87:5
**anxious** [1] - 75:21
**anyway** [1] - 94:6
**apart** [3] - 30:15, 36:4, 79:3
**apologize** [1] - 92:11
**appeal** [1] - 94:3
**appear** [4] - 6:1, 42:1, 45:11, 46:4
**apple** [2] - 15:2, 69:15

**apples** [1] - 47:8
**applicable** [1] - 55:22
**application** [1] - 31:18
**applies** [2] - 53:23, 54:2
**apply** [2] - 54:1, 61:19
**appreciate** [5] - 82:13, 91:1, 91:11, 92:8, 92:24
**appropriate** [3] - 21:10, 85:24, 87:1
**appropriately** [2] - 50:20, 53:13
**April** [1] - 24:4
**arbitration** [4] - 23:15, 26:5, 26:6, 28:8
**Arc** [1] - 48:12
**area** [3] - 61:25, 62:2, 73:8
**areas** [1] - 71:16
**argue** [7] - 28:10, 29:24, 39:15, 66:6, 75:5, 83:5, 85:23
**argued** [2] - 29:25, 33:17, 34:20, 45:21, 83:4
**argues** [3] - 24:23, 77:5, 77:6
**arguing** [5] - 13:21, 21:7, 39:9, 49:19, 68:16
**argument** [29] - 10:25, 13:2, 13:3, 15:20, 32:20, 32:22, 35:8, 39:25, 40:4, 41:18, 43:12, 53:9, 53:19, 55:15, 59:1, 60:15, 60:16, 62:5, 65:12, 67:8, 68:25, 70:10, 74:5, 74:25, 79:8, 80:8, 93:21
**arguments** [5] - 42:1, 58:18, 77:10, 82:20, 93:19
**arises** [2] - 7:17, 8:22
**arising** [1] - 10:11
**arithmetic** [2] - 19:8, 21:3
**aside** [1] - 47:25
**aspersion** [1] - 58:12
**assert** [2] - 60:3, 60:14
**asserted** [5] - 28:14, 61:1, 61:16, 74:4, 74:9
**asserting** [1] - 60:20
**assessing** [1] - 10:18
**assets** [2] - 10:16, 56:4
**assist** [1] - 89:16
**assume** [2] - 53:24, 88:17
**assumed** [2] - 26:13, 26:14
**assuming** [1] - 53:23
**assumption** [1] - 26:16
**attach** [2] - 12:16, 22:1
**attached** [1] - 22:8
**Attachment** [1] - 48:4
**attack** [2] - 37:25, 73:7
**attempt** [1] - 88:22
**attempted** [1] - 64:6
**attend** [1] - 28:10
**attendant** [1] - 46:1
**attorney** [2] - 65:14, 67:3
**attorney-client** [2] - 65:14, 67:3
**attorneys** [3] - 18:5, 69:20, 87:9
**attorneys'** [2] - 8:10, 9:11
**attributed** [1] - 30:23
**audit** [8] - 24:1, 24:4, 24:11, 24:16, 27:2, 27:5, 27:6, 30:22

**auditing** [2] - 26:16, 33:4
**auditor** [2] - 24:14, 26:15
**auditors** [1] - 33:11
**audits** [6] - 24:15, 26:7, 26:24, 27:1, 30:18, 33:23
**authenticate** [3] - 58:4, 58:10
**authenticating** [1] - 61:11
**authority** [3] - 43:7, 62:12, 68:21
**auto** [2] - 32:7, 32:9
**auto-adjudication** [1] - 32:9
**automatically** [1] - 17:2
**available** [1] - 78:6
**await** [1] - 50:14
**aware** [4] - 8:18, 26:2, 61:25, 75:8
**axiomatic** [1] - 28:2

## B

**back-door** [1] - 88:24
**background** [1] - 26:15
**bad** [1] - 91:15
**bait** [3] - 78:4, 78:5, 78:14
**Baltimore** [3] - 1:7, 1:24, 49:11
**bank** [1] - 50:6
**bar** [2] - 7:19, 93:8
**barred** [1] - 81:13
**based** [15] - 2:11, 12:8, 14:11, 16:25, 19:14, 21:11, 22:5, 39:5, 41:15, 42:15, 46:21, 49:23, 50:11, 69:14, 71:5
**basic** [3] - 61:19, 62:15, 71:15
**basis** [9] - 10:10, 12:6, 13:4, 43:17, 44:8, 44:20, 44:22, 59:10, 69:13
**bathroom** [2] - 89:9, 89:15
**BCG** [13] - 39:4, 40:4, 40:9, 42:13, 42:15, 43:12, 43:15, 45:21, 46:4, 47:22, 47:23, 48:15, 49:2
**BCG's** [9] - 39:1, 39:3, 39:7, 39:9, 39:21, 40:9, 40:11, 40:15, 45:15
**beat** [1] - 65:21
**became** [1] - 75:2
**Beckman** [1] - 18:10
**BEFORE** [1] - 1:10
**begin** [1] - 86:12
**behalf** [8] - 1:12, 1:14, 13:6, 13:9, 25:17, 41:10, 60:10, 92:8
**behave** [1] - 91:14
**behind** [3] - 54:12, 90:9, 90:13
**bench** [12] - 2:14, 9:17, 19:23, 20:8, 56:23, 69:1, 86:12, 93:9, 93:11, 93:12, 93:25
**benchmarked** [1] - 48:25
**bend** [2] - 89:14, 91:4
**benefit** [7] - 10:16, 10:22, 63:15, 66:25, 67:11, 68:9, 69:7
**Benefit** [9] - 3:22, 5:7, 5:9, 9:2, 74:25, 75:10, 75:13, 78:2, 79:9
**benefits** [4] - 12:21, 15:9, 64:22, 80:3
**BENNETT** [1] - 1:10
**best** [3] - 30:14, 89:3, 94:11

**better** [2] - 4:4, 52:24
**betting** [1] - 93:17
**between** [9] - 8:12, 9:8, 31:22, 42:9, 47:17, 48:18, 50:18, 66:15, 84:20
**beyond** [2] - 72:14, 84:23
**big** [1] - 68:6
**billable** [1] - 75:11
**bills** [1] - 22:5
**binding** [2] - 21:12, 71:16
**bit** [6] - 5:14, 6:21, 51:13, 67:15, 74:17, 94:15
**bite** [1] - 69:15
**bites** [1] - 15:2
**blackballed** [1] - 59:25
**Blake's** [3] - 49:14, 49:15, 50:25
**bland** [1] - 59:12
**blank** [1] - 50:23
**blanket** [1] - 73:21
**blunderbuss** [1] - 37:6
**bluntly** [2] - 15:20, 71:10
**board** [2] - 62:18, 62:20
**bolster** [2] - 27:15, 27:18
**Boon** [1] - 78:1
**bottom** [6] - 8:12, 30:10, 64:15, 68:25, 78:15
**bound** [1] - 73:19
**box** [1] - 47:11
**breach** [1] - 56:24
**breaches** [1] - 54:12
**breadth** [1] - 37:12
**break** [8] - 29:10, 29:14, 51:13, 51:15, 51:19, 51:22, 52:5
**breaks** [1] - 85:19
**Brian** [2] - 1:16, 3:14
**brief** [4] - 7:15, 29:10, 29:14, 75:19
**briefly** [2] - 41:25, 71:10
**bring** [2] - 76:5, 76:21
**bringing** [1] - 64:19
**broad** [2] - 36:13, 49:12
**brought** [1] - 24:17
**budgeting** [1] - 73:4
**building** [1] - 91:2
**burden** [1] - 81:1
**business** [5] - 16:19, 17:5, 59:7, 59:12
**businesses** [1] - 65:6
**button** [5] - 52:22, 52:24, 52:25, 72:8
**bye** [4] - 94:16, 94:20
**bye-bye** [2] - 94:16, 94:20

## C

**calculate** [9] - 17:25, 18:6, 18:15, 18:22, 22:14, 46:20, 50:9, 70:5, 70:7
**calculated** [2] - 49:25, 50:4
**calculating** [2] - 10:22, 18:1
**calculation** [6] - 18:9, 19:6, 19:8, 20:20, 46:17, 50:17
**calculations** [1] - 21:3
**CAME** [1] - 1:9

**cannot** [10] - 10:15, 12:20, 12:24, 16:21, 27:3, 43:15, 58:4, 58:10, 74:6
**capable** [1] - 70:11
**car** [1] - 3:15
**care** [4] - 37:15, 37:18, 37:20, 94:16
**carry** [1] - 81:1
**carrying** [1] - 10:14
**case** [92] - 6:14, 9:17, 14:1, 17:17, 17:19, 18:3, 21:20, 24:3, 24:14, 24:15, 24:17, 24:18, 25:1, 25:7, 26:17, 27:13, 28:5, 32:7, 36:16, 36:17, 36:20, 36:22, 36:24, 37:5, 37:17, 37:21, 38:4, 38:9, 39:5, 39:8, 39:22, 40:12, 45:18, 45:22, 46:5, 47:23, 49:11, 50:14, 50:22, 51:1, 54:7, 56:19, 56:20, 56:24, 56:25, 57:1, 60:23, 61:22, 61:24, 62:4, 62:18, 67:18, 68:3, 68:4, 68:13, 68:16, 68:17, 69:6, 70:17, 70:21, 73:24, 75:14, 75:23, 78:17, 78:20, 78:21, 78:22, 80:4, 82:7, 85:20, 85:24, 86:11, 86:12, 86:21, 87:3, 87:4, 90:6, 90:23, 92:21, 93:1, 93:2, 93:3, 93:16, 93:17, 93:18, 93:23, 94:2
**case-by-case** [1] - 37:5
**cases** [13] - 35:6, 35:12, 42:6, 49:10, 57:7, 59:24, 62:1, 62:3, 62:8, 62:17, 92:12, 93:8
**cast** [1] - 58:12
**categorically** [1] - 7:19
**caught** [1] - 62:20
**caused** [1] - 80:24
**ceremonial** [4] - 89:25, 90:18, 90:19, 90:22
**certain** [11] - 9:15, 37:22, 61:16, 68:16, 71:12, 72:8, 72:11, 79:17, 79:23, 90:16
**certainly** [14] - 8:7, 19:3, 21:12, 27:17, 34:3, 45:12, 46:3, 71:13, 73:5, 82:13, 85:11, 91:13, 94:4, 94:8
**CERTIFICATE** [1] - 95:1
**certified** [3] - 10:19, 11:10, 11:21
**Certified** [1] - 95:6
**certify** [1] - 95:7
**cetera** [4] - 45:9, 46:6, 78:20
**CFR** [1] - 55:17
**chain** [7] - 57:14, 57:25, 58:11, 58:12, 63:5, 65:15, 66:14
**chairs** [4] - 90:9, 90:10, 90:13
**challenge** [5] - 37:17, 37:22, 38:4, 73:1, 73:2
**challenging** [2] - 6:22, 37:24
**changing** [1] - 88:6
**characterization** [2] - 81:2, 82:3
**characterize** [1] - 80:22
**charge** [1] - 18:12
**charged** [7] - 10:15, 18:6, 18:16, 50:5, 50:6, 69:22, 70:2
**charges** [6] - 12:13, 16:16, 48:4, 70:5, 70:7, 70:9
**charitable** [1] - 39:3

**chart** [4] - 46:17, 47:7, 47:10, 48:2
**check** [1] - 91:7
**CHIMES** [1] - 1:5
**Chimes** [47] - 2:10, 3:10, 3:18, 4:23,
11:2, 26:10, 29:21, 29:24, 30:12,
30:13, 30:24, 31:13, 33:1, 33:6, 33:16,
34:19, 36:5, 37:2, 37:9, 39:8, 40:13,
45:8, 45:18, 46:7, 48:22, 49:18, 51:9,
60:10, 63:15, 66:25, 67:12, 68:9,
68:14, 69:8, 69:22, 74:3, 74:11, 74:12,
75:3, 79:12, 79:14, 79:15, 79:18, 80:3,
80:23, 81:23, 87:16
**chose** [1] - 79:22
**Christina** [2] - 1:16, 3:14
**CIA** [1] - 91:15
**Circuit** [5] - 17:17, 62:4, 78:18, 78:22,
79:7
**citation** [1] - 78:17
**cite** [5] - 42:6, 43:7, 49:10, 49:20, 62:3
**cited** [3] - 50:24, 59:3, 71:25
**cites** [2] - 55:17, 80:4
**Civil** [2] - 1:5, 2:10
**civil** [2] - 62:17, 93:8
**claim** [10] - 10:8, 31:11, 31:14, 31:19,
34:6, 43:13, 45:7, 45:20, 51:4
**Claim** [1] - 12:17
**claimed** [2] - 41:5, 44:23
**Claims** [1] - 25:2
**claims** [21] - 29:20, 29:23, 31:8, 31:9,
31:18, 33:1, 33:3, 33:5, 33:7, 33:15,
33:23, 40:6, 45:21, 45:23, 46:6, 46:7,
46:20, 63:21, 64:15, 84:6
**clarification** [1] - 21:18
**clarify** [1] - 90:4
**class** [2] - 20:17, 20:19
**classroom** [1] - 74:15
**clear** [8] - 28:6, 30:4, 34:16, 35:5, 58:11,
65:7, 67:7, 74:15
**cleared** [1] - 80:6
**clearly** [5] - 9:16, 21:13, 27:25, 28:13,
35:17
**Clerk** [1] - 86:9
**clerk** [1] - 93:22
**client** [5] - 58:13, 64:1, 65:14, 67:3, 72:5
**clients** [4] - 30:17, 31:5, 72:5, 75:12
**close** [2] - 60:23, 63:4
**closed** [3] - 24:9, 24:13, 61:7
**closing** [2] - 93:18, 93:21
**Co** [3] - 73:18, 73:19, 74:19
**Co-Defendants** [2] - 73:18, 73:19
**Co-Defendants'** [1] - 74:19
**Coast** [1] - 82:14
**cogent** [1] - 92:24
**colleagues** [1] - 91:8
**collects** [1] - 55:20
**college** [1] - 91:17
**Columbia** [1] - 3:11
**COLUMBIA** [1] - 1:5
**combined** [1] - 47:12

**coming** [4] - 49:7, 50:2, 69:19, 82:12
**commission** [1] - 55:20
**commissions** [1] - 72:8
**communication** [2] - 58:4, 58:14, 64:12
**Company** [1] - 49:11
**company** [1] - 27:2
**comparable** [1] - 80:5
**comparator** [1] - 76:10
**compared** [1] - 82:6
**comparing** [1] - 68:12
**compel** [2] - 60:15, 60:16, 81:12
**compensation** [3] - 47:18, 50:11, 50:19
**competitors** [1] - 77:6
**Complaint** [13] - 13:12, 14:4, 43:20,
43:21, 44:4, 49:5, 53:11, 53:18, 54:6,
55:7, 56:8, 56:13
**complaints** [1] - 32:6
**complete** [2] - 25:11, 93:18
**completely** [2] - 18:8, 25:10
**completing** [1] - 10:19
**compliance** [15] - 10:12, 10:21, 11:17,
11:20, 11:22, 11:24, 12:19, 12:23,
15:10, 16:16, 18:11, 18:12, 18:21
**complicated** [1] - 93:11
**complying** [1] - 26:7
**computer** [5] - 1:21, 22:6, 32:11, 32:14,
32:17
**computerization** [1] - 32:3
**computing** [1] - 15:9
**concede** [1] - 41:18
**concedes** [1] - 26:23
**conceding** [1] - 32:15
**concern** [2] - 58:21, 84:13
**concerned** [7] - 21:13, 35:10, 69:3,
71:13, 71:19, 89:17, 90:7
**concerning** [4] - 12:21, 38:25, 40:15,
45:15
**concession** [1] - 41:23
**conclusion** [2] - 68:22, 93:16
**conclusions** [3] - 6:17, 93:15, 93:20
**conduct** [3] - 25:13, 34:21, 85:5
**conducted** [3] - 16:19, 26:24, 27:5
**conference** [6] - 2:7, 2:9, 2:11, 2:15,
86:13, 86:18
**Conference** [1] - 95:12
**conferring** [1] - 88:6
**conformance** [1] - 95:11
**confuses** [1] - 47:9
**confusing** [1] - 69:5
**conjunction** [1] - 70:1
**connected** [2] - 12:20, 36:21
**connection** [5] - 20:4, 28:8, 55:16,
55:20, 56:12
**conservative** [1] - 12:10
**consider** [4] - 21:16, 44:20, 48:7, 53:10
**considered** [4] - 10:18, 44:11, 48:9,
76:9
**consistent** [8] - 23:5, 50:24, 75:14,
76:6, 81:14, 82:1, 86:17, 91:13

**conspiracy** [2] - 73:24, 74:5
**Consulting** [2] - 24:6, 24:11
**consulting** [1] - 12:19
**contained** [1] - 55:16
**contains** [1] - 57:25
**contemporaneous** [2] - 18:1, 50:3
**contend** [1] - 53:11
**contended** [1] - 31:3
**contends** [8] - 11:2, 17:21, 36:7, 57:13,
57:16, 67:3, 73:21, 82:24
**contention** [3] - 13:20, 77:24, 83:10
**contested** [3] - 27:9, 33:1, 64:4
**context** [4] - 35:12, 37:18, 38:6, 74:20
**continue** [2] - 29:16, 94:8
**Contract** [6] - 10:11, 10:12, 10:20,
10:21, 10:23, 11:22
**contract** [3] - 68:10, 68:11, 69:12
**contracts** [1] - 56:5
**contradiction** [1] - 9:7
**contradicts** [1] - 8:5
**contributed** [1] - 10:22
**contributions** [10] - 22:6, 22:8, 22:13,
39:1, 39:3, 40:12, 40:16, 45:15, 45:17,
46:6
**control** [2] - 56:4, 56:6
**copied** [2] - 58:11, 58:15
**copies** [1] - 86:14
**copy** [1] - 77:18
**corporate** [1] - 26:4
**correct** [33] - 3:18, 11:2, 11:3, 11:9,
13:3, 14:2, 15:21, 16:24, 17:7, 19:6,
23:8, 23:20, 29:6, 29:7, 31:13, 31:16,
40:8, 40:11, 43:3, 45:11, 46:25, 60:25,
61:7, 61:12, 66:17, 66:18, 71:22,
72:20, 72:22, 72:23, 80:18, 88:4, 95:9
**correcting** [1] - 24:24
**correctly** [1] - 44:12
**costs** [3] - 10:11, 10:18, 15:8
**counsel** [32] - 2:11, 2:13, 2:21, 2:24,
3:25, 4:13, 4:23, 5:22, 27:15, 30:3,
39:13, 43:3, 46:2, 46:3, 46:8, 52:6,
53:14, 57:20, 63:17, 64:9, 66:1, 71:20,
76:25, 79:18, 83:19, 83:20, 84:8,
87:10, 88:10, 90:11
**counsel's** [1] - 90:10
**count** [2] - 72:2, 73:24
**Count** [1] - 49:5
**couple** [4] - 7:20, 8:4, 14:6, 66:19
**court** [16] - 6:13, 20:13, 25:4, 28:12,
30:4, 44:1, 51:12, 52:4, 62:16, 64:5,
74:3, 77:9, 82:15, 89:6, 91:21, 91:22
**Court** [18] - 6:25, 7:1, 7:20, 20:4, 28:4,
40:3, 42:14, 46:15, 46:16, 48:3, 48:7,
59:1, 61:23, 82:22, 86:9, 88:17, 88:23,
95:7
**COURT** [176] - 1:1, 2:2, 2:5, 2:9, 2:24,
3:4, 3:6, 3:10, 3:17, 3:20, 3:22, 4:1,
4:3, 4:6, 4:10, 4:14, 4:16, 4:18, 4:20,
4:25, 6:7, 7:4, 7:10, 7:13, 7:23, 7:25,
8:3, 8:15, 8:17, 9:23, 10:24, 11:16,

11:19, 12:2, 12:6, 13:1, 13:16, 13:18, 13:24, 14:8, 14:10, 14:12, 14:15, 14:20, 15:1, 16:3, 16:6, 16:23, 17:4, 17:8, 17:11, 17:14, 18:23, 19:3, 19:16, 19:22, 20:7, 20:16, 20:21, 21:24, 22:16, 23:10, 23:22, 23:25, 25:14, 25:20, 25:24, 27:21, 29:8, 30:9, 30:25, 31:22, 32:19, 33:10, 33:12, 34:14, 35:24, 37:11, 38:17, 38:21, 39:17, 39:19, 39:24, 40:7, 40:22, 40:24, 41:12, 42:19, 42:24, 43:1, 43:17, 43:25, 44:4, 46:22, 47:1, 47:4, 47:15, 47:20, 48:20, 49:14, 49:17, 50:13, 51:22, 51:25, 52:3, 52:14, 52:17, 52:20, 52:23, 53:2, 53:25, 55:4, 56:14, 59:19, 60:22, 61:4, 61:6, 61:18, 61:24, 65:11, 65:18, 66:2, 66:6, 66:12, 66:20, 66:23, 67:9, 68:5, 68:24, 69:18, 70:10, 72:17, 72:21, 73:1, 74:13, 75:23, 76:4, 76:25, 78:3, 78:15, 80:11, 80:16, 80:19, 81:7, 84:8, 84:11, 85:3, 86:25, 87:13, 87:15, 87:18, 87:22, 87:25, 88:3, 88:9, 88:13, 88:16, 89:1, 89:22, 90:1, 90:3, 90:5, 91:5, 91:7, 91:13, 91:20, 92:1, 92:3, 92:5, 92:9, 92:17, 92:19, 92:23, 94:13, 94:20, 95:18
**Court's** [3] - 21:21, 34:1, 43:10
**courtesy** [1] - 51:12
**Courthouse** [1] - 1:23
**courthouse** [1] - 89:4
**courtroom** [12] - 21:5, 62:23, 89:8, 89:14, 89:25, 90:7, 90:18, 90:19, 90:22, 90:24, 92:13, 93:23
**Courtroom** [1] - 90:23
**Courts** [1] - 68:22
**Cousin** [4] - 1:16, 3:14, 4:21, 6:3
**COUSIN** [4] - 3:16, 3:21, 4:19, 4:21
**cover** [1] - 14:17
**covered** [1] - 21:14
**created** [2] - 7:21, 8:6
**credibility** [3] - 70:13, 73:2, 73:3
**credit** [4] - 12:10, 12:11, 12:12, 12:14
**criminal** [2] - 62:17, 62:19, 93:8
**cross** [10] - 19:1, 19:3, 20:9, 20:12, 20:14, 24:21, 25:10, 28:3, 28:16, 70:13
**cross-examination** [1] - 70:13
**cross-examine** [5] - 20:12, 20:14, 24:21, 28:3, 28:16
**cross-examining** [1] - 25:10
**CRR** [2] - 1:23, 95:17
**Crutcher** [7] - 18:4, 18:17, 20:3, 66:14, 69:20, 70:1, 70:14
**Crutcher's** [1] - 70:4
**culpable** [1] - 34:21
**current** [1] - 86:18
**cut** [8] - 14:16, 25:25, 26:8, 62:11, 63:3, 80:14, 80:15, 81:16
**cute** [4] - 62:8, 63:1, 63:10, 65:24
**cutting** [1] - 25:7

**D**

**D.C** [8] - 39:8, 74:12, 75:3, 79:14, 79:15, 80:3, 80:23
**D.C.'s** [1] - 74:3
**DALIN** [45] - 3:2, 3:9, 10:5, 11:4, 11:21, 12:9, 14:19, 14:25, 16:12, 17:3, 17:7, 17:10, 17:13, 17:15, 19:1, 19:10, 19:21, 20:2, 20:12, 20:19, 21:18, 23:20, 23:23, 24:1, 29:7, 32:25, 33:11, 36:12, 48:22, 49:16, 49:18, 55:6, 59:21, 61:1, 61:13, 61:22, 67:6, 67:15, 68:10, 69:17, 69:20, 77:2, 87:12, 88:11, 88:15
**Dalin** [16] - 1:13, 3:2, 10:5, 16:12, 25:15, 29:6, 32:25, 42:22, 61:24, 61:25, 63:9, 67:4, 67:6, 69:2, 69:15, 84:9
**damages** [17] - 41:5, 41:21, 42:4, 42:9, 43:6, 43:9, 43:14, 43:16, 43:19, 44:8, 44:9, 44:14, 44:16, 44:21, 44:23, 49:25, 50:9
**dance** [1] - 35:4, 74:17, 82:2
**dancing** [1] - 42:10
**Daniel** [1] - 73:10
**Data** [3] - 78:17, 78:20, 78:21
**data** [2] - 32:10, 32:11
**date** [3] - 83:2, 84:3, 87:5
**Dated** [1] - 95:14
**dated** [1] - 28:20
**David** [5] - 18:4, 18:17, 20:3, 69:20, 71:3
**days** [3] - 87:2, 93:13, 93:19
**dead** [1] - 65:21
**deadlines** [1] - 28:22
**deal** [4] - 21:7, 52:9, 57:9, 75:1
**dealing** [1] - 80:25
**deals** [1] - 29:4
**dealt** [3] - 28:5, 79:6, 86:6
**DECEMBER** [1] - 2:1
**December** [12] - 1:8, 5:18, 16:7, 34:9, 61:21, 62:9, 83:1, 83:16, 84:2, 85:10, 85:22, 95:14
**decide** [1] - 5:16
**decided** [2] - 26:18, 27:14
**decision** [3] - 37:6, 44:6, 63:1
**deck** [1] - 79:18
**declaration** [15] - 8:7, 16:9, 16:18, 16:21, 18:5, 18:8, 18:12, 18:14, 20:3, 20:5, 21:10, 58:3, 60:20, 61:10, 70:6
**declarations** [2] - 69:21, 70:5
**declined** [1] - 58:16
**dedicated** [5] - 30:13, 31:13, 31:21, 32:18, 33:2
**deemed** [1] - 86:9
**deep** [1] - 44:15
**defeat** [1] - 43:12
**defend** [3] - 27:13, 27:19, 63:3
**Defendant** [9] - 3:7, 3:10, 3:17, 4:10, 7:12, 19:25, 79:16, 82:17, 86:3

**Defendant's** [1] - 73:19
**Defendants** [61] - 1:6, 1:14, 5:16, 5:17, 6:21, 7:7, 8:21, 10:9, 12:16, 13:6, 13:9, 21:1, 24:4, 25:17, 29:17, 29:21, 29:24, 30:4, 30:6, 33:17, 34:5, 34:16, 34:19, 36:2, 39:2, 39:5, 40:13, 41:7, 41:10, 41:19, 43:18, 44:19, 45:12, 45:21, 46:12, 48:22, 49:10, 53:9, 53:10, 57:12, 60:5, 60:21, 71:2, 71:4, 71:10, 73:16, 73:17, 73:18, 73:19, 74:21, 74:23, 75:4, 77:11, 77:20, 79:12, 79:18, 81:1, 87:16, 87:19, 88:20, 93:4
**Defendants'** [37] - 10:2, 29:16, 29:19, 33:14, 34:5, 34:9, 34:24, 35:14, 35:17, 35:21, 35:25, 37:13, 40:14, 41:3, 44:25, 45:2, 45:5, 50:16, 51:3, 51:7, 51:10, 53:5, 53:7, 57:11, 63:14, 67:10, 69:6, 74:18, 74:19, 74:24, 75:17, 77:5, 77:24, 79:7, 81:21, 82:8
**defended** [1] - 27:15
**defense** [4] - 34:25, 35:9, 57:18, 81:25
**Defense** [22] - 5:24, 7:6, 9:12, 23:19, 29:12, 29:13, 34:8, 38:18, 39:12, 39:15, 41:2, 43:2, 45:2, 46:2, 46:8, 53:14, 57:19, 63:16, 67:2, 71:20, 90:8, 90:11
**defined** [1] - 62:21
**definitely** [2] - 23:2, 93:10
**definition** [4] - 17:12, 55:10, 56:3, 74:5
**delay** [2] - 78:23, 79:3
**delayed** [2] - 2:13, 86:11
**delete** [1] - 91:10
**deliberative** [1] - 6:19
**demonstrate** [1] - 41:20
**demonstration** [1] - 44:17
**denial** [1] - 45:14
**denied** [18] - 8:2, 9:19, 9:23, 15:4, 15:25, 16:1, 20:22, 22:22, 22:23, 33:16, 34:6, 40:16, 45:16, 51:4, 51:5, 59:8, 70:11, 73:13
**denies** [1] - 18:19
**Denton's** [1] - 6:3
**deny** [4] - 50:15, 56:15, 56:23, 57:4
**denying** [1] - 56:18
**department** [2] - 33:8, 72:19, 72:24
**Department** [3] - 25:3, 59:23, 67:19
**dependent** [1] - 68:7
**depose** [1] - 8:9
**deposing** [1] - 57:17
**deposition** [19] - 23:4, 23:14, 24:10, 24:14, 24:16, 24:17, 25:6, 25:8, 25:22, 27:10, 28:7, 28:23, 28:25, 33:3, 37:21, 38:3, 54:23, 71:5, 71:7
**depositions** [2] - 26:10, 26:11
**deprived** [2] - 25:9, 57:17
**description** [1] - 54:11
**designation** [1] - 28:7
**designations** [3] - 23:14, 71:5, 71:7
**designed** [1] - 72:9

**designs** [1] - 73:5
**despite** [1] - 90:19
**destroy** [4] - 88:1, 88:8, 88:13, 88:16
**destroyed** [1] - 88:18
**detailed** [2] - 75:23, 75:24
**determination** [3] - 19:24, 19:25
**determinations** [2] - 11:17, 15:11
**determine** [3] - 7:2, 8:24, 15:8
**determined** [1] - 49:1
**developed** [1] - 49:1
**Development** [1] - 69:12
**develops** [1] - 65:8
**Diane** [6] - 8:7, 57:13, 59:11, 60:6, 60:13, 63:5
**Diego** [1] - 48:12
**difference** [6] - 22:14, 32:1, 32:2, 47:17, 48:18, 67:15
**different** [18] - 30:21, 30:22, 31:20, 32:12, 32:13, 32:17, 46:11, 64:21, 64:22, 65:4, 68:15, 68:20, 76:2, 78:12, 78:13, 80:6
**differential** [2] - 22:10, 22:11
**dig** [1] - 64:25
**direct** [8] - 46:19, 47:12, 47:18, 48:16, 50:10, 68:21, 80:25, 86:9
**directly** [3] - 28:9, 46:17, 55:22
**disability** [1] - 89:5
**Disability** [1] - 64:2
**disabled** [1] - 89:12
**disagree** [1] - 46:13
**disclose** [3] - 58:18, 59:12, 63:2
**disclosed** [9] - 26:20, 54:10, 60:11, 60:20, 60:24, 61:13, 61:14, 76:8, 79:5
**disclosure** [1] - 67:2
**discovery** [27] - 13:12, 14:5, 24:3, 24:8, 24:9, 24:13, 25:12, 54:9, 54:11, 54:21, 55:2, 55:8, 55:13, 56:9, 60:8, 60:22, 61:7, 61:14, 64:6, 64:8, 65:25, 67:2, 77:12, 77:21, 78:9, 78:19
**discretion** [2] - 68:17, 68:18
**discretionary** [3] - 56:3, 56:6, 68:21
**discussed** [1] - 70:6
**discusses** [1] - 69:24
**disgorged** [1] - 80:10
**disgorgement** [2] - 79:24, 81:11
**dismissal** [1] - 39:4
**dispute** [4] - 26:5, 41:24, 65:1, 66:15
**disputes** [1] - 70:15
**distinction** [3] - 21:5, 31:22, 42:9
**distinguish** [1] - 45:13
**DISTRICT** [3] - 1:1, 1:1, 1:5
**District** [3] - 3:11, 95:7
**DIVISION** [1] - 1:2
**divorce** [1] - 37:21
**Docket** [1] - 1:5
**docketed** [1] - 86:10
**document** [8] - 16:20, 22:17, 37:16, 64:10, 67:24, 68:6, 88:7, 88:8
**documentation** [1] - 22:18

**documents** [25] - 12:15, 17:6, 17:18, 17:20, 17:22, 21:11, 22:15, 31:2, 36:24, 37:2, 37:4, 37:6, 64:1, 64:7, 64:8, 65:3, 65:12, 67:23, 77:19, 77:22, 82:23, 83:12, 84:16, 84:22, 84:25
**DOL** [1] - 10:21
**DOL's** [1] - 42:17
**dollars** [1] - 10:22
**Don** [1] - 4:22
**Donald** [1] - 1:19
**donations** [1] - 60:9
**done** [9] - 31:12, 35:4, 41:1, 66:5, 78:8, 78:13, 82:13, 88:17, 89:17
**Dong** [8] - 16:9, 16:15, 17:19, 18:14, 20:12, 20:19, 21:9, 22:21
**Dong's** [2] - 19:14, 70:6
**Donna** [1] - 59:3
**door** [3] - 88:24, 89:4, 89:6
**dovetail** [1] - 17:4
**dovetails** [1] - 17:2
**down** [2] - 80:17, 91:4
**Draft** [1] - 7:16
**drafted** [1] - 68:19
**drag** [1] - 25:4
**drawing** [1] - 50:23
**drift** [1] - 94:1
**driveway** [1] - 89:5
**dropped** [1] - 52:12
**Duane** [1] - 6:4
**due** [2] - 19:6, 62:1
**Dumitrescu** [2] - 1:16, 3:14
**during** [9] - 6:11, 6:17, 9:17, 84:4, 84:14, 84:15, 84:18, 87:1, 94:10
**duties** [2] - 56:24, 73:4
**duty** [2] - 77:14, 77:15

## E

**e-mail** [12] - 57:13, 57:25, 58:5, 58:11, 63:5, 65:15, 66:14, 67:7, 69:24, 72:1, 72:13
**e-mailed** [1] - 17:21
**e-mails** [5] - 57:24, 60:4, 60:5, 61:2, 61:11
**early** [1] - 59:15
**easier** [1] - 88:14
**easily** [2] - 90:24, 91:24
**Eassa** [9] - 1:18, 4:2, 4:4, 88:21, 89:11, 90:25, 91:8, 92:12, 94:8
**EASSA** [10] - 4:2, 4:5, 88:21, 89:20, 91:1, 91:6, 91:11, 91:19, 91:25, 94:12
**Eassa's** [1] - 86:11
**East** [1] - 82:14
**EBSA's** [1] - 12:17
**ECF** [3] - 59:5, 59:9, 76:2
**effective** [1] - 83:1
**effort** [1] - 74:14
**efforts** [1] - 35:11
**eight** [1] - 64:17

**either** [5] - 20:1, 62:24, 62:25, 75:17, 94:3
**electronic** [1] - 86:14
**elevator** [2] - 88:25, 89:7
**eleven** [1] - 61:8
**eleventh** [1] - 13:11
**elicit** [1] - 83:12
**eligibility** [2] - 11:17, 15:10
**emphasized** [1] - 31:25
**employed** [2] - 16:9, 71:17
**Employee** [3] - 5:7, 5:9, 9:2
**employee** [5] - 71:6, 71:11, 72:2, 79:15, 81:10
**employees** [7] - 26:24, 58:22, 59:4, 59:22, 59:24, 61:16, 61:17
**employer** [9] - 10:13, 11:8, 11:9, 11:12, 11:14, 11:23, 12:24, 60:1
**employer's** [2] - 10:14, 11:11
**employment** [1] - 71:17
**end** [4] - 25:11, 46:12, 61:7, 87:4
**enforce** [1] - 59:22
**engaging** [1] - 25:13
**England** [1] - 23:7
**English** [1] - 23:10
**enjoy** [1] - 94:7
**enjoyed** [1] - 92:12
**ensure** [1] - 74:10
**enter** [1] - 56:5
**entered** [1] - 52:16
**entertain** [2] - 35:3, 35:8
**entire** [3] - 24:2, 24:15, 93:23
**entirely** [1] - 43:6
**entities** [1] - 26:4
**entitled** [2] - 93:3, 95:10
**ENTITLED** [1] - 1:9
**entity** [1] - 24:7
**entry** [1] - 32:16
**equitable** [1] - 42:12
**ERISA** [3] - 11:25, 80:8, 81:4
**error** [2] - 19:6, 19:8
**errors** [6] - 29:20, 32:3, 32:16, 33:15, 33:24, 34:6
**Esquire** [12] - 1:13, 1:13, 1:15, 1:15, 1:16, 1:16, 1:17, 1:17, 1:18, 1:18, 1:19, 1:19
**essential** [2] - 44:18, 70:20
**essentially** [45] - 6:22, 8:23, 8:25, 9:2, 10:25, 12:3, 15:5, 16:8, 29:18, 29:21, 30:1, 33:17, 34:15, 34:17, 36:2, 38:2, 39:1, 39:9, 43:18, 45:20, 50:15, 51:2, 53:8, 56:17, 57:14, 67:10, 67:12, 69:4, 70:24, 71:4, 73:17, 75:2, 75:4, 75:7, 79:12, 81:10, 81:12, 81:25, 82:19, 82:22, 83:2, 83:4, 83:11, 90:12
**Essentially** [1] - 75:1
**establish** [1] - 10:8
**et** [6] - 1:6, 2:10, 45:9, 46:6, 78:20
**event** [1] - 64:3
**eventually** [1] - 11:7

**evidence** [84] - 5:8, 6:24, 7:2, 7:21, 9:2, 16:25, 17:11, 17:23, 20:9, 29:20, 29:22, 30:11, 30:15, 33:15, 33:22, 34:5, 34:10, 34:23, 35:15, 35:21, 35:25, 36:3, 36:7, 36:8, 36:13, 36:21, 37:13, 37:23, 38:11, 38:25, 39:2, 39:21, 40:15, 42:4, 42:5, 42:17, 43:6, 43:8, 44:6, 44:14, 45:3, 45:6, 45:14, 45:19, 48:8, 51:4, 53:9, 56:16, 57:2, 57:5, 60:7, 63:15, 63:21, 63:23, 64:20, 66:24, 67:11, 68:3, 68:8, 68:11, 69:7, 70:4, 74:3, 74:11, 74:16, 74:19, 74:25, 75:10, 75:18, 76:21, 76:22, 77:3, 78:8, 79:8, 79:14, 79:17, 82:18, 82:23, 84:17, 85:18, 86:1, 86:4
**evidentiary** [2] - 65:25, 71:15
**exact** [1] - 28:16
**exactly** [5] - 7:18, 20:8, 73:7, 76:12, 83:24
**examination** [1] - 70:13
**examine** [4] - 19:2, 19:4, 20:10, 20:12, 20:14, 23:17, 24:21, 28:3, 28:16
**examining** [1] - 25:10
**example** [11] - 12:18, 13:10, 17:16, 20:8, 36:14, 42:7, 55:18, 55:23, 55:25, 64:10, 89:13
**examples** [3] - 7:20, 8:4, 12:1
**exceeds** [1] - 45:8
**except** [2] - 47:9, 61:15
**exception** [2] - 21:14, 22:19
**exceptions** [1] - 28:14
**excess** [5] - 45:20, 48:24, 49:3, 49:6, 51:4
**excessive** [7] - 10:7, 10:10, 45:7, 46:19, 47:18, 48:16, 50:20
**exchange** [1] - 86:14
**exclude** [36] - 5:6, 5:8, 8:20, 9:1, 9:19, 10:1, 15:24, 16:9, 23:3, 23:14, 23:21, 27:11, 28:25, 29:20, 29:22, 33:14, 34:5, 38:25, 40:15, 41:14, 41:20, 45:14, 53:8, 57:12, 63:14, 66:24, 67:11, 69:7, 71:2, 71:4, 73:10, 73:18, 74:24, 75:18, 81:6, 82:23
**excluded** [12] - 14:1, 28:19, 30:16, 34:20, 42:3, 60:18, 63:5, 63:6, 64:20, 76:21, 88:7, 88:12
**excluding** [2] - 36:13, 79:8
**exclusion** [4] - 31:18, 39:2, 41:21, 73:21
**excuse** [6] - 43:3, 43:23, 43:25, 53:25, 59:17, 74:8
**executing** [1] - 55:9
**exemption** [1] - 55:16
**exercised** [1] - 56:3
**exhaustive** [2] - 2:17, 5:19
**exhaustively** [1] - 5:12
**Exhibit** [4] - 12:17, 65:14, 69:11, 88:4
**exhibit** [4] - 64:13, 69:13, 69:19, 87:24
**exhibits** [5] - 64:11, 64:13, 86:15, 90:15, 90:16
**exist** [2] - 84:22, 84:23

**existed** [1] - 83:12
**exists** [2] - 9:8, 58:15
**expect** [2] - 44:16, 74:3
**expense** [3] - 15:11, 50:2, 50:12
**expenses** [19] - 11:1, 11:16, 11:20, 12:20, 13:21, 13:22, 14:1, 14:3, 15:6, 15:9, 15:16, 45:24, 46:5, 48:25, 49:6, 50:1, 50:20, 80:25
**Expenses** [1] - 12:18
**expert** [37] - 10:2, 10:8, 10:9, 12:7, 15:13, 15:14, 23:21, 24:18, 24:24, 25:8, 25:23, 29:1, 34:24, 41:4, 41:14, 41:20, 41:22, 42:2, 42:6, 42:8, 43:3, 43:7, 43:19, 44:7, 44:9, 44:14, 44:22, 45:6, 45:19, 47:24, 49:12, 49:13, 54:23, 73:9, 77:5, 77:11
**expert's** [1] - 41:16
**expertise** [2] - 61:25, 73:8
**experts** [5] - 4:24, 24:23, 24:25, 25:6, 27:9
**explanation** [1] - 38:12
**explore** [1] - 58:19
**express** [2] - 65:4, 65:7
**expressly** [2] - 54:18, 76:12
**extent** [15] - 8:16, 15:12, 33:22, 37:16, 38:10, 41:19, 42:12, 42:17, 43:2, 61:15, 71:23, 73:3, 78:25, 83:17, 84:22
**extraneous** [5] - 35:22, 35:25, 37:14, 37:23, 38:11
**extrapolated** [2] - 30:19, 30:23
**eyes** [1] - 23:3

## F

**F.2d** [1] - 17:17
**facilities** [1] - 89:10
**facility** [1] - 89:13
**fact** [27] - 8:13, 9:16, 14:13, 15:5, 22:10, 24:9, 26:2, 26:5, 30:1, 33:7, 33:19, 35:2, 38:9, 41:24, 42:2, 56:14, 65:7, 76:20, 83:25, 84:6, 85:6, 85:9, 87:3, 93:7, 93:15, 93:20
**facts** [9] - 18:4, 31:2, 54:12, 55:13, 56:8, 56:12, 56:25, 61:15, 81:23
**failed** [1] - 83:6
**failing** [1] - 45:23
**failure** [1] - 83:5
**fair** [3] - 54:25, 55:3, 62:23
**fairness** [2] - 54:22, 61:19
**fall** [1] - 22:18
**familiar** [3] - 18:3, 49:17, 62:19
**far** [11] - 21:13, 31:6, 35:10, 36:6, 69:3, 70:21, 71:13, 71:19, 89:17, 90:6, 92:20
**fashion** [1] - 70:20
**fatal** [1] - 53:2
**FBI** [1] - 91:15
**FCE** [87] - 2:13, 3:22, 11:13, 16:9, 16:14,

17:19, 17:21, 18:6, 18:10, 18:17, 18:20, 24:10, 24:22, 25:3, 25:12, 26:1, 29:15, 31:1, 31:3, 32:7, 33:7, 33:23, 36:25, 45:7, 46:20, 47:19, 48:14, 49:2, 49:20, 50:11, 50:19, 50:21, 51:7, 53:5, 53:7, 54:20, 55:8, 55:14, 55:22, 56:1, 57:12, 57:16, 58:1, 58:21, 60:9, 60:11, 63:14, 63:19, 64:1, 64:15, 65:5, 66:15, 68:1, 68:13, 68:16, 69:21, 69:22, 69:23, 70:8, 71:2, 71:4, 71:6, 71:9, 71:11, 71:16, 71:20, 73:16, 73:17, 74:7, 74:21, 74:23, 74:24, 75:4, 75:7, 75:17, 77:7, 77:12, 77:18, 77:20, 84:20, 85:11, 85:16, 85:23, 87:19, 88:19
**FCE's** [14] - 18:4, 19:5, 24:7, 29:23, 33:3, 33:18, 33:21, 60:15, 67:16, 73:15, 77:4, 77:8, 83:11, 85:1
**fear** [1] - 60:14
**feasibility** [2] - 34:25, 35:9
**feasible** [1] - 35:10
**February** [4] - 24:8, 60:5, 60:8, 94:4
**FEDERAL** [1] - 95:18
**federal** [2] - 62:16, 64:5
**fee** [4] - 16:16, 18:12, 18:16, 18:21
**fees** [38] - 8:10, 9:11, 10:8, 10:10, 12:19, 17:25, 18:6, 18:18, 18:22, 26:6, 39:1, 39:3, 39:7, 39:10, 39:21, 40:10, 40:11, 40:16, 43:15, 45:7, 45:15, 45:17, 45:20, 46:5, 46:6, 46:19, 47:12, 47:14, 48:4, 48:6, 48:16, 48:24, 49:4, 50:4, 69:22, 69:25, 70:2, 85:1
**felt** [1] - 83:10
**Ferretti** [2] - 1:17, 3:25
**few** [6] - 2:6, 5:19, 52:10, 53:6, 62:1, 81:20
**fiduciary** [18] - 37:25, 53:10, 54:3, 54:12, 54:19, 54:20, 55:8, 55:11, 55:14, 55:25, 56:1, 56:3, 56:24, 57:5, 65:5, 65:10, 84:1
**fiduciary's** [1] - 77:15
**fifth** [4] - 89:8, 89:12, 90:2, 90:17
**Fifth** [1] - 17:16
**figure** [3] - 47:16, 48:17, 50:18
**filed** [21] - 2:13, 2:17, 5:3, 5:17, 5:18, 5:20, 6:2, 9:25, 16:7, 17:20, 18:8, 27:23, 29:5, 34:4, 34:8, 34:19, 44:4, 44:19, 67:21, 68:1, 86:8
**finally** [1] - 79:19
**financial** [2] - 16:10, 37:8
**finder** [1] - 38:8
**findings** [3] - 38:9, 93:15, 93:20
**fine** [15] - 4:25, 15:22, 39:24, 47:9, 52:14, 52:25, 65:19, 88:3, 89:1, 90:25, 91:23, 91:24, 93:1
**finish** [1] - 87:5
**finished** [1] - 66:11
**First** [3] - 78:17, 78:20, 78:21
**first** [25] - 2:25, 5:3, 5:5, 6:8, 7:15, 13:10, 13:21, 14:7, 24:25, 25:25,

29:18, 47:11, 48:23, 53:15, 53:17, 53:19, 58:3, 58:16, 66:24, 67:16, 69:13, 73:23, 77:14, 78:23, 81:16

**five** [8] - 51:14, 51:15, 51:17, 51:18, 51:19, 51:22, 70:25, 85:8

**five-minute** [3] - 51:15, 51:19, 51:22

**flagged** [1] - 58:3

**flesh** [1] - 84:25

**floor** [4] - 89:8, 89:12, 89:15, 90:17

**Floor** [2] - 1:23, 89:25

**FOCR** [1] - 1:23

**focus** [1] - 75:13

**focused** [2] - 39:9, 48:14

**follow** [2] - 19:12, 90:22

**following** [1] - 50:16

**FOR** [2] - 1:1, 1:9

**foregoing** [1] - 95:8

**forget** [1] - 78:20

**form** [2] - 43:6, 65:9

**format** [1] - 95:11

**former** [8] - 28:3, 59:22, 59:24, 60:1, 61:17, 64:1, 71:6, 71:11

**forms** [2] - 65:6, 65:8

**forth** [23] - 9:20, 9:24, 15:23, 16:1, 22:22, 22:24, 28:24, 34:7, 35:19, 38:13, 40:17, 41:13, 49:8, 56:8, 56:9, 63:7, 65:9, 69:8, 70:22, 79:10, 84:20, 86:5, 90:17

**fortunate** [1] - 93:7

**forward** [1] - 93:1

**foundation** [4] - 17:15, 43:16, 71:24, 72:16

**four** [9] - 5:3, 9:25, 20:23, 23:1, 28:20, 51:7, 51:9, 87:24

**fourth** [2] - 22:25, 23:1

**Fourth** [5] - 1:23, 62:4, 78:18, 78:22, 79:7

**frankly** [6] - 20:16, 38:7, 57:10, 65:23, 75:17, 82:5

**free** [11] - 11:12, 19:3, 20:9, 37:19, 37:22, 38:5, 71:13, 73:5, 85:11, 85:25

**Friday** [6] - 2:12, 2:15, 86:8, 86:13, 86:15, 87:1

**Fringe** [1] - 78:1

**fringe** [3] - 10:15, 10:22, 11:9

**front** [2] - 46:22, 89:4

**full** [1] - 24:10

**fully** [1] - 72:25

**fully-qualified** [1] - 72:25

**function** [1] - 15:15

**functions** [3] - 11:5, 11:6, 12:24

**fundamentally** [2] - 46:13, 62:24

**funds** [1] - 11:7

**furthermore** [2] - 15:12, 79:3

# G

**gap** [1] - 50:18

**garbage** [3] - 32:14, 32:15

**Gary** [1] - 18:10

**gather** [1] - 6:11

**general** [3] - 14:2, 30:18, 63:20

**Gharanfoli** [6] - 5:8, 6:10, 7:17, 8:6, 8:8, 8:20

**Gharanfoli's** [3] - 9:1, 9:6, 9:9

**GIORDANO** [2] - 1:23, 95:17

**Giordano** [2] - 52:4, 95:5

**given** [5] - 7:20, 22:3, 27:4, 28:2, 64:16

**glad** [33] - 5:22, 5:23, 6:5, 6:7, 7:5, 10:2, 16:11, 23:18, 30:3, 32:23, 34:15, 39:12, 41:7, 42:21, 46:1, 46:7, 48:21, 53:14, 55:4, 57:19, 59:20, 63:16, 65:20, 66:9, 67:4, 71:9, 71:20, 75:18, 79:19, 80:19, 83:19, 89:19, 92:10

**glean** [1] - 68:12

**goal** [1] - 93:4

**gotcha** [1] - 54:18

**Government** [27] - 3:1, 5:4, 19:17, 20:1, 21:3, 23:15, 23:18, 32:23, 36:6, 40:7, 40:8, 45:22, 46:2, 48:21, 57:15, 57:16, 60:2, 61:6, 65:20, 66:9, 66:23, 67:22, 76:25, 77:3, 87:9, 88:10, 90:11

**Government's** [5] - 12:7, 15:13, 42:22, 60:12, 93:3

**Grace** [6] - 16:9, 16:15, 17:19, 18:14, 22:21, 70:6

**grandeur** [1] - 90:19

**grant** [4] - 15:17, 76:23, 78:7, 79:1

**granted** [30] - 19:5, 29:3, 35:1, 35:2, 35:16, 35:18, 38:2, 38:12, 38:21, 44:20, 44:25, 57:8, 62:13, 63:4, 63:7, 63:12, 69:8, 69:9, 70:21, 74:19, 74:21, 76:2, 79:8, 79:9, 81:7, 82:9, 82:10, 86:5, 86:10, 87:23

**granting** [2] - 76:6, 81:21

**great** [8] - 21:7, 57:9, 74:14, 75:1, 91:19, 91:25, 92:24

**grindstone** [1] - 93:25

**Group** [1] - 78:2

**group** [1] - 4:7

**grudge** [1] - 63:9

**guarantee** [1] - 93:9

**guess** [4] - 11:19, 83:14, 84:17, 93:6

**Guidance** [1] - 12:17

# H

**half** [6] - 54:5, 71:18, 76:15, 80:14, 80:15, 81:16

**hand** [1] - 22:2

**handicapped** [1] - 89:3

**handled** [1] - 31:12

**handrails** [1] - 89:16

**hang** [1] - 51:17

**hard** [3] - 13:2, 71:10, 92:7

**head** [1] - 42:10

**heal** [1] - 94:9

**Health** [1] - 45:8

**health** [1] - 86:11

**hear** [44] - 5:22, 5:24, 6:5, 6:7, 7:5, 10:3, 16:11, 20:9, 21:1, 23:18, 23:19, 30:3, 32:23, 34:15, 34:16, 39:12, 40:1, 41:7, 41:8, 42:21, 46:1, 46:8, 48:7, 48:21, 52:6, 53:14, 55:4, 57:19, 57:20, 59:20, 62:6, 63:16, 65:20, 66:9, 67:5, 71:9, 71:20, 73:23, 75:19, 75:20, 79:19, 80:19, 83:19, 83:20

**hearing** [5] - 5:2, 27:14, 27:15, 38:17, 38:19

**HEARING** [1] - 1:10

**hearsay** [5] - 6:15, 21:16, 24:23, 24:25, 74:5

**held** [4] - 48:8, 84:15, 86:17, 95:10

**hello** [2] - 3:16, 46:14

**help** [1] - 64:7

**hereby** [1] - 95:7

**hidden** [1] - 54:5

**hide** [1] - 59:18

**high** [2] - 72:8, 91:9

**higher** [1] - 47:13

**himself** [1] - 7:15

**HIPAA** [2] - 58:23, 59:13

**hire** [2] - 11:12, 11:13

**hit** [3] - 52:21, 52:24

**Holcomb** [4] - 79:16, 80:12, 81:10, 81:19

**hold** [12] - 4:8, 9:21, 12:4, 16:4, 18:1, 31:7, 34:12, 40:20, 40:24, 43:22, 85:4, 86:23

**holding** [2] - 21:21, 61:20

**holiday** [2] - 94:6, 94:7

**Honor** [127] - 2:8, 3:2, 3:8, 3:9, 3:12, 3:16, 3:19, 3:21, 3:24, 4:2, 4:5, 4:11, 4:15, 4:19, 4:21, 6:6, 6:9, 7:9, 7:14, 7:24, 8:11, 10:5, 13:8, 13:17, 13:23, 14:19, 16:2, 16:12, 17:18, 18:3, 19:2, 19:10, 19:11, 19:21, 20:3, 20:14, 21:23, 23:8, 23:20, 25:19, 25:21, 27:19, 30:7, 30:10, 31:7, 32:6, 32:8, 32:25, 36:12, 38:20, 39:20, 40:3, 41:9, 42:23, 46:9, 47:3, 47:10, 47:17, 47:21, 47:22, 48:22, 51:21, 51:24, 52:11, 53:16, 53:20, 54:15, 54:22, 55:6, 57:21, 58:9, 58:25, 59:5, 59:6, 59:8, 59:13, 59:21, 61:5, 61:22, 63:18, 63:20, 64:19, 66:5, 66:11, 66:22, 67:6, 67:14, 71:22, 72:20, 74:2, 75:22, 76:1, 76:17, 76:21, 76:23, 78:4, 78:6, 79:20, 80:13, 80:21, 83:21, 87:12, 87:14, 87:17, 87:20, 87:21, 88:7, 88:15, 88:21, 89:20, 89:21, 89:23, 89:24, 90:2, 91:1, 91:2, 91:11, 91:25, 92:2, 92:4, 94:12, 94:17, 94:18, 94:19

**honor** [1] - 58:22

**Honor's** [2] - 59:16, 84:1

**HONORABLE** [1] - 1:10

**hooked** [1] - 51:25

**hope** [3] - 4:4, 14:22, 94:8

**horse** [1] - 65:22
**horseshoe** [1] - 89:5
**hour** [3] - 11:10, 11:23, 13:11
**hours** [4] - 14:22, 66:7, 82:12
**Huber** [2] - 8:5, 9:5
**Huber's** [2] - 8:5, 9:8
**hundred** [1] - 64:16
**Huss** [1] - 48:12

# I

**idea** [3] - 26:13, 26:20, 62:13
**identified** [6] - 24:6, 54:21, 55:1, 55:2, 78:1
**identify** [6] - 2:21, 2:24, 30:5, 76:12, 77:13, 77:15
**identity** [3] - 60:23, 61:2, 61:9
**illustrated** [1] - 55:17
**illustrative** [1] - 74:18
**impact** [1] - 86:21
**impeach** [1] - 34:23
**impeaching** [1] - 38:5
**impeachment** [4] - 36:8, 36:23, 74:7, 74:8
**implicated** [1] - 56:12
**implications** [1] - 8:18
**imply** [1] - 84:4
**important** [5] - 20:2, 22:12, 55:23, 75:21, 82:3
**imposed** [1] - 10:13
**impressions** [1] - 6:17
**improper** [2] - 72:3, 79:3
**IN** [1] - 1:1
**inability** [1] - 91:3
**inadmissible** [4] - 6:15, 28:17, 28:18, 57:13
**inappropriate** [1] - 83:4
**Inc** [7] - 3:11, 49:11, 64:2, 75:1, 75:13, 79:15
**include** [3] - 45:23, 73:4, 81:14
**included** [1] - 47:13
**includes** [3] - 12:18, 44:7, 49:2
**including** [2] - 45:6, 45:19
**inconsistencies** [1] - 8:12
**incurred** [1] - 43:14
**indeed** [2] - 9:11, 9:14
**indicate** [1] - 19:8
**indicated** [5] - 29:3, 63:6, 63:24, 73:13, 82:9
**indicates** [1] - 7:17
**indicia** [1] - 21:15
**indirect** [3] - 47:12, 47:14, 47:25
**industry** [1] - 59:25
**informant** [3] - 57:15, 60:9, 61:9
**informants** [4] - 57:16, 60:12, 61:1, 61:16
**information** [9] - 6:11, 54:9, 59:13, 60:21, 67:17, 67:21, 75:1, 75:5, 78:24
**initial** [2] - 31:11, 60:7

**initials** [1] - 64:2
**injunction** [1] - 36:15
**input** [1] - 31:20
**inquiries** [1] - 10:21
**inquiry** [1] - 85:14
**instance** [4] - 11:23, 25:1, 36:22, 72:1
**instead** [1] - 24:13
**Institute** [1] - 69:12
**insurance** [1] - 55:19
**intelligent** [2] - 92:15, 92:20
**intend** [3] - 34:22, 56:18, 69:5
**intent** [2] - 26:8, 84:2
**interact** [1] - 72:4
**interchangeably** [1] - 5:5
**interest** [1] - 61:20
**interested** [2] - 37:24, 75:12
**interesting** [1] - 92:13
**International** [1] - 3:18
**Internet** [1] - 76:14
**interpret** [2] - 37:12, 68:10
**interpreting** [1] - 70:12
**interrogatory** [4] - 76:11, 76:19, 77:13, 78:11
**interrupt** [1] - 31:1
**interview** [2] - 9:4, 27:2
**interviewed** [2] - 26:3, 26:24
**interviewing** [1] - 25:2
**interviews** [2] - 9:7, 27:10
**intimidated** [1] - 59:4
**introduce** [6] - 13:11, 34:22, 54:4, 56:22, 57:5, 69:13
**introduced** [2] - 53:18, 55:3
**introducing** [1] - 42:3
**investigation** [7] - 6:12, 6:18, 6:23, 9:3, 26:7, 37:7, 38:7
**investigations** [9] - 35:22, 36:1, 36:4, 36:14, 37:14, 37:16, 37:24, 38:1, 38:12
**investigator** [3] - 5:8, 6:10, 8:22
**investment** [10] - 54:14, 55:12, 55:18, 55:20, 55:24, 56:1, 56:17, 56:21, 57:1
**invoice** [1] - 22:4
**invoices** [2] - 17:24, 50:3
**involved** [3] - 32:1, 64:5, 82:6
**involving** [1] - 64:5
**Iqbal** [1] - 64:3
**irrelevant** [1] - 40:5
**issue** [30] - 15:5, 22:12, 24:2, 24:16, 31:17, 39:22, 46:4, 47:9, 49:4, 58:16, 58:17, 59:3, 66:13, 67:2, 67:7, 67:13, 68:6, 68:7, 70:20, 77:3, 77:12, 80:12, 81:9, 82:4, 83:18, 84:6, 85:13, 86:11, 91:6, 93:2
**issued** [3] - 77:13, 81:20, 86:8
**issues** [6] - 14:4, 24:7, 26:5, 58:19, 78:18, 92:14
**itself** [5] - 7:2, 27:8, 27:12, 60:7, 68:20

# J

**January** [14] - 2:15, 2:16, 24:9, 24:10, 60:23, 61:7, 75:8, 81:18, 86:13, 86:14, 86:15, 86:16, 87:6, 94:15
**Jennings** [1] - 17:17
**job** [1] - 92:10
**Joe** [1] - 3:25
**joint** [32] - 5:17, 29:12, 29:13, 29:17, 29:19, 33:14, 34:5, 34:8, 34:9, 35:14, 35:17, 35:21, 35:25, 37:13, 38:10, 38:22, 38:25, 40:14, 40:19, 41:2, 41:3, 41:10, 44:24, 45:1, 45:2, 45:3, 45:5, 45:9, 45:14, 51:3, 81:21
**Joseph** [1] - 1:17
**judge** [4] - 19:23, 20:7, 62:11, 69:1
**Judge** [4] - 48:14, 49:14, 49:15, 50:25
**judged** [1] - 85:21
**judgment** [6] - 18:5, 20:4, 20:5, 53:20, 55:15, 81:22
**Judicial** [1] - 95:11

# K

**Karen** [2] - 79:16, 81:10
**Kathy** [5] - 23:4, 23:14, 28:7, 29:1, 30:16
**Katrina** [7] - 1:13, 3:5, 6:9, 42:25, 74:1, 80:21, 84:12
**keep** [14] - 2:6, 18:20, 29:11, 37:3, 50:1, 51:25, 63:9, 75:13, 83:5, 84:4, 85:24, 90:16, 90:17, 93:25
**keeping** [4] - 11:10, 11:21, 59:10, 85:1
**keeps** [2] - 22:2
**kept** [1] - 85:9
**key** [2] - 21:4, 58:17
**kind** [5] - 35:11, 50:14, 63:22, 75:5, 85:24
**knowing** [1] - 43:13
**knowingly** [2] - 42:14, 42:16
**knowledge** [12] - 6:12, 24:7, 39:10, 40:9, 56:25, 61:15, 71:3, 71:6, 71:12, 73:11, 81:23, 82:12
**known** [2] - 28:11, 62:19
**knows** [1] - 64:3
**KOONIN** [50] - 2:8, 3:24, 6:6, 13:8, 13:17, 13:23, 13:25, 14:9, 14:11, 14:14, 16:2, 21:23, 21:25, 25:18, 25:21, 25:25, 30:7, 30:10, 31:7, 32:5, 38:20, 51:21, 51:24, 53:16, 54:2, 57:21, 61:5, 63:18, 65:17, 65:21, 66:5, 66:11, 66:18, 67:14, 71:22, 72:20, 72:23, 75:22, 76:1, 76:5, 78:4, 87:20, 87:23, 88:1, 88:5, 89:21, 89:23, 90:2, 90:4, 94:17
**Koonin** [13] - 1:17, 3:24, 13:8, 21:25, 25:18, 30:7, 53:16, 57:22, 63:18, 66:17, 67:24, 73:2, 89:24

**Kravet** [3] - 1:19, 4:22

# L

**labor** [4] - 62:2, 62:6, 62:7, 62:21
**Labor** [9] - 1:4, 3:1, 3:3, 28:9, 29:5, 59:24, 67:20, 81:11, 87:9
**Labor's** [2] - 5:5, 28:25
**lack** [4] - 34:24, 35:9, 71:3, 73:11
**laden** [1] - 17:16
**language** [4] - 27:5, 65:4, 68:20, 68:21
**Lapin** [13] - 8:7, 57:13, 57:14, 58:4, 58:9, 58:14, 58:18, 58:20, 59:11, 60:13, 60:24, 61:9, 63:5
**Lapin's** [1] - 60:6
**large** [2] - 89:15, 90:8
**larger** [1] - 89:13
**last** [10] - 5:20, 5:21, 23:24, 45:9, 47:3, 76:14, 82:16, 86:8, 89:21, 89:23
**late** [4] - 8:6, 66:3, 75:5, 76:15
**late-submitted** [1] - 8:6
**latest** [1] - 70:4
**laughing** [1] - 92:23
**Laughter** [4] - 14:18, 44:3, 53:1, 92:22
**law** [20] - 12:12, 14:2, 14:3, 38:10, 54:7, 61:22, 61:24, 62:2, 62:6, 62:7, 62:15, 62:19, 62:21, 67:22, 74:14, 91:14, 91:16, 93:15, 93:20, 93:22
**lawsuit** [4] - 34:19, 37:7, 38:6, 68:1
**lawsuits** [9] - 35:22, 36:1, 36:4, 36:13, 37:14, 37:15, 37:23, 38:1, 38:11
**lawyer** [1] - 7:7
**lawyers** [7] - 3:18, 4:7, 62:7, 90:13, 90:19, 92:11, 92:21
**lead** [3] - 5:24, 6:1, 6:4
**learned** [2] - 77:17, 77:20
**least** [5] - 5:25, 6:21, 38:23, 74:12, 84:24
**leave** [1] - 54:4
**Leckey** [1] - 80:4
**lecture** [1] - 62:6
**left** [4] - 41:2, 52:7, 54:18, 79:11
**legal** [7] - 11:17, 11:20, 11:22, 11:24, 15:10, 44:15
**length** [3] - 66:6, 79:4, 81:8
**letter** [6] - 2:12, 18:17, 59:7, 59:12, 70:1
**Letter** [1] - 86:8
**letters** [1] - 58:22
**level** [2] - 31:9, 85:5
**levels** [2] - 32:13, 72:14
**Levin** [3] - 71:3, 71:23, 73:10
**liable** [3] - 83:1, 83:16, 84:15
**liberal** [2] - 53:22, 54:8
**light** [7] - 9:10, 82:5, 83:25, 86:10, 87:3, 90:5, 94:7
**limine** [46] - 2:17, 5:6, 8:19, 9:1, 9:18, 15:17, 15:24, 16:7, 16:8, 22:21, 23:3, 27:23, 28:25, 29:5, 29:20, 33:14, 35:14, 35:21, 38:11, 38:22, 38:25,
40:15, 41:11, 42:7, 53:7, 57:12, 63:14, 67:11, 69:6, 71:2, 73:10, 73:15, 73:16, 74:24, 75:18, 78:7, 79:13, 79:17, 82:8, 82:17, 83:25, 86:3, 86:7, 86:18, 87:23
**limitations** [2] - 44:6, 80:12
**limited** [6] - 41:14, 48:17, 48:19, 50:21, 75:16, 81:11
**limiting** [1] - 84:1
**line** [20] - 2:25, 3:23, 4:22, 8:12, 12:22, 30:10, 48:2, 51:11, 51:16, 51:18, 52:3, 52:8, 52:10, 52:12, 52:13, 64:15, 68:25, 78:15
**lines** [1] - 51:25
**list** [1] - 64:12
**listed** [2] - 8:21, 64:10
**lists** [3] - 7:16, 50:20
**literally** [2] - 5:20, 62:4
**litigating** [1] - 6:24
**litigation** [10] - 24:2, 26:1, 26:2, 26:10, 26:11, 54:17, 64:4, 64:6, 64:20, 65:25
**Liu** [16] - 1:13, 3:5, 6:9, 42:24, 42:25, 43:1, 43:18, 67:5, 74:1, 74:13, 74:14, 80:21, 84:9, 84:11, 84:12, 85:4
**LIU** [14] - 3:5, 3:8, 6:9, 40:3, 42:23, 42:25, 43:2, 74:1, 80:21, 84:10, 84:12, 87:11, 87:14, 94:19
**live** [5] - 16:18, 17:16, 40:6, 51:14, 52:24
**loads** [1] - 62:12
**local** [3] - 3:25, 4:13, 59:25
**Lombard** [1] - 1:24
**look** [3] - 12:15, 68:22, 71:24
**looked** [5] - 48:25, 54:13, 77:7, 78:1, 81:8
**looking** [4] - 28:21, 77:23, 82:19, 93:1
**looks** [2] - 47:10, 68:14
**loss** [1] - 44:17
**losses** [1] - 82:5
**lost** [1] - 49:12
**loyally** [1] - 45:23
**lugging** [1] - 90:17
**lump** [1] - 48:8

# M

**M&L** [1] - 26:4
**magic** [1] - 56:10
**mail** [12] - 57:13, 57:25, 58:5, 58:11, 63:5, 65:15, 66:14, 67:7, 69:24, 72:1, 72:13
**mailed** [1] - 17:21
**mails** [5] - 57:24, 60:4, 60:5, 61:2, 61:11
**main** [1] - 89:6
**maintain** [1] - 83:6
**major** [1] - 21:16
**Marc** [9] - 1:17, 3:24, 13:8, 21:25, 30:7, 53:16, 57:22, 63:18, 89:24
**March** [1] - 24:4
**Marilyn** [6] - 4:10, 4:12, 52:9, 79:17,
82:17, 86:3
**Mark** [8] - 1:15, 3:13, 23:12, 23:23, 24:18, 25:1, 29:2, 41:10
**market** [3] - 59:25, 77:7, 77:25
**Marshals** [1] - 91:22
**MARTIN** [2] - 1:23, 95:17
**Martin** [1] - 95:5
**MARYLAND** [1] - 1:1
**Maryland** [3] - 1:7, 1:24, 95:7
**massive** [1] - 92:7
**material** [5] - 2:18, 5:11, 5:14, 5:20, 92:7
**materials** [1] - 78:16
**math** [5] - 19:12, 19:14, 20:17, 20:19
**mathematical** [1] - 19:6
**mathematician** [1] - 19:13
**Mathias** [2] - 51:1
**matter** [42] - 8:25, 9:11, 12:12, 14:3, 14:13, 15:5, 15:15, 21:5, 22:21, 23:12, 28:13, 31:23, 32:3, 33:7, 33:19, 33:20, 44:18, 45:18, 56:15, 56:17, 60:4, 66:13, 66:24, 67:1, 67:4, 67:10, 68:8, 69:10, 69:11, 74:4, 74:9, 79:2, 80:11, 81:9, 81:13, 81:17, 81:19, 83:14, 85:19, 91:18, 93:19, 95:10
**MATTER** [1] - 1:9
**matters** [4] - 70:16, 71:8, 71:12, 71:14
**mean** [16] - 12:12, 14:21, 17:1, 17:6, 21:12, 25:25, 27:6, 38:3, 40:5, 46:5, 57:8, 62:22, 71:15, 77:14, 85:16, 85:23
**meaning** [3] - 68:12, 68:23, 71:25
**means** [4] - 17:9, 43:14, 72:8, 72:14
**measure** [1] - 77:3
**measurements** [1] - 30:17
**measures** [6] - 34:18, 35:7, 35:16, 76:3, 76:17, 77:24
**mechanical** [1] - 1:21
**meet** [1] - 28:14
**meeting** [2] - 52:13, 88:6
**members** [1] - 32:10
**memorandum** [1] - 5:6
**men's** [1] - 89:12
**mention** [1] - 37:9
**mentioned** [5] - 17:18, 33:2, 33:5, 46:23, 90:2
**mentions** [1] - 48:1
**Meredith** [4] - 1:15, 3:13, 41:10, 42:20
**MEREDITH** [2] - 41:9, 41:13
**Merit** [1] - 95:5
**merit** [6] - 20:24, 22:20, 23:2, 27:23, 73:9
**methodology** [1] - 49:7
**mic** [1] - 51:14
**Michael** [2] - 6:4, 25:16
**might** [1] - 32:8
**million** [5] - 18:7, 46:21, 49:3, 50:10, 50:18
**mind** [1] - 63:10

**mini** [5] - 65:22, 67:13, 69:5, 70:15, 70:18
**minor** [2] - 66:19, 87:20
**minute** [18] - 5:10, 5:23, 9:21, 13:18, 13:19, 29:10, 29:11, 29:15, 31:1, 34:12, 40:20, 40:24, 45:4, 47:3, 51:13, 51:15, 51:19, 51:22
**minutes** [5] - 2:6, 51:14, 51:17, 51:19, 52:10
**misconduct** [1] - 8:11
**misimpression** [1] - 32:8
**misrepresenting** [2] - 9:14, 48:23
**missed** [3] - 4:16, 5:1, 40:25
**missing** [2] - 19:11, 19:15
**mistaken** [2] - 12:3, 45:10
**mistakes** [1] - 31:19
**moment** [2] - 54:18, 82:7
**Monday** [2] - 2:15, 86:12
**money** [7] - 12:22, 56:6, 79:25, 80:2, 80:7, 81:12, 82:6
**monies** [1] - 18:1
**monitor** [1] - 45:23
**month** [5] - 19:5, 23:24, 43:22, 54:5, 76:15
**months** [4] - 28:21, 61:8, 71:18
**moot** [2] - 68:7, 69:12
**Morris** [1] - 6:5
**most** [5] - 22:5, 65:5, 90:19, 92:20, 92:23
**motion** [135] - 5:5, 5:6, 5:15, 8:19, 9:1, 9:18, 10:1, 10:6, 12:16, 14:24, 15:1, 15:4, 15:17, 15:24, 16:6, 16:8, 17:21, 19:5, 20:4, 20:22, 21:2, 22:21, 23:1, 23:3, 27:23, 28:25, 29:12, 29:19, 33:14, 34:5, 34:8, 34:9, 35:1, 35:14, 35:17, 35:20, 35:21, 35:25, 37:13, 38:2, 38:10, 38:19, 38:21, 38:22, 38:23, 38:25, 40:14, 40:18, 41:3, 41:10, 41:13, 41:14, 42:7, 43:5, 44:19, 44:25, 45:1, 45:2, 45:3, 45:5, 45:9, 45:14, 45:17, 46:1, 46:17, 47:3, 49:11, 50:16, 51:3, 52:9, 53:5, 53:7, 53:8, 53:19, 56:15, 56:18, 56:23, 57:4, 57:11, 57:12, 59:4, 59:8, 60:15, 60:16, 62:12, 63:4, 63:10, 63:12, 63:13, 63:14, 63:22, 65:13, 67:10, 67:16, 69:6, 70:23, 70:24, 71:2, 73:10, 73:12, 73:14, 73:15, 73:16, 74:18, 74:22, 74:24, 75:18, 76:6, 76:8, 76:23, 78:7, 79:1, 79:2, 79:7, 79:12, 79:13, 79:17, 81:5, 81:7, 81:21, 82:8, 82:11, 82:16, 82:17, 86:2, 86:3, 86:4, 87:23
**MOTIONS** [1] - 1:10
**motions** [25] - 2:16, 2:20, 5:3, 9:25, 15:2, 16:7, 20:23, 23:1, 29:5, 29:13, 29:16, 29:17, 39:11, 40:19, 41:2, 41:3, 51:7, 51:10, 55:2, 71:1, 73:16, 79:11, 86:7, 86:18
**motive** [1] - 28:16
**move** [1] - 63:8

**moved** [4] - 36:2, 39:2, 71:4, 73:17
**moving** [7] - 16:8, 23:13, 23:21, 29:11, 29:22, 43:19, 72:13
**MR** [139] - 2:8, 3:2, 3:9, 3:12, 3:16, 3:19, 3:21, 3:24, 4:2, 4:5, 4:11, 4:19, 4:21, 6:6, 7:9, 7:11, 7:14, 7:24, 8:1, 8:4, 8:16, 10:5, 11:4, 11:21, 12:9, 13:8, 13:17, 13:23, 13:25, 14:9, 14:11, 14:14, 14:19, 14:25, 16:2, 16:12, 17:3, 17:7, 17:10, 17:13, 17:15, 19:1, 19:10, 19:21, 20:2, 20:12, 20:19, 21:18, 21:23, 21:25, 23:8, 23:20, 23:23, 24:1, 25:18, 25:21, 25:25, 29:7, 30:7, 30:10, 31:7, 32:5, 32:25, 33:11, 36:12, 38:20, 39:16, 39:18, 39:20, 41:9, 41:13, 46:9, 46:25, 47:2, 47:5, 47:16, 47:21, 48:22, 49:16, 49:18, 51:21, 51:24, 52:11, 53:16, 54:2, 55:6, 57:21, 59:21, 61:1, 61:5, 61:13, 61:22, 63:18, 65:17, 65:21, 66:5, 66:11, 66:18, 66:22, 67:6, 67:14, 67:15, 68:10, 69:17, 69:20, 71:22, 72:20, 72:23, 75:22, 76:1, 76:5, 77:2, 78:4, 79:20, 80:13, 80:17, 83:21, 87:12, 87:17, 87:20, 87:23, 88:1, 88:5, 88:11, 88:15, 88:21, 89:20, 89:21, 89:23, 90:2, 90:4, 91:1, 91:6, 91:11, 91:19, 91:25, 94:12, 94:17, 94:18
**MS** [22] - 3:5, 3:8, 4:15, 6:9, 40:3, 42:23, 42:25, 43:2, 52:19, 52:21, 74:1, 80:21, 84:10, 84:12, 87:11, 87:14, 92:2, 92:4, 92:6, 92:16, 92:18, 94:19
**multiple** [1] - 26:1
**multiply** [1] - 22:9
**must** [2] - 13:2, 23:7
**mute** [1] - 46:15

## N

**name** [6] - 44:12, 50:23, 57:15, 60:6, 60:7, 61:3
**names** [1] - 61:23
**narrow** [1] - 62:2
**Naugle** [13] - 12:7, 12:9, 15:14, 15:18, 15:21, 44:11, 46:21, 47:6, 47:24, 48:1, 48:15, 49:21, 50:8
**Naugle's** [6] - 13:4, 46:18, 48:4, 48:10, 48:23, 48:24
**necessarily** [4] - 15:7, 17:4, 55:24, 79:4
**necessary** [3] - 18:18, 19:15, 41:22
**need** [17] - 5:12, 7:17, 8:22, 20:19, 21:1, 34:16, 49:8, 49:13, 55:12, 62:3, 66:20, 67:16, 73:12, 75:20, 75:24, 90:21, 91:20
**needed** [1] - 52:4
**needs** [2] - 21:19, 94:13
**negate** [1] - 81:2
**negligence** [2] - 34:21, 34:23
**negligent** [2] - 30:1, 33:21
**negotiating** [1] - 55:9

**never** [7] - 13:12, 13:25, 54:10, 76:13, 78:10, 93:10, 93:12
**nevertheless** [1] - 59:17
**new** [2] - 13:11, 53:10
**newly** [1] - 76:8
**newly-disclosed** [1] - 76:8
**Newman** [1] - 1:19
**next** [17] - 9:25, 10:3, 16:6, 29:12, 30:5, 34:8, 34:14, 35:20, 35:24, 38:22, 40:18, 43:21, 47:11, 57:11, 70:23, 70:24, 94:14
**night** [1] - 15:3
**nine** [2] - 28:21, 78:13
**nitpicking** [1] - 21:2
**noble** [1] - 74:14
**nobody** [2] - 25:25, 39:18
**non** [4] - 64:23, 64:24, 65:10, 74:5
**non-fiduciary** [1] - 65:10
**non-hearsay** [1] - 74:5
**non-profit** [2] - 64:23, 64:24
**nondisclosure** [1] - 58:23
**none** [3] - 5:2, 38:17, 38:19
**normal** [1] - 26:16
**NORTHERN** [1] - 1:2
**nose** [1] - 93:25
**note** [4] - 8:25, 9:4, 15:12, 20:24
**noted** [6] - 27:25, 77:14, 81:22, 86:8, 86:23, 86:25
**notes** [8] - 9:4, 9:7, 9:9, 9:13, 38:24, 41:1, 70:25, 71:1
**nothing** [8] - 11:6, 11:24, 21:2, 48:10, 59:7, 62:6, 62:15, 85:14
**notice** [3] - 23:16, 56:10, 93:22
**noticed** [2] - 28:9, 77:18
**notified** [2] - 62:9
**noting** [1] - 45:17
**November** [1] - 81:20
**now-excluded** [1] - 30:16
**Number** [35] - 2:11, 5:18, 8:20, 9:19, 10:4, 15:25, 22:23, 29:2, 33:16, 34:4, 34:6, 34:11, 34:14, 35:16, 36:1, 38:10, 38:23, 40:16, 40:20, 41:6, 44:24, 45:16, 51:5, 53:8, 63:7, 63:16, 69:9, 73:12, 74:24, 79:9, 82:9, 82:21, 82:22, 86:2, 88:4
**number** [23] - 10:17, 12:13, 22:25, 46:19, 46:20, 47:13, 47:19, 47:24, 48:1, 48:17, 48:24, 49:7, 49:8, 49:20, 50:10, 53:7, 63:14, 73:15, 73:17, 74:18, 74:23, 87:24
**numbers** [3] - 47:6, 50:8, 88:5
**numerous** [2] - 12:1, 12:11

## O

**o'clock** [1] - 15:3
**oath** [2] - 37:20, 37:21
**objected** [2] - 53:20, 58:2
**obligation** [2] - 11:11, 83:18

**obligations** [2] - 10:15, 12:23
**observed** [5] - 71:8, 71:14, 71:19, 71:23, 72:12
**observes** [1] - 72:11
**obtained** [1] - 64:8
**obviously** [4] - 8:10, 73:19, 87:4, 92:19
**occasion** [1] - 53:3
**occurred** [1] - 7:3
**October** [6] - 60:24, 61:10, 61:14, 62:8, 63:2, 76:15
**OF** [4] - 1:1, 1:5, 2:1, 95:1
**offer** [2] - 63:24, 88:23
**offered** [2] - 28:13, 28:15
**offering** [10] - 8:13, 34:10, 35:15, 41:4, 44:9, 44:22, 45:3, 45:6, 51:4, 79:13
**Officer** [1] - 88:17
**officers** [1] - 91:22
**OFFICIAL** [2] - 95:1, 95:18
**ON** [1] - 1:9
**on-the-record** [1] - 86:17
**once** [3] - 31:14, 77:20, 91:14
**one** [65] - 2:2, 4:8, 5:1, 6:20, 7:7, 8:18, 9:21, 12:4, 14:12, 14:21, 14:23, 15:1, 16:4, 17:23, 18:4, 19:22, 20:2, 21:6, 23:2, 25:7, 26:5, 27:3, 29:18, 30:8, 32:6, 33:7, 34:2, 34:12, 34:14, 35:22, 35:24, 36:14, 40:20, 40:22, 40:24, 40:25, 42:25, 43:22, 45:1, 47:11, 49:10, 52:6, 53:3, 53:7, 54:4, 57:24, 58:17, 63:10, 64:11, 66:7, 66:19, 68:5, 69:4, 69:15, 69:20, 74:22, 76:7, 82:11, 86:23, 87:20, 89:15, 89:21, 89:23
**one's** [1] - 21:6
**open** [4] - 39:7, 51:14, 63:10, 86:6
**operation** [1] - 30:2
**operations** [1] - 33:22
**operative** [2] - 43:21, 53:11
**opine** [1] - 15:19
**opinion** [16] - 23:12, 28:19, 29:2, 39:9, 41:4, 41:17, 41:20, 42:8, 42:15, 43:4, 43:7, 49:15, 49:22, 50:25, 93:13, 94:2
**opinions** [1] - 6:17
**opponent** [2] - 36:9, 74:6
**opponents** [2] - 26:4, 64:7
**opportunity** [10] - 5:15, 8:9, 24:21, 25:9, 28:2, 39:14, 45:12, 46:3, 58:7, 58:19
**oppose** [1] - 81:5
**opposed** [2] - 21:6, 30:18
**opposite** [1] - 49:18
**opposition** [4] - 5:17, 22:1, 22:8, 47:8
**oral** [1] - 53:19
**oranges** [1] - 47:8
**order** [8] - 2:12, 36:13, 37:6, 59:2, 68:11, 84:16, 84:25, 90:5
**Order** [10] - 7:16, 19:5, 75:6, 79:5, 81:20, 86:7, 86:8, 86:9, 86:16, 86:17
**ordered** [1] - 61:23
**ordinary** [1] - 59:8
**otherwise** [2] - 23:6, 48:11

**out-of-court** [2] - 28:12, 74:3
**outside** [2] - 33:11, 71:16
**overage** [1] - 80:1
**overall** [2] - 50:17, 86:21
**overbroad** [1] - 73:22
**overlapped** [1] - 26:12
**overlaps** [1] - 76:2
**own** [6] - 31:21, 33:3, 44:7, 49:10, 62:14

**P**

**p.m** [2] - 52:2
**pace** [1] - 94:7
**packages** [1] - 64:22
**page** [2] - 76:14, 95:10
**Page** [2] - 46:16, 48:1
**paid** [17] - 10:7, 11:2, 11:7, 11:15, 12:18, 45:7, 46:6, 46:20, 47:19, 49:1, 49:6, 50:1, 50:9, 50:11, 50:12, 50:19, 50:20
**paper** [3] - 27:20, 32:11, 41:19
**Paper** [34] - 2:12, 5:18, 8:20, 9:18, 10:3, 15:25, 22:23, 29:2, 33:16, 34:4, 34:6, 34:11, 34:14, 35:16, 36:1, 38:10, 38:23, 40:16, 40:19, 41:6, 44:24, 45:16, 51:5, 53:8, 63:6, 63:16, 69:9, 73:12, 74:23, 79:9, 82:9, 82:20, 82:21, 86:2
**papers** [4] - 7:21, 27:22, 35:13, 41:13
**paperwork** [2] - 31:19, 32:16
**parent** [1] - 68:5
**parking** [3] - 88:24, 89:4, 89:18
**part** [7] - 11:4, 25:25, 31:15, 36:16, 55:23, 57:24, 76:8
**participate** [3] - 42:16, 59:5, 88:22
**participated** [2] - 71:8, 71:14
**participating** [1] - 42:14
**participation** [1] - 43:13
**particular** [3] - 32:18, 46:1, 63:25
**particularly** [4] - 27:8, 58:13, 82:14, 94:10
**parties** [9] - 25:7, 27:12, 48:3, 77:5, 82:20, 86:14, 90:6, 90:12, 94:3
**parts** [4] - 25:22, 25:23, 27:7, 57:23
**party** [17] - 21:16, 24:15, 24:20, 28:2, 28:9, 28:15, 33:23, 36:9, 40:5, 50:7, 55:23, 57:25, 68:10, 68:11, 74:6, 75:16, 90:13
**past** [1] - 82:12
**Patrick** [4] - 1:13, 3:2, 10:5, 16:12
**pattern** [1] - 9:13
**Pause** [14] - 2:4, 2:23, 4:9, 9:22, 11:18, 12:5, 16:5, 34:13, 35:23, 38:16, 40:21, 40:23, 43:24, 86:24
**pay** [3] - 11:14, 12:20, 12:25
**paying** [2] - 11:8, 11:9
**payment** [4] - 31:15, 43:15, 80:23, 81:12
**payments** [10] - 31:10, 31:11, 40:5, 48:8, 48:11, 79:14, 79:23, 79:24,

81:17, 81:19
**payroll** [2] - 10:20, 11:5
**payrolls** [3] - 10:19, 11:10, 11:21
**Pender** [1] - 42:7
**pending** [1] - 86:18
**people** [10] - 25:2, 25:4, 26:3, 32:2, 32:12, 33:2, 53:2, 82:14, 90:14, 91:14
**per** [2] - 9:3, 68:18
**perception** [1] - 92:24
**performance** [1] - 74:15
**performed** [2] - 16:14, 79:15
**perhaps** [1] - 32:13
**peril** [2] - 62:14
**period** [4] - 62:11, 70:17, 73:6, 84:14
**permit** [3] - 15:22, 56:22, 57:4
**permitted** [4] - 28:22, 35:18, 63:21, 74:16
**person** [8] - 20:13, 27:1, 27:3, 27:4, 37:19, 37:21, 72:15, 92:15
**personal** [4] - 6:12, 71:3, 71:5, 73:11
**personnel** [1] - 91:22
**persons** [2] - 33:4, 61:14
**pertain** [1] - 37:2
**pertained** [1] - 24:16
**pertaining** [1] - 16:15
**phone** [4] - 3:15, 46:15, 52:6, 59:5
**phrase** [1] - 5:4
**picture** [1] - 68:6
**pin** [2] - 18:18, 42:10
**place** [1] - 69:13
**placed** [1] - 63:2
**Plaintiff** [3] - 1:4, 1:12, 2:25
**Plaintiffs'** [1] - 90:9
**Plan** [42] - 10:7, 10:11, 10:19, 10:23, 11:2, 12:9, 12:18, 12:20, 12:21, 12:23, 12:24, 15:11, 29:21, 29:24, 33:6, 37:10, 43:14, 44:17, 45:8, 45:24, 48:25, 49:1, 49:6, 56:4, 56:5, 56:7, 60:10, 64:10, 66:25, 67:12, 68:9, 68:18, 69:8, 69:22, 69:25, 70:3, 79:14, 80:2, 80:24, 82:5, 83:3
**plan** [7] - 30:21, 36:4, 67:19, 67:20, 67:25, 69:23, 73:5
**Plan's** [2] - 10:10, 55:9
**plan's** [1] - 67:20
**plans** [18] - 29:20, 29:23, 33:15, 33:18, 36:25, 37:1, 37:2, 49:1, 63:15, 63:23, 64:16, 64:21, 66:25, 67:11, 68:9, 69:6, 69:7, 73:4
**players** [1] - 77:25
**plead** [1] - 54:3
**pleaded** [4] - 49:5, 53:17, 55:7, 56:12
**pleading** [3] - 53:22, 54:8, 56:10
**pleadings** [1] - 55:1
**pled** [1] - 53:13
**plowing** [1] - 53:5
**PM** [1] - 1:8
**point** [30] - 6:20, 8:23, 9:4, 13:13, 19:10, 19:11, 20:2, 26:22, 32:16, 38:14,

38:18, 40:11, 42:11, 43:10, 47:21, 48:16, 50:16, 54:7, 54:16, 56:15, 66:18, 74:18, 76:12, 76:16, 79:22, 83:25, 87:8, 87:15, 87:20, 88:19
**pointed** [1] - 58:13
**points** [2] - 66:19, 66:21
**policy** [1] - 55:19
**portions** [1] - 31:10
**position** [11] - 9:12, 11:3, 12:8, 13:5, 36:10, 36:11, 42:8, 45:22, 63:3, 63:11, 85:7
**positions** [1] - 5:11
**possesses** [1] - 83:3
**possession** [1] - 83:11
**possible** [3] - 12:10, 88:24
**post** [1] - 84:1
**potentially** [2] - 36:18, 48:9
**practices** [2] - 84:3, 84:18
**precise** [1] - 17:12
**preclude** [17] - 34:10, 35:14, 35:21, 35:25, 36:2, 37:8, 37:13, 38:11, 41:3, 43:5, 43:19, 45:3, 45:5, 51:3, 79:17, 82:18, 86:3
**precluded** [3] - 15:21, 34:18, 42:18
**precluding** [3] - 15:7, 44:6, 45:19
**predicated** [1] - 54:8
**prejudice** [2] - 75:6, 78:24
**prejudiced** [1] - 57:17
**prejudicial** [1] - 69:4
**premature** [3] - 7:19, 8:23, 9:3
**prepared** [1] - 16:20
**present** [10] - 3:25, 4:13, 27:10, 27:18, 37:19, 44:5, 44:14, 56:16, 84:17, 86:1
**presented** [8] - 6:24, 15:16, 40:12, 46:13, 46:14, 46:16, 68:8
**presenting** [2] - 36:3, 48:5
**presiding** [1] - 69:1
**pressed** [2] - 13:2, 71:11
**presumption** [1] - 83:6
**pretrial** [2] - 2:15, 86:13
**Pretrial** [4] - 7:16, 75:6, 79:5, 86:15
**pretty** [5] - 2:17, 26:22, 28:1, 83:23, 91:23
**prevail** [1] - 19:20
**prevent** [1] - 79:13
**previous** [2] - 39:5, 42:15, 45:14
**previously** [4] - 58:19, 61:12, 86:22, 86:25
**principle** [3] - 14:2, 17:1, 61:19
**principles** [2] - 27:25, 71:15
**printouts** [1] - 76:14
**private** [1] - 64:22
**privilege** [11] - 6:19, 57:16, 60:3, 60:12, 60:14, 60:19, 60:20, 61:1, 61:16, 65:15, 67:3
**privileged** [5] - 64:12, 87:24, 88:7, 88:12, 88:13
**probable** [2] - 30:2, 30:12
**probative** [1] - 84:5

**problem** [13] - 13:13, 19:16, 19:18, 19:19, 21:16, 50:1, 50:2, 71:24, 72:11, 88:9, 88:10, 91:3
**problems** [3] - 30:12, 30:21, 33:24
**procedures** [4] - 31:4, 31:25, 34:11, 35:3
**proceed** [1] - 5:2
**proceeding** [1] - 43:21
**Proceedings** [2] - 1:21, 94:21
**proceedings** [1] - 95:9
**PROCEEDINGS** [1] - 2:1
**process** [5] - 6:19, 31:11, 31:17, 76:22, 77:4
**processed** [4] - 31:15, 33:2, 33:5
**processes** [1] - 31:14
**Processing** [1] - 25:2
**processing** [10] - 29:20, 29:23, 31:8, 31:12, 32:3, 33:8, 33:15, 33:24, 34:6, 63:21
**produced** [10] - 1:21, 22:7, 22:9, 23:23, 58:2, 58:6, 60:4, 61:2, 61:11, 65:4
**product** [3] - 65:14, 66:13, 67:3
**profit** [8] - 42:8, 42:9, 64:23, 64:24, 79:25, 80:2, 80:9, 80:23
**profits** [2] - 49:12, 82:1
**program** [2] - 22:6, 32:9
**prohibited** [5] - 54:13, 55:16, 55:19, 81:3, 82:4
**promise** [1] - 94:1
**pronounce** [2] - 23:5, 23:6
**pronouncing** [1] - 44:12
**pronunciation** [1] - 23:10
**proper** [3] - 14:7, 15:11, 84:4
**properly** [1] - 60:18
**proponent** [1] - 21:19
**proposal** [1] - 77:4
**proposed** [2] - 93:14, 93:20
**protected** [1] - 6:18
**protective** [1] - 59:2
**protocols** [1] - 33:9
**provide** [7] - 21:19, 22:15, 36:15, 49:22, 57:17, 76:20, 77:9
**provided** [6] - 17:19, 23:16, 24:8, 55:13, 75:2, 77:21
**provider** [1] - 77:8
**providers** [13] - 36:25, 37:1, 37:3, 37:9, 49:2, 49:3, 49:6, 50:7, 50:21, 55:10, 60:10, 77:13, 77:15
**provides** [1] - 47:7
**providing** [3] - 49:12, 64:7, 78:23
**provision** [2] - 56:11, 67:18
**provisions** [1] - 68:17
**prudently** [1] - 45:23
**public** [5] - 61:20, 64:23, 64:24, 67:25, 68:2
**pull** [1] - 32:10
**pulling** [1] - 22:2
**purchase** [1] - 55:18
**pure** [1] - 54:15

**purely** [1] - 11:5
**purported** [1] - 18:7
**purporting** [1] - 69:21
**purpose** [1] - 69:18
**purposes** [3] - 36:8, 74:8, 76:2
**pursuant** [2] - 10:20, 60:11, 95:8
**pursue** [4] - 43:15, 60:17, 85:11, 85:23
**put** [12] - 11:7, 15:20, 30:20, 32:10, 32:11, 44:1, 68:11, 69:21, 71:10, 77:3, 78:7, 80:6
**putative** [2] - 10:2, 34:24
**puts** [1] - 47:8
**putting** [4] - 25:8, 36:20, 47:25, 68:2

## Q

**qualified** [1] - 72:25
**qualifies** [1] - 22:16
**qualify** [1] - 73:9
**quality** [3] - 29:23, 32:13, 32:18
**questions** [3] - 37:22, 38:14, 38:18
**quick** [1] - 18:4
**quickly** [1] - 67:9
**quip** [2] - 62:22, 92:10
**quit** [1] - 33:12
**quite** [15] - 5:14, 5:19, 16:23, 20:16, 35:2, 38:7, 43:16, 52:23, 57:9, 72:23, 75:17, 82:5, 91:8, 92:9
**quote/unquote** [1] - 72:7

## R

**Raddock** [8] - 10:2, 10:9, 10:17, 12:1, 12:13, 15:25, 37:8, 77:5
**Raddock's** [3] - 12:8, 15:18, 36:22
**rail** [1] - 89:13
**raised** [9] - 9:5, 13:12, 13:25, 14:4, 14:5, 14:6, 55:15, 60:19, 76:13
**raising** [1] - 15:6
**ramp** [1] - 89:5
**rate** [4] - 10:16, 11:9, 49:22, 49:23
**rates** [1] - 50:2
**raucous** [2] - 91:9, 91:17
**RDB-15-3315** [2] - 1:5, 2:11
**reaching** [1] - 68:22
**read** [8] - 5:11, 14:21, 27:19, 27:22, 35:13, 61:24, 66:21
**reading** [1] - 14:22
**ready** [4] - 5:2, 52:5, 86:19, 93:17
**real** [2] - 80:8, 83:14
**realize** [2] - 14:22, 21:7
**really** [18] - 7:1, 37:15, 37:24, 39:11, 41:14, 44:17, 46:13, 56:20, 60:15, 65:8, 75:12, 75:19, 83:18, 87:2, 91:4, 91:14, 93:9
**Realtime** [1] - 95:6
**reargue** [1] - 63:22
**reason** [8] - 27:11, 40:14, 50:17, 65:2,

70:11, 76:16, 81:5, 94:13
**reasonable** [3] - 17:9, 49:23, 70:17
**reasonableness** [9] - 39:1, 39:3, 39:7, 39:10, 39:21, 40:10, 40:15, 45:15, 48:5
**reasons** [28] - 9:18, 9:20, 9:23, 15:23, 16:1, 22:22, 22:23, 28:24, 29:3, 34:4, 34:7, 35:17, 35:18, 38:13, 40:17, 44:24, 51:2, 63:6, 63:7, 63:12, 69:8, 70:22, 73:13, 79:10, 82:9, 86:5, 86:22, 88:12
**Rebecca** [8] - 1:19, 4:13, 52:7, 52:12, 92:16, 92:17, 92:18, 92:19
**rebut** [3] - 34:24, 35:8, 77:10
**rebuttal** [4] - 14:21, 36:19, 70:4, 77:24
**recalculate** [5] - 18:18, 69:22, 69:25, 70:2, 70:9
**received** [4] - 18:2, 33:8, 77:22, 80:3
**Recess** [1] - 52:2
**recommended** [1] - 56:4
**recommending** [2] - 55:9, 56:5
**recommends** [1] - 55:18
**recompense** [1] - 26:6
**record** [35] - 2:7, 2:10, 2:22, 2:25, 8:11, 9:20, 9:24, 15:23, 16:1, 16:19, 17:5, 19:6, 22:22, 22:24, 28:24, 29:3, 30:15, 31:5, 34:7, 38:13, 40:17, 44:2, 48:11, 58:6, 63:6, 63:7, 67:25, 69:9, 69:21, 70:22, 73:13, 79:10, 82:10, 86:5, 86:17
**recorded** [1] - 1:21
**recordkeeping** [8] - 82:18, 82:24, 83:15, 84:3, 84:13, 84:18, 85:19, 86:4
**records** [34] - 17:6, 18:1, 18:18, 18:19, 18:20, 21:20, 21:22, 22:1, 22:8, 33:4, 50:4, 50:6, 50:7, 65:6, 67:19, 68:2, 83:3, 83:5, 83:7, 83:9, 83:10, 83:18, 84:4, 84:19, 84:21, 85:4, 85:5, 85:8, 85:10, 85:12, 85:17, 85:18, 85:24
**redacted** [1] - 60:6
**reduced** [1] - 80:14
**refer** [1] - 12:16
**reference** [2] - 56:11, 79:1
**referenced** [2] - 61:12, 63:25
**references** [1] - 67:24
**referring** [1] - 65:15
**reflect** [2] - 9:9, 85:9
**regard** [12] - 8:5, 21:21, 27:2, 27:8, 30:17, 37:23, 48:6, 48:16, 58:23, 62:12, 79:23, 89:2
**regarding** [7] - 10:21, 39:2, 42:2, 42:8, 42:17, 43:9, 59:2
**regardless** [1] - 88:6
**regards** [5] - 24:11, 24:22, 36:15, 56:1, 67:20
**Registered** [1] - 95:5
**regularly** [2] - 16:19, 27:9
**regularly-conducted** [1] - 16:19
**regulation** [1] - 55:17
**regulations** [2] - 10:13, 95:11

**Rehabilitation** [3] - 64:2, 66:15, 69:12
**reimburse** [1] - 79:14
**reimbursement** [5] - 79:25, 80:22, 81:2, 81:9, 81:14
**reimbursements** [1] - 81:25
**rejected** [1] - 59:1
**rejects** [1] - 62:5
**relate** [3] - 15:10, 40:10, 85:25
**related** [7] - 37:7, 58:20, 64:15, 64:20, 71:7, 79:8, 83:3
**relates** [6] - 45:13, 46:4, 56:16, 64:21, 66:12, 81:19
**relating** [20] - 11:17, 11:20, 29:22, 33:18, 34:10, 35:15, 36:4, 45:4, 63:15, 63:23, 64:13, 65:13, 66:24, 67:11, 69:7, 74:25, 75:10, 82:18, 82:23, 86:4
**relation** [1] - 43:14
**relationship** [1] - 75:3
**release** [1] - 31:10
**releasing** [1] - 31:9
**relevance** [2] - 69:2, 88:12
**relevant** [28] - 6:23, 7:22, 8:10, 8:24, 9:11, 29:24, 29:25, 30:21, 33:18, 33:19, 33:25, 34:4, 36:18, 37:5, 39:4, 39:8, 39:22, 40:12, 45:18, 46:7, 64:24, 65:3, 65:22, 71:18, 71:23, 82:25, 83:2, 83:9
**reliability** [1] - 21:15
**relied** [1] - 26:25
**relief** [5] - 41:24, 42:12, 42:13, 42:17, 79:23
**relies** [1] - 42:7
**religious** [1] - 86:22
**rely** [9] - 24:23, 24:24, 25:1, 26:25, 27:1, 27:3, 27:9, 49:20, 54:24
**relying** [3] - 8:13, 25:3, 42:6
**remain** [1] - 86:20
**remaining** [3] - 39:22, 82:16, 84:6
**remains** [1] - 57:2
**remedial** [10] - 34:11, 34:18, 35:3, 35:7, 35:16, 76:3, 76:17, 77:2, 77:23, 79:2
**remedy** [1] - 81:11
**remember** [1] - 59:6
**remind** [1] - 89:2
**reminding** [1] - 58:22
**remove** [2] - 68:17, 68:20
**rendered** [1] - 80:1
**replace** [2] - 75:7, 77:8
**replacement** [1] - 76:22
**replacements** [1] - 35:10
**replete** [1] - 8:11
**report** [27] - 8:6, 8:8, 10:8, 10:9, 15:18, 22:11, 22:12, 23:21, 24:22, 24:25, 25:8, 25:23, 26:14, 27:8, 27:11, 28:20, 28:23, 29:1, 41:22, 44:7, 44:11, 46:18, 48:2, 48:5, 48:10, 48:23, 49:8
**reported** [1] - 95:9
**reporter** [5] - 30:5, 44:1, 51:12, 52:4, 82:15

**REPORTER** [2] - 95:1, 95:18
**Reporter** [2] - 95:5, 95:6
**reporting** [2] - 6:14, 16:10
**reports** [10] - 9:14, 24:1, 24:4, 24:12, 24:16, 27:6, 27:16, 27:19, 33:17, 91:15
**representative** [1] - 67:20
**request** [7] - 2:13, 41:24, 67:19, 67:21, 77:4, 86:10
**requested** [1] - 82:22
**require** [2] - 64:25, 65:22
**required** [3] - 44:13, 56:9, 67:22
**requirement** [3] - 10:13, 10:23, 11:23
**requires** [2] - 42:13, 85:14
**residual** [2] - 21:14, 22:19
**resolution** [1] - 94:2
**respect** [40] - 2:20, 9:5, 12:7, 15:9, 17:5, 21:2, 21:11, 21:14, 23:14, 28:12, 28:20, 29:15, 29:17, 31:23, 35:8, 35:9, 36:3, 38:1, 39:8, 42:13, 44:16, 50:17, 57:5, 61:18, 62:2, 62:3, 66:14, 67:1, 67:2, 68:8, 69:4, 73:23, 79:4, 85:7, 85:15, 86:1, 86:2, 88:24, 89:9
**respond** [11] - 6:20, 13:7, 13:9, 25:18, 39:14, 43:11, 46:3, 66:23, 67:22, 73:12, 77:1
**responded** [4] - 34:22, 39:6, 53:12, 71:7
**responding** [1] - 25:16
**response** [11] - 4:17, 5:25, 6:2, 6:21, 10:20, 41:8, 42:22, 44:13, 61:14, 82:21, 83:8
**responses** [8] - 13:13, 24:3, 24:8, 54:14, 54:15, 55:8, 55:13, 60:8
**responsibility** [2] - 54:19, 84:1
**responsible** [1] - 85:4
**restate** [1] - 5:13
**rests** [1] - 55:14
**result** [2] - 81:24, 83:6
**resulting** [2] - 16:16, 82:4
**results** [1] - 68:3
**retained** [1] - 83:13
**retaliated** [2] - 58:21, 59:22
**retaliation** [2] - 59:23, 60:14
**retired** [2] - 83:9, 84:14
**retirement** [7] - 82:19, 82:24, 83:2, 83:15, 84:23, 85:15, 85:20
**return** [1] - 80:2
**revealed** [1] - 75:5
**review** [4] - 7:1, 7:2, 34:1, 83:18
**reviewed** [2] - 29:18, 31:2
**reviewing** [1] - 81:8
**rewarded** [1] - 25:12
**RFPs** [1] - 75:15
**RICHARD** [1] - 1:10
**Richard** [6] - 1:15, 3:13, 7:9, 39:16, 46:10, 79:21
**river** [2] - 23:5, 23:7
**RMR** [1] - 1:23, 95:17
**Rob** [2] - 4:2, 88:21

**Robert** [1] - 1:18
**rocket** [1] - 19:13
**role** [1] - 6:11
**roll** [6] - 52:5, 86:19, 89:7, 89:14, 91:23
**room** [5] - 35:6, 89:12, 90:13, 90:15, 90:16
**Roviaro** [1] - 62:19
**Rule** [29] - 16:16, 16:18, 16:23, 16:24, 17:1, 17:5, 21:9, 21:10, 21:14, 21:19, 22:17, 24:19, 28:12, 30:1, 33:19, 34:20, 35:3, 35:5, 35:7, 35:11, 53:13, 53:22, 54:2, 54:8, 57:7, 69:4
**rule** [4] - 16:22, 53:22, 68:7, 74:15
**ruled** [9] - 42:15, 47:3, 54:23, 63:20, 64:19, 70:19, 82:25, 83:15, 88:11
**Rules** [1] - 69:2
**rules** [5] - 25:11, 25:12, 28:6, 31:18, 58:9
**ruling** [7] - 21:19, 39:5, 40:9, 59:16, 69:14, 82:1, 84:1
**rulings** [4] - 38:9, 70:12, 75:14, 81:15
**run** [3] - 22:6, 22:13, 25:11

## S

**Salerno** [1] - 28:5
**sales** [1] - 72:4
**sample** [1] - 48:25
**San** [1] - 48:12
**sandbagging** [1] - 54:16
**satisfactorily** [1] - 32:21
**satisfied** [3] - 22:16, 22:17, 22:18
**satisfies** [1] - 55:11
**save** [1] - 75:11
**SBGA** [1] - 12:19
**scenario** [1] - 78:16
**Scharlat** [6] - 1:15, 3:13, 7:9, 39:16, 46:10, 79:21
**SCHARLAT** [25] - 3:12, 3:19, 7:9, 7:11, 7:14, 7:24, 8:1, 8:4, 8:16, 23:8, 39:16, 39:18, 39:20, 46:9, 46:25, 47:2, 47:5, 47:16, 47:21, 66:22, 79:20, 80:13, 80:17, 87:17, 94:18
**schedule** [2] - 86:7, 86:22
**school** [4] - 74:14, 91:9, 91:14, 91:16
**Schrier** [2] - 6:4, 25:16
**scientist** [1] - 19:13
**Scott** [4] - 1:18, 4:12, 52:11, 83:22
**se** [1] - 9:3
**second** [17] - 2:3, 4:8, 9:21, 12:4, 16:4, 17:21, 18:8, 34:12, 35:22, 40:20, 40:22, 40:24, 43:22, 53:6, 58:17, 86:23, 94:4
**secondarily** [1] - 42:11
**secret** [1] - 59:11
**Secretary** [137] - 1:4, 3:1, 3:3, 3:5, 5:4, 5:5, 5:23, 6:5, 6:7, 7:15, 8:13, 8:21, 9:25, 10:3, 10:7, 11:1, 11:19, 13:11, 13:21, 15:6, 16:8, 16:11, 17:20, 19:19,

20:23, 22:2, 22:4, 23:1, 23:2, 23:13, 23:15, 24:6, 25:9, 26:1, 26:2, 26:3, 26:8, 26:18, 26:21, 26:23, 27:3, 27:17, 27:24, 28:8, 28:25, 29:5, 29:25, 32:24, 34:10, 34:18, 34:22, 35:15, 36:2, 36:14, 36:24, 38:15, 39:6, 39:13, 40:1, 40:11, 41:4, 41:8, 41:16, 41:18, 43:8, 44:9, 44:13, 45:3, 45:6, 46:12, 46:20, 47:7, 47:10, 47:12, 47:18, 48:2, 48:7, 48:17, 50:10, 51:3, 53:12, 54:10, 54:24, 55:5, 55:7, 55:12, 56:9, 56:16, 56:22, 57:5, 57:10, 57:20, 58:2, 58:4, 58:14, 59:2, 59:14, 59:20, 60:18, 60:19, 63:1, 63:9, 63:23, 63:25, 64:3, 64:6, 65:2, 65:23, 65:24, 67:17, 70:16, 71:6, 73:21, 73:23, 75:8, 75:20, 76:12, 79:13, 79:22, 80:4, 80:20, 80:24, 81:11, 81:22, 82:21, 83:5, 83:11, 83:20, 84:2, 84:8, 84:15, 84:19, 84:23, 87:9, 88:1
**secretary** [1] - 73:11
**Secretary's** [27] - 5:15, 8:19, 9:18, 10:25, 11:3, 15:4, 15:13, 15:20, 15:23, 16:7, 22:20, 26:7, 32:6, 36:10, 36:11, 41:20, 42:1, 43:13, 44:7, 58:17, 63:11, 75:7, 76:8, 83:8, 84:13, 84:25, 85:7
**secrets** [2] - 58:24, 59:13
**sector** [3] - 64:23, 64:24
**Security** [3] - 5:7, 5:9, 9:2
**security** [6] - 91:2, 91:3, 91:7, 91:21, 91:22
**see** [13] - 15:14, 19:7, 33:3, 47:3, 47:12, 56:25, 62:24, 65:3, 68:19, 84:17, 85:13, 87:6, 94:15
**seek** [3] - 41:20, 43:5, 79:23
**seeking** [6] - 27:15, 34:17, 42:12, 74:2, 81:12, 84:16
**seeks** [1] - 43:8
**seem** [1] - 69:14
**sees** [1] - 72:1
**selective** [1] - 9:13
**self** [2] - 21:7, 80:24
**semantic** [1] - 80:8
**sense** [1] - 74:10
**sent** [2] - 58:21, 77:17
**separate** [2] - 30:14, 30:15
**separately** [1] - 57:24
**series** [1] - 2:16
**seriously** [1] - 60:3
**serve** [1] - 84:5
**served** [3] - 24:3, 41:17, 54:11
**Service** [6] - 10:11, 10:12, 10:20, 10:21, 10:23, 11:22
**service** [11] - 36:25, 37:1, 37:3, 37:9, 49:2, 49:3, 49:6, 50:20, 55:10, 60:10, 77:8
**serviced** [1] - 69:23
**Services** [4] - 74:25, 75:10, 75:13, 79:9
**services** [4] - 36:25, 77:8, 77:10, 80:1
**set** [22] - 3:18, 9:20, 9:23, 15:23, 16:1,

22:22, 22:23, 28:24, 34:7, 35:19, 38:13, 40:17, 41:13, 49:8, 56:8, 56:9, 63:7, 65:9, 69:8, 70:22, 79:10, 86:5
**Settlor** [1] - 12:17
**settlor** [8] - 11:1, 11:5, 12:24, 13:22, 14:1, 14:3, 15:6, 15:15
**seven** [2] - 73:16, 74:23
**several** [1] - 63:25
**shall** [5] - 28:19, 74:19, 74:20, 82:9, 86:16
**sharing** [1] - 67:17
**shoes** [1] - 91:4
**short** [1] - 83:22
**show** [4] - 18:7, 34:21, 35:9, 48:11
**showing** [3] - 33:23, 34:23, 50:4
**shown** [1] - 22:12
**Siamack** [3] - 5:8, 6:10, 8:20
**side** [12] - 5:10, 5:14, 7:6, 12:22, 14:23, 19:20, 20:1, 62:25, 75:17, 78:24, 94:3
**sides** [1] - 15:22
**signed** [1] - 81:23
**Significa** [14] - 74:25, 75:2, 75:7, 75:10, 75:12, 76:5, 76:9, 76:13, 77:16, 77:17, 78:8, 78:12, 78:25, 79:9
**signing** [1] - 60:19
**simple** [10] - 14:13, 15:5, 20:21, 20:22, 27:24, 33:19, 35:1, 35:13, 56:14, 79:22
**simply** [6] - 16:21, 35:2, 80:2, 81:2, 84:5, 85:20
**simultaneously** [1] - 64:5
**sit** [1] - 90:14
**sitting** [1] - 87:3
**six** [7] - 61:20, 62:9, 63:3, 73:15, 73:17, 74:19, 90:8
**sizes** [1] - 64:22
**skill** [1] - 74:17
**sleight** [1] - 22:2
**sneeze** [2] - 43:22, 43:25
**software** [2] - 22:7, 31:10
**solely** [1] - 58:12
**solicitation** [1] - 75:15
**solicited** [2] - 6:16, 60:9
**someone** [9] - 11:12, 19:2, 23:6, 24:11, 37:22, 38:3, 72:3, 85:7, 85:16
**somewhat** [1] - 73:22
**somewhere** [3] - 50:24, 78:16, 78:21
**sorry** [16] - 2:5, 7:22, 7:24, 18:11, 34:11, 42:24, 43:1, 43:25, 45:4, 52:19, 52:21, 66:5, 74:8, 92:11, 92:14, 94:9
**sort** [5] - 6:20, 47:9, 76:9, 82:2, 94:14
**sought** [2] - 59:2, 82:6
**sounds** [1] - 6:22
**space** [2] - 90:10, 90:11
**speaking** [3] - 20:11, 30:5, 92:14
**special** [1] - 4:23
**specific** [4] - 12:13, 22:3, 54:3, 76:19
**specifically** [10] - 9:6, 10:14, 16:20, 31:23, 44:10, 50:19, 54:3, 59:3, 60:24,

76:11
**specificity** [1] - 18:15
**speculation** [1] - 72:14
**speculative** [1] - 19:20
**spend** [1] - 56:6
**spent** [3] - 2:18, 14:21, 62:23
**spirit** [1] - 25:11
**spoliation** [1] - 85:13
**spot** [1] - 89:18
**spreadsheet** [2] - 17:21, 72:13
**square** [1] - 91:21
**SSL** [1] - 26:4
**staff** [2] - 89:6, 90:22
**stage** [1] - 6:25
**stand** [1] - 51:17
**standard** [3] - 54:8, 56:10, 59:7
**stands** [1] - 49:18
**start** [3] - 2:14, 91:14, 93:17
**started** [1] - 51:16, 91:7
**starting** [2] - 86:21, 87:4
**starts** [1] - 30:6
**state** [2] - 10:14, 64:4
**statement** [1] - 28:13
**statements** [7] - 9:15, 25:5, 36:9, 37:9, 74:4, 74:6, 74:11
**States** [3] - 62:16, 95:6, 95:12
**STATES** [1] - 1:1
**stating** [2] - 18:5, 18:17
**statistical** [1] - 26:15
**status** [1] - 65:10
**statutes** [1] - 59:23
**stay** [1] - 51:18
**stenographically** [1] - 95:9
**stenographically-reported** [1] - 95:9
**stenography** [1] - 1:21
**step** [2] - 2:19
**still** [16] - 39:7, 40:6, 40:12, 45:17, 46:6, 47:23, 51:6, 52:8, 52:10, 52:12, 52:14, 52:15, 52:18, 74:11, 84:22, 89:13
**stipulate** [1] - 36:20
**stop** [1] - 87:1
**stops** [2] - 7:11, 39:18
**store** [1] - 90:15
**story** [1] - 18:20
**straight** [1] - 18:20
**Strandberg** [10] - 1:19, 4:13, 52:7, 52:16, 52:18, 92:16, 92:17, 92:18, 92:19, 92:24
**STRANDBERG** [8] - 4:15, 52:19, 52:21, 92:2, 92:4, 92:6, 92:16, 92:18
**Street** [1] - 1:24
**strictly** [1] - 72:12
**stuck** [1] - 47:5
**stuff** [2] - 11:10, 14:22
**submissions** [1] - 82:20
**submit** [2] - 10:9, 43:4
**submits** [1] - 10:8
**submitted** [6] - 8:6, 18:5, 18:12, 19:7, 20:3, 76:14

**submitting** [1] - 18:14
**subparagraph** [1] - 56:11
**subparagraphs** [2] - 55:11, 56:2
**subpoena** [5] - 77:18, 77:19, 77:21, 78:11
**subpoenaed** [4] - 24:2, 36:24, 50:6, 50:7
**subsequent** [5] - 34:11, 34:18, 35:15, 77:2, 77:23
**substance** [1] - 81:3
**substantive** [1] - 20:6
**sufficiency** [1] - 6:22
**sufficient** [2] - 22:17, 65:9
**sufficiently** [1] - 57:6
**suggestion** [1] - 83:17
**sum** [2] - 48:8, 81:12
**summaries** [1] - 9:6
**summarize** [1] - 5:11
**summarized** [1] - 83:22
**summary** [20] - 16:17, 16:18, 16:24, 17:9, 17:15, 17:22, 17:23, 17:24, 18:4, 18:5, 20:4, 20:5, 21:10, 22:17, 22:21, 53:19, 55:15, 81:21
**summed** [1] - 39:20
**supplemental** [5] - 23:21, 24:22, 28:19, 28:20, 29:1
**supplemented** [1] - 77:21
**support** [10] - 5:6, 8:19, 10:1, 15:24, 41:4, 44:9, 44:23, 45:7, 45:19, 53:9
**supported** [1] - 30:22
**supporting** [3] - 12:15, 22:15, 44:16
**supportive** [1] - 30:11
**supports** [1] - 54:7
**supposedly** [2] - 58:20, 59:10
**Supreme** [1] - 28:4
**surplusage** [1] - 58:7
**surprise** [1] - 26:18
**surprised** [1] - 26:19
**switch** [5] - 58:7, 58:15, 78:4, 78:5, 78:14
**sworn** [2] - 26:25, 27:4
**system** [5] - 31:3, 31:8, 31:24, 33:25, 70:8
**systematic** [1] - 33:23

## T

**Table** [5] - 46:18, 49:21, 49:24, 50:1, 50:9
**table** [4] - 49:21, 50:12, 90:8, 90:10
**tainted** [1] - 38:8
**targeted** [3] - 30:18, 30:22, 46:18
**TAS** [6] - 22:7, 22:9, 31:12, 31:15, 31:20, 32:8
**team** [18] - 30:13, 30:14, 30:22, 31:13, 31:14, 31:21, 31:23, 32:1, 32:10, 32:12, 32:17, 32:18, 33:2, 33:5, 72:4
**teasing** [1] - 74:16
**technology** [3] - 31:4, 31:25, 33:25

**telephone** [4] - 2:6, 2:9, 51:18, 86:17
**TELEPHONIC** [1] - 1:10
**ten** [1] - 61:8
**tend** [1] - 29:15
**terms** [42] - 15:8, 15:11, 15:16, 20:7, 22:19, 27:25, 28:1, 29:12, 32:1, 32:2, 33:24, 34:3, 35:12, 37:23, 38:8, 50:15, 53:5, 56:21, 56:24, 61:9, 67:10, 68:12, 68:15, 68:18, 68:23, 69:1, 70:12, 70:13, 70:15, 71:15, 71:16, 71:18, 73:7, 75:15, 79:1, 81:9, 81:17, 85:3, 85:5, 85:11, 85:21, 91:16
**terrible** [1] - 90:20
**territory** [1] - 14:16
**test** [1] - 28:11
**testified** [4] - 10:17, 18:10, 18:11, 72:4
**testifies** [3] - 71:25, 72:2, 72:7
**testify** [5] - 6:13, 15:22, 60:9, 71:13, 73:5
**testifying** [2] - 25:5, 72:12
**testimony** [56] - 5:7, 6:16, 7:21, 8:5, 8:24, 9:1, 9:5, 9:10, 9:19, 10:1, 12:8, 13:4, 15:13, 15:25, 16:18, 17:16, 20:5, 20:6, 20:8, 23:4, 24:19, 25:8, 26:25, 27:4, 27:10, 27:12, 28:1, 28:3, 29:1, 29:22, 30:16, 33:3, 36:22, 37:18, 37:19, 37:20, 38:3, 38:4, 41:4, 41:14, 42:2, 42:6, 43:19, 44:9, 44:22, 45:6, 45:19, 57:12, 63:4, 71:3, 71:25, 73:10, 82:23, 83:12
**Texas** [1] - 52:14
**THAMES** [1] - 23:4
**Thames** [12] - 23:5, 23:6, 23:9, 23:11, 23:12, 23:14, 27:13, 28:7, 28:16, 29:1, 30:16
**Thames'** [1] - 54:23
**themselves** [4] - 2:21, 2:24, 11:14, 17:8
**theories** [2] - 54:3, 54:12
**theory** [16] - 13:11, 13:25, 41:15, 53:10, 53:17, 54:3, 54:4, 54:10, 54:19, 55:14, 57:6, 59:3, 59:11, 73:24, 76:8, 76:13
**therein** [1] - 28:14
**they've** [4] - 13:25, 64:10, 76:13, 78:11
**thinking** [2] - 72:15, 89:11
**thinks** [2] - 72:3, 72:7
**third** [7] - 16:6, 33:23, 50:7, 57:25, 63:13, 70:19, 75:16
**third-party** [3] - 33:23, 50:7, 75:16
**three** [12] - 5:1, 20:23, 51:7, 55:11, 56:2, 58:6, 63:14, 71:18, 90:10, 90:12, 93:10, 93:19
**throughout** [1] - 56:9
**thrust** [2] - 11:3, 39:11
**Thursday** [1] - 86:16
**tied** [1] - 67:1
**timing** [1] - 54:25
**TMS** [2] - 69:24, 69:25
**today** [1] - 2:13
**together** [4] - 30:20, 47:8, 66:16, 66:17
**toilet** [1] - 89:13

**tolling** [1] - 81:24
**took** [3] - 24:14, 34:19, 80:5
**top** [2] - 8:18, 14:23
**total** [4] - 49:2, 70:25, 78:14
**totally** [2] - 32:17, 64:21
**tough** [1] - 70:16
**track** [1] - 85:1
**trade** [2] - 58:23, 59:13
**training** [3] - 26:16, 33:8, 72:24
**Training** [3] - 64:2, 66:15, 69:11
**transaction** [7] - 55:16, 55:19, 55:21, 80:23, 81:3, 82:4
**transactions** [2] - 54:13, 56:2
**transcript** [4] - 1:21, 37:8, 95:9, 95:10
**transfer** [1] - 79:25
**TRDI** [10] - 64:1, 64:5, 64:9, 64:11, 67:18, 67:25, 68:13, 68:19, 68:21, 69:22
**TRDI's** [1] - 64:13
**Trial** [3] - 65:14, 69:11, 88:3
**trial** [38] - 2:14, 7:19, 8:22, 9:10, 9:17, 14:6, 15:17, 16:20, 19:23, 20:6, 20:9, 20:15, 43:22, 50:14, 54:5, 56:19, 56:20, 56:23, 61:13, 62:7, 62:11, 62:15, 64:11, 64:13, 65:1, 65:23, 69:1, 78:19, 85:19, 86:12, 86:15, 87:2, 88:22, 93:11, 93:12, 94:1
**trials** [5] - 67:13, 69:5, 70:15, 70:18, 93:12
**tried** [7] - 18:18, 54:4, 62:1, 70:17, 74:17, 93:2, 93:4
**Trilogy** [5] - 24:1, 24:3, 24:6, 24:11, 26:14
**Trucker** [1] - 48:12
**true** [7] - 8:14, 23:10, 62:16, 62:17, 62:19, 78:11, 95:8
**trust** [11] - 10:16, 11:6, 11:7, 11:15, 11:25, 31:3, 31:7, 31:24, 33:24, 80:6
**trustee** [6] - 69:23, 69:24, 70:8, 80:5, 84:5, 85:2
**trusteeship** [1] - 84:18
**truth** [3] - 28:13, 74:4, 74:9
**try** [7] - 15:1, 19:13, 70:17, 78:21, 93:7, 93:17, 94:7
**trying** [24] - 13:11, 15:8, 16:14, 16:17, 17:25, 20:17, 29:9, 35:8, 35:9, 37:25, 62:7, 63:3, 66:3, 66:4, 66:8, 68:20, 74:15, 75:13, 81:13, 82:2, 85:4, 85:25, 90:23
**turned** [1] - 77:19
**turnover** [1] - 64:17
**two** [30] - 5:1, 5:21, 5:23, 15:2, 16:14, 18:2, 25:21, 25:23, 26:22, 27:7, 30:20, 33:11, 40:19, 41:2, 49:15, 57:23, 60:21, 66:7, 66:16, 68:12, 69:5, 69:21, 72:14, 77:6, 78:1, 79:11, 82:12, 90:13, 93:10, 93:19
**Twombly** [1] - 57:7
**type** [2] - 24:24, 28:3
**typically** [2] - 24:24, 25:6

## U

**U.S** [2] - 1:23, 17:17
**U.S.C** [1] - 95:8
**unanalyzed** [1] - 48:8
**unavailable** [1] - 24:19
**uncontested** [2] - 26:23, 30:13
**under** [37] - 10:23, 16:21, 16:23, 17:5, 18:16, 21:9, 21:10, 21:14, 21:19, 22:19, 24:18, 28:11, 28:12, 28:14, 29:25, 32:8, 33:19, 34:20, 37:20, 37:21, 42:13, 48:2, 49:13, 53:22, 55:10, 56:2, 56:10, 57:16, 62:19, 62:21, 69:2, 70:8, 74:4, 79:24, 80:8, 81:4
**undercharged** [1] - 18:7
**underlying** [10] - 17:17, 17:20, 17:22, 17:23, 21:11, 21:20, 21:21, 22:1, 25:5, 60:21
**understood** [2] - 43:5, 89:24
**underwriter** [2] - 72:21, 73:4
**unethical** [1] - 58:2
**unfair** [6] - 25:9, 25:10, 54:16, 54:24, 62:24, 78:10
**UNITED** [1] - 1:1
**United** [3] - 62:16, 95:6, 95:12
**unjust** [1] - 82:1
**unless** [3] - 7:11, 23:6, 28:2
**unreasonable** [2] - 48:10, 48:13
**unsurprisingly** [1] - 65:5
**untenable** [1] - 63:11
**untrue** [1] - 22:14
**up** [17] - 35:5, 39:20, 47:25, 48:1, 48:3, 51:17, 51:25, 62:8, 64:25, 72:3, 78:19, 79:18, 85:10, 88:23, 89:8, 90:22
**updates** [1] - 65:6
**USERRA** [1] - 12:19
**utility** [1] - 75:16

## V

**vanilla** [1] - 59:12
**variables** [2] - 19:11, 19:15
**vendor** [5] - 48:4, 49:9, 49:13
**vendor-by-vendor** [2] - 49:9, 49:13
**verify** [1] - 90:23
**version** [1] - 58:5
**versions** [1] - 58:14
**versus** [2] - 2:10, 12:17
**view** [10] - 9:8, 34:17, 38:14, 38:18, 56:23, 57:2, 57:3, 87:8, 87:16, 88:19
**violation** [2] - 42:14, 42:16
**violations** [1] - 7:2
**Vogel** [1] - 4:22

## W

**Wachovia** [1] - 48:11
**wage** [2] - 11:10, 11:22
**wait** [9] - 9:21, 13:18, 34:12, 40:20, 40:22, 40:24, 45:4, 65:21, 87:6
**waited** [1] - 24:13
**waiting** [1] - 2:6
**walking** [1] - 18:8
**wants** [5] - 5:24, 39:15, 48:3, 48:7, 83:11
**Ward** [20] - 4:10, 4:12, 18:19, 36:7, 36:15, 37:25, 52:7, 52:9, 82:17, 82:22, 83:19, 84:7, 84:20, 85:1, 85:14, 85:17, 86:1
**Ward's** [7] - 79:17, 82:18, 84:3, 84:13, 84:17, 84:23, 86:3
**warn** [1] - 93:16
**waste** [1] - 20:17
**ways** [1] - 45:13
**Weatherford** [4] - 1:18, 4:12, 52:11, 83:22
**WEATHERFORD** [3] - 4:11, 52:11, 83:21
**weave** [1] - 80:11
**weeds** [1] - 62:21
**week** [6] - 2:14, 86:12, 86:21, 87:4, 94:4, 94:14
**weeks** [8] - 5:21, 14:6, 28:20, 61:20, 62:10, 63:3, 81:21, 93:10
**weight** [12] - 18:23, 19:17, 21:4, 21:6, 21:7, 21:8, 33:20, 34:3, 43:10, 56:19, 57:9, 72:17
**Welfare** [1] - 45:8
**West** [1] - 1:24
**whatsoever** [1] - 22:20
**wherein** [1] - 55:18
**whole** [2] - 56:19, 59:10
**wiggle** [1] - 35:6
**withheld** [2] - 57:15, 61:10
**withhold** [2] - 60:6, 61:23
**witness** [11] - 7:17, 8:22, 9:7, 24:19, 24:21, 25:10, 28:3, 37:18, 59:11, 61:13, 90:15
**witnesses** [1] - 84:24
**wonderful** [1] - 94:6
**word** [1] - 55:12
**words** [4] - 18:24, 30:18, 54:14, 56:10
**works** [1] - 70:1
**worry** [2] - 66:20, 91:20
**worthy** [1] - 74:14
**woven** [2] - 66:16, 66:17
**written** [3] - 5:13, 5:14, 6:21

## Y

**yard** [1] - 12:22
**Year** [1] - 47:11

**year** [8] - 24:9, 24:10, 50:25, 59:17,
   60:25, 61:8, 71:17, 94:10
**years** [21] - 18:2, 41:5, 41:15, 42:4,
   43:9, 43:19, 44:10, 44:21, 44:23,
   46:23, 49:4, 49:15, 60:21, 64:16,
   64:17, 78:14, 85:8, 91:9, 91:16, 91:17,
   93:12

## Z

**Zapata** [1] - 59:3

## §

**§** [2] - 55:17, 95:8